# **<u>Exhibit 1</u>**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. **08 C 526** |
| v. | ) | |
| | ) | Hon. Virginia Kendall |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | Magistrate Judge Nolan |
| Toshiharu Miyano and | ) | |
| Steven Miyano, a/k/a Shigemori | ) | |
| Miyano, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants | ) | |

# MEMORANDUM IN SUPPORT OF
# PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ...................................................................................... 4

   A.  MIYANO - JAPAN ........................................................................................ 4

   B.  MIYANO USA'S BUSINESS AND TRADEMARKS ........................................ 4

   C.  DEFENDANTS AND THEIR ACTIVITIES ..................................................... 6

        (1)  The Individual Defendants ................................................................ 6

        (2)  The Corporate Defendant ................................................................. 7

        (3)  Defendants' Use of Plaintiff's Marks and Name ........................... 7

        (4)  Defendants Seek to Compete Directly With Plaintiff ................... 8

        (5)  Defendants' Challenges to Plaintiff's Registrations
             and Pending Application .................................................................. 9

III. ARGUMENT ...................................................................................................... 10

   A.  THERE IS A STRONG LIKELIHOOD THAT MIYANO USA
       WILL SUCCEED ON THE MERITS ............................................................. 11

        (1)  Miyano USA's Trade Name and Trademarks are Protectible ....... 11

             a. Miyano USA's MIYANO Trademark is Protectible ...................... 11

             b. Miyano USA's "Miyano" Trade Name is Protectible ................... 13

             c. Miyano USA's Triangle Winged M Mark is Protectible ............... 16

        (2)  A Likelihood of Confusion Exists .................................................. 18

             a. Similarity of the Marks – Defendants Misappropriate
                the Dominant Portions of Plaintiff's Trade Name, Trademarks,
                and Service Marks ......................................................................... 19

             b. Similarity of the Products – Defendants Offer the Same Products
                and Services ................................................................................... 20

             c. Area and Manner of Concurrent Use – Defendants Compete
                in the Same Market and for the Same Customers ......................... 21

             d. Customer's Degree of Care – Customers Will Suffer
                from Initial Interest Confusion ..................................................... 21

             e. Strength of the Marks – Miyano USA's Marks Are Strong ........... 22

f.  Actual Confusion – Evidence of Actual Confusion Is Not Required to Show a Likelihood of Confusion ................................................................ 23

g.  Defendants' Intent – Defendants Intended to Cause Consumer Confusion ........................................................................ 23

**B.  MIYANO USA WILL SUFFER IRREPARABLE HARM IF IMMEDIATE INJUNCTIVE RELIEF IS NOT GRANTED** .................................... **24**

**C.  THE BALANCE OF HARMS TIPS DECIDEDLY IN FAVOR OF MIYANO USA** ...................... **25**

**D.  MIYANO USA'S REQUEST FOR A PRELIMINARY INJUNCTION WILL FURTHER THE PUBLIC INTEREST** ........................................ **28**

**IV.  CONCLUSION** .................................................................................. **28**

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Mead Johnson & Co.*,

    971 F.2d 6 (7th Cir. 1992) ................................................................................ 10, 11, 24

*Alford Mfg. Co. v. Alfred Electronics*,

    137 U.S.P.Q. 250 (T.T.A.B. 1963), *aff'd*, 333 F.2d 912 (C.C.P.A. 1964) .............................. 13

*CAE, Inc. v. Clean Air Engineering, Inc.*,

    267 F.3d 660 (7th Cir. 2001) ................................................................ 12, 16, 21, 23

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*,

    304 F.3d 1167 (11th Cir. 2002) ................................................................................ 16

*Dorr-Oliver, Inc., v. Fluid-Quip, Inc.*,

    94 F.3d 376 (7th Cir. 1996) ................................................................................ 22

*Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*,

    871 F.2d 697 (7th Cir. 1989) ................................................................................ 26

*E & J Gallo Winery v. Gallo Cattle Co.*,

    967 F.2d 1280 (9th Cir. 1992) ................................................................................ 20

*Echo Travel, Inc. v. Travel Associates, Inc.*,

    870 F.2d 1264 (7th Cir. 1989) ................................................................................ 14

*Eli Lilly & Co. v. Natural Answers, Inc.*,

    233 F.3d 456 (7th Cir. 2000) ................................................................ 19, 20, 23, 28

*Emergency One, Inc. v. Am. FireEagle, Ltd.*,

    228 F.3d 531 (4th Cir. 2000) ................................................................................ 17

*Ex parte Dallioux*,

    83 U.S.P.Q. 262 (Comm'r Pats. 1949) ................................................................................ 13

*Floralife, Inc. v. Floraline Int'l, Inc.*,

    633 F. Supp. 108 (N.D.Ill.1985) ................................................................................ 25

*Forum Corp. Of North America v. Forum, Ltd.*,

    903 F.2d 434 (7th Cir. 1990) ................................................................................ 21, 22

G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.,

    873 F.2d 985 (7th Cir. 1989) ................................................................................ 18

*Guth v. Guth Chocolate Co.*,

    224 F. 932 (4th Cir. 1915) ..................................................... 26

*Helene Curtis Industries, Inc. v. Church & Dwight Co.*,

    560 F.2d 1325 (7th Cir. 1977) ................................................ 11

*Henri's Food Products Co. v. Kraft, Inc.*,

    717 F.2d 352 (7th Cir. 1983) ............................................. 19, 23

*Horlick's Malted Milk Corp. v. Horlick*,

    143 F.2d 32 (7th Cir. 1944) ............................................. 26, 27

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,

    612 F.2d 1018 (7th Cir. 1979) ............................................... 25

*In re McKee Baking Co.*,

    218 U.S.P.Q. 287 (T.T.A.B. 1983) .......................................... 13

*In re Penthouse International, Ltd.*,

    565 F.2d 679 (C.C.P.A. 1977) ........................................... 15, 17

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,

    846 F.2d 1079 (7th Cir. 1988) ......................................... 11, 27

*James Burroughs, Ltd. v. Sign of Beefeater, Inc.*,

    540 F.2d 266 (7th Cir. 1976) ................................................ 28

*John B. Stetson Co. v. Stephen L. Stetson Co.*,

    85 F.2d 586 (2nd Cir. 1936) ................................................. 20

*Levitt Corp. v. Levitt*,

    593 F.2d 463 (2nd Cir. 1979) ................................................ 27

*Liquid Controls Corp. v. Liquid Control Corp.*,

    802 F.2d 934 (7th Cir. 1986) ................................................ 12

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,

    799 F.2d 867 (2nd Cir. 1986) ............................................... 18

*McTavish Bob Oil Co. v. Disco Oil Co.*,

    345 F. Supp. 1379 (N.D. Ill. 1972) ......................................... 13

*Money Store v. Harriscorp Finance, Inc.*,

    689 F.2d 666 (7th Cir. 1982) ........................................... 12, 17

*Nina Ricci, S.A.R.L. v. E.T.F. Enters., Inc.*,
   889 F.2d 1070 (Fed. Cir. 1989) .................................................................. 20

*Osgood Heating & Air Conditioning, Inc. v. Osgood*,
   2004 U.S. Dist. LEXIS 28817, 75 U.S.P.Q.2D 1432 (W.D. Tex. 2004)................................. 27

*Peaceable Planet, Inc. v. Ty, Inc.*,
   362 F.3d 986 (7ᵗʰ Cir. 2004) ...................................................................... 14

*Personeta, Inc. v. Persona Software, Inc.*,
   418 F. Supp. 2d 1013 (N.D. Ill 2005) .......................................................... 11, 23

*Platinum Home Mortg. Corp. v. Platinum Fin. Group*,
   149 F.3d 722 (7ᵗʰ Cir. 1998) ...................................................................... 14

*Processed Plastic Co. v. Warner Communications, Inc.*,
   675 F.2d 852 (7ᵗʰ Cir. 1982) ...................................................................... 13

*Promatek Indus., LTD. v. Equitrac Corp.*,
   300 F.3d 808 (7ᵗʰ Cir. 2002) ......................................................... 10, 22, 24, 25

*Roulo v. Russ Berrie & Co.*,
   886 F.2d 931 (7ᵗʰ Cir. 1989) ...................................................................... 16

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
   978 F.2d 947 (7ᵗʰ Cir. 1992) ...................................................................... 16

*Tisch Hotels, Inc. v. Americana Inn, Inc.*,
   350 F.2d 609 (7ᵗʰ Cir. 1965) .................................................................. 23, 24

*TMT N. Am., Inc. v. Magic Touch GmbH*,
   124 F.3d 876 (7th Cir. 1997) ...................................................................... 11

*Two Pesos v. Taco Cabana*,
   505 U.S. 763 (U.S. 1992).......................................................................... 18

*Ty, Inc. v. Jones Group*,
   237 F.3d 891 (7ᵗʰ Cir. 2001) ................................... 10, 11, 18, 19, 20, 21, 23, 25

*Ty, Inc. v. Jones Group, Inc.*,
   98 F. Supp. 2d 988 (N.D. Ill. 2000), *aff'd*, 237 F.3d 891 (7ᵗʰ Cir. 2001) ............... 23, 25

