# CASES AND AUTHORITIES
## UNPUBLISHED IN THE WEST NATIONAL REPORTER SYSTEM AND UNAVAILABLE ON WESTLAW

# TRADEMARK MANUAL
# OF
# EXAMINING PROCEDURE
# (TMEP)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

**Fifth Edition, September 2007**

**Foreword to the Fifth Edition**

The Trademark Manual of Examining Procedure (TMEP) may be downloaded free of charge from the United States Patent and Trademark Office (USPTO) website at www.uspto.gov.

The Manual is published to provide trademark examining attorneys in the USPTO, trademark applicants, and attorneys and representatives for trademark applicants, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. The Manual contains guidelines for Examining Attorneys and materials in the nature of information and interpretation, and outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications.

Trademark Examining Attorneys will be governed by the applicable statutes, the Trademark Rules of Practice, decisions, and Orders and Notices issued by the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, Commissioners, or Deputy Commissioners. Policies stated in this revision supersede any previous policies stated in prior editions, examination guides, or any other statement of Office policy, to the extent that there is any conflict.

Suggestions for improving the form and content of the Manual are always welcome. They should be addressed to:

> Commissioner for Trademarks
> Attention:  Editor, Trademark Manual of Examining Procedure
> P.O. Box 1451
> Alexandria, Virginia  22313-1451

> Mary E. Hannon
> *Editor*

> Lynne G. Beresford
> *Commissioner for Trademarks*

# Chapter 1200
# Substantive Examination of Applications

**1201  Ownership of Mark**

1201.01    Claim of Ownership May Be Based on Use By Related Companies

1201.02    Identifying the Applicant in the Application

1201.02(a)    Identifying the Applicant Properly

1201.02(b)    Application Void if Wrong Party Identified as the Applicant

1201.02(c)    Correcting Errors in How the Applicant Is Identified

1201.02(d)    Operating Divisions

1201.02(e)    Changes in Ownership After Application Is Filed

1201.03    Use by Related Companies

1201.03(a)    Use Solely by Related Company Must be Disclosed

1201.03(b)    No Explanation of Applicant's Control Over Use of Mark by Related Companies Required

1201.03(c)    Wholly Owned Related Companies

1201.03(d)    Common Stockholders, Directors or Officers

1201.03(e)    Sister Corporations

1201.03(f)    License and Franchise Situations

1201.04    Inquiry Regarding Parties Named on Specimens or Elsewhere in Record

1201.05    Acceptable Claim of Ownership Based on Applicant's Own Use

1201.06    Special Situations Pertaining to Ownership

1201.06(a)    Applicant Is Merely Distributor or Importer

# TRADEMARK MANUAL OF EXAMINING PROCEDURE

1201.06(b)    Goods Manufactured in a Country Other than Where Applicant Is Located

1201.07    Related Companies and Likelihood of Confusion

1201.07(a)    "Single Source" – "Unity of Control"

1201.07(b)    Appropriate Action with Respect to Assertion of Unity of Control

1201.07(b)(i)    When Either Applicant or Registrant Owns All of the Other Entity

1201.07(b)(ii)    When Either Applicant or Registrant Owns Substantially All of the Other Entity

1201.07(b)(iii)    When the Record Does Not Support a Presumption of Unity of Control

1201.07(b)(iv)    When the Record Contradicts an Assertion of Unity of Control

**1202    Use of Subject Matter as Trademark**

1202.01    Refusal of Matter Used Solely as a Trade Name

1202.02    Registration of Trade Dress

1202.02(a)    Functionality

1202.02(a)(i)    Statutory Basis for Functionality Refusal

1202.02(a)(ii)    Purpose of Functionality Doctrine

1202.02(a)(iii)    Background and Definitions

1202.02(a)(iii)(A)    Functionality

1202.02(a)(iii)(B)    "*De Jure*" and "*De Facto*" Functionality

1202.02(a)(iv)    Burden of Proof in Functionality Determinations

1202.02(a)(v)    Evidence and Considerations Regarding Functionality Determinations

1202.02(a)(v)(A)    Utility Patents and Design Patents

1202.02(a)(v)(B)    Advertising, Promotional or Explanatory Material in Functionality Determinations

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1202.02(a)(v)(C)    Availability of Alternative Designs in Functionality Determinations

1202.02(a)(v)(D)    Ease or Economy of Manufacture in Functionality Determinations

1202.02(a)(vi)    Aesthetic Functionality

1202.02(a)(vii)    Functionality and Service Marks

1202.02(a)(viii)    Functionality and Non-Traditional Marks

1202.02(b)    Distinctiveness of Trade Dress

1202.02(b)(i)    Distinctiveness and Product Design Trade Dress

1202.02(b)(ii)    Distinctiveness and Product Packaging Trade Dress for Goods or Services

1202.02(c)    Distinctiveness and Functionality are Separate Issues

1202.02(d)    Drawing and Description of Mark in Trade Dress Applications

1202.02(e)    Trade Dress in Intent-to-Use Applications

1202.02(f)    Trade Dress in §44 and §66(a) Applications

1202.03    Refusal on Basis of Ornamentation

1202.03(a)    Commercial Impression

1202.03(b)    Practices of the Trade

1202.03(c)    "Secondary Source"

