UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Miyano Machinery USA Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. **08 C 526** |
| ) | |
| MiyanoHitec Machinery, Inc., ) | Hon. Virginia Kendall |
| Thomas ("Tom") Miyano, a/k/a ) | |
| Toshiharu Miyano and Steven ) | Magistrate Judge Nolan |
| Miyano, a/k/a Shigemori Miyano, ) | |
| ) | |
| Defendants ) | **JURY TRIAL DEMANDED** |
| MiyanoHitec Machinery, Inc., ) | |
| Thomas ("Tom") Miyano, a/k/a ) | |
| Toshiharu Miyano and Steven ) | |
| Miyano, a/k/a Shigemori Miyano, ) | |
| ) | |
| Counterplaintiffs, ) | |
| ) | |
| vs ) | |
| ) | |
| Miyano Machinery, Inc., and ) | |
| Miyano Machinery USA, Inc., ) | |
| ) | |
| Counterdefendants. ) | |

**DEFENDANTS' MOTION TO COMPEL PRODUCTION, TO
PIERCE CLAIMED ATTORNEY-CLIENT AND WORK PRODUCT
PRIVILEGE AND TO ENFORCE SUBPOENA FOR DEPOSITION**

Now Come MiyanoHitec Machinery Inc., Tom Miyano, and Steven Miyano, Defendants, Counterplaintiffs herein, by their counsel, and move that this Court compel production of documents in accordance with the agreement of the parties, to pierce claimed attorney-client and/or work product privileges and to enforce the subpoena for deposition of George H. Kobayashi previously served, and in support of said motion, state:

1.   Plaintiff has brought this action alleging that Defendants have infringed on four trademarks and one service mark of which Plaintiff claims ownership.  They are (1) R. 3,328,718 - MIYANO, (2) R. 1,527,809 - MIYANO (stylized), (3) R. 1,217,317   U.S. Reg. No.

1,217,318 - Triangle Winged M, (4) S. 77/176918 - Triangle Winged M, (5) R. 1,473,925 - MIYANO THE WORLD LEADER IN PRECISION.

2. Defendants, by their answer, affirmative defenses and counterclaim, dispute the efficacy of Plaintiff's registrations and application and have challenged the truthfulness of the material allegations; Defendants have alleged that MMU and MMJ engaged in a fraudulent scheme by deliberately averring misrepresentations of usage and right to marks, both material facts, intending to deceive the Patent and Trademark Office "PTO" and intending that the PTO would rely on the misrepresentations to permit the registrations sought to the detriment of both the Defendants, Counterplaintiffs in this cause and the PTO.

3. The applications for all five of the foregoing marks contain declarations signed by George H. Kobayashi "Kobayashi", an attorney who at all times pertinent was employed by the law firm of Masuda Funai Eifert & Mitchell, Ltd., "MFEM", which had represented Plaintiff for many years, including years prior to 2004 when Defendant Tom Miyano was chairman and president of Plaintiff.

4. The said declarations contain representations of fact concerning right to and usage of the marks at the time of the filing of the respective applications. See specifically Exhibit "A", Application for S. 77/176918 - Triangle Winged M, MMU, (highlight added); and Exhibit "B", R. 1,217,317  U.S. Reg. No. 1,217,318 - Triangle Winged M (highlight added)

5. All of Kobayashi's representations of fact were alleged to have been based upon "information and belief."

6. On March 19, 2008, a subpoena addressed to Kobayashi was served on Kobayashi at his usual place of business having been accepted by a paralegal employed by MFEM.  See Exhibit "C".

7. MFEM's Motion to Quash the Subpoena or for the Entry of a Protective Order was filed on March 25, 2008, and presented to this Honorable Court on April 8, 2008, at which time this Court directed the parties to meet and confer regarding the said Motion.  This Honorable Court also suggested that the parties explore and pursue

alternative means of obtaining the relevant information other than taking the deposition of an attorney for Plaintiff.

    8. Pursuant to the Court's direction, the parties met and reached agreement that Defendants, Counterplaintiffs would limit their request for production of "all documents and communications, electronic or otherwise, relating to applications and registrations of trademarks by, for or on behalf of Miyano Machinery USA, Inc. or its predecessors" to those five marks at issue in these proceedings.

    9. On April 10, 2008, in pursuit of an alternative means of obtaining the relevant information, Defendants served Interrogatories on Plaintiff, the first of which sought information specifically relating to the five trademarks at issue in these proceedings. See Exhibit "D".

    10. MFEM and counsel for Plaintiff agreed to respond to Interrogatory 1 and to produce documents and answer interrogatories to the extent they were not privileged and would provide a privilege log for those documents it declined to produce, said response and production to be served on Defendants on or before May 1, 2008.[1]

---

[1] Despite the urgency of the information, Defendants agreed to response by May 1, 2008, in order to accommodate the amount of documents and information requested as well as the fact that counsel for all parties would be in Japan for depositions in this matter during the balance of April 8, 2008, and through the week of April 14, 2008.

