UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Miyano Machinery USA Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. **08 C 526** |
| v. ) | |
| ) | Hon. Virginia Kendall |
| MiyanoHitec Machinery, Inc., ) | |
| Thomas ("Tom") Miyano, a/k/a ) | Magistrate Judge Nolan |
| Toshiharu Miyano and Steven ) | |
| Miyano, a/k/a Shigemori Miyano, ) | |
| ) | |
| Defendants ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| MiyanoHitec Machinery, Inc., ) | |
| Thomas ("Tom") Miyano, a/k/a ) | |
| Toshiharu Miyano and Steven ) | |
| Miyano, a/k/a Shigemori Miyano, ) | |
| ) | |
| Counterclaim-Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| Miyano Machinery USA Inc. and ) | |
| ) | |
| Counterclaim-Defendants ) | |
| ) | |
| Miyano Machinery Inc., ) | |
| ) | |
| Third-Party Defendants ) | |

**PLAINTIFF MIYANO MACHINERY USA, INC.'S RESPONSE TO
DEFENDANTS' MOTION TO COMPEL PRODUCTION, TO PIERCE
CLAIMED ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGE
AND TO ENFORCE SUBPOENA FOR DEPOSITION**

1.  Neither in their present Motion to Compel nor in their Response, Affirmative Defenses and Counterclaims to Plaintiff's Complaint have Defendants plead fraud with the reasonable particularity required under the Federal Rules. Defendants have done little more than to merely accuse an

1

attorney of fraudulent conduct, without offering any support or explanation. Through their Motion, Defendants seek to force the Plaintiff to rebut allegations of fraud before they are even articulated.

## **Background**

2.  On January 28, 2008, Plaintiff Miyano Machinery USA, Inc. (hereinafter "Plaintiff" or "MMU") filed this action for trademark infringement and related causes of action against Defendants' MiyanoHitec Machinery, Inc., Tom Miyano, and Steven Miyano. On February 8, 2008, MMU filed a motion for preliminary injunction on various claims set forth in its complaint. On February 29, 2008, Defendants filed their Answer, Affirmative Defenses and Counterclaims to the Complaint.

3.  The parties have sought to exchange early and expedited discovery. To date, Plaintiff and Defendants, respectively, have produced more than 22,000 and less than 1,000 documents in response to one another's documents requests.

4.  On or about March 17, 2008, Defendants' counsel Robert Karton served a Rule 45 Subpoena addressed to George H. Kobayashi, Masuda Funai Eifert & Mitchell, Ltd." ("MFEM").[1] The subpoena sought (i) the production of "all documents and communications, electronic or otherwise" relating to the trademark applications and registrations of MMU from and after January 1, 1990, and (ii) the appearance of attorney George Kobayashi for deposition.

5.  On March 24, 2008 the law firm of MFEM sent a letter to Defendants counsel Robert Karton, providing written objections to the Subpoena and agreeing to produce copies of non-privileged documents contained in its files related five of the trademark applications or registrations involved in this litigation. MFEM also requested confirmation

---

[1] Attorneys from the law firm of MFEM have entered appearances in this case on behalf of Miyano Machinery, Inc. of Japan, the parent company of MMU and a third party defendant in this lawsuit.

from Defendants' counsel Robert Karton that he would accept the production of the above identified non-privileged documents and a privilege log in satisfaction of the subpoena and an agreement that he would not proceed with the deposition of George H. Kobayashi on April 2, 2008.

6.   On March 25, 2008, MFEM attorneys spoke with Defendants' counsel Robert Karton by telephone and urged him to limit the request for documents given its overly broad and burdensome nature.  MFEM attorneys also suggested that the same information could be discovered from other sources such as the parties and that in any event interrogatories would be a more appropriate vehicle to obtain this information should Defendants insist on seeking discovery directly from MFEM, in light of the sensitivities created in deposing counsel for an adverse party.  Defendants' counsel Robert Karton agreed to initially accept the non-privileged documents referenced above, but would not agree to withdraw or modify the Subpoena.

7.   As a result, later that same day, attorney George Kobayashi and MFEM filed a Motion to Quash the Subpoena or For Entry of Protective Order.

8.   On April 8, 2008, a status hearing was held before your Honor, who suggested that "very limited interrogatories" could be used to address this matter.  See April 8, 2008 Transcript, pg 11, line 22.  Thereafter, counsel for the parties discussed the matter further, expressing disagreement over their respective views of the attorney client privilege.  Defendants counsel agreed to give further consideration to serving interrogatories.  Counsel for the parties also agreed to exchange legal authorities supporting their respective positions on the attorney client privilege as it applied to matter at hand.

