UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. **08 C 526** |
| | ) | |
| MiyanoHitec Machinery, Inc., | ) | Hon. Virginia Kendall |
| Thomas ("Tom") Miyano, a/k/a | ) | |
| Toshiharu Miyano and Steven | ) | Magistrate Judge Nolan |
| Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
| Defendants | ) | **JURY TRIAL DEMANDED** |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | |
| Toshiharu Miyano and Steven | ) | |
| Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
| Counterplaintiffs, | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| Miyano Machinery, Inc., and | ) | |
| Miyano Machinery USA, Inc., | ) | |
| | ) | |
| Counterdefendants. | ) | |

**DEFENDANTS', COUNTERPLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION
OF GEORGE H. KOBAYASHI AND MASUDA, FUNAI, EIFERT & MITCHELL, LTD.,
TO QUASH SUBPOENA OR FOR ENTRY OF PROTECTIVE ORDER**

Now Come Miyanohitec Machinery, Inc., Tom Miyano and Steven Miyano, Defendants, Counterplaintiffs herein, by their counsel, and, as and for their Response in Opposition to Motion to Motion of George H. Kobayashi ("Kobayashi") and Masuda, Funai, Eifert & Mitchell, Ltd., ("MFEM"), state:

1.  Plaintiff has brought this action alleging that Defendants have infringed on four trademarks and one service mark of which Plaintiff claims ownership. They are (1) R. 3,328,718 - MIYANO, (2) R. 1,527,809 - MIYANO (stylized), (3) R. 1,217,317  U.S. Reg. No. 1,217,318 - Triangle Winged M, (4) S. 77/176918 - Triangle Winged M, (5) $. 1,473,925 - MIYANO THE WORLD LEADER IN PRECISION.

2. The applications for all five of the foregoing marks contain declarations of fact signed by Kobayashi.

3. Kobayashi was at all times pertinent an attorney who was employed by the law firm of MFEM, which had represented Plaintiff for many years, including years prior to 2004 when Defendant Tom Miyano was chairman and president of Plaintiff.

4. The said declarations contain representations of fact concerning usage of and rights to the marks at the time of the filings of the respective applications for each mark.

5. All of Kobayashi's representations of fact were alleged to have been based upon "information and belief."

6. Defendants, by their answer, affirmative defenses and counterclaim, have challenged the truthfulness of the allegations of fact made in the declarations and have alleged that Plaintiff perpetrated a fraud on the Patent and Trademark Office by filing its false declarations of fact.

7. On March 19, 2008, a subpoena addressed to Kobayashi was served on Kobayashi at his usual place of business having been accepted by a paralegal employed by MFEM.  See Exhibit "A".

8. MFEM's Motion to Quash the Subpoena or for the Entry of a Protective was filed on March 25, 2008, and presented to this Honorable Court on April 8, 2008, at which time this Court directed the parties to meet and confer regarding the said Motion.  This Honorable Court also suggested that the parties explore and pursue alternative means of obtaining the relevant information other than taking the deposition of an attorney for Plaintiff.

9. Pursuant to the Court's direction, the parties met and reached agreement that Defendants, Counterplaintiffs would limit their request for production of "all documents and communications, electronic or otherwise, relating to applications and registrations of trademarks by, for or on behalf of Miyano Machinery USA, Inc. or its predecessors" to those five trademarks at issue in these proceedings.

10. On April 10, 2008, in pursuit of an alternative means of obtaining the relevant information, Defendants served Interrogatories on Plaintiff, the first of which sought information specifically

relating to the five trademarks at issue in these proceedings.  See Exhibit "B".

11. MFEM and counsel for Plaintiff agreed to respond to Interrogatory 1 and to produce those documents to the extent they were not privileged and would provide a privilege log for those documents it declined to produce, said response and production to be served on Defendants on or before May 1, 2008.

12. Plaintiff has failed to produce any documents that are not public documents or provide information in response to Interrogatory 1 that is not already in the public domain.  Instead, Plaintiff has produced a lengthy privilege log in which it identifies 101 documents as correspondence between one or another employee of Plaintiff and Kobayashi or other attorney with MFEM.  See Exhibit "C"

13. Pursuant to Notice, Plaintiff designated Akiro Menemura ("Menemura"), an employee of Plaintiff, as its R.30(b)(6) witness. Menemura's deposition was taken on May 19, 2008.  In the course of that deposition, Menemura was asked the following questions and gave the following answers, including instructions given by George Manzo, one of Plaintiff's and Counterdefendants' attorneys in this cause:

>    Q.   Do you know who George Kobayashi is?
>
>    A.   Yes, I do.
>
>    Q.   Do you know that George Kobayashi signed a declaration in November 2002 claiming that Miyano Machinery USA was continuing to sue the triangle logo?
>
>    A.   I have never seen that document.
>
>    Q.   Do you have any understanding of the basis for Mr. Kobayashi's declarations under penalty of perjury to the trademark office that Miyano Machinery USA was using the triangle logo on machine tools?
>
>        . . .
>
>    Mr. Manzo: I am going to instruct the witness that he may not in his answer communicate information exchanged between the company and Mr. Kobayashi.
>
>        . . .

