**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. **08 C 526** |
| | ) | |
| MiyanoHitec Machinery, Inc., | ) | Hon. Virginia Kendall |
| Thomas ("Tom") Miyano, a/k/a | ) | |
| Toshiharu Miyano and Steven | ) | Magistrate Judge Nolan |
| Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
| Defendants | ) | **JURY TRIAL DEMANDED** |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | |
| Toshiharu Miyano and Steven | ) | |
| Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
| Counterplaintiffs, | ) | |
| | ) | |
| vs | ) | |
| | ) | |
| Miyano Machinery, Inc., and | ) | |
| Miyano Machinery USA, Inc., | ) | |
| | ) | |
| Counterdefendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO**
**MOTION TO COMPEL PRODUCTION, TO PIERCE CLAIMED**
**ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGE**
**AND TO ENFORCE SUBPOENA FOR DEPOSITION**

1.    While Plaintiff's recitation of background is interesting, it is really irrelevant to the issue raised in Defendants' Motion to Compel, to Pierce Claimed Privilege and to Enforce Subpoena for Deposition (hereinafter referred to as "Motion to Pierce" in order to distinguish it from any other Motion to Compel before this Honorable Court).

2.    Plaintiff has filed its Cross-Motion for an Order Compelling the Return of Privileged Documents and a Protective order. The document in question is Exhibit "L" attached to the pending Motion to Pierce and is the object of Defendants' request for an *in camera* inspection  and an Order piercing Plaintiff's claimed privileges.

3.    Defendants believe that the *in camera* inspection, together with the testimony of Plaintiff's 30(b)(6) witness will demonstrate that George Kobayashi's declarations critical to Plaintiff's registrations in issue are simply not supported by facts and that the email proffered on April 14, 2008, without any designation as being confidential or attorney's-eyes-only that Plaintiff is now trying to hide under the guise of privilege clearly indicates that the declarant did not know whether or not his declarations of September 13, 2007, and November 5, 2002, were true, and, in fact, they were not true.

4.    As will be discussed below, since Plaintiff's 30(b)(6) witness lacked information concerning the facts to support Kobayashi's declarations, and since an *in camera* inspection of Exhibit "L" will disclose that Kobayashi did not in fact have facts to support his declarations; the reasonable inference is that the declarations were critical parts of a scheme to defraud the PTO to obtain the marks in question.

5.    The application of 2002 was for renewal of a mark on machines (not a service mark) consisting of a triangle surrounding both a "flying M" and the word "Miyano"    Kobayashi signed a declaration under penalties of perjury that the mark was in use in commerce at the time the application was filed.  See Exhibit "A".

6.    Plaintiff identified attorney George Kobayashi, the declarant; Defendant Tom Miyano, Hank Marcionne, currently an advisor to MMU, Derek Olczak, currently an employee of MMU, and Goro Yamaguchi as persons knowledgeable about the circumstances surrounding the declarations in question.[1]  What is most interesting about Plaintiff's designation is that Plaintiff did not identify its 30(b)(6) witness as being knowledgeable about the circumstances.

---

[1] Plaintiff's Response to Interrogatory 1.

7.    As a matter of fact, Akihiko Minemora, Plaintiff's 30(b)(6) witness, testified that the only use by MMU of the triangle mark on machinery from 2000 to 2007 was on a GN series machine and an MTV series machine as set forth, in pertinent part, below:

Page 52

Q.    Didn't Miyano Machinery USA stop using the triangle trademark at some point in the late 1990s?

Page 53

A.    I don't know that they did
Q.    Can you point to any specific examples of use by Miyano Machinery USA of the triangle logo on any machine tool between the year 2000 and the year 2007?
A.    Yes.
Q.    What specific machines?  Please list all of them?
A.    GN series.  MTV series.[2]  … That's all I can remember right now.

See Exhibit "B".

Page 61

Q.    Does MMU -- Well, let's get back to the MTV model machines.  Who makes those machines?
A.    Presently?
Q.    Yes.
A.    Those machines in past were produced by MMU's group company called Mectron and currently those MTV machines are produced by the same Mectron which is no longer -- an independent company.

