UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. **08 C 526** |
| v. | ) | |
| | ) | Hon. Virginia Kendall |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, | ) | Magistrate Judge Nolan |
| a/k/a Toshiharu Miyano and | ) | |
| Steven Miyano, a/k/a | ) | |
| Shigemori Miyano, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## OBJECTIONS TO MEMORANDUM OPINION AND ORDER

Pursuant to Fed.R.Civ.P. 72(a), Defendants MiyanoHitec Machinery, Inc., Thomas ("Tom") Miyano, and Steven Miyano ("MIYANOS") respectfully object to the Memorandum Opinion and Order signed and entered by Magistrate Judge Nolan on June 6, 2008. Defendants state as follows in support of their objections:

### I.  INTRODUCTION

Plaintiff Miyano Machinery USA Inc.'s ("MMU" or "Plaintiff") filed this trade mark infringement action in late January 2008. Following the filing of its complaint, Plaintiff moved for a preliminary injunction. In response to MMU's allegations of trademark infringement, Defendants counterclaimed alleging that MMU defrauded the United States Patent and Trademark Office during the process of obtaining and renewing some of the marks at issue in MMU's complaint and preliminary injunction motion.

During limited, expedited discovery, MMU produced an email exchange between George Kobayashi, a trademark attorney working on behalf of MMU, and Gentaro

Kakumae, the head of MMU's accounting department.  *See* Ex. L to Doc. # 84 (MMU 17647-49); *see also* Ex. A, Mem. Op. and Order at 4.  Mr. Kobayashi signed two key declarations in the file history of the trademarks at issue in this action.  *See* Mem. Op. and Order at 2; *see also* Exs. A and B to Doc. # 84 (copies of the actual declarations).  These Kobayashi declarations are important evidence tending to show that MMU defrauded the USPTO, as Defendants have alleged.  The Kobayashi declarations are also the primary, if not the only, factual evidence that MMU provided to the USPTO in MMU's effort to obtain and/or renew two of the trademarks at issue in this action.  The Kobayashi declarations were submitted to the USPTO in 2002 and 2007 – long before Mr. Kobayashi performed his pre-filing due diligence.  The timing of Mr. Kobayashi's questions to Mr. Kakumae and the knowledge that Mr. Kobayashi lacked when signing the declarations was clearly misunderstood by Magistrate Judge Nolan.

As Exhibit L clearly demonstrates, in January 2008, just two weeks before filing MMU's complaint, Mr. Kobayashi still did not know the facts that he should have know when he was signing the declarations in support of MMU's trademark applications in November 2002 and September 2007.  As Magistrate Judge Nolan noted in her opinion:

> Significantly, as noted, Exhibit L is an email dated January 8, 2008 – **after** both declarations were submitted to the PTO – consisting of questions posed to MMU by its attorney for the purpose of determining whether MMU had sufficient information to proceed with filing the preliminary injunction and complaint in this case.

Memo. Op. and Order at 12 (emphasis added).  Magistrate Judge Nolan went on to conclude that MMU's responses to Mr. Kobayashi's *ex post facto* due diligence provide sufficient "bases for asserting that the Triangle Winged M mark was in use at the time of the application."  *Id.* at 13.  Unfortunately, this conclusion missed the point.  Mr.

Kobayashi did not have these necessary factual underpinnings at the time that he signed the declarations. Whether he had them after he signed the declarations is immaterial. Indeed, the fact that Mr. Kobayashi had these facts only after he filed his declarations with the USPTO tends to show that Mr. Kobayashi's declarations lacked the necessary factual underpinnings to demonstrate use of the marks at the appropriate time. Additionally, that Mr. Kobayashi only learned these necessary facts after he signed his declarations tends to support Defendants' allegations that MMU (with the help of Mr. Kobayashi) defrauded the USPTO. Moreover, Defendants still have not been allowed to discover what facts Mr. Kobayashi relied on in signing his declaration and also why it was that MMU and Mr. Kobayashi did not inform the USPTO of the changes between the mark as actually used and the mark as shown in the specimens of use.

All that Defendants seek is these factual underpinnings and bases for Mr. Kobayashi to sign two declarations in November 2002 and September 2007. As Magistrate Judge Nolan specifically noted, "information regarding the factual bases for Mr. Kobayashi's declarations, including that MMU is using the trademarks at issue, [is] relevant and not privileged." Memo. Op. and Order at 15. This information will be key evidence showing MMU defrauded the USPTO.

