



67 U.S.P.Q.2D 1205
2003 WL 21189780 (Trademark Tr. & App. Bd.), 67 U.S.P.Q.2d 1205
**(Cite as: 67 U.S.P.Q.2d 1205)**

Page 1



Medinol Ltd.
v.
Neuro Vasx Inc.

U.S. Patent and Trademark Office Trademark Trial
and Appeal Board

Cancellation No. 92040535

Decided May 13, 2003

**TRADEMARKS AND UNFAIR TRADE PRACTICES**

**1 Registration and its effects -- Federal registration -- Procedure, form, and content -- Amendments or corrections (§ 315.0303.04)**

**Practice and procedure in Patent and Trademark Office -- Fraud or inequitable conduct (§ 325.07)**

Cancellation respondent's motion to amend its registration for "Neurovasx" trademark to delete "stents" from identification of goods, and for summary judgment, is denied, since petitioner alleges that respondent knowingly made material misrepresentation to U.S. Patent and Trademark Office in order to obtain its registration, since registration would not have issued without respondent's misrepresentation, in its statement of use, that mark had been used in connection with stents, and since proposed deletion does not remedy alleged fraud, in that, if procurement of registration was fraudulent with respect to use of mark on stents, then entire resulting registration is void.

**2 Practice and procedure in Patent and Trademark Office -- Fraud or inequitable conduct (§ 325.07)**

Cancellation petitioner is entitled to summary judgment that respondent procured registration for its "Neurovasx" trademark through fraud, since identification of goods in application as filed and published included two items, stents and catheters, since respondent indicated in its statement of use that mark had been used in connection with both items, even though it had only been used on cath-

ers, since respondent knew or should have known at time it submitted statement of use that mark was not in use on all identified goods, and since respondent's assertion that inclusion of stents in notice of allowance was "apparently overlooked" does not undercut conclusion that respondent knew or should have known that statement of use was materially incorrect.

**\*1205** Petition of Medinol Ltd. for cancellation of trademark registration owned by respondent Neuro Vasx Inc. On respondent's motion to amend its registration, and for summary judgment. Denied; petitioner is granted summary judgment on issue of fraud in respondent's procurement of its registration.

Before Simms, Walters, and Rogers, administrative trademark judges.

By the Board.

Now ready for decision is respondent's motion to amend its registration and for summary judgment, filed on January 9, 2003. The motion has been fully briefed. [FN1]

Registration No. 2,377,883

On August 15, 2000, Registration No. 2,377,883 ("'883 Registration") was granted to the respondent herein for the mark NEUROVASX for "medical devices, namely, neurological stents and catheters." Application 75/326,112, which matured into the involved registration, was filed based on respondent's stated intent to use the mark on the above-noted goods.

Following publication for opposition, a notice of allowance was issued on July 28, 1998, in which applicant's goods were identified as originally set forth in the application. Subsequently, respondent filed two requests for an extension of time in which to file a statement of use. The second extension, filed on July 18, 1999, contained the following statement:

COPR. © 2008 The Bureau of National Affairs, Inc.

X Applicant has not used the mark in commerce yet on all goods/services specified in the Notice of Allowance; **\*1206** however, applicant has made the following ongoing efforts to use the mark in commerce on or in connection with each of the goods/services specified above:

Applicants [sic] continue their efforts to promote and publicize the recited goods.

Finally, on January 7, 2000, respondent filed a statement of use, which stated in relevant part as follows:

Applicant is using the mark in commerce on or in connection with the following goods/services:

X Those goods/services identified in the Notice of Allowance in this Application.

Those goods/services identified in the Notice of Allowance in this applicationexcept (identify those goods/services to bedeleted from this application):

Date of first use of mark anywhere: at least as early as November 15, 1999. [ [FN2] ]

The statement of use concluded with the required declaration:

The undersigned being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, . . . and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that . . . the mark is now in use in commerce; and all statements made of his own knowledge are true and all statements made on information and belief are believed to be true.

The statement of use was signed by Jeffrey A. Lee, identified as respondent's President/CEO. The statement of use was accepted by the trademark examining attorney and on August 15, 2000, the '883 Registration issued.