*Union Carbide Corp. v. Ever-Ready, Inc.*,
   531 F.2d 366 (7ᵗʰ Cir. 1976) ...................................................................... 20

*Van Auken Co. v. Van Auken Steam Specialty Co.,*
   57 Ill. App. 240 (Ill. App. Ct. 1894) ................................................. 28

*W.T. Rogers Co., Inc. v. Keene*,
   778 F.2d 334 (7th Cir. 1985) ....................................................... 18

## STATUTES

15 U.S.C. §1052(c) ................................................................ 9, 12, 13

15 U.S.C. §1114 ...................................................................... 11, 18

15 U.S.C. §1115(a) ....................................................................... 12

15 U.S.C. §1125(a) ....................................................... 11, 13, 17, 18

15 U.S.C. §1127 ............................................................................ 16

## OTHER AUTHORITIES

Trademark Manual of Examining Procedure (TMEP) §1206.03(b)(5th ed. 2007) ...................... 13

## TREATISES

1 *McCarthy on Trademarks & Unfair Competition* §9:3 (4th ed. 2005) ...................................... 13

2 *McCarthy on Trademarks & Unfair Competition* §13:2 (4th ed. 2007) .................................... 13

2 *McCarthy on Trademarks & Unfair Competition* §13:10 (4th ed. 2007) .................................. 26

## I.  INTRODUCTION

Over the last several decades, plaintiff Miyano USA invested substantial time, effort, and resources in developing, promoting and selling high quality, precision machine tools (lathes, etc.) and establishing goodwill and a superb reputation in the company's trade name, trademarks, and service marks.  Defendant Tom Miyano was the CEO of plaintiff and its parent company in Japan.  To alleviate corporate financial problems, he voluntarily sought and obtained a corporate reorganization, pursuant to which he surrendered stock, vacated his position with the parent company, and received personal benefits.

Subsequently, not content with the arrangement, Tom Miyano, unbeknownst to plaintiff, determined to usurp essential assets of Miyano USA.  Accordingly, defendants Tom and Steven Miyano formed a directly competitive business under the identical and/or confusingly similar trade name, trademarks, and service marks, which were the registered and long standing common law assets of the company from which he voluntarily parted.  Defendant Tom and Steven Miyano now seek to deny plaintiff of important company assets, namely the registrations for various trademarks and service marks owned by the company, by initiating various cancellation and opposition proceedings in the United States Trademark Trial and Appeal Board.  Plaintiff seeks to remedy defendants conduct via a preliminary injunction barring defendant from using any of plaintiff Miyano USA's trade name, trademarks, or service marks, or any other source indicia that are likely to cause confusion.

Plaintiff Miyano USA owns the federal trademark registrations and applications summarized in the following table.

| Reg. No. / Application No. | Mark | | GOODS/ SERVICES | Relevant Dates |
|---|---|---|---|---|
| Reg. No. 3,328,718 [Exhibit 1] | MIYANO | **MIYANO** (Plain-text Mark) | **Goods** For machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor | Filed: 2/20/07 Published: 8/21/07 Registered: 11/06/07 |
| Reg. No. 1,527,809 [Exhibit 2] | "Stylized MIYANO" |  | **Goods** For machines and machine tools - namely, turning centers, lathes, vertical machining centers and all parts therefor | Filed: 5/2/88 Registered: 3/7/89 §§8 & 15 filed: 7/12/94 (accepted 1/2/95) |
| Reg. No. 1,217,317 [Exhibit 3] | "Triangle Winged M" |  | **Goods** For power lathes, and bar feeders therefor | Filed: 9/21/81 Registered: 11/23/82 §§8 & 9 filed: 11/5/02 (accepted 11/3/03) |
| Application No. 77/176,918 [Exhibit 4] | "Triangle Winged M" |  | **Services** For repair and refurbishing services in connection with machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor | Filed: 5/9/07 Published: 11/20/07 First Use: 01/01/1970 |
| Reg. No. 1,473,925 [Exhibit 5] | "Miyano Motto Mark" | **MIYANO THE WORLD LEADER IN PRECISION** (Plain-text Mark) | **Goods** For machines and machine tools - namely, turning centers, lathes, vertical machining centers and all parts therefor | Filed: 3/19/87 Registered: 01/26/88 §§8 & 9 filed: 3/22/07 (accepted 4/23/07) |

A quick comparison of the parties' trade name, trademarks and service marks is shown in the following table:

| Plaintiff's  Name or Mark | Defendants' Name or Mark |
|---|---|
| Miyano Machinery USA Inc. | MiyanoHitec Machinery, Inc.<br>Tom & Steven Miyano Machinery |
| Miyano | |
| MIYANO | Miyano |

Plaintiff Miyano USA needs preliminary relief for two reasons. First, an important biennial machine tool trade show will occur in Chicago in 2008.  Plaintiff Miyano USA will attend, as it usually does, and the cost of attending is substantial. Defendants also have arranged for a booth at that show, for which they registered using the MIYANO name.  They continue to use that and other identical or confusingly similar marks in connection with directly competitive machine tools, seeking to sell to the very same customers, etc. Plaintiff Miyano USA requests immediate relief restraining defendants from using Miyano USA's name and trademarks (or any colorable imitation thereof). This extends also to defendants' use of the "winged M" – which is the dominant and central component of the mark shown in the table above.

Second, plaintiff Miyano USA needs preliminary relief because defendants' use of Miyano USA's marks and names in their other business activities, including a website, business cards, printed materials, etc. is calculated to confuse consumers and divert business from the established company. Defendants' uses are also injuring the value of Miyano USA's marks.

While defendants maintain a website and are advertising there and otherwise making the industry aware of their new company, they are also in the process of producing their first products (to be imported). It will be very easy for defendants to select different trademarks, logos, and corporate names that do not trade on the substantial goodwill and reputation for extremely high quality that Miyano USA has established. Unless preliminarily enjoined, defendants' actions will result in customer confusion and irreparable damage to Miyano USA's

business, trade name, trademarks, and goodwill which cannot be fully compensated by money damages.

## II.  STATEMENT OF FACTS

The motion is supported by the Declaration of Henry Marchionne, a senior-level, long-standing employee of plaintiff Miyano USA.

### A.  MIYANO - JAPAN

The company known today as Miyano Machinery Inc. ("Miyano-Japan") in Japan was established there during the first half of the 1900s by Mr. Toshimori Miyano. In about 1948, the company developed an automatic lathe for internal use, and it began to export machine tools in 1954.  Since then, Miyano-Japan has enjoyed continued success and is now a world renowned manufacturer of machine tools and precision machining equipment, such as CNC (computer numerically controlled) lathes and turning centers. Marchionne, ¶ 12.

### B.  MIYANO USA'S BUSINESS AND TRADEMARKS

Miyano USA is a wholly-owned subsidiary of Miyano-Japan. It was established in 1975 to meet the need of the growing United States market for machine tools and equipment.  Miyano USA is headquartered in Wood Dale, Illinois and is responsible for all operations within the United States.[1] These operations have included manufacturing, importing, selling and distributing machine tools, coordinating sales, providing parts and service, and providing design services to develop customized automated manufacturing equipment and tools. Miyano USA currently sells and has sold multi-axis machines, CNC lathes, machining centers, and drilling and tapping machines. Marchionne, ¶ 13. Typically, the machines sold by Miyano USA are made by Miyano-Japan. Marchionne, ¶ 13.[2]  Plaintiff's use of its "MIYANO" trade name, trademarks, and service mark is pervasive, as detailed in the Marchionne Declaration.[3]

---

[1] Since 1975, Miyano USA has had several iterations of official names, all based on or beginning with "Miyano Machinery." Since 2004, Miyano USA's official name has been Miyano Machinery USA Inc.  Miyano USA has been using the "Miyano" trade name in the United States since 1975 to promote its various activities and services. Miyano USA has consistently referred to itself as "Miyano." Marchionne, ¶¶ 15-16.

[2] The MIYANO machines have such exceptional quality that, surprisingly, many of them manufactured in the 1980's and 1990's are still in use today.  As a result, there is a large secondary

As reflected in the table above, one of the marks is formed by a letter "M" with wings extending left and right ("the Winged M") superimposed in a triangle, along with the word Miyano. This is referred to as the "Triangle Winged M" trademark or the "M Miyano" trademark. This mark was registered on November 23, 1982.



Miyano USA's
Triangle Winged M

The Triangle Winged M mark and versions incorporating a stylized font have been used for years throughout Miyano USA's business.[4] As a result, the Triangle Winged M mark is well established as symbolizing Miyano USA's goodwill, reputation, products and services. Marchionne, ¶ 31. Miyano USA has expended substantial time, effort and resources over the past 33 years to cause the public to associate its "Miyano" trade name, MIYANO trademark, and Triangle Winged M mark with its goodwill, reputation, products and services.[5] Miyano USA has built up its brand recognition of the "Miyano" trade name, MIYANO trademark and Triangle Winged M mark through its extensive advertising and promotional activities.[6]

---

market for machine tools branded with Miyano USA's trade name and trademarks. Marchionne, ¶ 14. [*See* Exhibit 6 ("Over 200 major machines to be auctioned… and large numbers of miscellaneous machining devices from well-known brands such as… Miyano…"); *see also* Exhibit 7 and Exhibit 8].