1202.03(d)    Evidence of Distinctiveness

1202.03(e)    Ornamentation with Respect to Intent-to-Use Applications

1202.03(f)    Ornamentation:  Case References

1202.03(f)(i)    Slogans or Words Used on the Goods

1202.03(f)(ii)    Designs Used on the Goods

1202.03(f)(iii)    Trade Dress on the Containers for the Goods

1202.03(g)    Ornamentation Cases and Acquired Distinctiveness

1202.04    Informational Matter

1202.05   Color as a Mark

1202.05(a)   Color Marks Never Inherently Distinctive

1202.05(b)   Functional Color Marks Not Registrable

1202.05(c)   Color as a Separable Element

1202.05(d)   Drawings of Color Marks Required

1202.05(d)(i)   Drawings of Color Marks in Trademark Applications

1202.05(d)(ii)   Drawings of Color Marks in Service Mark Applications

1202.05(d)(iii)   Drawings for Marks Including Both Color and Words or Design

1202.05(e)   Written Explanation of a Color Mark

1202.05(f)   Specimens for Color Marks

1202.05(g)   Special Considerations for Service Mark Applications

1202.05(h)   Applications for Color Marks Based on Intent-to-Use

1202.05(i)   Applications for Color Marks Based on §44 or §66(a)

1202.06   Goods in Trade

1202.06(a)   Goods Must Have Utility to Others

1202.06(b)   Registration Must Be Refused if Trademark Not Used on Goods in Trade

1202.06(c)   "Goods in Trade" in Intent-to-Use Applications

1202.07   Marks That Identify Columns or Sections of Publications

1202.07(a)   Marks That Identify Columns or Sections of Printed Publications

1202.07(a)(i)   Syndicated Columns and Sections

1202.07(a)(ii)   Non-Syndicated Columns and Sections

1202.07(a)(iii)   Marks That Identify Columns and Sections of Printed Publications in Intent-to-Use Applications

1202.07(b)   Marks That Identify Columns and Sections of Online Publications

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1202.08   Title of a Single Creative Work

   1202.08(a)     What Constitutes a Single Creative Work

   1202.08(b)     What Does Not Constitute a Single Creative Work

   1202.08(c)     Complete Title of the Work – Evidence of a Series

   1202.08(d)     Portion of a Title of the Work

      1202.08(d)(i)     Mark Must Create a Separate Commercial Impression

      1202.08(d)(ii)     Establishing a Series When the Mark is a Portion of the Title

      1202.08(d)(iii)     Evidence that the Portion of the Title is Promoted or Recognized as a Mark

   1202.08(e)     Identification of Goods/Services

   1202.08(f)     Title of a Single Work in an Intent-to-Use Application

1202.09   Names of Artists and Authors

   1202.09(a)     Names And Pseudonyms of Authors and Performing Artists

      1202.09(a)(i)     Author or Performer's Name – Evidence of a Series

      1202.09(a)(ii)     Evidence that the Name is a Source Identifier

         1202.09(a)(ii)(A)     Promotion and Recognition of the Name

         1202.09(a)(ii)(B)     Control over the Nature and Quality of the Goods

      1202.09(a)(iii)     Names of Authors and Performing Artists in Intent-to-Use Applications

   1202.09(b)     Names of Artists Used on Original Works of Art

1202.10   Names and Designs of Characters in Creative Works

1202.11   Background Designs and Shapes

1202.12   Varietal and Cultivar Names (Examination of Applications for Seeds and Plants)

1202.13   Scent, Fragrance or Flavor

**TRADEMARK MANUAL OF EXAMINING PROCEDURE**

1202.14    Holograms

1202.15    Sound Marks

1202.16    Model or Grade Designations

**1203    Refusal on Basis of Immoral or Scandalous Matter; Deceptive Matter; Matter which May Disparage, Falsely Suggest a Connection, or Bring into Contempt or Disrepute**

1203.01    Immoral or Scandalous Matter

1203.02    Deceptive Matter

1203.02(a)    Distinction between Marks Comprising Deceptive Matter (§2(a)) and Deceptively Misdescriptive Marks (§2(e)(1))

1203.02(b)    Deceptive Matter:  Case References

1203.03    Matter which May Disparage, Falsely Suggest a Connection, or Bring into Contempt or Disrepute

1203.03(a)    "Persons" Defined

1203.03(b)    "National Symbols" Defined

1203.03(c)    Disparagement, Bringing into Contempt and Bringing into Disrepute

1203.03(d)    Disparagement, Bringing into Contempt and Bringing into Disrepute:  Case References

1203.03(e)    False Suggestion of a Connection

1203.03(f)    False Suggestion of a Connection:  Case References

**1204    Refusal on Basis of Flag, Coat of Arms or Other Insignia of United States, State or Municipality, or Foreign Nation**

**1205    Refusal on Basis of Matter Protected by Statute or Convention**

1205.01    Statutory Protection

1205.01(a)    Examination Procedures for Marks Comprising a Red Crystal or Red Crescent on a White Background; or the Phrases "Red Crescent" or "Third Protocol Emblem"

1205.01(a)(i)    First Use After December 8, 2005

1205.01(a)(ii)    First Use On or Before December 8, 2005 – Grandfather Clause

# SUBSTANTIVE EXAMINATION OF APPLICATIONS

1205.01(a)(iii)    Date of First Use Not Specified

1205.01(a)(iv)    Nature of the Mark

1205.01(a)(v)    Amendments to Disclaim, Delete, or Amend the Unregistrable Symbol or Designation

1205.01(a)(vi)    Parties Authorized to use the Red Crescent and Third Protocol Emblem

1205.02    Article 6*ter* of the Paris Convention

**1206    Refusal on Basis of Name, Portrait or Signature of Particular Living Individual or Deceased U.S. President Without Consent**

1206.01    Name, Portrait or Signature

1206.02    Particular Living Individual or Deceased U.S. President

1206.03    Consent of Individual or President's Widow Required

1206.03(a)    Consent Must Be Written Consent to Registration

1206.03(b)    Implicit Consent

**1207    Refusal on Basis of Likelihood of Confusion, Mistake or Deception**

1207.01    Likelihood of Confusion

1207.01(a)    Relatedness of the Goods or Services

1207.01(a)(i)    Goods or Services Need Not Be Identical

1207.01(a)(ii)    Goods May Be Related to Services

1207.01(a)(ii)(A) Food and Beverage Products Versus Restaurant Services

1207.01(a)(iii)    Reliance on Identification of Goods/Services in Registration and Application