3

11. The parties appeared before this Honorable Court on May 1, 2008, for a status report regarding the said subpoena and pending Motion to Quash or for Protective Order at which time this Honorable Court admonished the parties that an assertion of attorney-client privilege and a privilege log should strictly comply with the standards set forth in *Allendale Mutual Insurance Company v. Bull Data Systems*, 145 F.R.D. 84 (N.D. Ill., 1992).

12. Plaintiff provided its response to Defendants' Interrogatory 1 (See Exhibit "E") and the Subpoena for Documents as revised on May 1, 2008.

13. On May 5, 2008, Defendants advised Plaintiff's counsel by email that the documents and response to Interrogatory 1 that Plaintiff had provided were inadequate and requested that a LR37.2 telephone conference be held on May 6, 2008.

14. On May 6, 2008, counsel for the parties spoke in two telephone conferences at which time the interrogatory and production request were clarified to refer to "all MMU's information and beliefs **relating to or bearing on the declarations made by Mr. Kobayashi in the applications in issue**." (Emphasis added)

15. Plaintiff offered to supplement its document production and response to Interrogatory 1 but would not provide such supplementation until May 13 and would not respond to the remaining interrogatories until May 15.

16. On May 7, 2008, Defendant advised Plaintiff and MFEM that providing a supplemental response to Interrogatory 1 by May 13, 2008, was unacceptable in light of the extremely limited time before Defendant's response to Plaintiff's Motion for Preliminary Injunction is due and the fact that it was already a week past the time the response was to have been provided. See Exhibit "F"

17. Plaintiff's response of May 8, 2008, to Defendant's email professed to not understand what information was requested although suggesting a desire to cooperate to resolve the disagreement. See Exhibit "G".

18. Defendant on May 8, 2008, responded with a discussion of applicable case law as well as yet another attempt to make clear exactly what information was being requested. See Exhibit "H".

19. The entirety of Plaintiff's response pursuant to the agreement to produce documents consisted of public documents and a privilege log which failed to provide any information relevant to the declarations at issue. See Exhibit "J".

20. On May 9, 2008, Plaintiff provided a revised privilege log (See Exhibit "H") and provided Defendants with an assortment of documents which are in the main non-responsive or irrelevant to the declarations at issue (See Exhibit "L").

21. Plaintiff has failed and refused to produce basic information relevant to the declarations at issue in this matter. It is most difficult to believe that Plaintiff has no information or documents other than those produced (See Exhibit "H") relating to alleged continuous use of the trademarks and service mark in issue for the five years prior to the respective applications for registration in issue.

22. In addition, pursuant to both *Allendale Mutual Insurance Company v. Bull Data Systems*, *supra*, and *Suh v. Yang*, 1997 U.S. Dist. LEXIS 20077, pg 13, the factual underpinnings of a trademark application to the PTO is not privileged and communicating such factual underpinnings to an attorney does not cloak such factual underpinnings with a privilege to subvert discovery.

23. By electronic transmission at 11:57 P.M. on May 12, 2008, Plaintiff provided a supplemental response to Interrogatory 1 together with its response to the remaining interrogatories. The transmission consisted of 174 pages and to the extent it has been reviewed and investigated in advance of the filing of this Motion, the supplemented response fails to establish the factual information relied upon by Kobayashi in making his declarations of fact to the PTO.

25. Plaintiff's privilege log is inadequate in that it fails to meet the standards established by law.

26. Plaintiff had produced documents to Defendants which were not marked "confidential" or "attorneys' eyes only." Included among

the documents were MMU0017647-17649. The document consists of an email dated January 8, 2008, just over two weeks before Plaintiff filed this action, from Kobayashi to Gentaro Kakumae, the head of Plaintiff's accounting department, and Mr. Kakumae's undated response. A copy of the email and response are provided for *in camera* review to this Honorable Court under seal with the courtesy copy of this Motion as Exhibit "L".

27. By letter electronically delivered on May 8, 2008, Plaintiff's counsel have attempted to protect the said document as being covered by the "attorney-client privilege and work-product doctrine". See Exhibit "M".

28. The subjects of questions 4 and 5 of Kobayashi's email are facts about which Kobayashi made declarations in the applications for registration referenced in paragraph 4 of this Motion.

29. Defendants contend that an *in camera* examination of Exhibit "L" will disclose that Kobayashi did not have sufficient factual information on which to base his declarations (See Exhibits "A" and "B") and that he had specific information contrary to the fact of use contained in his declaration concerning the triangle mark on machinery (See Exhibit "B").

30. The discussion concerning attorney client privilege and work product doctrine in *Allendale Mutual Insurance Co. v. Gull Data Systems*, *supra*, at 145 F.R.D. 86-87 is applicable:

> In the case of the attorney-client privilege, the Seventh Circuit has adopted the elements as outlined by Wigmore:
>
> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection being waived.
>
> As … noted, "work product" is defined as those materials produced *because of the anticipation* of litigation. (Italics in original; citations omitted) … Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes.