**Defendants' Interrogatories Nos. 1-14 & Respective Counsels'
Conflicting Views of the Attorney Client Privilege**

9.   On April 10, 2008, Defendants' counsel served Plaintiff's counsel with a First Set of Interrogatories Nos. 1-14.  Despite stating that both sides would continue to brief the motion to quash in accordance with the schedule

3

set by the Court,[2] Defendants scheduled date of April 14 to respond to the pending Motion to Quash came and went without Defendants filing any response.

10. On April 22, 2008, counsel for the parties agreed to an expedited schedule by which Plaintiff would respond to Interrogatory No. 1 and produce non-privileged documents along with a privilege log, in response to the Subpoena directed to George Kobayashi, which Defendants' counsel agreed to narrow to seek only documents relating to five trademark applications and registrations involved in this litigation. See Exhibit 2.

11. By revised agreement of the parties, Plaintiff responded to Interrogatory No. 1 on May 1 by provided Defendants with a 26 page response that included, *inter alia,* the names of six individuals[3] knowledgeable about the circumstances surrounding the declarations that were the subject matter of that Interrogatory. Also on that day, Plaintiff produced a significant volume of non-privileged documents and a privilege log.

12. In the evening of May 5, 2008, Defendants' counsel sent Plaintiff's counsel the email attached as Exhibit 3, which stated in part:

> You have failed to provide any specific information provided to [attorney] George Kobayashi on which he relied to form his beliefs set forth in the applications; . . .

13. Plaintiff's counsel responded to Defendants' counsel's email, disagreeing with his position, particularly with respect to the attorney client privilege. See Plaintiff's May 6 Email attached as Exhibit 4. Plaintiff's May 6 email is omitted from Defendants' Motion, but states in part:

---

[2] Defendants counsel stated his expectation that "both sides will continue to brief the motion to quash on the schedule put forward by the magistrate." See Exhibit 1.

[3] Plaintiff identified attorney George Kobayashi, Tom Miyano, Hank Marcionne, Derek Olczak, Gentaro Kakumae, and Goro Yamaguchi as persons knowledgeable about the circumstances surrounding the declarations associated with the applications identified in Plaintiff's response.

4

> . . . the Defendants may seek from MMU evidence of MMU's use of the marks at issue in this litigation. You appear to hold the position that such information should be made available to you directly from [attorney] George Kobayashi, through the specific information and belief which he may have relied on in filing any of the declarations of interest to you.
>
> We do not believe that the relevant case law or Magistrate Nolan's directive supports this view. To the extent you believe we are mistaken, please explain in detail why. We also request that you provide us with at least one case that supports your interpretation of the attorney client privilege in the context of patent or trademark prosecution. We have provided you with case law support for our view but have received nothing in return, despite our requesting and your agreeing to provide this to us. If at all possible, we ask that you provide us with any such authorities before our 4 pm conference call this afternoon in order for that discussion to be more productive.
>
> We believe that relevant, non-privileged information that is responsive to your interests will also be set forth in our responses to the additional interrogatories that you served, many of which are more specific than Interrogatory No. 1. We are working in good faith to provide this information to you and hope to have answers to these interrogatories soon. However, given the volume of information that you are seeking in those interrogatories, answering them is taking more time than previously estimated.[4] Further, while we note that many of the documents relevant to these interrogatories have already been produced, additional documents are forthcoming.

Plaintiff did not receive any explanation or case law support in response to its request, either then or at any time thereafter until receiving the instant Motion to Compel from Defendants

14. On May 6 beginning at 4 pm, counsel for the parties spoke by telephone. They expressed their disagreement over attorney-client privilege issues and the permissible scope of Interrogatory No. 1. Plaintiff's counsel

---

[4] Despite the volume of information requested by Defendants, Plaintiff responded to Defendants Interrogatories Nos. 1-14 with a 174 page Response on May 12, 2008 within 30 days of their being served. Defendants have omitted this Response from their Motion. Plaintiff includes this document as Exhibit 5.

disagrees with the manner in which Defendants' counsel claims in his Motion at ¶14 to have clarified the scope of Interrogatory No. 1. Plaintiff also disagrees that it would not respond to the remaining interrogatories until May 15.