Q. Mr. Menemura, welcome back.

I want to hand you what we have marked as Exhibit 94. If you turn to -- This is a document marked MMU 144 through 148, which means that MMU produced this document in this case. I ask you to turn to the page marked MMU 147 and I ask you to focus on the middle third of the page under the heading Signature and other Information.

In that is a declaration by George H. Kobayashi dated 11/05/2002, and I want to make sure that my earlier questions are clear to you. What I was asking earlier is do you have any understanding of the facts underlying Mr. Kobayashi's information and belief that permitted Mr. Kobayashi to sign this declaration under penalty of perjury?

. . .

Mr. Manzo: I object. You are asking the witness to comment on a legal document that is not written in Japanese.

I also instruct him not to communicate the contents of any communication that went between the company and Mr. Kobayashi's law offices in either direction.

BY THE WITNESS:

A. I would like to decline commenting on this document since as Mr. Manzo has pointed out that I can't completely -- personally understand this document.

See Excerpt of deposition transcript attached as Exhibit "D".

14. Kobayashi and MFEM argue, in their Motion, that Kobayashi should be protected from having to give testimony at a deposition based on "attorney-client privilege" because he is an attorney for Counterdefendant in this cause and that he was an attorney for Plaintiff at the time he signed the declarations in question.

15. Defendants ask this Court to recall that the documents and information Defendants, Counterplaintiffs seek through the Subpoena for Deposition and for documents relate to FACTS supporting Kobayashi's declarations that the marks in question were in use at the time of the respective applications. Defendants are in no way asking for Kobayashi's legal opinions or legal advice that he or any other member of MFEM gave or might have given to Plaintiff.

16. Notwithstanding that clear limitation, Plaintiff has steadfastly refused to provide such information and documents, its

30(b)(6) witness claims ignorance of central issues of this case, and if he might have had any knowledge of the facts of usage at the time of the applications, Plaintiff's counsel instructed the witness to refuse to provide it if it had been communicated in any way to Kobayashi.

17. It is obvious that Plaintiff and Counterdefendant are simply engaging in tactics designed to hide and obfuscate rather than to disclose FACTS as requested.

18. Kobayashi and MFEM cite numerous cases in support of their contention that the documents as limited by agreement should not be produced, that their privilege log should be upheld, and that Kobayashi should be shielded behind the claim of attorney-client privilege.

19. *Upjohn Co. v. United States*, 449 U.S. 383 (1981), cited by Kobayashi and MFEM, does stand for the proposition that the attorney-client privilege is one of the oldest confidential communication privileges known to the common law. The case also stands for the proposition that:

> … The privilege only protects disclosure of *communications*; it does not protect disclosure of the underlying facts by those who communicated with the attorney.  (Emphasis added) 449 U.S. 395

20. *Texaco, Inc., v Louisiana Land & Exploration Co.*, 805 F.Supp. 385 (M.D.La. 1992), also cited by Movants, held that document that fall within the attorney-client privilege may not be discoverable. That case dealt with whether settlement documents needed to be produced pursuant to the Louisiana Public Records Law. the Court did not make a blanket determination that all communications between an attorney and client are privileged. Indeed, the Court remanded the matter to the Magistrate to determine which documents requested actually fell within the attorney-client privilege.

21. *Canuso v. City of Niagara Falls*, 7 F.R.D. 162 (D.C.N.Y. 1945) makes the bald statement that "[M]atters privileged or irrelevant are beyond the subpoena." Defendant's do not dispute that principal. The issue in this case is whether or not the factual data

requested by document and deposition of Kobayashi is privileged as Kobayashi and MFEM contend.  *Canuso* provides absolutely no guidance.

22.  The factual basis of *Wonneman v. Stratford Securities Co.*, 23 F.R.D. 281 (D.C.N.Y. 1959), also cited by Movants, is not applicable to this case.  The legal proposition, however, is that the attorney-client privilege is intended to cover the common-law privilege against disclosure of confidential communications between attorney and client where legal advice of any kind is sought from a professional legal advisor in his capacity as such and his communications, relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure.  It is clear that not all communication between attorney and client is or ought to be protected by the attorney-client privilege.  Communications of fact that do not seek legal advice is just such non-protected communication.

23.  Movants assert that MMU has not waived the attorney-client privilege by asserting claims or defenses that put its attorney's advice at issue in the litigation and cite *Atlantic Investment Management, LLC v Millennium Fund I, Ltd.*, 212 F.R.D. 395, (N.D. IL 2002).  MMU may not have asserted claims or defenses that put its attorney's advice at issue, but MMU has asserted claims based upon its attorney's declarations of purported fact to the PTO.  The factual bases, if there be any, are not equivalent to legal advice and are not protected.