Q.    When you say group company, are you testifying that Mectron was owned by MMU?
A.    MMJ or MMU?

Page 62

Q.    I said MMU but either is fine.
A.    Not MMU.

---

[2] The witness identified other uses, but non of the other uses were on machine tools.

3

Q.    Does MMJ presently own any portion of Mectron?
A.    As far as that pint is concerned, I cannot say. I cannot tell.
Q.    So you don't know right now whether or to MMJ owns any part of Mectron?
A.    I don't know.

Page 63

Q.    Would it be fair to say that the MTV model of machines are actually Mectron machines,

Page 64

not Miyano Machinery machines?
A.    My understanding is that Mectron is responsible for manufacturing the machines.
Q.    Who puts the trademarks on the MTV machine?
A.    Which trademark are you talking about?
Q.    The triangle.
A.    That trademark was put on by the Mectron right before shipping.
Q.    In Japan?
A.    Yes.
Q.    So Miyano Machinery is not responsible for placing the triangle mark on Mectron's machines, correct?
A.    Do you mean Miyano Machinery Japan?
Q.    Either.  I am assuming Japan because it is in Japan.

Page 65

A.    Yes.  Mectron is the one -- are the ones that put the trademarks on the products.

8.    The GN series of machines are produced in Japan by MMJ. MMJ, by action of its Board of Directors in 1997, ceased using the triangle mark on machines.  The MMJ website (See Exhibit "D") shows that the GN series of machines are Ocean Brand machines, not MMJ brand machines.  Plaintiff's 30(b)(6) witness could not identify which machines of the GN series were sold.  Out of 11 pages of pictures and descriptions, there is only once place where a triangle logo appears, and that is on an unidentified machine pictured at the bottom of page 6 of the website.  In reality, the 20 GN machines produced and sold by MMU probably didn't have the triangle logo on them at all.

4

9.    Plaintiff's 30(b)(6) witness testified that during the years 2000 to 2007, Plaintiff sold approximately 1500 units, possibly a bit fewer; however, of those approximately 1500 machines, only as many as 20 were GN machine.  Those were the machines that supposedly had the triangle logo that constituted the use of the triangle mark in commerce in 2002 according to Kobayashi's declaration.  See Exhibit "E".

10.    Kobayashi's 2007 declaration was in connection with an application to register the triangle Winged M Miyano mark as a service mark.  This was not a renewal; this was an application for a new registration.  See Exhibit "F".

11.    The documentation produced by Plaintiff to support Kobayashi's declaration that the service mark depicted on Exhibit "F" was in use at the time of the application is not identical to the mark sought to be registered..  The service mark requested includes the word "MIYANO" in block letters.  The service mark actually in use, however, includes a stylized "Miyano".  See Exhibit "G".  It is plain that the service mark requested was not the same as the service mark declared to have been use.  Kobayashi knew or should have known that when he signed the declaration on penalty of perjury.

12.    In order to establish trademark rights on the basis of use, Plaintiff had to establish sufficient market penetration.  Plaintiff had to meet the four-factor test to determine whether the market penetration of a trademark was sufficient to warrant protection:  (1) the volume of sales of the trademarked product; (2) the growth trends (both positive and negative) in the area; (3) the number of actual purchasers of the product in relation to the potential number of purchasers; and (4) the amount of product advertising in the area. *Lucent Info. Mgmt. Inc., v Lucent Techs., Inc.*, 186 F.3d 311, 317 (3d Cir. 1999) quoting *Natural Footwear*, 760 F.2d at 1398-99)

13.    The Court, in *Universal Nutrition Corporation v. Carbolite Foods, Inc.*, 325 F.Supp.2d 526 (U.S.D.C. NJ 2004) considered the issue in which an applicant was able to demonstrate it sent shipments of its product to two distributors in the United States at the time of its application for a trademark.  The Court found that two sales of 48

boxes of its chocolate bars to one distributor and another 72 boxes to a different distributor was insufficient to satisfy the "volume of sales" test.   The Court held, at 325 F.Supp.2d 534:

> The Third Circuit  has held that the volume of sales must be more than *de minimis*.  *Lucent Info. Mgmt. Inc., v Lucent Techs., Inc.*, 186 F.3d 311, 317 (3d Cir. 1999) quoting *Natural Footwear*, 760 F.2d at 1400 which found *de minimis* clothing sales of less than $5,000 and a maximum of 50 customers per state for two years).