Defendants do not seek the legal advice that Mr. Kobayashi was giving to MMU during the two weeks before MMU filed its complaint and motion for preliminary injunction. Defendants concede that Judge Nolan was correct, "Exhibit L was clearly created in anticipation of litigation and is a communication made in connection with the provision of legal advice." Ex. A at 7. Again, Exhibit L also clearly shows that Mr. Kobayashi only discovered the factual underpinnings for his 2002 and 2007 declarations

in 2008 – just two weeks before the complaint in this action was filed. In short, Mr. Kobayashi failed to perform due diligence before signing those key declarations in November 2002 and September 2007. Instead, Mr. Kobayashi waited until January 2008 to perform that due diligence. Again, all Defendants want (and all that they are entitled to) is the factual information that buttress Mr. Kobayashi's sworn statements related to the use of the trademarks at issue. If no such factual information exists, then MMU clearly defrauded the USPTO in applying for and/or renewing trademarks at issue in this action.

In any event, Defendants respectfully ask the Court to sustain their objections to Magistrate Judge Nolan's June 6, 2008 Memorandum Opinion and Order.

## II.    PERTINENT LEGAL STANDARDS

### A.    Review of Non-Dispositive Orders

A district court's review of a magistrate judge's non-dispositive order is governed by Rule 72(a) of the Federal Rules of Civil Procedure, which provides, "The district judge to whom to the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 943 (7th Cir.1997). Thus, this Court should sustain Defendants' objections if it is left with the definite and firm conviction that a mistake was made.

    **B.**    **Fraud on the USPTO**

Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application. *See Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46 (Fed. Cir. 1986). Submitting a claim of use in connection with goods or services for which a mark is not actually in use constitutes a misrepresentation of material fact sufficient to support a finding of fraud on the USPTO. *See Medinol Ltd. v. Neuro Vasx Inc.*, 67 U.S.P.Q. 2d 1205, 1208 (T.T.A.B. 2003). Ex. B.

With these standards in mind, Defendants turn the Court's attention to their argument.

**III.**    **ARGUMENT**

MMU's conduct in 2002 and again in 2007 is highly similar to Torres' conduct two decades ago. *See Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46 (Fed. Cir. 1986). In *Cantine Torresella*, the Trademark Trial and Appeal Board ("TTAB") granted summary judgment, canceling the trademark owner's registration. *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46 (Fed. Cir. 1986). The TTAB found, at the summary judgment stage, that Mr. Torres defrauded the USPTO during the process of renewing the mark at issue. *Id.* The facts of Mr. Torres' fraud are similar to those of MMU's fraud.

In 1957, Torres obtained registration for the trademark "Las Torres" below a design depicting three castle-like towers. *Id.* at 47.



In 1976, Torres filed an application for renewal of that mark. *Id*. In his renewal application, Torres stated that the mark as registered was still in use in interstate commerce. *Id*. Attached to the application was a specimen label on which the mark as registered was displayed. *Id.* However, Torres was not currently using the mark in the form as registered on the specimen label. *Id.* Instead, Torres was using the name "Torres" in conjunction with an altered design of the three towers. *Id.* Torres had used the altered mark since 1971. *Id.* And, at the time he filed for renewal, Torres was not even using the altered mark on some of the goods identified in the original registration. *Id.*

Torres attempted to explain away the changes to the mark. After all, according to Torres, he just "dropped the use of the term LAS ... and adopted the principal term TORRES over three towers design." *Id.* Torres further claimed that he did not consider the change material and did not believe that the filing of the renewal application represented any fraud on the PTO. *Id.* At first blush, such a small change might not seem material. However, the TTAB held as a matter of law that the mark was materially altered and that the new display created a different commercial impression. *Id.* at 49.

The TTAB also found that Torres knew or should have known that his statements in the renewal application were false and concluded that the statements in the renewal application amounted to fraud on the PTO. *Id.* at 47. The Federal Circuit affirmed the TTAB's cancellation of Torres' mark due to his fraud. *Id.* at 49. As the Federal Circuit noted, "failure to submit a specimen showing current use and to specify those goods covered by the registration on which the mark is still in use is fatal to a section 9 application for renewal." *Id.*

The Federal Circuit also noted that "not only was the label currently used different from the one submitted with the renewal application, the marks on the labels were clearly different as well." *Id.*

> Thus, even if Torres had submitted the label currently in use, his renewal application would have been denied. The problem of fraud arises because Torres submitted a label that he knew or should have known was not in use that contained a mark clearly different from the one in use. In addition, he submitted an affidavit stating the mark was in use on wine, vermouth, and champagne when he knew it was in use only on wine.