The Pleadings

On May 1, 2002, petitioner filed a petition for cancellation of the '883 Registration, alleging that at the time respondent submitted its statement of use to the United States Patent and Trademark Office ("USPTO" or "office"), it had not used the mark on or in connection with stents, and indeed has not done so since. Petitioner alleged that the '883 Registration was procured by respondent's knowingly false or fraudulent statements, and that "said false statements were made with the intent to induce authorized agents of the PTO to grant said registration, and reasonably relying upon the truth of said false statements, the PTO did, in fact, grant said registration to Registrant." [FN3] Petition ¶ 8. According to Petitioner, "[i]n view of [these] allegations, Registrant is not entitled to continue registration . . . since Registrant . . . committed fraud in the procurement of the subject registration." Petition ¶ 11.

Respondent's answer, filed September 26, 2002, states, *inter alia*, that it

has no further interest in continuing registration of the NEUROVASX registration for "stents" and respectfully requests, pursuant to 15 U.S.C. § 1068, partial cancellation of Registrant's U.S. Trademark Registration 2,377,883 by deleting the word "stents" from the list of goods upon which the mark is used.

Answer ¶ 2. Further, "[i]n response to paragraph 7 of the Petition, Registrant admits that it has not used the mark NEUROVASX in connection with "stents. . .." Answer ¶ 3.

The answer continues:

In response to paragraphs 8 and 9 of the Petition, Registrant denies the allegations and affirmatively states that in the Statement of Use submitted prior to the registration of NEUROVASX it was stated that Registrant was using the mark for goods/services. In the Statement of Use a box was checked to incorporate a text passage stating that the goods/services were "Those goods/services **\*1207** identi-

COPR. © 2008 The Bureau of National Affairs, Inc.

fied in the Notice of Allowance in this application." At the time the Statement of Use was prepared, the fact that the goods identified in the Notice of Allowance also included "stents," in addition to catheters, was apparently overlooked. Registrant denies each and every other allegation of paragraphs 8 and 9.

Answer ¶ 5.

Finally, after agreeing that it is not entitled to continued registration for "stents," Answer ¶¶ 6-7, the answer concludes with respondent's "petition for cancellation in part" of its own '883 Registration, by deleting "stents" from the identification of goods. [FN4]

Respondent's Pending Motion

On January 9, 2003, respondent filed a combined motion to amend its registration to delete "stents," [FN5] and for summary judgment:

Registrant, in order to dispose of all issues in the cancellation proceeding, has also moved for an order under Trademark Rule 2.127(a) and Rule 56 of the Federal Rules of Civil Procedure dismissing the above Cancellation with prejudice upon entry of the above discussed amendment to Registration 2,337,883. The grounds for granting the summary judgment are as set forth in "Registrant's Answer and Petition for Cancellation in Part", filed September 26, 2002 and are incorporated herein by reference. Amending the Registration to delete the reference to a product upon which the mark was not used prior to registration responds fully to the contentions made by Petitioner as a basis for the Cancellation Petition. The filing of the present motion is timely under Trademark Rule 2.127(e)(l) since it is being filed prior to the commencement of the first 30-day testimony period, which is now scheduled to close April 30, 2003.

Motion at 2-3.

Respondent's motion to amend was not submitted with the consent of petitioner, and the motion for

summary judgment was not supported by any affidavits or other evidence. Respondent's motion was unverified and was signed by counsel, as was its answer which is incorporated by reference into the motion.

By its response, petitioner objected to respondent's proposed amendment, and argued that -- even if allowed -- the amendment would not cure the fraud alleged in the petition for cancellation. Petitioner's position is that fraud in procuring a registration taints the entire registration. If it were otherwise, applicants would have little incentive to tell the truth; if caught in their misstatements, they could merely delete any unused goods, but would end up with no less than what they were entitled to claim in the first place, with no adverse consequences.

Respondent's reply brief directly addresses the fraud issue for the first time. In relevant part, respondent argues that

[w]hile Registrant freely admits that an error was made, there is simply no basis for alleging that the error constituted fraud. Petitioner has cited no pertinent case law supporting their contention that a full trial is needed solely to consider that issue. To the contrary, even if fraud were hypothetically found here, it has been purged by Registrant's two affirmative attempts made to delete stents from the goods description. [FN6]

Similarly, Registrant's admission that the description of goods was in error and the filing of Registrant's timely motion seeking to correct the registration, demonstrate that "no genuine issue as to any material fact" remains. Petitioner has failed to cite any evidence that there was any intent to commit fraud at the time the error was made. Neither evidence nor law suggests that Registrant ought not be entitled to amend the Registration to correctly refer to only those goods with which the mark has been used.