[3] For example, it is used on the side of its headquarters building in Wood Dale, on machine tools it sells, on marketing literature, press releases, its website, company checks, other important company documents such as the employee handbook, 3-ring binders used by the company, on packing slips accompanying all company products, on invoices for parts, on envelopes, on envelopes for correspondence, at trade shows, and on shirts worn by employees and service personnel when performing company business including servicing the precision machine tools sold by the company. [*See* Exhibit 9], Marchionne, ¶ 16. The "Miyano" name has become associated with Miyano USA and is a distinguishing symbol of Miyano USA's goodwill and reputation. Marchionne, ¶ 17. As a result, third-parties in the U.S. use the word "Miyano" to refer to Miyano USA. [*See* Exhibits 6, 7, 10, and 11].

[4] It has been used on plaintiff's machine tools, on company checks, other important company documents such as the employee handbook, 3-ring binders used by the company, on packing slips accompanying company products, on envelopes for correspondence, on folders which contain brochures of the company's products, awards, invoices for services, and on shirts worn by employees and service personnel when performing company business including servicing the precision machine tools sold by the company. [*See* Exhibit 9].

[5] Since 1975, Miyano USA has held considerable market share in area of machine tools, holding roughly 4.7% of the market for new and used machines. Marchionne, ¶ 33. Miyano USA's sales in connection with the Miyano name and trademarks generated total revenues that averaged from $18,000,000 to $35,000,000 per year from 1997 to 2006. Marchionne, ¶ 34. On average, services rendered in connection with the "Miyano" name and Triangle Winged M trademark ranged from $200,000 to $540,000 per year over the same 10 year period. Marchionne, ¶ 34.

[6] For example, Miyano USA advertises its products in national magazines such as Production Machining, Manufacturing Engineering, Today's Medical Development, Aerospace Manufacturing & Design, and Today's Machining World. [*See* Exhibit 12], Marchionne, ¶ 35. For 2007, the advertising budget to which the Miyano name and trademarks were used was over $100,000. Marchionne, ¶ 35.

Miyano USA has regularly attended the INTERNATIONAL MANUFACTURING TECHNOLOGY SHOW ("IMTS") since 1976. This show is one of the largest industrial trade shows in the world, with thousands of exhibitors and over 91,000 visitors. The event is held every two years in September at McCormick Place in Chicago.  [Exhibit 14]. At IMTS, Miyano USA sponsors a booth and provides specially designed brochures, which display Miyano USA's trade name and trademarks. [*See* Exhibit 16]. Miyano USA also provides product demonstrations of its latest machine tools. Miyano USA also hands out folders displaying its Triangle Winged M trademark, which contain brochures, flyers, or other information regarding its current product offerings. [Exhibit 15].  Miyano USA spent approximately $400,000 in 2006 exhibiting at the IMTS and plans to increase that amount for IMTS-2008.  Marchionne, ¶ 43.[7]

### C.  DEFENDANTS AND THEIR ACTIVITIES

### (1)  The Individual Defendants

Defendant Tom Miyano was a former stockholder and President of Miyano Japan (1988-2003) and Miyano USA (1984-1992 and 1996-2004). Marchionne, ¶ 10, [Exhibit 17]. He also was, in 2004-05, the Chairman of the board of Miyano USA. Marchionne, ¶ 10. He left Miyano Japan and Miyano USA and sold or surrendered his ownership of the companies in 2006. He joined the defendant company MiyanoHitec Machinery, Inc., putatively in October 2006. [*See* Exhibits 17 and 18]. However, before that, the company was operated by defendant Steve Miyano at Tom Miyano's own residence in Barrington Hills, IL. Hence, while Tom Miyano was an officer of Miyano USA, a competing enterprise was developing in his own home. On information and belief, Tom Miyano is currently the CEO of that competing business,

---

Additionally, Miyano USA operates a website, accessible at http://www.miyano-usa.com/. [Exhibit 13]. Miyano USA advertises via the website and offers product information, news, and the ability to order parts for Miyano machine tools. Marchionne, ¶ 36.

[7] Since 1975, Miyano USA has regularly attended and participated in industry trade shows within the United States, including the International Manufacturing Technology Show ("IMTS"), Westec (Annual Metalworking & Manufacturing Exposition and Conference), Eastec (Advanced Productivity Exposition), and the Precision Machining Technology Show ("PMTS").  These trade shows are attended by customers and other leading machine tool manufactures.  At these trade shows, Miyano USA sponsors booths and provides brochures on which Miyano USA's trade name and trademarks are prominently featured. Miyano USA also provides product demonstrations of its latest machine tools. Marchionne, ¶¶ 38-40. Miyano USA hands out folders displaying its Triangle Winged M trademark; the folders contain brochures or flyers concerning Miyano USA's product offerings. [Exhibit 15].  Between 1997 and 2006, Miyano USA spent on average $198,000 per year on promoting its name and goodwill through attending trade shows and advertising. Marchionne, ¶ 40.

MiyanoHitec Machinery, Inc. [Exhibit 18].

  **(2)** **The Corporate Defendant**

Defendant MiyanoHitec Machinery, Inc. was founded in 2004 by Tom Miyano's son, Steven Miyano. [*See* Exhibit 18]. Prior to becoming MiyanoHitec Machinery, Inc., however, the business operated under a different name, "Hitec Machinery International, Inc." On November 3, 2006, defendants Steven Miyano and/or Tom Miyano officially changed the company name to MiyanoHitec Machinery, Inc. [*See* Exhibit 19, page 3]. Since that date, defendants have prominently used the "Miyano" trade name in connection with its products and services.

  **(3)** **Defendants' Use of Plaintiff's Marks and Name**

Defendants use a Winged M symbol on their website and elsewhere. Defendants' Winged M design is identical to the winged M design component of Miyano USA's Triangle Winged M trademark.



Defendants'
Winged M

Defendants also adopted the trade name "Tom & Steven Miyano Machinery," which they use with the corporate name MiyanoHitec Machinery, Inc. Both of these names literally include the dominant part of plaintiff's trade name "Miyano Machinery." On information and belief, defendants adopted the "Tom & Steven Miyano Machinery" trade name after receiving a cease-and-desist letter from Miyano USA. A copy of defendants' website on March 30, 2007 stated that they "re-established a new company in the name of 'MIYANOHITEC MACHINERY, INC.'" [Exhibit 20]. Soon thereafter, the defendants received a cease-and-desist letter from Miyano USA, dated March 30, 2007, concerning defendants' use of Miyano USA's trade name and the dominant portion of its Triangle Winged M mark. [Exhibit 21]. On April 20, 2007, defendants' website displayed a modified version of the preceding quoted language, instead stating that they "established a new company operating as 'TOM & STEVEN MIYANO MACHINERY' incorporated in the U.S. as MIYANO MACHINERY, INC." [Exhibit 22].

At some point after April 20, 2007, defendants' modified their website to even more prominently display the "Miyano" trade name, "Miyano Machinery" trade name, and Winged M mark. [Exhibit 23]. This version of website is one that is still accessible as of the date of this motion. A copy of the "header" at the top of defendants' website appears as follows:



Defendants operate identical websites at http://miyanohitec.com and http://hitecmachinery.com. [*See* Exhibits 23 and 24]. Defendants have utilized their websites in attempts to usurp the goodwill of the Miyano USA and its parent company, Miyano Machinery Inc., by claiming company history of Miyano Machinery Inc. as their own. [*See* Exhibit 20]. Defendants modified their website at http://miyanohitec.com by removing the company history and adding a disclaimer, only after receiving a receiving a cease-and-desist letter. [*See* Exhibit 22]. Currently, the disclaimer is the smallest font of any text which is displayed [Exhibit 23].

**(4)  Defendants Seek to Compete Directly With Plaintiff**

Defendants currently engage in enterprises which are directly competitive to the business of Miyano USA. Defendants state that they supply various machine tools and CNC production systems ranging including "*Jig Borers*, precision *Gear Shaving machines*, to ordinary *CNC Lathes*, *Machining Centers*, *CNC Grinding machines*." [Exhibit 23]. Defendants list themselves as dealers for YASDA Precision Tools K.K. and Kanzaki Kokyukoki Mfg. Co. Ltd, both of which are machine tool manufacturers based in Japan. [Exhibit 25]. Defendants have indicated that they are distributing and servicing products from other companies based in Japan and India. [*See* Exhibit 18]. Additionally, defendants' website reveals that they are distributing or selling vital components or parts for machine tools such as clutch guide hubs and pistons, torque converter hubs and sleeves, fan drive hubs, and axle tube flanges, cam shafts, etc. [Exhibit 26]. Defendants' website also states that they are designing and manufacturing machine tools, such as CNC lathes and machining centers [Exhibit 27].