1207.01(a)(iv)    No "Per Se" Rule

1207.01(a)(v)    Expansion of Trade Doctrine

1207.01(a)(vi)    Evidence Showing Relatedness of Goods or Services

1207.01(b)    Similarity of the Marks

1207.01(b)(i)    Word Marks

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

1207.01(b)(ii)     Similarity In Appearance

1207.01(b)(iii)    Comparing Marks That Contain Additional Matter

1207.01(b)(iv)     Similarity in Sound – Phonetic Equivalents

1207.01(b)(v)      Similarity in Meaning

1207.01(b)(vi)     Doctrine of Foreign Equivalents

1207.01(b)(vii)    Transposition of Terms

1207.01(b)(viii)   Marks Consisting of Multiple Words

1207.01(b)(ix)     Weak or Descriptive Marks

1207.01(b)(x)      Parody Marks

1207.01(c)    Design Marks

1207.01(c)(i)      Legal Equivalents – Comparison of Words and Their Equivalent Designs

1207.01(c)(ii)     Composite Marks Consisting of Both Words and Designs

1207.01(c)(iii)    Comparison of Standard Character Marks and Special Form Marks

1207.01(c)(iv)     Matter Depicted in Broken Lines

1207.01(d)    Miscellaneous Considerations

1207.01(d)(i)      Doubt Resolved in Favor of Registrant

1207.01(d)(ii)     Absence of Actual Confusion

1207.01(d)(iii)    Third-Party Registrations and Evidence of Third-Party Use

1207.01(d)(iv)     Collateral Attack on Registration Improper in *Ex Parte* Proceeding

1207.01(d)(v)      Classification of Goods/Services

1207.01(d)(vi)     Prior Decisions of Examining Attorneys

1207.01(d)(vii)    Sophisticated Purchasers

1207.01(d)(viii)   Consent Agreements

1207.01(d)(ix)     Fame of Mark

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1207.01(d)(x)    Conflicting Marks Owned by Different Parties

1207.02    Marks That Are Likely to Deceive

1207.03    Marks Previously Used in United States but Not Registered

1207.04    Concurrent Use Registration

1207.04(a)    Concurrent Use – In General

1207.04(b)    Filing Basis of Application Seeking Concurrent Use

1207.04(c)    Basis for Concurrent Use Registration

1207.04(d)    Determining Eligibility for Concurrent Use

1207.04(d)(i)    Requirements for All Concurrent Use Applications

1207.04(e)    Applications Subject to Concurrent Use Proceeding Before the Trademark Trial and Appeal Board

1207.04(e)(i)    Preparing the File for Publication

1207.04(f)    Application for Concurrent Use Registration Pursuant to Court Decree

1207.04(f)(i)    Preparing the File for Publication

**1208    Conflicting Marks in Pending Applications**

1208.01    Priority for Publication or Issue Based on Effective Filing Date

1208.01(a)    What Constitutes Conflict Between Pending Applications

1208.01(b)    What Constitutes Effective Filing Date

1208.01(c)    Change in Effective Filing Date During Examination

1208.01(d)    Examination of Conflicting Marks After Reinstatement or Revival

1208.02    Conflicting Applications Examination Procedure

1208.02(a)    Examination of Application with Earliest Effective Filing Date

1208.02(b)    Action on Later-Filed Application:  Giving Notice of the Earlier Application or Applications

1208.02(c)    Suspension of Later-Filed Application

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

1208.02(d)    Action on Later-Filed Application upon Disposition of the Earlier Application or Applications

1208.02(e)    Applicant's Argument on Issues of Conflict

1208.02(f)    Conflicting Mark Mistakenly Published or Approved for Issuance on the Supplemental Register

1208.03    Procedure Relating to Possibility of Interference

1208.03(a)    Procedures on Request for Interference

1208.03(b)    Decision on Request for Interference

1208.03(c)    Procedure When Interference Is to be Declared

**1209    Refusal on Basis of Descriptiveness**

1209.01    Distinctiveness/Descriptiveness Continuum

1209.01(a)    Fanciful, Arbitrary and Suggestive Marks

1209.01(b)    Merely Descriptive Marks

1209.01(c)    Generic Terms

1209.01(c)(i)    Test

1209.01(c)(ii)    Terminology

1209.01(c)(iii)    Generic Matter:  Case References

1209.02    Procedure for Descriptiveness and/or Genericness Refusal

1209.03    Considerations Relevant to Determination of Descriptiveness

1209.03(a)    Third-Party Registrations

1209.03(b)    No Dictionary Listing

1209.03(c)    First or Only User

1209.03(d)    Combined Terms

1209.03(e)    More Than One Meaning

1209.03(f)    Picture or Illustration

1209.03(g)    Foreign Equivalents/Dead or Obscure Languages

1209.03(h)    Incongruity

1209.03(i)    Intended Users

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1209.03(j)   Phonetic Equivalent

1209.03(k)   Laudatory Terms

1209.03(l)   Telephone Numbers

1209.03(m)   Domain Names

1209.03(n)   "America" or "American"

1209.03(o)   "National" or "International"