31.  The document which Plaintiff now seeks to conceal concerns requests for factual information in questions 4 and 5 which relate to declarations Kobayashi made not quite a year earlier and 5+ years earlier in public statements to the PTO.  The information sought, which is what Defendants are seeking to discover, was not a matter of legal advice when it was used in the declarations.  Indeed, if the declarant had not been an attorney, there would be no question now that the factual information requested would be discoverable.  The factual underpinnings of a trademark application to the PTO are not privileged.  *Suh v Yang et al*, *supra*.

32.  There is yet another basis to deny "attorney-client" and "work product" protection to the documents comprising Exhibit "L". "Attorney-client" and "work-product" privileges may be pierced if they are relevant to a fraud on the PTO.

33.  The discussion in *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, N.D.Ill., 2003, Not Reported in F.Supp.2d, 203 WL 22889442, is applicable:

> To establish a *prima facie* case of fraud on the Patent Office sufficient to pierce the attorney-client and work product privileges, FYEO must show the following elements: (a) a misrepresentation or concealment of a material fact, (2) an intent to deceive or, at least, a sate of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (3) a justifiable reliance upon the misrepresentation or concealment by the party deceived which induces him to act thereon, and *4) injury to the party deceived as a result of his reliance on the misrepresentation.   (Citation omitted.)   A party challenging the attorney-client privilege must also make a prima facie showing that the communication was made "in furtherance of" a crime or fraud.
>
> A finding of common law fraud "must be based on independent and clear evidence of deceptive intent," but FYEO need not produce direct evidence, nor enough evidence to conclusively prove fraud.  (Citation omitted.)  A *prima facie* case of fraud exists when the moving party presents evidence sufficient "to require the adverse party, the one with the superior access to the evidence and in the best position to explain things, to come forward with that explanation.  (Citation omitted.)  Unless a party accused of fraud comes forward with a satisfactory explanation, the privilege is defeated.  *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993).

34. If Plaintiff cannot and does not come forward with an explanation to demonstrate that Kobayashi actually had a factual basis for his declarations executed in 2002 and 2007 as the reasonable inference from questions 4 and 5 in Exhibit "L" belie, then the privileges asserted should be pierced as being in furtherance of fraud on the PTO.

35. It is impossible to determine from the privilege log tendered by Plaintiffs if any of the myriad documents relate to the factual bases for the declarations proffered in support of the marks in issue.

36. In light of Plaintiff's attempt to hide lack of factual bases for the declarations under the guise of "privilege", it would be most appropriate for this Honorable Court to conduct an *in camera* inspection of all documents which Plaintiff has identified in its privilege log to determine if the "attorney-client" privilege or "work product" privilege should apply and, if either or both are applicable, whether or not they should be pierced as discussed above.

37.

WHEREFORE, for the foregoing reasons, Defendants respectfully move that this Honorable Court:

A. Compel production of documents in accordance with the agreement of the parties,

B. Pierce claimed attorney-client and/or work product privileges,

C. Enforce the subpoena for deposition of George H. Kobayashi previously served, and

D. Grant Defendants, Counterplaintiffs such other and further relief as to this Honorable Court shall seem meet.

DATED: May 14, 2008

                                          Respectfully submitted,

                                          /s/ Robert M. Karton

Robert M. Karton
ROBERT M. KARTON, LTD.
77 W. Washington St., Ste. 900
Chicago, IL  60602-2804
(312) 214-0900 telephone
(815) 301-9114 facsimile
robert@karton.us

Vernon W. Francissen
FRANCISSEN PATENT LAW, P.C.
53 W. Jackson Blvd., Ste. 1320
Chicago, IL  60604
(312) 294-9980 telephone
(312) 275-8772 facsimile
vern@francissenpatentlaw.com

Geoffrey A. Baker
Anthony E. Dowell
Geoffrey D. Smith
DOWELL BAKER, P.C.
201 Main Street, Ste. 710
Lafayette, IN  47901
(765) 429-4004 telephone
(765) 429-4114 facsimile
gabaker@dowellbaker.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing NOTICE OF MOTION and related MOTION were filed via the Court's ECF system and thus also sent by email on May 14, 2008, to the following:

Edward D. Manzo
Louis Alex
Jason Smalley
COOK, ALEX, MCFARRON, MANZO, CUMMINGS & MEHLER, LTD.
200 W. Adams Street, Suite 2850
Chicago, IL  60606

(312) 236-8500 telephone
(312) 236-8176 facsimile

emanzo@cookalex.com
lalex@cookalex.com
jsmalley@cookalex.com

Steven L. Katz
Nancy Sasamoto
George Kobayashi
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, IL  60601-1262

(312) 245-7500 telephone
(312) 245-7467 facsimile

skatz@musadafunai.com
nsasamoto@masudafunai.com
gkobayshi@masudafunai.com


DATED:  May 14, 2008

/s/ Robert M. Karton