15. Plaintiff's position was that it would revise its response to Interrogatory No. 1, by incorporating appropriate references to its other Interrogatory responses which were narrower in scope, and further, that it would to respond the remaining Interrogatories by Monday, May 12, which was within 30 days of the date on which they were served. The parties agreed to the foregoing arrangement.

16. On May 7, Defendants' counsel sent Plaintiff's counsel the email attached as Exhibit 6, which unilaterally attempted to revoke the parties agreement of the day prior. In his email, Defendants' counsel again persisted in his interpretation of the attorney client privilege, by making a unsupported reference to

> . . . the case law holding that the information and beliefs [attorney George Kobayashi] obtained on which his declarations are based, regardless of the source of the information and beliefs or how he obtained it, are relevant and are not privileged.

Defendants provided Plaintiff with no further explanation and declined to cite any authorities supporting this position. <u>Most importantly, Defendants' counsel committed to filing a motion to compel on this matter in the event Plaintiff's response to Interrogatory No. 1 was not supplemented by 5 pm on the following day, Thursday, May 8.</u>.

17. At 12:02 am on May 9, on a matter entirely unrelated to the foregoing discussion, Plaintiff's counsel emailed Defendants' counsel a letter requesting the return of certain inadvertently produced attorney client privileged and work product protected documents, one of which is attached as Exhibit L to Defendants' Motion to Compel.

18. The only evidence which Defendants' put forth in the present Motion to support piercing the attorney-client privilege and work product doctrine is Exhibit L, which Defendants did not acknowledge as having until they declined to return the document in their response to Plaintiff's request, merely stating "We will take your request under advisement."

### Discussion

19. In their Motion, Defendants claim to have satisfied the threshold to warrant *in camera* review of MMU 17647-17649 (referred to in Defendants' Motion as Exhibit L), a document which Plaintiff inadvertently produced and promptly requested be returned.[5] Defendants declined to do so, noting merely that they would take such request "under advisement." Defendants do not challenge the privileged nor work product protected status of the document,[6] except for the fact that they now allege that *in camera* review of the document is warranted based on the crime fraud exception to the

---

[5] Exhibit L is undoubtedly protected under both the attorney client privilege and work product doctrine. With respect to the former, it reflects an attorney's request for and receipt of information from his client in furtherance of the rendering of legal advice. Furthermore, it was clearly prepared in the anticipation of litigation.

[6] Federal Advisory Committee Notes for the 2006 Amendment to F.R.C.P. 26(b)(5)(B) states:

> After receiving notice, each party that received the information must promptly return, sequester, or destroy the information and any copies it has. The option of sequestering or destroying the information is included in part because the receiving party may have incorporated the information in protected trial-preparation materials. No receiving party may use or disclose the information pending resolution of the privilege claim. <u>The receiving party may present to the court the questions whether the information is privileged or protected as trial-preparation material, and whether the privilege or protection has been waived</u>. If it does so, it must provide the court with the grounds for the privilege or protection specified in the producing party's notice, and serve all parties. <u>In presenting the question, the party may use the content of the information only to the extent permitted by the applicable law of privilege, protection for trial-preparation material, and professional responsibility.</u>

(emphasis added).

7

attorney client privilege and work product doctrine. Defendants Motion at ¶29. The standard for determining whether *in camera* review is justified is set forth in *U.S. v. Zolin*, 491 U.S. 554, 572 (1989):

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," [citation omitted] that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
>
> Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Zolin*, 491 U.S. at 571. It should be emphasized that <u>outside of the contents of the document in question (MMU 17647-17649)</u>, Defendants provide absolutely no factual support whatsoever for the argument that *in camera* review of either this document or any other documents listed in Plaintiff's privilege log, either alone or in combination with other information, support the conclusion that *in camera* review of any of these materials may reveal evidence that the crime-fraud exception applies to them.

20.   Defendants then turn to the issue of whether a *prima facie* case of fraud exists. At ¶33 in their Motion, Defendants recite this test as set forth in *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 U.S. Dist. LEXIS 21901 at *5-7, (N.D. Ill., Dec. 5, 2003):

> A finding of common law fraud "must be based on independent and clear evidence of deceptive intent," but FYEO need not produce direct evidence, nor enough evidence to conclusively prove fraud. [citation omitted] A *prima facie* case of fraud exists when the moving party presents evidence sufficient "to require the adverse party, the one with the superior access to the

> evidence and in the best position to explain things, to come forward with that explanation." [citation omitted] Unless the party accused of fraud comes forward with a satisfactory explanation, the privilege is defeated. [citation omitted]

Under this standard, if the charge of fraud is left unrebutted, it would be permissible for the trier of fact to conclude that fraud has been committed.