24.  *N.F.A. Corp. v Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83 (M.D.N.C. 1987) is cited by Movants.  It should be noted that this Court declined to follow those case which hold that a motion for a protective order or a motion to quash is prematurely made prior to the deposition and that the attorney must raise his particular objections as t the deposition.  The case specifically rejected by *N.F.A. Corp*, is *Hunt International Resources Corp v. Binstein*, 98 F.R.D. 689 (N.D.Ill. 1983).  In Hunt, the Court said:

> Nevertheless, challenges to the taking of an attorney's deposition, based upon claims that any of the attorney's testimony will involve disclosure of privileged information or "work product," have been held to be premature.  *Shiner*

*v. American Stock Exchange*, 28 F.R.D. 34 (S.D.N.Y. 1961) As that Court observed, completely preventing the taking of a deposition on either of the above grounds would tent to limit or fix the scope of the examination before it began and would usurp the court's role in deciding whether certain questions seek privileged information. *Id*. at 35. The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the fact of certain questions, if necessary.

25. Even if *N.F.A. v Riverview*, *supra*, were to be given weight, it would not be supportive of Movants' argument. That case reiterates that Rule 26(b)(3) provides near absolute protection of an attorney's mental impressions or opinion work product. Defendants are not seeking Kobayashi's mental impressions or opinion work product. Instead, Defendants are seeking FACTS they have tried to but have been prevented from obtaining from other sources.

26. It is not enough for Movants to assert that the documents sought and the facts sought to be obtained are protected by attorney-client privilege. They would have to demonstrate that these facts somehow played a part in legal advice given to MMU by Kobayashi. This they have not done.

27. Movants and Plaintiff at the 30(b)(6) deposition have attempted to prevent discovery of FACTS underlying declarations in support of trademark registrations by contending that the facts were communicated to counsel and are therefore privileged. The Court should bear in mind that were the same facts communicated to a non-attorney who signed the declaration, there would be no question that the facts were discoverable. Communicating such factual underpinnings to an attorney does not cloak such factual underpinnings with an attorney-client or work product privilege to subvert discovery. *Allendale Mutual Insurance Company v. Bull Data Systems*, 145 F.R.D. 84 (N.D. Ill., 1992), *Suh v. Yang*, 1997 U.S. Dist. LEXIS 20077, page 13.

28. In further support of its Opposition to the Motion, Defendants incorporate by reference and make a part hereof as though fully set forth their Motion to Compel Production, to Pierce Claimed Attorney-Client and Work Product Privilege and to Enforce Subpoena for Deposition filed in this cause as Document Number 84.

WHEREFORE, Defendants, Counterplaintiffs respectfully move that this Honorable Court deny the Motion of George H. Kobayashi and Masuda, Funai, Eifert & Mitchell, Ltd., to Quash the Subpoena or for Entry of Protective Order.

DATED:  May 20, 2008

                                      Respectfully submitted,

                                      /s/ Robert M. Karton
Robert M. Karton
ROBERT M. KARTON, LTD.
77 W. Washington St., Ste. 900
Chicago, IL  60602-2804
(312) 214-0900 telephone
(815) 301-9114 facsimile
robert@karton.us

Vernon W. Francissen
FRANCISSEN PATENT LAW, P.C.
53 W. Jackson Blvd., Ste. 1320
Chicago, IL  60604
(312) 294-9980 telephone
(312) 275-8772 facsimile
vern@francissenpatentlaw.com

Geoffrey A. Baker
Anthony E. Dowell
Geoffrey D. Smith
DOWELL BAKER, P.C.
201 Main Street, Ste. 710
Lafayette, IN  47901
(765) 429-4004 telephone
(765) 429-4114 facsimile
gabaker@dowellbaker.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing NOTICE OF MOTION and related MOTION were filed via the Court's ECF system and thus also sent by email on May 20, 2008, to the following:

Edward D. Manzo
Louis Alex
Jason Smalley
COOK, ALEX, MCFARRON, MANZO, CUMMINGS & MEHLER, LTD.
200 W. Adams Street, Suite 2850
Chicago, IL  60606

(312) 236-8500 telephone
(312) 236-8176 facsimile

emanzo@cookalex.com
lalex@cookalex.com
jsmalley@cookalex.com

Steven L. Katz
Nancy Sasamoto
George Kobayashi
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, IL  60601-1262

(312) 245-7500 telephone
(312) 245-7467 facsimile

skatz@musadafunai.com
nsasamoto@masudafunai.com
gkobayshi@masudafunai.com


DATED:  May 20, 2008

/s/ Robert M. Karton