14.  Plaintiff's 30(b)(6) witness was unable to offer any testimony to support Kobayashi's claim of use to justify registration. Nevertheless, Kobayashi declared under penalty of perjury, and it is clear that the PTO would not have issued a registration covering goods upon which the mark had not been used.   Trademark Rule 2.88(c) Medinol Ltd. v. Meuro Vasx, Inc., 67 U.S.P.O.2d 1205 (2003)

15.  Fraud in obtaining renewal of a registration amounts to fraud in obtaining a registration within the meaning of section 14© of the Lanham Act.   Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application.   See Torres v. Cantine Torresella S.r.l., 808 F.2d 46 (C.A. Federal Circuit 1986) which held:

> An essential element of the application for renewal is the registrant's averment that the mark as registered is in current use for the goods covered by the registration or the reasons for the mark's nonuse.  The purpose of this requirement, like that in section 8 of the Lanham Act, is "to remove from the register automatically marks which are no longer in use."  Citations omitted.

> If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO.  Citation omitted.

16.  It appears, based on the fact that Plaintiff's 30(b)(6) witness could provide no factual basis for Kobayashi's declaration of use in 2002, and that the images which Plaintiff claims were in use in

service in 2007 were different from that service mark requested, that Kobayashi knew or should have known that his declarations were false.

17.    Kobayshi's submission of a label he knew or should have known was not in use (in 2002) and that contained a mark clearly different from the one in use (in 2007) constitutes fraud.

18.    Kobayshi's email of January 2008 (Exhibit "L", demonstrates that Kobayashi, only a month before the instant suit was filed, questioned the efficacy of his earlier declarations.

19.    Since Plaintiff's 30(b)(6) witness was unable to provide evidence on the subject, and since Plaintiff's counsel has taken the position that it will not allow a witness to divulge facts, no matter how relevant, if they have been discussed with counsel, the only remedy available is for this Honorable Court to Compel Production, to Pierce Claimed Attorney-Client and Work Product Privilege, and to Enforce Defendants' Subpoena for the deposition of Kobayashi, the declarant.

WHEREFORE, Defendants move that their Motion be granted.

DATED:  May 28, 2008

Respectfully submitted,


/s/ Robert M. Karton
Robert M. Karton
ROBERT M. KARTON, LTD.
77 W. Washington St., Ste. 900
Chicago, IL  60602-2804
(312) 214-0900 telephone
(815) 301-9114 facsimile
robert@karton.us

Vernon W. Francissen
FRANCISSEN PATENT LAW, P.C.
53 W. Jackson Blvd., Ste. 1320
Chicago, IL  60604
(312) 294-9980 telephone
(312) 275-8772 facsimile
vern@francissenpatentlaw.com

Geoffrey A. Baker
Anthony E. Dowell
Geoffrey D. Smith
DOWELL BAKER, P.C.

7

201 Main Street, Ste. 710
Lafayette, IN  47901
(765) 429-4004 telephone
(765) 429-4114 facsimile
gabaker@dowellbaker.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing NOTICE OF MOTION and related MOTION were filed via the Court's ECF system and thus also sent by email on May 20, 2008, to the following:

Edward D. Manzo
Louis Alex
Jason Smalley
COOK, ALEX, MCFARRON, MANZO, CUMMINGS & MEHLER, LTD.
200 W. Adams Street, Suite 2850
Chicago, IL  60606

(312) 236-8500 telephone
(312) 236-8176 facsimile

emanzo@cookalex.com
lalex@cookalex.com
jsmalley@cookalex.com

Steven L. Katz
Nancy Sasamoto
George Kobayashi
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, IL  60601-1262

(312) 245-7500 telephone
(312) 245-7467 facsimile

skatz@musadafunai.com
nsasamoto@masudafunai.com
gkobayshi@masudafunai.com

DATED:  May 28, 2008

                              /s/ Robert M. Karton