*Id.*

Again, as the Federal Circuit also noted, "[t]he decision whether the *current* usage is not materially different from the mark as registered *despite the change* must rest with the Board, not the trademark owner." *Id.* (citation omitted).

Mr. Kobayashi's declarations state that legally sufficient use had occurred. Yet, in 2008 Mr. Kobayashi did not know that any use had occurred and in 2008 MMU testified that legally insufficient use had occurred. Additionally, at no time did MMU inform the USPTO that the mark as used and the mark as shown in the specimens of use filed with the Kobayashi declarations were not the same. This is no different than Torres' misconduct in *Cantine Torresella* – particularly Torres' arrogant choice to take away from the USPTO the decision regarding materiality of the changes made to the registered mark. To reiterate, as the Federal Circuit noted, "[t]he decision whether the *current* usage is not materially different from the mark as registered *despite the change* must rest with the Board, not the trademark owner. *Id.* at 49.

Leaving that decision in the USPTO's hands makes sound policy. There is simply no other way for the USPTO even to discover that a change was made to the mark, let

alone whether the applicant materially changed the mark or created a different commercial impression.  An essential element of the application for renewal is the registrant's sworn statement that the mark as registered is in current use for the goods covered by the registration or the reasons for the mark's nonuse. "The purpose of this requirement, like that in section 8 of the Lanham Act, is "to remove from the register automatically marks which are no longer in use." *Morehouse Manufacturing Corp. v. J. Strickland & Co.,* 407 F.2d 881, 887, 160 USPQ 715, 720 (CCPA 1969) (discussing the purpose of section 8)." *Id.* at 48.

Mr. Kobayashi's declaration clearly tends to show that he was furthering MMU's efforts to defraud the USPTO.  Mr. Kobayashi failed to inform the USPTO that the marks as actually used differed from the specimens of use for both declarations that he signed.  In 1997, MMU made a corporate decision to discontinue use of the mark that Mr. Kobayashi was telling the USPTO was the mark that was actually being used in 2002 and again in 2007.  Mr. Kobayashi – and MMU – took away from the USPTO the ability to determine whether MMU's changes to the mark materially altered it or its commercial impression.  That decision "must rest" *Cantine Torresella*, 808 F.2d at 49.

Defendants have demonstrated that the crime-fraud exception to the attorney client privilege applies to Exhibit L.  And, this Court should sustain Defendants' objections to Magistrate Judge Nolan's June 6, 2008 Memorandum Opinion and Order.

## IV.    CONCLUSION

For the foregoing reasons, as well as those stated in Defendants' underlying briefing and argument before the Magistrate Judge, this Court should sustain Defendants' objections.

DATED:  June 16, 2008

Respectfully submitted,

/s/ Geoffrey A. Baker
Robert M. Karton
ROBERT M. KARTON, LTD.
77 W. Washington St., Suite 900
Chicago, Illinois 60602-2804
(312)214-0900 telephone
(312)214-4230 facsimile
robert@karton.us

Vernon W. Francissen
FRANCISSEN PATENT LAW, P.C.
FRANCISSEN PATENT LAW, P.C.
53 W. Jackson Blvd., Suite 1320
Chicago, Illinois 60604
(312)294-9980 telephone
(312)275-8772 facsimile
vern@francissenpatentlaw.com

Geoffrey A. Baker
Anthony E. Dowell
Geoffrey D. Smith
Dowell Baker, P.C.
201 Main Street, Suite 710
Lafayette, Indiana 47901
(765) 429-4004 telephone
(765) 429-4114 facsimile

gabaker@dowellbaker.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing OBJECTIONS TO MEMORANDUM OPINION AND ORDER was filed via the Court's ECF system and thus also sent by email on June 16, 2008 to the following:

Edward D. Manzo
COOK, ALEX, MCFARRON, MANZO,
CUMMINGS & MEHLER, LTD.
200 West Adams Street, Suite 2850
Chicago, IL 60606

Phone:  (312) 236-8500
Fax:  (312) 236-8176

emanzo@cookalex.com


June 16, 2008                                          /s/Geoffrey A. Baker