Applicable Law

A registration involved in a Board *inter partes* pro-

COPR. © 2008 The Bureau of National Affairs, Inc.

ceeding may be amended pursuant **\*1208** to Trademark Act § 7(e) and Trademark Rules 2.133 and 2.173. While Trademark Rule 2.133(a) provides that a motion to amend may be granted by the Board, it has been longstanding Board practice to reserve decision on unconsented amendments until trial or until the case is decided upon summary judgment. *See generally* TBMP § 514.03. If a registrant contends that it is entitled to registration with some restriction to the identified goods or services, such a matter must be raised either as an affirmative defense in its answer or by way of a motion to amend its registration to include the restriction. See *e.g.,* Personnel Data Systems Inc. v. Parameter Driven Software Inc. , 20 USPQ2d 1863 (TTAB 1991); TBMP § 514.03.

A party is entitled to summary judgment when it has demonstrated that there are no genuine issues as to any material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett , 477 U.S. 317 (1987). The evidence must be viewed in a light favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. Opryland USA Inc. v. The Great American Music Show, Inc. , 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).

Discussion

There is no genuine issue of material fact at hand. It is undisputed that respondent filed an intent-to-use based application reciting its intended goods as "medical devices, namely, neurological stents and catheters." It is also undisputed that at the time registrant filed its statement of use (and at all times since), it has used the mark on catheters but not on stents.

Moreover, there is no question that respondent's proposed amendment is generally appropriate both legally and factually, being limiting in nature. Trademark Rule 2.173(b). Finally, respondent has proffered the payment for the proposed amendment to its registration. Trademark Act § 7(e). [FN7]

1 We agree with petitioner, however, that re-

spondent is not entitled to judgment as a matter of law. The fraud alleged by petitioner is that respondent knowingly made a material representation to the USPTO in order to obtain registration of its trademark for the identified goods. There is no question that the statement of use would not have been accepted nor would registration have issued but for respondent's misrepresentation, since the USPTO will not issue a registration covering goods upon which the mark has not been used. *See* Trademark Rule 2.88(c); [FN8] TMEP § 1109.03 ("The applicant may not file a statement of use until the applicant has made use of the mark in commerce on or in connection with all goods/services specified in the notice of allowance, unless the applicant files a request to divide.")

Most importantly, however, deletion of the goods upon which the mark has not yet been used does not remedy an alleged fraud upon the Office. If fraud can be shown in the procurement of a registration, the entire resulting registration is void. General Car and Truck Leasing Systems, Inc. v. General Rent-A-Car Inc. , 17 USPQ2d 1398, 1401 (S.D. Fla. 1990), *aff'g* General Rent-A-Car Inc. v. General Leaseways, Inc. , Canc. No. 14,870 (TTAB May 2, 1998). Allowing respondent's amendment would be beside the point; even if "stents" were deleted from the registration, the question remains whether or not respondent committed fraud upon the Office in the procurement of its registration. [FN9]

Accordingly, because it has not demonstrated that it is entitled to judgment as a matter **\*1209** of law, respondent's motion to amend and for summary judgment is DENIED.

As noted above, there are no genuine issues of material fact on this record, and it does not appear that further discovery and trial will reveal any such facts. Under such circumstances, the Board may *sua sponte* enter summary judgment, if appropriate, for the non-moving party. The Clorox Co. v. Chemical Bank , 40 USPQ2d 1098, 1106 (TTAB 1996). *See also* TBMP § 528.08, and cases cited therein.

COPR. © 2008 The Bureau of National Affairs, Inc.

Petitioner alleges that respondent's submission of its admittedly erroneous statement of use constituted fraud in the procurement of the subject registration. A trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration that it knows or should know to be false or misleading. Torres v. Cantine Torresella S.r.l. , 808 F.2d 46, 1 USPQ2d 1483, 1484-85 (Fed. Cir. 1986).

We are aware that respondent denies that its intent in submitting its statement of use was fraudulent. Reply Br. at 1-2. Moreover, cases involving questions of intent are often said to be unsuited to resolution by summary judgment. *See, e.g.,* Copelands' Enterprises Inc. v. CNV Inc. , 945 F.2d 1563, 20 USPQ2d 1295, 1299 (Fed. Cir. 1991).