Defendants are offering their products and services in the same geographical region and in the same marketplace as Miyano USA. Defendants have their principal place of business less than 50 miles from Miyano USA's headquarters. Both plaintiff Miyano USA and defendants are selling or distributing their products to customers in the United States. Like Miyano USA, defendants are sponsoring booths at trade shows to develop customer relations and establish a presence in the industry. For example, defendants are sponsoring a booth sizable enough to display several machine tools at the upcoming INTERNATIONAL MANUFACTURING TECHNOLOGY SHOW ("IMTS") that will be held in Chicago. Defendants have registered their booth under their

corporate name, securing an alphabetical listing directly prior to Miyano USA. [Exhibit 28, page 12]. Defendants' assigned booth is located in the very same area as Miyano USA's booth. Miyano USA's booth is simply labeled on the trade show floor map as "Miyano," while defendants' booth is labeled as "Miyano Hitec" (with "Miyano" being displayed separate and above the word "Hitec"). [*See* Exhibit 29]. On defendants' exhibitor information webpage, they indicate that their trade name is "Tom & Steven Miyano Machinery." [Exhibit 30]. There is no disclaimer or notice on defendants' exhibitor webpage.

### **(5)** **Defendants' Challenges to Plaintiff's Registrations and Pending Application**

Defendants filed a Petition in the USPTO seeking to cancel plaintiff's registration for Miyano USA's Triangle Winged M trademark (Registration No. 1,217,317). [Exhibit 29]. Defendants have alleged that Miyano USA renewed the Winged M trademark under false pretenses.[8] Defendants also alleged that Miyano USA has not used the Triangle Winged M mark in the last three consecutive years and with the intent to not resume use. [Exhibit 33: Amended Petition for Cancellation, ¶ 7]. The Trademark Trial and Appeal Board has not taken any action with regard to defendants' Motion for Leave.

On November 19, 2007, Defendants also petitioned the USPTO to cancel the registration for Miyano USA's non-stylized MIYANO trademark (Registration No. 3,328,718). [Exhibit 34]. Here, defendants allege that the registration is contrary to 15 U.S.C. §1052(c), as defendants did not give their consent to register the mark. [Exhibit 34, ¶ 10]. Defendants also alleged that registration was fraudulently obtained, because at the time the application was filed, the declarant on behalf of Miyano USA knew defendants were using their surname in commerce and allegedly stated otherwise.[Exhibit 34, ¶ 11-14].

The name "Miyano" is an asset of Miyano USA, as evidenced by Miyano USA's ownership of several United States Trademark registrations of the word "Miyano." These registrations were acquired while defendant Tom Miyano was president of Miyano USA and include: the Triangle Winged M trademark, the stylized MIYANO trademark, the MIYANO motto mark, and an earlier registration of the non-stylized MIYANO trademark (registered

---

[8] In June 2007, Miyano USA, through its attorneys, filed a Motion to Dismiss the petition, and the cancellation proceeding has since been stayed. [Exhibit 32]. Defendants have since filed a Motion for Leave to file an amended petition. [Exhibit 33]. In the amended petition, defendants stated that they have been threatened with legal action based on the Triangle Winged M registration and that they have used their version of the Winged M trademark in commerce since November 3, 2006. [Exhibit 33: Amended Petition for Cancellation, ¶¶ 2 and 4].

March 14, 1989). [Exhibits 2, 3, 5, and 35].  Applications and/or declarations filed with the USPTO for these marks were signed by defendant Tom Miyano and state that the stylized MIYANO, the MIYANO motto mark, and the previous non-stylized MIYANO trademarks were owned by the corporation, Miyano USA (or its predecessors). Marchionne, ¶ 11, [Exhibits 36, 37, and 38].

On December 19, 2007, defendant Tom Miyano filed a Notice of Opposition [Exhibit 39] in the USPTO opposing the federal registration of Miyano USA's service mark application of the Triangle Winged M mark (U.S. Application No.  77/176,918).  Defendant Tom Miyano stated that defendants' Winged M mark resembles the dominant portion of Miyano USA's Triangle Winged M mark [Exhibit 39, ¶¶ 2-4]. He also stated that defendants' Winged M mark is likely to cause confusion with Miyano USA's Triangle Winged M service mark, [*id.,* ¶ 5], and he also alleged that Miyano USA has never used the Triangle Winged M mark in connection with the services listed in the registration.

As set forth in the Declaration of Henry Marchionne, Miyano USA has used the Triangle Winged M in connection with its services. *See* Marchionne, ¶¶ 27-29.  For example, the Triangle Winged M  mark appears on shirts worn by employees and service personnel when performing company business including servicing the machine tools sold by the company service. Invoices for rebuilding services are marked with Triangle Winged M. Marchionne, ¶ 27, [*See* Exhibit 40].

## III. ARGUMENT

A party seeking a preliminary injunction must demonstrate that it has some likelihood of success on the merits, has no adequate remedy at law and will suffer irreparable harm if the injunction is not issued. *Promatek Indus., LTD. v. Equitrac Corp.*, 300 F.3d 808**,** 811 (7th Cir. 2002) (citing *Ty, Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001)).  Once these elements are established, the Court must next consider and balance the irreparable harm the issuance of an injunction will cause the nonmoving party against the irreparable harm to the moving party if relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992); s*ee also Ty*, 237 F.3d at 895.  Finally, the Court must consider whether granting or denying the injunction would cause harm to the public (including non-parties). *Ty*, 237 F.3d at 895.  These factors are weighed using a sliding-scale approach: the strength of one or more factors may

outweigh the remainder, tipping the scales in the moving party's favor. *Id*. In other words, "the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor" and vice versa. *Personeta, Inc. v. Persona Software, Inc.*, 418 F. Supp. 2d 1013, 1015 (N.D. Ill 2005)(citing *Ty*, 237 F.3d at 895). The sliding-scale approach "is subjective and intuitive, it permits the district court to weigh competing considerations and mold appropriate relief." *Ty*, 237 F.3d at 896 (citing *Abbott Labs.*, 971 F.2d at 12).

### A.  THERE IS A STRONG LIKELIHOOD THAT MIYANO USA WILL SUCCEED ON THE MERITS

The Seventh Circuit has stated that the "likelihood of success on the merits" is satisfied if the movant can demonstrate a "better than negligible" chance of success. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988).  To prevail on the merits in an action for trademark infringement under §§ 32 and 43(a) of the Lanham Act (15 U.S.C. §§ 1114 and 1125(a)), the movant must establish (1) that it has a protectible trademark and (2) a likelihood of confusion or that the unauthorized use of the mark is likely to cause confusion, mistake, or deception.  *Ty*, 237 F.3d at 897; *Personeta, Inc.,* 418 F. Supp. 2d at 1016; s*ee also Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977)(citing 15 U.S.C. §1114, "Under the Federal Trademark Statute (the Lanham Act), the test of liability for infringement is whether the infringer's 'use is likely to cause confusion, or to cause mistake, or to deceive…'"). To prevail on its state law and unfair competition claims, Miyano USA need only establish the basis of its federal claim, "because federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent." *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 881 (7th Cir. 1997).  Miyano USA's chance of success on its claims of infringement of its trade name and trademark and unfair competition surpasses the "better than negligible" standard.

### (1)  Miyano USA's Trade Name and Trademarks are Protectible

Miyano USA asserts infringement of its MIYANO trademark, "Miyano" trade name, and Triangle Winged M trademark and service mark and will address the protectibility of each.

#### a.  Miyano USA's MIYANO Trademark is Protectible

Plaintiff has superior rights in its MIYANO trademark, as it registered the mark on the Principal Register and has used the mark in commerce since 1975. [*See* Exhibit 1]. Under the

Lanham Act, "mark registered on the principal register shall be prima facie evidence of the validity of the registered mark... and of the registrant's exclusive right to use the registered mark in commerce…" 15 U.S.C. §1115(a); *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001). Registered trademarks are presumed not to be descriptive or generic, or if descriptive, then they acquired secondary meaning. *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). As the MIYANO trademark registration is presumed valid, it is entitled to protection.

Defendants have filed a Petition for Cancellation seeking to cancel the federal registration of the MIYANO trademark (Registration No. 3,328,718). [Exhibit 34]. Defendants allege that the registration was fraudulently obtained (by a false declaration) and that the MIYANO trademark was obtained contrary to 15 U.S.C. §1052(c).

These attacks on the MIYANO trademark registration are without merit, and defendants carry a heavy burden of demonstrating fraud. "Fraud must be shown by clear and convincing evidence in order to provide a basis for either cancellation [of the trademark] or damages." *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir. 1982). In terms of trademark cancellation, fraud exists "only when there is a deliberate attempt to mislead the Patent Office..." *Id.*

The defense of fraud is baseless in fact, as MIYANO USA's declaration that "to the best of [its] knowledge and belief" no other entity "has the right to use the [MIYANO] mark in commerce" was correct because defendants do not have any rights to use the mark in connection with a competitive business that would likely cause confusion. [*See* Exhibit 41, page 4]. Defendants recently adopted the "Miyano" name in connection with their new, competitive business. Miyano USA, however, has used the MIYANO mark for 33 years and is, therefore, the senior user. [*See* Exhibit 1]. Miyano USA has superior rights in the word "Miyano," as evidenced by the registration for the stylized MIYANO trademark, which was registered in 1989. [Exhibit 2]. At the time of the declaration, any known use of the mark by the defendants was unlawful and infringing of Miyano USA's rights and trade name. Consequently, Miyano USA did not submit a false declaration or "deliberately attempt to mislead the Patent Office."