1209.03(p)   Function or Purpose

1209.03(q)   Source or Provider of Goods or Services

1209.03(r)   Retail Store and Distributorship Services

1209.03(s)   Slogans

1209.03(t)   Repetition of Descriptive Term

1209.03(u)   Punctuation

1209.04   Deceptively Misdescriptive Marks

**1210   Refusal on Basis of Geographic Significance**

1210.01   Elements

1210.01(a)   Geographically Descriptive Marks – Test

1210.01(b)   Geographically Deceptively Misdescriptive Marks – Test

1210.01(c)   Geographically Deceptive Marks – Test

1210.02   Primarily Geographic Significance

1210.02(a)   Geographic Locations

1210.02(b)   Primary Significance

1210.02(b)(i)   Other Meanings

1210.02(b)(i)(A)   Surname Significance

1210.02(b)(ii)   More Than One Geographic Location With Same Name

1210.02(b)(iii)   Non-Geographic Characteristics of Goods or Services

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

1210.02(b)(iv)    "America" or "American" and Similar Terms in Marks

1210.02(c)    Geographic Terms Combined With Additional Matter

1210.02(c)(i)    Two Geographic Terms Combined

1210.02(c)(ii)    Geographic Terms Combined With Descriptive or Generic Matter

1210.02(c)(iii)    Arbitrary, Fanciful or Suggestive Composites

1210.03    Geographic Origin of the Goods or Services

1210.04    Goods/Place or Services/Place Association

1210.04(a)    Establishing Goods/Place Association

1210.04(b)    Establishing Services/Place Association

1210.04(c)    Obscure or Remote Geographic Marks

1210.04(d)    Arbitrary Use of Geographic Terms

1210.05    Geographically Deceptive Marks

1210.05(a)    Basis for Refusal

1210.05(b)    Materiality of Deception

1210.05(b)(i)    Materiality of Deception In Cases Involving Goods

1210.05(b)(ii)    Materiality of Deception In Cases Involving Services

1210.06    Procedure for Examining Geographic Composite Marks

1210.06(a)    Marks That Include Primarily Geographically Descriptive Terms Combined With Additional Matter

1210.06(b)    Marks That Include Primarily Geographically Deceptively Misdescriptive and Deceptive Terms Combined With Additional Matter

1210.07    Supplemental Register and Section 2(f)

1210.07(a)    Registrability of Geographic Terms on the Supplemental Register

1210.07(b)    Registrability of Geographic Terms Under Section 2(f)

1210.08    Geographical Indications Used on Wines and Spirits

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1210.08(a)    Geographical Indications Used on Wines and Spirits That Do Not Originate in the Named Place

1210.08(b)    Geographical Indications Used on Wines and Spirits That Originate in the Named Place

1210.08(c)    Geographical Indications That Are Generic for Wines and Spirits

1210.09    Geographic Certification Marks

**1211    Refusal on Basis of Surname**

1211.01    "Primarily Merely a Surname"

1211.01(a)    Non-Surname Significance

1211.01(a)(i)    Ordinary Language Meaning

1211.01(a)(ii)    Phonetic Equivalent of Term With Ordinary Language Meaning

1211.01(a)(iii)    Geographical Significance

1211.01(a)(iv)    Historical Place or Person

1211.01(a)(v)    Rare Surnames

1211.01(a)(vi)    "Look And Feel" of a Surname

1211.01(a)(vii)    Doctrine of Foreign Equivalents

1211.01(b)    Surname Combined with Additional Matter

1211.01(b)(i)    Double Surnames

1211.01(b)(ii)    Stylization or Design Elements

1211.01(b)(iii)    Surname Combined with Initials

1211.01(b)(iv)    Surname Combined with Title

1211.01(b)(v)    Surname in Plural or Possessive Form

1211.01(b)(vi)    Surname Combined with Wording

1211.01(b)(vii)    Surname Combined With Domain Name

1211.02    Evidence Relating to Surname Refusal

1211.02(a)    Evidentiary Burden – Generally

1211.02(b)    Evidentiary Considerations

**TRADEMARK MANUAL OF EXAMINING PROCEDURE**

1211.02(b)(i)        Telephone Directory Listings

1211.02(b)(ii)       LEXIS-NEXIS® Research Database Evidence

1211.02(b)(iii)      Surname of Person Associated with Applicant

1211.02(b)(iv)       Specimens Confirming Surname Significance of Term

1211.02(b)(v)        Negative Dictionary Evidence

1211.02(b)(vi)       Evidence of Fame of a Mark

**1212  Acquired Distinctiveness or Secondary Meaning**

1212.01   General Evidentiary Matters

1212.02   General Procedural Matters

1212.02(a)   Situations in which a Claim of Distinctiveness under §2(f) Is Appropriate

1212.02(b)   Section 2(f) Claim Is, for Procedural Purposes, a Concession that Matter Is Not Inherently Distinctive

1212.02(c)   Claiming §2(f) Distinctiveness in the Alternative

1212.02(d)   Unnecessary §2(f) Claims

1212.02(e)   Disclaimers in Applications Claiming Distinctiveness under §2(f)

1212.02(f)   Section 2(f) Claim in Part (as to a Portion of the Mark)

1212.02(g)   Examining Attorney's Role in Suggesting §2(f) or Appropriate Kind/Amount of Evidence

1212.02(h)   Non-Final and Final Refusals

1212.02(i)   Section 2(f) Claim with Respect to Incapable Matter

1212.03   Evidence of Distinctiveness Under §2(f)

1212.04   Prior Registrations as Proof of Distinctiveness

1212.04(a)   Sufficiency of Claim vis-à-vis Nature of the Mark

1212.04(b)   "Same Mark"

1212.04(c)   Relatedness of Goods or Services

1212.04(d)   Registration Must Be in Full Force and Effect and on Principal Register or under Act of 1905

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1212.04(e)    Form of §2(f) Claim Based on Ownership of Prior Registrations

1212.05    Five Years of Use as Proof of Distinctiveness

1212.05(a)    Sufficiency of Claim Vis-à-Vis Nature of the Mark

1212.05(b)    "Substantially Exclusive and Continuous"

1212.05(c)    Use "as a Mark"