21. Defendants then conclude, without offering any further support or explanation, that a *prima facie* case for fraud has been met, the burden has now shifted to Plaintiff, and unless it is rebutted, the protected status of MMU 17647-MMU17649 is lost. See Defendants Motion at ¶34.

22. *For Your Ease Only* highlights the absence of support in Defendants' Motion for finding that a prima facie case for fraud exists in the case at bar.

23. First, the Court in *For Your Ease Only* relies not just on a single document in isolation, but substantial evidence considering the record as a whole, to demonstrate the materiality and *deceptive intent* necessary to support a finding of fraud.  In contrast, Defendants in the case at bar attempt to establish that a *prima facie* case for fraud has been made based on 2 questions or statements (Nos. 4 and 5) posed to a client and taken out of context.  Defendants analyze these questions in complete isolation from the remainder of the document and the entirety of evidence that is already of record in the case.

24. Second, nowhere in the *For Your Ease Only* decision is the testimony of attorney who prosecuted that patent application even cited, let alone relied on, to support that Court's finding that a *prima facie* case for fraud had been made.  Rather, the Court relied on significant amounts of oral and written testimony directed to the truth or falsity of highly material, underlying facts, the analog to which in the case at bar might include how was MMU using the marks being renewed or applied for and what evidence does it have to support such uses.

9

25. Defendants are <u>not</u> interested in the facts concerning the different ways in which MMU was using the marks in the question. Rather, Defendants are interested *only* in the specific information that was communicated to attorney George Kobayashi by his client, and further, what specific information and beliefs did he rely on when he caused certain declarations to be filed in the United States Patent and Trademark Office. As explained below, their discovery demands are directed at the heart of information and materials that are protected under the attorney client privilege and work product doctrine.

26. Plaintiff believes that neither the *in camera* review nor *prima facie* tests for the crime fraud exception to apply have been met. In the interest of resolving this matter in the most efficient and expeditious manner possible, Plaintiff directs the following discussion to why, even considering the contents of MMU 17647-17649, there is no basis to conclude that Defendants have made out a *prima facie* case that the crime-fraud exception applies that would justify piercing the attorney client privilege or deposing attorney George Kobayashi.

### Plaintiff's Application to Register the Triangle Winged M as a Service Mark (Application Serial No. 77/176,918)

27. Plaintiff MMU asserts common law rights in the Triangle Winged M as a service mark for use in connection with "repair and refurbishing services in connection with machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor."

28. On May 9, 2007, attorney George Kobayashi, on behalf of Plaintiff MMU, caused to be filed in the United States Patent and Trademark Office an application to register the Triangle Winged M as a service mark for the services identified above. The service mark application contained a drawing depicting the mark being applied for which appears below:

10

*[Miyano logo]*

29. Exhibit A to Defendants' Motion is a declaration which attorney George Kobayashi caused to be filed in connection with this service mark application in May 2007.

30. Without explaining how or why, Defendants argue that "Statement 4" in Exhibit L supports a "reasonable inference" that fraud was committed in the filing of Exhibit A with the United States Patent and Trademark Office.[7]  See ¶34 of Defendants' Motion.

31. Defendants' argument fails for numerous reasons.  Defendants analyze 'Statement 4,' which is more aptly described as a question rather than a statement, in isolation of the remainder of the document as well as the evidence of record in this proceeding supporting Plaintiff's alleged use of the Triangle Winged M as a service mark.  Without considering any other evidence other than Exhibit L itself, the client's response to this Statement on page 1 of Exhibit L directly refutes the negative inference given to the Statement appearing on page 3 of the document by Defendants.  Plaintiff has also provided substantial evidence of its use of the Triangle Winged M as a service mark.  Such evidence was included with the Complaint, and the Affidavit and Memorandum in Support its Motion for Preliminary Injunction, and Plaintiff's Response to Defendants Interrogatories (e.g. Plaintiff's Response to Interrogatories, pages 33-35 attached as Exhibit 5).  Since the filing of these pleadings, Plaintiff has produced copies of numerous service reports and invoices also verifying the use of the Triangle Winged M as a service mark, the corresponding rights in which are the subject of Plaintiff's service mark application.

---

[7] Plaintiff believes that Statements 4 and 5 are more aptly identified as questions being directed to the client, rather than "Statements" as suggested by the Defendants in their Motion.

32.     For the foregoing reasons, Exhibit L does not support piercing the attorney client privilege, as suggested by Defendants in ¶34 of their Motion.