Nonetheless, as Judge Nies aptly pointed out in *Imperial Tobacco*:

In every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest. Under Fed. R. Civ. P. 56, . . . one must, however, proffer more than conclusory testimony or affidavits. An averment of no intent to abandon is little more than a denial in a pleading.

Imperial Tobacco Ltd. v. Philip Morris Inc. , 14 USPQ2d 1390, 1394 (TTAB 1990). [FN10] While *Imperial Tobacco* was an abandonment case, we find its discussion of the element of intent relevant to the case at bar.

The appropriate inquiry is therefore not into the registrant's subjective intent, but rather into the objective manifestations of that intent. "We recognize that it is difficult, if not impossible, to prove what occurs in a person's mind, and that intent must often be inferred from the circumstances and related statement made by that person." First Int'l Serv. Corp. v. Chuckles Inc. , 5 USPQ2d 1628, 1636 (TTAB 1988). *See*, *Torres*, 1 USPQ2d at 1484-85; [FN11] *General Car and Truck*, 17 USPQ2d at 1400 ("proof of specific intent to commit fraud is

not required, rather, fraud occurs when an applicant or registrant makes a false material representation that the applicant or registrant knew or should have known was false"); Western Farmers Ass'n v. Loblaw Inc. , 180 USPQ 345, 347 (TTAB 1973).

> 2 Here, the identification of goods in the application as filed and published included two items: stents and catheters. Notwithstanding that the mark was not in use on one of the two (stents), respondent indicated when it filed its statement of use that the mark was in use on "those goods identified in the Notice of Allowance in this Application."

There were only two goods identified in the notice of allowance; the mark was either in use on both, or it was not. Respondent signed its statement of use under penalty of "fine or imprisonment, or both, . . . and [knowing] that such willful false statements may jeopardize the validity of the application or any resulting registration. . .." Statements made with such degree of solemnity clearly are -- or should be -- investigated thoroughly prior to signature and submission to the USPTO. Respondent will not now be heard to deny that it did not read what it had signed.

The undisputed facts in this case clearly establish that respondent knew or should have known at the time it submitted its statement of *1210 use that the mark was not in use on all of the goods. Neither the identification of goods nor the statement of use itself were lengthy, highly technical, or otherwise confusing, and the President/CEO who signed the document was clearly in a position to know (or to inquire) as to the truth of the statements therein. [FN12]

Respondent's explanation for the misstatement (which we accept as true) -- that the inclusion of stents in the notice of allowance was "apparently overlooked" -- does nothing to undercut the conclusion that respondent knew or should have known that its statement of use was materially incorrect. Respondent's knowledge that its mark was not in

COPR. © 2008 The Bureau of National Affairs, Inc.

use on stents -- or its reckless disregard for the truth -- is all that is required to establish intent to commit fraud in the procurement of a registration. While it is clear that not all incorrect statements constitute fraud, the relevant facts in this record allow no other conclusion. We find that respondent's material misrepresentations made in connection with its statement of use were fraudulent.

Accordingly, summary judgment is entered in petitioner's favor on the issue of fraud.

One further matter remains: in order to prevail, petitioner must establish not only a valid ground for cancellation, but must prove its standing, as well. While petitioner's allegation that its pending trademark application has been refused in view of the '883 Registration would, if proven, suffice to establish standing, petitioner has not yet submitted any evidence on this point.

Petitioner is therefore allowed until THIRTY DAYS from the mailing date of this order in which to submit a showing that there is no genuine issue of fact as to standing, and that it is entitled to judgment on the issue of standing as a matter of law. Paramount Pictures Corp. v. White , 31 USPQ2d 1768, 1775- 76 (TTAB 1994). Respondent is allowed until FIFTY DAYS from the mailing date of this order to file a response thereto, if desired. If petitioner's showing is sufficient to establish petitioner's entitlement to summary judgment on the issue of standing, summary judgment on standing will be entered in favor of petitioner and the petition for cancellation will be granted. If petitioner's showing is not sufficient on the issue of standing, proceedings will resume on that issue alone.

This proceeding remains otherwise SUSPENDED pending petitioner's response.

> FN1. Applicant filed a reply brief, which we have considered because it clarifies the issues. *See* Trademark Rule 2.127(a) (consideration of a reply brief discretionary).