Defendants also cannot prevail on their claim that the MIYANO trademark was registered contrary to 15 U.S.C. §1052(c)(Section 2(c) of the Lanham Act). Section 1052(c) prevents registration of a trademark on the Principal Register if it "consists of or comprises a

name, portrait, or signature identifying a particular living individual, except by his written consent." According to the *Trademark Manual of Examining Procedure* (TMEP), when the person who signed the application is also the particular individual identified by the mark, then his consent to registration is presumed. TMEP §1206.03(b)(5th ed. 2007)(citing *Alford Mfg. Co. v. Alfred Electronics*, 137 U.S.P.Q. 250 (T.T.A.B. 1963), *aff'd,* 333 F.2d 912 (C.C.P.A. 1964) ("The written consent to the registration of the mark 'ALFORD' by Andrew Alford, the individual, is manifested by the fact that said person executed the application...."); *Ex parte Dallioux*, 83 U.S.P.Q. 262, 263 (Comm'r Pats. 1949) ("By signing the application, the applicant here obviously consents....")). Tom Miyano gave his consent to register the stylized MIYANO, the MIYANO motto, and the prior non-stylize MIYANO trademarks, as he signed the applications and the declarations, which were filed with U.S. Patent and Trademark Office. [Exhibits 36, 37, and 38]. Miyano USA did not have to obtain defendant Tom Miyano's consent to register the MIYANO trademark because the consent to register was already part of the record in the file of a valid registration for a mark comprised in whole or in part of the same name (*i.e.* the prior registration of the stylized MIYANO trademark, *see* Exhibit 36). TMEP §1206.03(b)(5th ed. 2007) (citing *In re McKee Baking Co.*, 218 U.S.P.Q. 287 (T.T.A.B. 1983) (applicant's claim of ownership of a prior registration that includes a consent to register in the record held sufficient for purposes of complying with the consent requirement of §2(c) of the Lanham Act [15 U.S.C. §1052(c)])).

### b.  Miyano USA's "Miyano" Trade Name is Protectible

Miyano USA also has superior rights in its "Miyano" trade name, separate from the related registration. Protection for trade names and trademarks are interrelated, and the use of either may be considered "trademark infringement." 1 *McCarthy on Trademarks & Unfair Competition* §9:3 (4th ed. 2005) Corporate, business and professional organizational names are generally labeled "trade names." *Id.* A "trade name" generally symbolizes the company's reputation or goodwill as a whole. Federal registration is not required to assert §43(a) (15 U.S.C. §1125(a) of the Lanham Act, under which trade names are entitled to additional protection. *McTavish Bob Oil Co. v. Disco Oil Co.*, 345 F. Supp. 1379, 1380 (N.D. Ill. 1972); s*ee also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 857 (7th Cir. 1982)("Section 43(a) has been held to encompass a broad spectrum of marks, symbols, design elements and characters which the public directly associates with the plaintiff or its product.").

The trade name "Miyano" is not primarily merely a surname. It is distinctive and functions to identify and distinguish Miyano USA, its business and its goodwill.  While there is a general "rule" that names are not protected until they acquire secondary meaning, the application of this rule should be guided by the purposes for the rule.  *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004). If the public does not perceive the mark to be a personal name, then showing that the mark has secondary meaning is not required. 2 *McCarthy on Trademarks & Unfair Competition* §13:2 (4th ed. 2007).

Arguably, the public does not perceive the word "Miyano" to be a personal name. Nevertheless, the word "Miyano" has acquired distinctiveness, *i.e.* secondary meaning, as a result of Miyano USA's long use. "A mark acquires secondary meaning when it has been used for so long and so exclusively by one company in association with its products or services in that particular industry that the 'word, term, name, symbol or device' has come to mean that those products or services are the company's trademark." *Platinum Home Mortg. Corp. v. Platinum Fin. Group*, 149 F.3d 722, 728 (7th Cir. 1998).  There are several factors a court may consider in deciding whether secondary meaning has been acquired: (1) the length and manner of use; (2) the sales volume; (3) the amount and manner of advertising; (4) consumer testimony; and (5) consumer surveys. *Int'l Kennel Club of Chicago, Inc.,* 846 F.2d at 1085; s*ee also Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989) (including intentional copying as another factor). The burden at the preliminary injunction stage is slight, and, therefore, evidence of consumer surveys is not necessary to prevail on a preliminary injunction motion. *Int'l Kennel Club of Chicago, Inc.,* 846 F.2d at 1085. The remaining factors demonstrate that the "Miyano" trade name has acquired secondary meaning.

Miyano USA has used the "Miyano" trade name continuously for the last 33 years. Within that period, Miyano USA has exclusively used its trade name in connection with its business. The word "Miyano" is prominently featured on the machine tools that Miyano USA sells and distributes.  The "Miyano" trade name is used on all important company documents and has appeared on the side of the Miyano USA's headquarters in Wood Dale for the last 20 years. Miyano USA has also used the "Miyano" name in connection with federal trademark registrations, such as the MIYANO trademark, stylized MIYANO mark (registered in 1989) and Triangle Winged M trademark (registered in 1982). These registrations are indicative that the word "Miyano" has acquired secondary meaning. *In re Penthouse International, Ltd.*, 565 F.2d

679, 683 (C.C.P.A. 1977)("That the mark has been registered for other products is prima facie evidence that it is capable of recognition as a trademark, and therefore of being regarded as an indication of origin").

Over the last three (3) years, Miyano USA has acquired roughly 4.7% of the market share for machine tools, including new and used machines. Marchionne, ¶ 33. No company has more than 20% of the market. *Id*. Miyano USA's sales in connection with the "Miyano" name generated revenues that averaged from $18 million to $35 million per year between 1997 and 2006. Marchionne, ¶ 34. Over the same ten-year period, services rendered in connection with the "Miyano" name ranged from $200,000 to $540,000 per year. Marchionne, ¶ 34.

Miyano USA has used the "Miyano" name in trade journals, articles, brochures, and at trade shows. Within the last 10 years, Miyano USA has spent on average $198,000 each year on advertising associated with the "Miyano" name. Miyano USA has regularly participated in trade the major trade shows in machine tool industry, such as IMTS, WESTEC, EASTEC, and "PMTS" since 1976. In fact, attending trade shows is one of Miyano USA's primary advertising activities, where Miyano USA's representatives meet with customers and gain valuable recognition within the industry. Marchionne, ¶¶ 37-43.  At these trade shows, the "Miyano" trade name is a prominently displayed in connection with its booths and its goods. [*See* Exhibit 16]. Miyano USA spent approximately $400,000 on participating in the last IMTS and plans on spending approximately $450,000 on participating in the next IMTS in September 2008.  Marchionne, ¶ 43. The goodwill that Miyano USA has obtained through all of these efforts is substantial and representative of the secondary meaning Miyano USA has acquired in this trade name.

The distinctiveness of the Miyano trade name is also reflected in its use by third-parties. Numerous third-parties use the "Miyano" trade name to refer to Miyano USA and its products. For example, a 1989 article in *U.S. News and World Report* refers to Miyano USA as "Miyano."[9]

The intentional copying of the "Miyano" trade name by the defendants is yet another indication of its secondary meaning. Prior to November 2006, the corporate defendant had a different corporate name. Thereafter, defendants changed their name to MiyanoHitec Machinery, Inc. and began prominently using the "Miyano" name in connection with their website. Consequently, the trade name "Miyano" is distinctive and entitled to protection.

---

[9] [Exhibit 10, page 1 ("Miyano, Yamaha and Hitachi are shipping out machine tools, golf carts and computer disk drives [from the United States]."); *see also* Exhibits 6, 8, and 11].

### c.   Miyano USA's Triangle Winged M Mark is Protectible

Miyano USA has superior rights in its Triangle Winged M trademark, as it registered the mark on the Principal Register in 1982. Therefore, the Triangle Winged M mark is entitled to the presumption that it is valid and that Miyano USA has an exclusive right to use the mark in commerce. 15 U.S.C. §1115(a); *CAE, Inc.,* 267 F.3d at 673.  Since at least 1982, Miyano USA has used the Triangle Winged M in many aspects of its business, including branding its machine tools, such as lathes, with the mark and using the mark on packing slips and invoices, and on shirts worn by employees and service personnel. Accordingly, Miyano USA's use of the Triangle Winged M, and its federal and common law rights, were established at least 24 years prior to the adoption of the mark by defendants.

Defendants have filed a Petition for Cancellation seeking to cancel the federal registration of the Triangle Winged M trademark (Registration No. 1,217,317).  In the petition, defendants allege that the Triangle Winged M trademark was abandoned without the intent to resume and that the registration was renewed fraudulently.  Miyano USA asserts that these attacks are without merit, as it never abandoned the mark without the intent to resume and the renewal of the registration was not fraudulent.