1212.05(d)    Form of the Proof of Five Years' Use

1212.06    Establishing Distinctiveness by Actual Evidence

1212.06(a)    Long Use of the Mark

1212.06(b)    Advertising Expenditures

1212.06(c)    Affidavits or Declarations Asserting Recognition of Mark as Source Indicator

1212.06(d)    Survey Evidence, Market Research and Consumer Reaction Studies

1212.06(e)    Miscellaneous Considerations Regarding Evidence Submitted to Establish Distinctiveness

1212.06(e)(i)    First or Only User

1212.06(e)(ii)    State Trademark Registrations

1212.06(e)(iii)    Design Patent

1212.06(e)(iv)    Acquiescence to Demands of Competitors

1212.07    Form of Application Asserting Distinctiveness

1212.08    Section 44 and §66(a) Applications and Distinctiveness

1212.09    Intent-to-Use Applications and Distinctiveness

1212.09(a)    Section 2(f) Claim Requires Prior Use

1212.09(b)    Claim of §2(f) "in Part" in §1(b) Application

1212.10    Printing "§2(f)" Notations

**1213    Disclaimer of Elements in Marks**

1213.01    History of Disclaimer Practice

1213.01(a)    Discretion in Requiring Disclaimer

1213.01(b)    Refusal to Register Because of Failure to Disclaim

1213.01(c)    Voluntary Disclaimer of Registrable or Unregistrable Matter

1213.02   "Composite" Marks

1213.03   Disclaimer of Unregistrable Components of Marks

1213.03(a)    "Unregistrable Components" in General

1213.03(b)    Generic Matter and Matter Which Does Not Function as a Mark

1213.03(c)    Pictorial Representations of Descriptive Matter

1213.03(d)    Entity Designations

1213.04   Trade Names

1213.05   "Unitary" Marks

1213.05(a)    Compound Word Marks

1213.05(a)(i)      Telescoped Words

1213.05(a)(ii)     Compound Words Formed with Hyphen or Other Punctuation

1213.05(b)    Slogans

1213.05(c)    "Double Entendre"

1213.05(d)    Incongruity

1213.05(e)    Sound Patterns

1213.05(f)    Display of Mark

1213.06   Entire Mark May Not Be Disclaimed

1213.07   Removal Rather than Disclaimer

1213.08   Form of Disclaimers

1213.08(a)    Wording of Disclaimer

1213.08(a)(i)      Standardized Printing Format for Disclaimer

1213.08(a)(ii)     Unacceptable Wording for Disclaimer

1213.08(b)    Disclaimer of Unregistrable Matter in Its Entirety

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

1213.08(c)    Disclaimer of Misspelled Words

1213.08(d)    Disclaimer of Non-English Words

1213.09    Mark of Another May Not Be Registered with Disclaimer

1213.10    Disclaimer in Relation to Likelihood of Confusion

1213.11    Acquiring Rights in Disclaimed Matter

**1214    "Phantom" Elements in Marks**

1214.01    Single Application May Seek Registration of Only One Mark

1214.02    Agreement of Mark on Drawing With Mark on Specimens or Foreign Registration

1214.03    "Phantom Marks" in Intent-to-Use Applications

1214.04    "Phantom Marks" in §44 and §66(a) Applications

**1215    Marks Composed, in Whole or in Part, of Domain Names**

1215.01    Background

1215.02    Use as a Mark

1215.02(a)    Use Applications

1215.02(b)    Advertising One's Own Products or Services on the Internet is not a Service

1215.02(c)    Agreement of Mark on Drawing with Mark on Specimens of Use

1215.02(d)    Marks Comprised Solely of TLDs for Domain Name Registry Services

1215.02(e)    Intent-to-Use Applications

1215.02(f)    Section 44 and §66(a) Applications

1215.03    Surnames

1215.04    Descriptiveness

1215.05    Generic Refusals

1215.06    Marks Containing Geographical Matter

1215.07    Disclaimers

1215.08    Material Alteration

1215.08(a)    Adding or Deleting TLDs in Domain Name Marks

1215.08(b)    Adding or Deleting TLDs in Other Marks

1215.09    Likelihood of Confusion

1215.10    Marks Containing the Phonetic Equivalent of a Top-Level Domain

**1216    Effect of Applicant's Prior Registrations**

1216.01    Decisions Involving Prior Registrations Not Controlling

1216.02    Effect of "Incontestability" in *Ex Parte* Examination

**1217    Res Judicata, Collateral Estoppel and Stare Decisis**

**1201          Ownership of Mark**

Under §1(a)(1) of the Trademark Act, 15 U.S.C. §1051(a)(1), an application based on use in commerce must be filed by the owner of the mark. A §1(a) application must include a verified statement that the applicant believes it is the owner of the mark sought to be registered. 15 U.S.C. §1051(a)(3)(A); 37 C.F.R. §2.33(b)(1). An application that is not filed by the owner is void. *See* TMEP §1201.02(b).

An application under §1(b) or §44 of the Act, 15 U.S.C. §1051(b) or §1126, must be filed by a party who is entitled to use the mark in commerce, and must include a verified statement that the applicant is entitled to use the mark in commerce and that the applicant has a bona fide intention to use the mark in commerce as of the application filing date. 15 U.S.C. §§1051(b)(3), 1126(d)(2) and 1126(e); 37 C.F.R. §2.33(b)(2). When the person designated as the applicant is not the person with a bona fide intention to use the mark in commerce, the application is void. *See* TMEP §1201.02(b).

In a §1(b) application, before the mark can be registered, the applicant must file an amendment to allege use under 15 U.S.C. §1051(c) (*see* TMEP §§1104 *et seq.*) or a statement of use under 15 U.S.C. §1051(d) (*see* TMEP §§1109 *et seq.*) that states that the applicant is the owner of the mark. 15 U.S.C. §§1051(b)(3)(A) and (B); 37 C.F.R. §§2.76(b)(1) and 2.88(b)(1).