### Plaintiff's U.S. Trademark Registration No. 1,217,317
### (Triangle Winged M for Goods)

33.     Plaintiff Miyano Machinery USA, Inc. is the owner of U.S. Trademark Registration No. 1,217,317 (U.S. Reg. No. '317) in the Triangle Winged M mark for certain goods identified in the certificate of registration as "power lathes, and bar feeders therefor."

34.     Exhibit B to Defendants' Motion is a Combined Section 8 Affidavit and Section 9 Renewal Application to renew U.S. Reg. No. '317, which attorney George Kobayashi caused to be filed in November 2002.

35.     Without explaining how or why, Defendants argue that 'Statement 5' in Exhibit L supports a "reasonable inference" that fraud was committed in the filing of Exhibit A with the United States Patent and Trademark Office.[8]  See ¶34 of Defendants' Motion.

36.     Defendants' argument fails for numerous reasons.

37.     Defendants analyzes the statement or question number 5 in isolation of the applicable law and regulations, as well as the substantial evidence that Plaintiff has provided with respect to its continuing use of the Triangle Winged M in support of U.S. Reg. No. '317.

38.     Such evidence includes but is not limited to (a) Plaintiff's refurbishment and sale of used machines bearing the Triangle Winged M trademark, such as the machine which MMU refurbished and sold to Capital Machinery in May 2002 (¶30 of March 1, 2008 Declaration of Henry Marchionne attached as Exhibit 7), (b) use of the Triangle Winged M mark on new machine Standard Warranty Policies and installation Service Reports, which identify Plaintiff as the source standing behind new machine tools being sold (see pp 26-27, 62-64 of MMU's 174 page Response to Defendants'

---

[8] Plaintiff believes that Statements 4 and 5 are more aptly identified as questions being directed to the client, rather than "Statements" as suggested by the Defendants in their Motion.

12

Interrogatories attached as Exhibit 5, *see also* 2002 Service Report and Warranty Policy attached as Exhibit 8); (c) use of the Triangle Winged M mark in connection with the sale of Miyano machine tool replacement parts and part assemblies.

39. While Plaintiff's refurbishment and sale of the machine tool referenced above in May 2002 constitutes the sale of a machine on which the Triangle Winged M trademark was affixed, nothing in the Lanham Act, corresponding federal regulations, or the Trademark Manual of Examining Procedure (TMEP) which offers guidance for examiners, trademark practitioners on the examination and prosecution of trademark applications imposes such a requirement.  Consistent with these authorities, the Combined Section 8 and 15 Declaration which attorney George Kobayashi caused to be executed in November 2002  states, "[t]he owner is using or issuing through a related company the mark in commerce on or in connection with the goods/services/identified above . ."

40.  For the foregoing reasons, Exhibit L does not support piercing the attorney client privilege, as suggested by Defendants in ¶34 of their Motion.

### The Authorities Cited by Defendants Fail to Support the Propositions for which they are Asserted

41.  Defendants in their Motion cite *Allendale Mutual Ins. Co. v. Gull Data Systems*, 145 F.R.D. 84 (N.D. Ill. 1992) and *Suh v. Yang,* 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. Nov. 18, 1997) in the following manner:

> In addition, pursuant to both *Allendale Mutual Insurance Company v. Bull Data Systems*, supra, and *Suh v. Yan*, 1997 U.S. Dist. LEXIS 20077, pg 13, the factual underpinnings of a trademark application to the PTO is not privileged and communicating such underpinnings to an attorney does not cloak such underpinnings with a privilege to subvert discovery.

To the extent that *Allendale* addresses the concept of 'factual underpinnings', it is in the context of the work product doctrine, not the attorney client privilege, which is contrary to the manner in which it is cited above.  *See Allendate* at 87.  Further, *Suh v. Yang* actually contradicts the

13

proposition for which it is cited in Defendants' Motion. The Court in *Suh* states:

> Thus, although neither a trademark application to the PTO nor its factual underpinnings are privileged, **the attorney-client dialectic which gave it birth should be. Thus, the Special Master concludes that *Advanced Cardiovascular Systems* is applicable by analogy to disputes, like this one, involving attorney-client communications in the context of trademark applications.**

*Suh,* 1997 U.S. Dist. LEXIS 20007, at 13 (emphasis added).