> FN2. Respondent did not allege a date of first use in commerce as required by Trademark Rule 2.88(b)(1)(ii). Simultaneous with the statement of use, respondent filed a final request for an extension of time including the following statement:

Applicant believes that it has made valid use of the mark in commerce, as evidenced by the Statement of Use submitted with request; however, if the Statement of Use is found by the Patent and Trademark Office to be fatally defective, applicant will need additional time in which to file a new Statement.

> FN3. Petitioner further alleged that it is damaged by respondent's registration in that its application for the mark NIROVASCULAR was refused registration in light of the '883 Registration.

> FN4. By order dated October 31, 2002, the Board indicated that respondent's "petition for cancellation in part" was in the nature of an affirmative defense (namely, that respondent is entitled to maintain its registration, if it is allowed to delete "stents"), and was reserved for trial.

> FN5. Respondent's proposed identification of goods would read in its entirety, "medical devices, namely, neurological catheters."

> FN6. Respondent's "two affirmative attempts" appear to be (1) respondent's "petition" for cancellation in part of its own registration, *see supra* note 4, and (2) respondent's current motion to amend. Respondent does not contend that it sought to correct its identification of goods prior to registration or at any time prior to the filing of the petition for cancellation.

> FN7. Trademark Rule 2.173 requires that a registrant seeking amendment of its registration submit a (1) written and signed re-

COPR. © 2008 The Bureau of National Affairs, Inc.

quest for amendment; (2) supported by a verification or declaration under Trademark Rule 2.20; (3) the required fee (currently $100); and (4) the original certificate of registration or a certified copy thereof (if the original has been lost or destroyed). While respondent has complied with the first and third requirements, it has not filed a declaration or verification, nor has it submitted its registration certificate. Nonetheless, if respondent's motion for summary judgment was meritorious, we would likely allow respondent time to cure these defects in its motion to amend.

FN8. Trademark Rule 2.88(c) provides, in relevant part, that

[t]he statement of use may be filed only when the applicant has made use of the mark in commerce on or in connection with all of the goods or services, as specified in the notice of allowance, for which applicant will seek registration in that application, unless the statement of use is accompanied by a request in accordance with § 2.87 to divide out from the application the goods or services to which the statement of use pertains.

FN9. Needless to say, if respondent ultimately prevails on the issue of fraud, "stents" must be deleted from the registration; applicant may not maintain a registration under Trademark Act § 1 for goods upon which it has never used the mark.

FN10. Unlike the case in *Imperial Tobacco*, respondent here has not submitted an affidavit or any other evidence supporting its version of the facts surrounding its signing of the statement of use or its denial of the intent to commit fraud. However, because we are considering the question of whether to enter summary judgment in favor of petitioner, even though it has not so moved, we consider respondent's statements as we would those of a non-movant, and accept the statements as true. Cf. TBMP § 528.01, and cases cited therein ("The nonmoving party must be given the benefit of all reasonable doubt as to whether genuine issues of material fact exist; and the evidentiary record on summary judgment, and all inferences to be drawn from the undisputed facts, must be viewed in the light most favorable to the nonmoving party.").

FN11. The problem of fraud arises because Torres submitted a label that he knew *or should have known* was not in use that contained a mark clearly different from the one in use. In addition, he submitted an affidavit stating the mark was in use on wine, vermouth, and champagne when he knew it was in use only on wine.

*Torres*, 1 USPQ2d at 1485 (emphasis added).

FN12. We further note that the identification of goods -- including "stents" -- was printed on the registration certificate mailed to respondent on or about August 15, 2000. Although the certificate provided further notice that the registration covered stents, respondent did not seek to amend the identification to delete stents until after this proceeding was filed nearly two years later. *See* Space Base Inc. v. Stadis Corp.,17 USPQ2d 1216, 1219 (TTAB 1990) ("a person can commit fraud upon the Office by willfully failing to correct his or her own misrepresentation, even if originally innocent, as long as that person subsequently learns of the misrepresentation, and knows that the Office has relied upon that misrepresentation in conferring a substantive benefit upon that person to which the person knows it is not entitled." (interpreting Smith v. Olin,209 USPQ 1033 (TTAB 1981))). Respondent's failure to point out its misstatement and seek correction thereof prior to the filing of the pe-

COPR. © 2008 The Bureau of National Affairs, Inc.