Defendants carry a heavy burden of proof and persuasion to demonstrate abandonment. Defendants have the burden of persuasion as to the abandonment defense.[10]

Miyano USA never abandoned the Triangle Winged M trademark. "A mark is deemed to be abandoned when its use has been discontinued with intent not to resume such use." *Sands, Taylor & Wood Co.*, 978 F.2d at 955 (citing 15 U.S.C. §1127; internal quotations omitted). Defendants alleged in their Petition for Cancellation that Miyano USA has not used the Triangle Winged M mark for at least three consecutive years prior to April 2007.  Miyano USA, however, has at least continued to use the Triangle Winged M on invoices for parts, packing slips associated with the sale of machine tools and products, and in its repair and rebuilding services. [Exhibits 9 and 40], Marchionne, ¶¶ 19-30. Some courts have found such uses to be sufficient

---

[10] *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 956 (7th Cir. 1992)(citing *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938 (7th Cir. 1989)). "Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy' or 'strict burden of proof.'" *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1175 (11th Cir. 2002)(citations omitted)(Defendant could not conclusively prove on a preliminary injunction hearing that abandonment had occurred, as continued use of the name on a billboard, business cards and promotional materials was sufficient for the trial court to reject the defense.).

commercial uses of a mark to avoid abandonment.[11] Furthermore, Miyano USA's actions indicate a lack of "intent not to resume." The use of the Triangle Winged M mark in close association with the goods and related repair services, employee handbook, on official company documents, checks, shirts, on folders containing product brochures, and on envelopes at least indicates that Miyano USA had intended to resume using the mark. Marchionne, ¶¶ 19-30. [*See* Exhibit 9].

Defendants also carry a heavy burden as to their defense based on fraud. "Fraud must be shown by clear and convincing evidence in order to provide a basis for either cancellation [of the trademark] or damages." *Money Store,* 689 F.2d at 670. In terms of trademark cancellation, fraud exists "only when there is a deliberate attempt to mislead the Patent Office..." *Id.*

Contrary to defendants' assertion, the facts surrounding plaintiff's renewal of its Triangle Winged M mark do not indicate a deliberate attempt to mislead the USPTO. On the contrary, Miyano USA was selling machines marked with the Triangle Winged M. Additionally, Miyano USA was engaging in rebuilding services, in which machines marked with the Winged M were sold to new customers. Marchionne, ¶¶ 26-27.

Defendants have also filed a Notice of Opposition alleging that Miyano USA has not used the Triangle Winged M in connection with services. On the contrary, Miyano USA has consistently associated the Triangle Winged M with its company business; the Triangle Winged M is prominently displayed on shirts worn by employees and service personnel when performing company business including servicing the machine tools sold by the company, and on company invoices for services. [Exhibits 9 and 40], Marchionne, ¶¶ 29-33.

Additionally, Miyano USA's continued use of the Triangle Winged M mark in close association with its business and in related services, such as repair and refurbishing, has created a trademark/service mark entitled to protection under 15 U.S.C. §1125(a)(§43(a) of the Lanham Act) and the common law. The defendants' use of it would likely cause confusion. A registration of a mark for other products is prima facie evidence that the mark is capable of recognition as a trademark, and therefore of being regarded as an indication of origin. *See In re Penthouse International, Ltd.*, 565 F.2d at 683. The Triangle Winged M mark, with its winged

---

[11] *See Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000)("Exclusive repair and recycling services like those offered by E-One might be sufficient commercial use of the mark to prevent abandonment, but only if E-One used the mark on the repaired or remanufactured goods or 'on documents associated with the goods or their sale.'").

"M" superimposed on a triangle, is not descriptive, but is inherently distinctive as arbitrary or fanciful and, therefore, protectable under 15 U.S.C. §1125(a) without proof of secondary meaning.[12]

### (2) A Likelihood of Confusion Exists

"In either a claim of trademark infringement under §32 [15 U.S.C. §1114] or a claim of unfair competition under §43 [15 U.S.C. §1125], a prima facie case is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2nd Cir. 1986). The Seventh Circuit applies the following seven factors in evaluating whether a likelihood of confusion exists: (1) the similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of complainant's mark; (6) any evidence of actual confusion; and (7) the defendants' intent. *Ty*, 237 F.3d at 897. None of the factors is dispositive, per se, and the proper weight given to each will vary on a case-by-case basis. *Id.* at 898. The Seventh Circuit, however, has considered the three most pertinent factors to be "the similarity of the marks, the intent of the defendant, and evidence of actual confusion." *Id.* (citing *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.,* 873 F.2d 985, 999 (7th Cir. 1989)). In at least one case, the Seventh Circuit affirmed the issuance of a preliminary injunction when only one of the "most important factors" – similarity of the marks – favored the plaintiff. *Ty*, 237 F.3d at 901. In this case, nearly all of the above factors weigh clearly in Miyano USA's favor, in that continued use by defendants' of their trade name, corporate name and Winged M mark will likely cause confusion.

---

[12] *W.T. Rogers Co., Inc. v. Keene*, 778 F.2d 334, 339(7th Cir. 1985)("If a feature is ornamental, fanciful or decorative… the manufacturer can use it as his name, his symbol, [or] his identifying mark. Ornamental, fanciful shapes and patterns are not in short supply, so appropriating one of them to serve as an identifying mark does not take away from any competitor something that he needs in order to make a competing brand.") *See also, Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (U.S. 1992) ("Marks are often classified in categories of generally increasing distinctiveness… they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful…The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection."(internal citations omitted).

### a.  Similarity of the Marks – Defendants Misappropriate the Dominant Portions of Plaintiff's Trade Name, Trademarks, and Service Marks

The trade names and trademarks involved in this case are Miyano USA's Triangle Winged M trademark and service mark, MIYANO trademark and "Miyano" trade name and defendants' Winged M mark, corporate name "MiyanoHitec, Machinery, Inc." and trade name "Tom & Steven Miyano Machinery." In examining the similarity of the marks in question, the court should consider the sound, sight, and overall impression of the marks. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462-63 (7th Cir. 2000).  The Seventh Circuit, however, has stated that "if one word or feature of a composite trade mark is the salient portion of the mark it may be given greater weight than the surrounding portion." *Ty*, 237 F.3d at 898 (citing *Henri's Food Prods. Co., Inc. v. Kraft, Inc.,* 717 F.2d 352, 356 (7th Cir. 1983)).

With regard to Miyano USA's registered Triangle Winged M mark, the "winged M," which is superimposed on the triangle, is the salient or dominant portion of the mark. Defendants' mark is identical to the winged M in Miyano USA's registered mark. (*See below*). Defendants admit that their Winged M mark is likely to cause confusion with Miyano USA's Triangle Winged M mark. [*See* Notice of Opposition, Exhibit 41, ¶¶ 5, 13].



Miyano USA's Winged M | Defendants' mark

When comparing the trademarks, the proper focus should be on the mark entitled to protection. *Ty*, 237 F.3d at 898 ("It seems proper that the magistrate would focus upon the mark entitled to protection… when comparing the two products.")  Defendants' corporate name and trade name purposely incorporate Miyano USA's MIYANO trademark and "Miyano" trade name. The word "Miyano" is the portion entitled to protection and, therefore, the dominant or salient portion of defendants' marks. *See Id.* at 898-99 (the word "Beanie," being the mark entitled to protection, was the salient portion of plaintiff and defendant's marks).

Both the defendants' corporate name (MiyanoHitec Machinery, Inc.) and plaintiff Miyano USA's corporate name (Miyano Machinery USA Inc.) use "Miyano" and "Machinery." The defendants' added the word "Hitec" in between these two common words does not eliminate the overall impression or use of "Miyano." *See Ty*, 237 F.3d at 899 (stating that salient portion

"reduces the importance of the surrounding elements"). Moreover, the terms Miyano and Hitec have appeared separately, for example on the IMTS floor map. [*See* Exhibit 29]. The additional term "Hitec" falls by the wayside. *See Eli Lilly & Co.,* 233 F.3d at 462 (finding the similarity between the names PROZACthorn and HERBROZAC obvious even with the addition of "herb"). Visually, defendants incorporate Miyano USA's trademark and trade name. Verbally, the dominant portions of the MIYANO trademark and trade name and defendants' corporate name are indistinguishable. To the extent one actually notices the slight difference in the name, one would likely conclude (in error) that MiyanoHitec Machinery, Inc. is a parent, subsidiary, or sister company to Miyano Machinery USA Inc.

 Addressing now the trade name, the result is similar. "Miyano" forms the dominant portion of defendants' trade name, "Tom & Steven Miyano Machinery." Again, the word "Miyano" is reinforced or strengthened by the repeated "M" sound and repeated word "Machinery." The addition of the first names does little to alleviate the dominant use of Miyano USA's trade name and MIYANO trademark. *See E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291-92 (9th Cir. 1992) (affirming that GALLO and JOSEPH GALLO are similar); *Nina Ricci, S.A.R.L. v. E.T.F. Enters., Inc.*, 889 F.2d 1070, 1073-74 (Fed. Cir. 1989) (holding that VITTORIO RICCI and NINA RICCI are similar); *John B. Stetson Co. v. Stephen L. Stetson Co.*, 85 F.2d 586, 587 (2nd Cir. 1936) (holding that STEPHEN L. STETSON and STETSON are similar). Moreover, the dominant portion, "Miyano," reduces the importance of these surrounding elements. *Ty*, 237 F.3d at 899.

Consequently, defendants' Winged M mark, trade name, and corporate name are identical or very similar to Miyano USA's registered trademarks and trade name.

> **b. Similarity of the Products – Defendants Offer the Same Products and Services**

The more closely that the products are related, the more likely consumers may be confused. *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 382 (7th Cir. 1976). Plaintiff Miyano USA's non-stylized word mark MIYANO is registered for machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor. Miyano USA's Triangle Winged M mark is registered for lathes, and has been used in close association with Miyano USA's repair and refurbishment services.