In a §44 application, the applicant must be the owner of the foreign application or registration on which the United States application is based as of the filing date of the United States application. *See* TMEP §1005.

An application under §66(a) of the Trademark Act (*i.e.,* a request for extension of protection of an international registration to the United States under the Madrid Protocol), must be filed by the holder of the international

TRADEMARK MANUAL OF EXAMINING PROCEDURE

Under Article 6*ter,* each member country shall communicate the list of emblems, official signs and hallmarks that it wishes to protect, and all subsequent modifications of its list, to the IB, who will transmit the communications to the other member countries.  Within twelve months from receipt of the notification, a member country may transmit its objections, through the IB.

When the USPTO receives requests for protection under Article 6*ter* from the IB, they are assigned serial numbers in the "89" series code, *i.e.*, serial numbers beginning with the digits "89," and are sometimes referred to as "non-registrations."  The USPTO searches its records for conflicting marks, but the requests are not subjected to a full examination by an examining attorney or published for opposition.  Information about the designation is entered in the Office's search records, and should be discovered in an examining attorney's search.

*Refusal Of Marks Because of an Article 6ter Designation*

The Paris Convention requires that the United States refuse to register designations that have been deposited pursuant to Article 6*ter* and to which the United States has transmitted no objections.  Depending on the nature and use of the mark, §§2(a) and 2(b) of the Trademark Act, 15 U.S.C. §§1052(a) and 1052(b), may bar registration of these marks.  A refusal under §2(d) of the Trademark Act is ***not*** appropriate.  The issue is not whether the marks are confusingly similar, but whether registration of the mark would violate §§2(a) or 2(b) of the Trademark Act.

For example, it may be appropriate for the examining attorney to refuse registration under §2(a) of the Act on the ground that the mark comprises matter that may falsely suggest a connection with a national symbol of a member country or an international intergovernmental organization.  *See* TMEP §1203.03(e).  Other §2(a) bases for refusal could also apply.  *See* TMEP §§1203 *et seq.*  It may be appropriate to refuse registration under §2(b) of the Act if the proposed mark comprises a flag, coat of arms or other similar insignia.  *See* TMEP §1204.  In some instances, it may be appropriate to refuse registration under §§1, 2 (preamble) and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052 and 1127, on the ground that the subject matter would not be perceived as a trademark.  (For service mark applications, §3 of the Act, 15 U.S.C. §1053, should also be cited as a basis for refusal.)

**1206        Refusal on Basis of Name, Portrait or Signature of Particular Living Individual or Deceased U.S. President Without Consent**

*Extract from 15 U.S.C. §1052.  No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ... (c) Consists of or comprises a name, portrait, or signature identifying a particular*

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

*living individual except by his written consent, or the name, signature, or portrait of a deceased President of the United States during the life of his widow, if any, except by the written consent of the widow.*

Section 2(c) of the Trademark Act, 15 U.S.C. §1052(c), bars the registration of a mark that consists of or comprises (whether consisting solely of, or having incorporated in the mark) a name, portrait or signature that identifies a particular living individual, or a deceased United States president during the life of his widow, except by the written consent of the individual or the president's widow.

Section 2(c) absolutely bars the registration of these marks on either the Principal Register or the Supplemental Register.

The purpose of requiring the consent of a living individual to the registration of his or her name, signature or portrait is to protect rights of privacy and publicity that living persons have in the designations that identify them. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co., Inc.*, 703 F.2d 1372, 1376, 217 USPQ 505, 509 (Fed. Cir. 1983), *aff'g* 213 USPQ 594 (TTAB 1982); *Canovas v. Venezia 80 S.R.L.,* 220 USPQ 660, 661 (TTAB 1983). *See* TMEP §1203.03 for a discussion of the right to control the use of one's identity, which underlies part of §2(a) as well as §2(c).

*See* TMEP §813 regarding when it is necessary for an examining attorney to inquire of the applicant as to whether a name, signature or portrait in a mark identifies a particular living individual, and regarding the entry of pertinent statements in the record for printing in the *Official Gazette* and on a registration certificate.

## 1206.01        Name, Portrait or Signature

Section 2(c) explicitly pertains to any name, portrait or signature that identifies a particular living individual, or a deceased president of the United States during the life of the president's widow.

To identify a particular living individual, a name does not have to be the person's full name. *See Ross v. Analytical Technology Inc.*, 51 USPQ2d 1269 (TTAB 1999) (registration of opposer's surname without consent prohibited by §2(c), where the record showed that because of opposer's reputation as an inventor in the field of electrochemical analysis, the relevant public would associate the goods so marked with opposer); *In re Sauer,* 27 USPQ2d 1073 (TTAB 1993), *aff'd per curiam,* 26 F.3d 140 (Fed. Cir. 1994) (BO, the recognized nickname of professional football and baseball star Bo Jackson, found to be so well known by the general public that use of the name BO in connection with sports balls would lead to the assumption that he was in some way associated with the goods or with applicant's business); *In re Steak and Ale Restaurants of America, Inc.*, 185 USPQ 447 (TTAB 1975)

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

(PRINCE CHARLES found to identify a particular living individual whose consent was not of record); *Laub v. Industrial Development Laboratories, Inc.*, 121 USPQ 595 (TTAB 1959) (LAUB, for flowmeters, found to identify the holder of a patent for flowmeters, whose written consent was not of record); *Reed v. Bakers Engineering & Equipment Co.*, 100 USPQ 196, 199 (PTO 1954) (registration of REED REEL OVEN, for ovens, held to be barred by §2(c) without written consent of the designer and builder of the ovens, Paul N. Reed. "'Name' in §2(c) is not restricted to the full name of an individual but refers to any name regardless of whether it is a full name, or a surname or given name, or even a nickname, which identifies a particular living individual..."). *Cf. Société Civile Des Domaines Dourthe Frères v. S.A. Consortium Vinicole De Bordeaux Et De La Gironde*, 6 USPQ2d 1205, 1209 (TTAB 1988) ("Section 2(c) does not apply to surnames except in those cases where a particular individual is known by a surname alone.")