## Conclusion

Defendants fail to establish a basis for the relief they seek. Under the case which the Defendants cite, the information Defendants seek (the specific information and communications provided to George Kobayashi) is privileged and protected from disclosure. *In Hyuk Suh v. Choon Sik Yang*, 1997 U.S. Dist. LEXIS 20077 at *13.; see also *See Mendenhall v. Barber Greene Co.,* 531 F. Supp. 948 (N.D. Ill. 1981)(court denied on grounds of attorney client privilege defendant's motion to compel plaintiff's patent attorney "to testify as to his knowledge of claimed prior art" including "certain contract work" performed by the plaintiff more than one year before the asserted patent was filed)

Moreover, Defendants merely cite to inadvertently produced privileged email and expect this Court to find that the crime-fraud exception applies. Defendants have not identified any factual evidence which supports a prima facie case for piercing the attorney-client and work product privileges. Plaintiff has also provided ample evidence to rebut such a case.

Defendants allege that the Plaintiff's Privilege Log is "inadequate in that it fails to meet the standards established by law" (Defendants' Motion at ¶25), but do not articulate how it is inadequate.

Finally, Defendants give no basis for the need to depose an attorney of record in this case in view of the parties' agreement, except for the

unsupported allegation that the Plaintiff's Interrogatory Answers "to the extent [they] have been reviewed… fails to establish the factual information…" (Defendants' Motion at ¶23)

For the foregoing reasons, Plaintiff, Miyano Machinery USA Inc., asks this Court to deny Defendants Motion to Compel and Enforce the Subpoena (Document No. 84) in its entirety.

Dated: May 20, 2008              Respectfully Submitted,

            /s/Louis J. Alex
            Edward D. Manzo
            Joel Bock
            Louis J. Alex
            Jason R. Smalley
            Attorneys for Plaintiff

Edward D. Manzo  I.D. # 03124728
Joel Bock     I.D. # 00239984
Louis J. Alex    I.D. # 06274458
Jason R. Smalley  I.D. # 06287426
COOK, ALEX, McFARRON, MANZO,
CUMMINGS & MEHLER, LTD.
200 West Adams Street, Suite 2850
Chicago, IL 60606
Phone: (312) 236-8500
Fax: (312) 236-8176
lalexo@cookalex.com

**CERTIFICATE OF SERVICE**

The undersigned declares that he/she is over the age of 18 years, not a party to this action, and employed in the County of Cook, by Cook, Alex, McFarron, Manzo, Cummings & Mehler, Ltd., Attorneys at Law, 200 West Adams Street, Suite 2850, Chicago, Illinois 60606.

On the date listed below, I caused the filing of the foregoing **Plaintiff's Response to Defendants' Motion to Compel Production, to Pierce Claimed Attorney-client and Work Product Privilege and to Enforce Subpoena** with all its attachments and exhibits. I caused the service of these aforementioned documents on the following individuals, as addressed below, by the means indicated, and on the date listed below:

| | | |
|---|---|---|
| Geoffrey A. Baker | Robert M. Karton | Vernon W. Francissen |
| Geoffrey D. Smith | ROBERT M. KARTON, LTD. | FRANCISSEN PATENT LAW, P.C. |
| DOWELL BAKER, P.C. | 77 W. Washington St., Suite 900 | 53 W. Jackson Blvd., |
| 201 Main Street, Suite 710 | Chicago, Illinois 60602-2804 | Suite 1320 |
| Lafayette, Indiana 47901 | (312)214-0900 telephone | Chicago, Illinois 60604 |
| (765) 429-4004 telephone | (312)214-4230 facsimile | (312)294-9980 telephone |
| (765) 429-4114 facsimile | robert@karton.us | (312)275-8772 facsimile |
| gabaker@dowellbaker.com | | vern@francissenpatentlaw.com |

Nancy E. Sasamoto
Steven L. Katz
George H Kobayashi
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
203 N. LaSalle St.
Suite 2500
Chicago, IL 60601
312-245-7500 telephone
nsasamoto@masudafunai.com
skatz@masudafunai.com
gkobayashi@masudafunai.com

   X   (BY ELECTRONIC MEANS) I caused this document to be electronically mailed (emailed) to Vernon W. Francissen, at the address shown above.

   X   (BY ELECTRONIC MEANS) I cause each such document to be sent by electronic means through the Electronic Court Filing system to Nancy Sasamoto, Steven Katz, George H Kobayashi, Geoffrey A. Baker, Geoffrey D. Smith and Robert M. Karton at the address shown above, pursuant to LR 5.9.

Executed on May 20, 2008 at Chicago, Illinois.

Signed:    */s Louis Alex*