Miyano USA and defendants both sell or offer for sale machine tools, such as multi-axis machines, CNC lathes and turning machines.  Additionally, Miyano USA's Triangle Winged M trademark and the defendants' mark are applied to or used in association with identical goods and services.  Both companies offer repair parts and services. Both companies offer design services for developing customized machine tools. *See pages **Error! Reference source not found.Error! Reference source not found.Error! Bookmark not defined.** and**Error! Reference source not found.** 8 supra.*  Consequently, this factor weighs in Miyano USA's favor.

### c.    Area and Manner of Concurrent Use – Defendants Compete in the Same Market and for the Same Customers

The area and manner of concurrent use factor considers whether "there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *Ty*, 237 F.3d at 900 (internal quotes omitted)(citing *Forum Corp. Of North America v. Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir. 1990)).  Both Miyano USA and defendants are competing in the same markets in the same geographical region for the same customers.  Miyano USA and defendants are in the same market, *i.e.* machine tools.  Defendants are operating as dealers or distributors for YASDA Precision Tools K.K. and Kanzaki Kokyukoki Mfg. Co. Ltd, which are manufacturers of machine tools. [Exhibit 25]. Miyano USA and defendants attend trade shows in the United States, and both are attending the same upcoming IMTS trade show in Chicago. [Exhibit 28, page 12]. At the IMTS trade show, both Miyano USA and defendants are located in the same display space.  [Exhibit 29]. Miyano USA and defendants operate websites providing information regarding their products and services. *See pages **Error! Reference source not found.Error! Reference source not found.Error! Bookmark not defined.** and**Error! Reference source not found.** 6-8 supra*.

### d.    Customer's Degree of Care – Customers Will Suffer from Initial Interest Confusion

In determining the degree of care likely to be exercised by customers, the court must consider the potential customers of both parties. *CAE, Inc.*, 267 F.3d at 682. The sophistication of potential costumers may be relevant when assessing the likely degree of care exercised by them. *Id*. at 683.  While machine tools, such as those sold by Miyano USA, typically cost tens-of-thousands of dollars and, therefore, purchasers of them are generally sophisticated, customers

are still likely to be initially confused by defendants' use of Miyano USA's trademarks, service marks, and trade name.

The Seventh Circuit has recognized that the Lanham Act protects against "initial interest confusion," in which customers are lured by similar trademarks to a competitors' business. *See Promatek Indus., LTD.*, 300 F.3d at 812 (citing *Dorr-Oliver, Inc., v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996)). Initial interest confusion is the misappropriation of the trademark owner's goodwill by the infringer, and the duration of confusion is not important. *Id*. The fact that the consumer's initial confusion "as to the source of a product or service is eventually dispelled does not eliminate the trademark infringement." *Forum Corp. of N. Am.,* 903 F.2d at 442 n.2. The Seventh Circuit has affirmed preliminary injunctions based on such initial interest confusion. *See Promatek Indus., LTD.*, 300 F.3d at 812-813.

Initial interest is likely to occur at trade shows. When the defendants' corporate name appears adjacent to Miyano USA's name in trade show listings, maps, etc., such as with the upcoming IMTS trade show, customers attending the trade show are likely to believe that there is sponsorship of the defendants' business. [*See* Exhibit 28, page 12 and Exhibits 29 and 30]. Consumers viewing the IMTS floor map will likely mistake the defendants' booth, labeled as "Miyano Hitec" (with "Miyano" being displayed separate and above the word "Hitec"), as being affiliated with Miyano USA and its booth.  As a result, customers are likely to be lured to defendants' booth.  By definition, this is initial interest confusion.



Miyano USA's Booth    Defendants' Booth

**Excerpts from IMTS Floor Map (Exhibit 29)**

Initial interest confusion is also likely to take place as result of defendants' use of Miyano USA's trademarks and trade name in defendants' website.  The use of Miyano USA's trademarks and trade name by the defendants is likely to lure customers to defendants' website. *See Promatek Indus., LTD.*, 300 F.3d at 812-813. Once at the website, customers' initial confusion is only going to be reinforced by the defendants' prominent use of Miyano USA's Triangle Winged M trademark.  [*See* Exhibit 23].

### e.   Strength of the Marks – Miyano USA's Marks Are Strong

"Strength of the mark" refers to the distinctiveness of a trademark or its tendency to identify the products sold under the mark as emanating from a particular source. *Eli Lilly & Co.,*

233 F.3d at 464.  Miyano USA's MIYANO trademark, trade name, and Triangle Winged M mark are strong, as evidenced by the long period of use by Miyano USA and evidence of secondary meaning. *See supra*. As a result of Miyano USA's extensive use, advertising and promotion, it has developed valuable goodwill in Miyano USA's MIYANO trademark, "Miyano" trade, name and Triangle Winged M mark, which are widely recognized in the industry.  The Triangle Winged M mark is entitled to additional protection as an arbitrary or fanciful design mark. *See Personeta, Inc.*, 418 F. Supp. 2d at 1118. Therefore, Miyano USA's trade name, trademarks and service mark are strong marks, deserving of strong protection.

### f.  Actual Confusion – Evidence of Actual Confusion Is Not Required to Show a Likelihood of Confusion

While evidence of actual confusion is entitled to substantial weight, this evidence is not required to prove that a likelihood of confusion exists. *CAE, Inc.*, 267 F.3d at 685.   The present lack of evidence concerning actual customer confusion does not weigh against Miyano USA. The Seventh Circuit has upheld the issuance of preliminary injunctions when the lower court did not find any evidence of actual confusion. *See Ty*, 237 F.3d at 900-01.

### g.  Defendants' Intent – Defendants Intended to Cause Consumer Confusion

The last likelihood of confusion factor looks to the intent of the defendants to cause customer confusion by adopting similar marks.  The factor of intent is not necessary to find trademark infringement. *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 1001 (N.D. Ill. 2000), *aff'd, Ty, Inc., v. Jones Group Inc.*, 237 F.3d 891 (7th Cir. 2001). On the other hand, "[o]ne can readily infer likelihood of confusion, however, when there is proof of intentional copying because then 'the adoption itself indicates that defendants expected that likelihood to [*sic*, redound to] their profit.'" *Henri's Food Products Co. Inc.*, 717 F.2d at 359 (quoting *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 613 (7th Cir.1965))

The case at bar presents strong evidence that defendants intended to usurp and profit from the goodwill and reputation Miyano USA has developed in its trademarks and trade name. Defendants were obviously familiar with Miyano USA and its rights.  Tom Miyano was a former stockholder and president of Miyano USA.  Defendants adopted the dominant portion of Miyano USA's Triangle Winged M mark and utilize the MIYANO trademark and trade name with full knowledge of their long standing prior use by Miyano USA. Defendants also changed their corporate name to include the name "Miyano" and to make it appear similar to Miyano USA's

corporate name. [*See* Exhibit 23].  Defendants asserted the corporate history of Miyano USA as their own and then stated that they had "re-established a new company in the name of 'MIYANOHITEC MACHINERY, INC.'" [*See* Exhibit 20]. Defendants prominently use the dominant portion of Miyano USA's Triangle Winged M trademark on their website and in close association with the name "Miyano."  After receiving cease-and-desist letters from Miyano USA, defendants continued to use the dominant portion of the Miyano USA's Triangle Winged M and their infringing corporate name "MIYANOHITEC MACHINERY, INC." [*See* Exhibit 23]. Defendants further adopted a trade name which incorporates the phrase "Miyano Machinery." These acts were done to confuse customers and to benefit improperly from the goodwill that Miyano USA has developed.[13] Defendants' use is clearly calculated and malicious.

### B. MIYANO USA WILL SUFFER IRREPARABLE HARM IF IMMEDIATE INJUNCTIVE RELIEF IS NOT GRANTED

"It is well settled that injuries arising from Lanham Act [trademark] violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss." *Promatek Indus. LTD.*, 300 F.3d at 813 (citing *Abbott Labs.*, 971 F.2d at 16). Miyano USA has demonstrated that defendants' use of the MIYANO trademark, "Miyano" trade name, and Triangle Winged M mark is likely to cause confusion.  As a result, Miyano USA has suffered injury to its goodwill and will continue to suffer in the absence of an injunction. This damage will constitute irreparable harm, which is difficult to measure and for which there is no adequate monetary remedy.

Miyano USA will suffer further harm if defendants are able to advertise and attend future trade shows using confusingly similar marks, trade names, and corporate names.  Trade shows represent an important advertising opportunity for Miyano USA. Marchionne, ¶ 37. Defendants' recent adoption of confusingly-similar marks and their intent to attend trade shows, such as the upcoming IMTS trade show in Chicago, will cause consumer confusion and continue to diminish

---

[13] *See Tisch Hotels, Inc.,* 350 F.2d at 613 ("But we think that defendants adopted plaintiffs' name deliberately with a view to obtaining some advantage from plaintiffs' investments in promotion and advertising…A comparison of plaintiffs' and defendants' marks shown above clearly discloses the copying. Defendants knew of plaintiffs' mark and should have taken reasonable precautions to avoid the likelihood of confusion.")

the name recognition, goodwill, and business reputation built by Miyano USA at great expense over the last 33 years.