Cases involving portraits include *In re McKee Baking Co.*, 218 USPQ 287 (TTAB 1983) (mark comprising a sign on which the portrait of a young girl appears below the words LITTLE DEBBIE); *In re Masucci*, 179 USPQ 829 (TTAB 1973) (mark comprising name and portrait of a deceased president of the United States, President Eisenhower); *Garden v. Parfumerie Rigaud, Inc.*, 34 USPQ 30 (Comm'r Pats. 1937) (marks comprising name and portrait of Mary Garden).

### 1206.02          Particular Living Individual or Deceased U.S. President

Section 2(c) applies to marks that comprise matter that identify living individuals; it does not apply to marks that comprise matter that identifies deceased persons, except for a deceased president of the United States during the life of the president's widow.  *See McGraw-Edison Co. v. Thomas Edison Life Insurance Co.*, 160 USPQ 685 (TTAB 1969), *vacated on other grounds*, 162 USPQ 372 (N.D. Ill. 1969) (opposition to the registration of THOMAS EDISON dismissed, the Board finding §2(c) inapplicable, as the particular individual whom the name identifies is deceased); *In re Masucci*, 179 USPQ 829 (TTAB 1973) (affirming refusal to register mark consisting of the name EISENHOWER, a portrait of President Dwight D. Eisenhower and the words PRESIDENT EISENHOWER REGISTERED PLATINUM MEDALLION #13, for greeting cards, on the ground that the mark comprises the name, signature or portrait of a deceased United States president without the written consent of his widow, under §2(c)).

The fact that a name appearing in a mark may actually be the name of more than one person does not negate the requirement for a written consent to registration, if the mark identifies, to the relevant public, a particular living individual or deceased United States president whose spouse is living.  *In re Steak and Ale Restaurants of America, Inc.*, 185 USPQ 447 (TTAB 1975) (affirming refusal to register PRINCE CHARLES, for meat, in the absence of consent to register by Prince Charles, a member of the English royal family.

**SUBSTANTIVE EXAMINATION OF APPLICATIONS**

"Even accepting the existence of more than one living 'Prince Charles,' it does not follow that each is not a particular living individual.")

If it appears that a name, portrait or signature in a mark may identify a particular living individual but, in fact, the applicant devised the matter as fanciful, or believes it to be fanciful, a statement to that effect should be placed in the record.  If appropriate, the statement that a name, portrait or signature does not identify a particular living individual will be printed in the *Official Gazette* and on the registration certificate.  *See* TMEP §813.  Additional relevant circumstances should also be explained.  For example, if the matter identifies a certain character in literature, or a deceased historical person, then a statement of these facts in the record may be helpful; however, this information should not be printed in the *Official Gazette* or on a registration certificate.

Although a mark may have been devised to be fanciful or arbitrary and not to identify a particular living individual, it nevertheless may name or otherwise identify one or more living individuals.  Whether consent to registration is required depends on whether the public would recognize and understand the mark as identifying the person.  Therefore, if the person is not generally known, or well known in the field relating to the relevant goods or services, it may be that the mark would not constitute the identification of a particular person under §2(c), and consent would not be required.  The Trademark Trial and Appeal Board noted as follows in *Martin v. Carter Hawley Hale Stores, Inc.*, 206 USPQ 931, 933 (TTAB 1979):

> [Section] 2(c) was not designed to protect every person from having a name which is similar or identical to his or her name registered as a trademark.  Such a scope of protection would practically preclude the registration of a trademark consisting of a name since in most cases there would be someone somewhere who is known by the name and who might be expected to protest its registration.  Rather, the Statute was intended to protect one who, for valid reasons, could expect to suffer damage from another's trademark use of his name.  That is, it is more than likely that any trademark which is comprised of a given name and surname will, in fact, be the name of a real person.  But that coincidence, in and of itself, does not give rise to damage to that individual in the absence of other factors from which it may be determined that the particular individual bearing the name in question will be associated with the mark as used on the goods, either because that person is so well known that the public would reasonably assume the connection or because the individual is publicly connected with the business in which the mark is used.

In *Martin*, the Board held that §2(c) did not prohibit registration of NEIL MARTIN for men's shirts, where the individual, although well known in his

own professional and social circles, failed to establish that he was so famous as to be recognized by the public in general or that he is or ever was connected with the clothing field.

In *Krause v. Krause Publications, Inc.,* 76 USPQ2d 1904 (TTAB 2005), evidence was found sufficient to establish that the cancellation petitioner was publicly connected with the fields of numismatics, car collecting and publishing, such that a connection between petitioner and the mark KRAUSE PUBLICATIONS would be presumed by people who have an interest in these fields.  Thus, the mark was unregistrable for magazines featuring antique automobiles and numismatics, conducting trade shows and award programs featuring coins, and other related goods and services.  However, the mark was found registrable for "entertainment services in the nature of competitions and awards in the field of cutlery," because petitioner had not demonstrated that he was publicly connected with the field of cutlery, or that he is so well known by the general public that a connection between petitioner and the mark would be presumed with respect to these services.  *See also Ross v. Analytical Technology Inc.*, 51 USPQ2d 1269 (TTAB 1999) (evidence found sufficient to establish that opposer Dr. James Ross was publicly connected with the electrochemical analysis equipment field and that use of the name ROSS in connection with equipment in that field would lead to the assumption that opposer was in some way associated with the goods); *In re Sauer,* 27 USPQ2d 1073 (TTAB 1993), *aff'd per curiam,* 26 F.3d 140 (Fed. Cir. 1994) (BO, the recognized nickname of professional football and baseball star Bo Jackson, found to be so well known by the general public that use of the name BO in connection with sports balls would lead to the assumption that he was in some way associated with the goods or with applicant's business); *Fanta v. Coca-Cola Co.*, 140 USPQ 674 (TTAB 1964) (dismissing a petition to cancel registrations of FANTA for soft drinks and syrup concentrate, the Board noting no use by the petitioner, Robert D. Fanta, of his name in connection with the sale of soft drinks, nor any indication that petitioner had attained recognition in that field); *Brand v. Fairchester Packing Co.*, 84 USPQ 97 (Comm'r Pats. 1950) (affirming dismissal of a petition to cancel the registration of ARNOLD BRAND, for fresh tomatoes, the Commissioner finding nothing in the record to indicate that the mark identified the petitioner, Arnold Brand, an attorney specializing in patent and trademark matters, with the tomato business, or that use of the mark would lead the public to make such a connection).