### C. THE BALANCE OF HARMS TIPS DECIDEDLY IN FAVOR OF MIYANO USA

The balance of harms favors issuing a preliminary injunction which limits defendants from using the "Miyano" trade name, MIYANO trademark and the Triangle Winged M mark.  In balancing the harms, the court must weigh any irreparable harm that would be suffered by defendants if the court issues the preliminary injunction against the harm that would be suffered by Miyano USA if the court does not grant the injunction. *Promatek Indus., LTD.*, 300 F.3d at 811. Miyano USA has demonstrated likely success on the merits and that it will suffer irreparable harm.

Defendants have little investment in "Miyano" and the Winged M. They have no products actually on the market yet, so far as presently known. They are advertising. At this early stage, they can easily choose a different, well-differentiated name and mark. They have truculently refused to do so and have instead attacked plaintiff's registrations, opposed its USPTO-approved application, and charged ahead regardless of any adverse consequences. Their actions show that defendants knowingly and actively seek to usurp the goodwill and reputation associated with Miyano USA's trade name, trademarks and service mark. Defendants recently choose marks that capture the dominant portions of Miyano USA's marks. Defendants were warned that their marks infringed upon the marks held by Miyano USA. [Exhibit 21]. Defendants have no right to use their surname in a fashion which is likely to cause confusion. Additionally, defendants' attempts to limit confusion are ineffective. Consequently, the balance harms favors Miyano USA.

Defendants were forewarned about the possibility that it would be sued by Miyano USA. "In assessing defendant's irreparable harm, the court excludes the burden it voluntarily assumed by proceeding in the face of a known risk." *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d at 992 (citing *Floralife, Inc. v. Floraline Int'l, Inc.*, 633 F. Supp. 108, 114 (N.D.Ill.1985)). Defendants, entering a field already knowingly occupied by another, "have a duty to select a trademark that will avoid confusion." *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d at 992 (quoting *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979)); *see also Ty*, 237 F.3d at 903 (affirming entry of preliminary injunction and quoting *Ideal Indus., Inc. v. Gardner Bender, Inc.*

with approval).  Defendants acknowledged the possibility of legal action in their Amended Petition for Cancellation. [*See* Exhibit 33, ¶ 2]. Nevertheless, defendants have not reversed their infringing conduct.  Any harm alleged by defendants as result of them having to change their name should therefore be discounted.

Defendants' adoption of their Winged M mark, corporate name, and trade name in bad faith weigh in favor of issuing a preliminary injunction. The Seventh Circuit has stated that "[a]bsolute restraint of defendant from using his own name in certain ways may be necessary to prevent confusion in some instances where there is bad faith, for the reason that a man may not use it for the purpose of stealing the goodwill of another's business." *Horlick's Malted Milk Corp. v. Horlick*, 143 F.2d 32, 35 (7th Cir. 1944).

Prior to becoming MiyanoHitec Machinery, Inc., however, defendants' business operated under a different name. Rather than continuing to operate as "Hitec Machinery International, Inc.,"[14] defendants changed the company name to "MiyanoHitec Machinery, Inc."  Thereafter, defendants prominently use the "Miyano" trade name and their infringing version of the Winged M in connection with their business. These actions were done for the purpose of usurping Miyano USA's goodwill and reputation.

There is no absolute right to use one's surname in direct competition. The Seventh Circuit has recognized that the trade name, even if a surname, transfers to the new owners of the business. *Dovenmuehle v. Gilldorn Mortg. Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) ("Absent contrary evidence, a business trade name is presumed to pass to its buyer. This is so even if the trade name happens to be the seller's surname."). "It is well settled that a person who has adopted and used his surname as a trade-mark, or trade-name, may transfer the same with the good will of a business and thereby divest himself of the right to his name in connection with such a business." *Id.* (quoting *Guth v. Guth Chocolate Co.*, 224 F. 932, 933 (4th Cir. 1915)). Defendants, themselves, state that they sold their ownership of Miyano USA and "re-established a new company in the name of 'MIYANOHITEC MACHINERY, INC.'" [*See* Exhibit 20].

Defendants' use of their given names does not mitigate the confusion defendants cause or will likely cause. *See Guth*, 224 F. at 934 ("True, he made use of his full name... but it is the surname which catches the public... In the nature of things confusion was inevitable.").  As a result, defendants should be enjoined from using their surnames in connection with a competing

_____

[14] Plaintiff has no objection to that specific name, standing alone.

business. *Id.* at 933 ("Where one has used his own name as a trade-name, and then parted with it, he may of course be enjoined from using his name in that business."); s*ee also* 2 *McCarthy on Trademarks & Unfair Competition* §13:10 (4th ed. 2007); *Levitt Corp. v. Levitt*, 593 F.2d 463 (2nd Cir. 1979) ("Where… the infringing party has previously sold his business, including use of his name and its goodwill, to the plaintiff, sweeping injunctive relief is more tolerable." Affirming injunction.); *Osgood Heating & Air Conditioning, Inc. v. Osgood,* 2004 U.S. Dist. LEXIS 28817, 75 U.S.P.Q.2D 1432 (W.D. Tex. 2004)  (Defendant sold his business and then went into competition using OSGOOD domain name and telephone number. Preliminary injunction granted).

Defendants' attempts to use disclaimers are inadequate to protect Miyano USA from irreparable harm. Defendants have taken and copied the dominant portion of Miyano USA's Triangle Winged M trademark and have adopted verbatim Miyano USA's trademark and trade name.  Miyano USA's reputation and goodwill should not be usurped by defendants or "rendered forever dependent on the effectiveness of fineprint disclaimers often ignored by consumers." *Int'l Kennel Club of Chicago, Inc.,* 846 F.2d at 1093. Similar to the facts of *Int'l Kennel Club of Chicag*o, the evidence in this case indicates that defendants selectively use disclaimers or minimize their presence. A disclaimer does not appear on defendants' other webpages or on their listing for the upcoming IMTS [Exhibits 25, 26, and 28, page 12]. On defendants' website, the disclaimer is in the smallest font and located at the bottom of the website, which users may have to scroll down to see. [Exhibits 22 and 23]. In other forms of advertising, the disclaimer is buried within the text. [Exhibit 17]. *See Id.* ("Under the circumstances, we refuse to second-guess the court's conclusion that a disclaimer would neither be workable nor effective in eliminating consumer confusion.")

The senior user of a surname is entitled to protection from a newcomer who diverts customers and causes confusion on the part of those who mean to deal with the senior user. *Horlick's Malted Milk Corp.*, 143 F.2d at 36. "Hence stricter limitation upon the use of a surname is required if the newcomer's products are directly competitive than when they are not." *Id*.  Defendants engage in a directly competitive business, selling CNC lathes, grinders, and machine tools.  Defendants would hardly be damaged by stopping use of the infringing marks. Any hardship defendants may suffer in stopping use would be negligible in comparison to the

hardship likely to befall Miyano USA by continuing infringement of plaintiff Miyano USA's marks and trade name.

   **D.  MIYANO USA'S REQUEST FOR A PRELIMINARY INJUNCTION WILL FURTHER THE PUBLIC INTEREST**

   Confusion is contrary to the public interest. A preliminary injunction will serve the public interest because enforcement of the trademark laws will prevent consumer confusion. *Eli Lilly & Co.*, 233 F.3d at 469. "The trademark laws exist not to protect trademarks but… to protect the consuming public from confusion, concomitantly protecting the trademark owner's right to a non-confused public." *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976).


## IV.  CONCLUSION

   Over 100 years ago, an Illinois appellate court decided a case on facts similar to those presented above. In *Van Auken Co. v. Van Auken Steam Specialty Co.*, the defendant, having the same name as the original corporation, sold his stock and left the corporation. 57 Ill. App. 240, 241-242 (Ill. App. Ct. 1894). Thereafter, the defendant started a competing corporation, the name of which included his surname, "Van Auken." *Id.*  The Court of Appeals affirmed the injunction preventing the defendant from using his surname in connection with his new business.  In doing so, the Court held "that outgoing stockholders of a corporation, the most distinguishing part of whose name is the name of such stockholders, have no right to compete in business with that corporation, under a new corporate name so nearly like the first." *Id.* at 242. Similarly, the defendants have *no right* to exploit a corporate name, trade name, and marks so nearly like Miyano USA's name and marks. Moreover, the defendants have *no right* to usurp Miyano USA's name and marks.

   Defendants have engaged in concerted efforts to steal the marks by which Miyano USA is known. Miyano USA asks the Court to end the defendants' efforts to usurp its goodwill and to mislead its customers. For these reasons and those stated above, Miyano USA respectfully requests that its motion for a preliminary injunction be granted in its entirety.

Dated: February 1, 2008

Respectfully submitted,

_____

Edward D. Manzo
Joel Bock
Louis J. Alex
Jason R. Smalley
Attorneys for Plaintiff

Edward D. Manzo   I.D. # 03124728
Joel Bock           I.D. # 00239984
Louis J. Alex       I.D. # 06274458
Jason R. Smalley    I.D. # 06287426
COOK, ALEX, McFARRON, MANZO,
CUMMINGS & MEHLER, LTD.
200 West Adams Street, Suite 2850
Chicago, IL 60606
Phone:  (312) 236-8500
Fax:  (312) 236-8176
emazo@cookalex.com