To support a refusal under §2(c) as to a particular class in an application, it is not necessary to demonstrate that the individual is publicly connected with all the goods or services listed in the class.  It is enough to show that the individual is publicly connected with at least some of the goods/services in the class.  *Krause, supra.*

SUBSTANTIVE EXAMINATION OF APPLICATIONS

**1206.03          Consent of Individual or President's Widow Required**

**1206.03(a)          Consent Must Be Written Consent to Registration**

When a name, portrait or signature in a mark identifies a particular living individual, or a deceased president of the United States during the life of his widow, the mark can be registered only if the written consent of the individual, or of the president's widow.  The consent must be a written consent to the registration of the identifying matter as a trademark.

Consent to use of a mark does not constitute consent to register.  *Krause v. Krause Publications, Inc.,* 76 USPQ2d 1904 (TTAB 2005); *Reed v. Bakers Engineering & Equipment Co.*, 100 USPQ 196, 199 (PTO 1954); *Garden v. Parfumerie Rigaud, Inc.*, 34 USPQ 30, 31 (Comm'r Pats. 1937) (granting petition to cancel registrations of marks that named and portrayed the petitioner, Mary Garden, who, although she had consented to the use of her name and portrait in connection with a particular perfume, had not given written consent to register the marks for perfumes and other cosmetic items. "Permission to use one's name and portrait in connection with a specified item of merchandise falls far short of consent to register one's name and portrait as a trade mark for such merchandise generally.")  Consent to *register* a mark that makes no reference to consent to *use* is acceptable; the Office has no authority to regulate use of a mark.

Written consents for minors may be given by their guardians.

**1206.03(b)          Implicit Consent**

When a particular individual identified by matter in a mark is also the person who signed the application, then his or her consent to registration will be presumed.  *Alford Mfg. Co. v. Alfred Electronics*, 137 USPQ 250 (TTAB 1963), *aff'd,* 333 F.2d 912, 142 USPQ 168 (C.C.P.A. 1964) ("The written consent to the registration of the mark 'ALFORD' by Andrew Alford, the individual, is manifested by the fact that said person executed the application...."); *Ex parte Dallioux*, 83 USPQ 262, 263 (Comm'r Pats. 1949) ("By signing the application, the applicant here obviously consents....").

The mere incorporation of a business and consent to the business's use of the mark does not constitute implied consent to the *registration* of the mark. *Krause v. Krause Publications, Inc.,* 76 USPQ2d 1904 (TTAB 2005) (Cancellation petitioner did not give implied consent to register when he incorporated the business, sold his stock in the business and pledged his assets to finance expansion and acquisitions, and acquiesced in the corporation's use of the mark for 50 years, where there was no evidence that petitioner expressly stated that the mark was the property of the corporation and petitioner did not agree to refrain from use of the name in any subsequent business); *In re New John Nissen Mannequins*, 227 USPQ 569 (TTAB 1985) (consent to register not implied from appearance of the name

"John Nissen" in a deed of incorporation of applicant's predecessor, nor from existence of foreign registrations incorporating the name). *Compare, In re D.B. Kaplan Delicatessen*, 225 USPQ 342, 344 (TTAB 1985) (consent to the use and registration of the mark D. B. KAPLAN'S DELICATESSEN, for restaurant services, found to be implicit in the terms of a "buy-out" agreement that relinquished all property rights in the name and forbade its use by the named party in any subsequent business).

An applicant does not have to submit a new consent if a consent to register is already part of the record in the file of a valid registration for a mark comprised in whole or in part of the same name, portrait or signature for the same goods or services.  In this situation, the applicant only has to claim ownership of that existing registration.  If an applicant has submitted a consent to register in an application that has not matured to registration, a new consent is not required for pertinent co-pending applications, but the applicant must submit a copy of the consent for each pending application.  *In re McKee Baking Co.*, 218 USPQ 287 (TTAB 1983) (applicant's claim of ownership of a prior registration that includes a consent to register in the record held sufficient for purposes of complying with the consent requirement of the Act); 37 C.F.R. §2.193(a).

*See* TMEP §813 regarding a statement of consent of a living individual to the registration of his or her name or likeness.

## 1207        Refusal on Basis of Likelihood of Confusion, Mistake or Deception

*Extract from 15 U.S.C. §1052.  No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ... (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....*

Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), is the statutory basis for a refusal to register due to likelihood of confusion with another mark. Section 2(d) applies to both the Principal and the Supplemental Register.

## 1207.01        Likelihood of Confusion

In the *ex parte* examination of a trademark application, a refusal under §2(d) is normally based on the examining attorney's conclusion that the applicant's mark, as used on or in connection with the specified goods or services, so resembles a *registered* mark as to be likely to cause confusion.  (*See* TMEP