# Exhibit 46

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. **08 C 526** |
| v. | ) | |
| | ) | Hon. Virginia Kendall |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | Magistrate Judge Nolan |
| Toshiharu Miyano and | ) | |
| Steven Miyano, a/k/a Shigemori | ) | |
| Miyano, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants | ) | |
| | ) | |
| | ) | |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | |
| Toshiharu Miyano and Steven | ) | |
| Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
| Counterclaim-Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Miyano Machinery USA Inc. | ) | |
| | ) | |
| Counterclaim-Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Miyano Machinery, Inc. | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## PLAINTIFF & COUNTERDEFENDANT MIYANO MACHINERY USA, INC.'S RESPONSES TO COUNTERCLAIMANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

Plaintiff and Counterdefendant Miyano Machinery USA, Inc. (hereinafter

1

referred to as "Plaintiff" or "MMU") hereby answers and objects to Counterclaimants' First Set of Interrogatories to Miyano Machinery USA, Inc. dated April 10, 2007, as follows:

## **General Objections**

A.    Plaintiff objects to these Interrogatories to the extent the instructions, definitions, or demands attempt to alter the plain meaning or understanding of any term, or attempt to impose obligations inconsistent with or beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules.

B.    Plaintiff objects to the definition of "MMU" or "Plaintiff" or "Counterdefendant(s)" as overly broad and unduly burdensome to the extent that it seeks to encompass third parties.

C.    Plaintiff objects to the definition of "MMJ" or "Counterdefendant(s)" as overly broad and unduly burdensome to the extent that it seeks to encompass third parties.  Plaintiff also objects to "MMJ" being referred to as a "Counterdefendant" rather than as Third-Party Defendant.

D.    Plaintiff objects to the term "trademarks in suit" to the extent that it seeks to limit the number of common law trademarks implicated in this litigation, the corresponding rights of which may have relevance to the validity and/or infringement of the "trademarks in suit" as defined by Counterclaimants.

E.     Plaintiff objects to these Interrogatories to the extent that they call for information or documents not within the current possession, custody, or control of Plaintiff.

F.     Plaintiff objects to these Interrogatories to the extent that they call for information that is protected by the attorney-client, work-product, or other applicable privileges. Plaintiff does not waive and intends to preserve the attorney-client privilege, the work-product privilege, and every other applicable privilege with respect to information otherwise responsive to these Interrogatories that is protected by such a privilege.

G.     Plaintiff objects to these Interrogatories to the extent they are overly broad, vague, ambiguous, oppressive, or would require an unreasonable investigation by Plaintiff.  Plaintiff further objects to these Interrogatories to the extent they impose an undue burden upon Plaintiff.  Plaintiff further objects to these Interrogatories to the extent that they exceed 25 in number, including discrete subparts, in violation of the limitations set forth in Rule 33(a).

H.     Plaintiff objects to these Interrogatories to the extent they call for information contained in communications between Plaintiff and its counsel or for the identification of documents created by its counsel.

I.     By responding to these Interrogatories, Plaintiff does not concede the relevancy, materiality, or admissibility of any response or the subject to which it relates. Plaintiff's responses are made subject to and without waiving any objections as to relevancy, materiality, or admissibility.

J.     These responses and objections are based upon the information currently available to Plaintiff.   Plaintiff therefore may modify and/or supplement these responses and objections in accordance with its obligations under Rule 26(e).

K.     Plaintiff objects to these Interrogatories on the ground that Defendants have failed in many instances to identify any time limitation that governs the Interrogatories, rendering them overly broad and unduly burdensome.

L.     By responding to these Interrogatories, Plaintiff does not adopt any of the characterizations made by Defendants in any of their Interrogatories.

M.     The applicable foregoing general objections are incorporated into each of the specific objections and responses that follow. The stating of a specific objection or response shall not be construed as a waiver of Plaintiff's general objections.

N.     Without waiving any objections herein, Plaintiff states that it is willing to meet and confer in good faith with the Defendants regarding the Interrogatories and the responses and objections herein to resolve any matters in dispute with respect thereto. In particular, where an objection is made on the grounds that a specific Interrogatory is overly broad or unduly burdensome or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence, Plaintiff is willing to meet and confer regarding reasonable limitations on the scope of the Interrogatory, and where the objection is made on the ground that a specific Interrogatory is confusing,

4

vague and/or ambiguous, Plaintiff is willing to meet and confer regarding the meaning of the Interrogatory.

### Objections & Responses

**INTERROGATORY NO. 1**

State in detail the circumstances surrounding any declaration filed on behalf of MMU in the prosecution, application or registration for each of the trademarks in suit including, but not limited to setting forth the specific information and belief(s) relied upon by George Kobayashi in filing any such declaration and identifying the person(s) and/or document(s) that are the source(s) of each such information and belief, and identify the three persons (other than Counterdefendant's counsel of record in this action) most knowledgeable about same.

**Objections/Response:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances surrounding any declaration" without providing any definition.

MMU further objects to this interrogatory to the extent that it seeks "**specific information and belief(s) relied upon by [attorney] George Kobayashi**" in filing declarations and prosecuting applications and registrations, which information and beliefs are protected by the attorney client privilege and work product doctrine.  *See Mendenhall v. Barber Greene Co.,* 531 F. Supp. 948 (N.D. Ill. 1981)(court denied on grounds of attorney client privilege defendant's motion to compel plaintiff's patent attorney "to testify as to his knowledge of claimed prior art" including "certain contract work" performed by the plaintiff more than one year before the asserted patent was filed); *See also, In Hyuk Suh v. Choon Sik Yang et al.,* 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. Nov. 18, 1997)(applying attorney privilege in context of patent applications to trademark applications).  Similarly, this Interrogatory's request

for the identification of the "**persons and/or documents that are the source(s) of each such information and belief**" relied upon by attorney George Kobayashi also seeks to disclose communications and/or information that are protected by the attorney client privilege and/or work product doctrine.

Subject to and without waving its objections, MMU answers as follows.

Circumstances surrounding the declarations filed on behalf of MMU for the four trademark registrations and one service mark application in suit are set forth below:

### U.S. Reg. No. 1,217,317 – Triangle Winged M Trademark

An application was filed on September 21, 1981 to register the Triangle Winged M trademark for use in connection with "power lathes and bar feeders and programmable controllers therefor." A drawing of the mark sought to be registered appears below:



A declaration submitted with this trademark application was signed on or around September 14, 1981 by Goro Yamaguhi as Executive Vice President of Miyano Machinery USA, Inc. The declaration stated the following:

7

The undersigned, Goro Yamaguchi, declares that:

He is Executive Vice President of the Applicant corporation and is authorized to execute this declaration on behalf of said corporation; he believes said corporation to be the owner of the mark sought to be registered; to the best of his knowledge and belief, no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto so as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; all statements made herein of his own knowledge are true and all statements made on information and belief are believed to be true; and further these statements were made with the knowledge that willful, false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United states Code and such willful, false statements may jeopardize the validity of this application or document or any registration resulting therefrom.

During the course of the prosecution of this application, the description of goods and the mark were amended. The goods description was amended to read as follows: power lathes, and bar feeders therefor. The description of the mark was amended to read as follows: [t]he Mark is composed of the word Miyano with the double winged letter "M" superimposed in a triangle." The application was approved for publication and thereafter issued as a Certificate of Registration on November 23, 1982.

A Combined Section 8 and 15 Affidavit was signed on or around April 7, 1988 by Toshiharu Miyano as President of Miyano Machinery USA, Inc., whose signature was notarized by Henry R. Marchionne. The Combined Section 8 and 15 Affidavit that was signed on or around April 7, 1988 stated as follows:

TOSHIHARU MIYANO declares and states that he is the President of Miyano Machinery (U.S.A.) Inc., an Illinois corporation, having its principal place of business at 940 North Central Avenue, Wood Dale, Illinois 60191, and is authorized to execute this affidavit on behalf of said corporation; that Miyano

Machinery (U.S.A.) Inc. owns the above-identified registration issued November 23, 1982; that the mark shown herein has been in continuous use in interstate commerce for five consecutive years from the date of the registration or the date of publication under Section 12(c) (4) to the present, on the following goods identified in the registration:

POWER LATHES;
BAR FEEDERS;

that such mark is still in use in commerce as evidenced by the specimens included herewith showing the mark as currently used; that there has been no final decision adverse to registrant's claim of ownership of such mark for such goods, or to registrant's right to register the same or to keep the same on the register, and that there is no proceeding involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts.

A check for two hundred dollars ($200.00) is enclosed.

Registrant hereby appoints Masru Funai, Helmut Eifert, Mary W. Shellenberg, Joseph S. Parisi and Edward J. Underhill, all members of the Bar of the State of Illinois and practicing under the firm name of MASUDA, FUNAI, EIFERT & MITCHELL, LTD., 134 North LaSalle, Street, Suite 1700, Chicago, Illinois, 60602, either individually or collectively, attorneys for said registrant, with full power of substitution and revocation, to file this declaration and to transact all business in the Patent and Trademark Office in connection therewith.

The specimen filed in connection with Combined Section 8 and 15 Affidavit is pictured below:



The Combined Section 8 and 15 Affidavit and at least a letter signed by Edward Underhill and dated April 19, 1988 were sent to the United States Patent and Trademark Office.  These documents were subsequently received by United States Patent and Trademark Office on May 1, 1988 and determined to satisfy the corresponding statutory requirements on October 11, 1988.

A Combined Section 8 and 9 Affidavit was caused to be filed on November 5, 2002 by attorney George Kobayashi on behalf of Miyano Machinery USA, Inc.  This declaration stated:

> The owner is using or is using through a related company the mark in commerce on or in connection with the goods/services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce.
> The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements and the like may jeopardize the validity of this document, declares that he/she is properly authorized to execute this document on behalf of the Owner; and all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.

The registrant requests that the registration be renewed for the goods and/or services identified above.

The specimen which accompanied the filing of the Combined Section 8 and 9 Affidavit is pictured below:



United States Patent and Trademark Office correspondence dated February 20, 2003 notified registrant's attorney that the Affidavit was approved for purposes of trademark renewal under Section 9 of the Lanham Act. With regard to the Section 8 portion of the Affidavit, the United States Patent and Trademark Office stated in its February 20, 2003 letter:

> Office records indicate the registration is owned by MIYANO MACHINERY (U.S.A.) INC. not MIYANO MACHINERY INC., the party who filed the Section 8 Affidavit.

On March 20, 2003, following a telephone conference with the examining attorney, attorney George Kobayashi caused to be filed in the United States Patent and Trademark Office a Certificate of Name Change verifying that Miyano Machinery USA, Inc. had changed its name to Miyano Machinery, Inc., pursuant to an amendment to the articles of incorporation filed with the Illinois Secretary of State on January 3, 1995. The Section 8 Affidavit was approved on November 3, 2003.

## U.S. Reg. No. 1,473,925 - MIYANO THE WORLD LEADER IN PRECISION

An application was filed on or around March 19, 1987 to register the trademark "MIYANO THE WORLD LEADER IN PRECISION" for use in connection with "machines and machine tools – namely, turning centers, lathes, vertical machining centers and all parts, attachments and accessories thereto."   A declaration submitted with this trademark application was signed on or around March 11, 1987 by Toshiharu Miyano as President of Miyano Machinery USA, Inc.  That declaration stated the following:

> Toshiharu Miyano states that he is the President of applicant corporation and is authorized to execute this affidavit on behalf of said corporation; he believes said corporation to be the owner of the trademark sought to be registered; to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake or to deceive; and the facts set forth in this application are true; and further, these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and such willful false statements may jeopardize the validity of the application or document or any, registration resulting therefrom.

During the course of the prosecution of this application, the description of the goods was amended.  The goods description was amended to read as follows: machines and machine tools – namely, turning centers, lathes, vertical machining centers and all parts therefor.  The application was approved for publication and thereafter issued as a Certificate of Registration on January 26, 1988.

A Combined Section 8 and 15 Affidavit was signed on or around February 8, 1993 by Toshiharu Miyano as President of Miyano Machinery USA, Inc.  The Combined Section 8 and 15 Affidavit stated:

> *Toshiharu (Tom) Miyano* declares that he is the *President* Miyano Machinery USA Inc. an Illinois corporation, having its principal place of business at 940 North Central Avenue, Wood Dale, Illinois 60191, and is authorized to execute this Declaration on behalf of said corporation; that Miyano Machinery USA Inc. owns the above-identified registration issued on January 26, 1988, as shown by records in the Patent and Trademark Office; that the mark shown herein has been in continuous use in interstate commerce for five consecutive years from the date of the registration to the present on all of the goods specified in the Certificate of Registration:
>
> **MACHINE AND MACHINE TOOLS – NAMELY TURNING CENTERS, LATHES, VERTICAL MACHINING CENTERS AND ALL PART THEREFORE.**
>
> that such mark is still in use in commerce as evidenced by the specimens included herewith showing the mark as currently used on the goods and on point of purchase displays; and there has been no final decision adverse to the Registrant's claim of ownership of such mark for such goods, or to the Registrant's right to register the same or to keep the same on the Principal Register, and that there are no proceedings involving said rights pending and not disposed of either in the Patent and Trademark Office or in the Courts.
>
> I declare further that all statements made herein are true and that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of this document and the registration to which it relates.
>
> Registrant hereby appoints Rebecca B. Lederhouse, Nancy E. Sasamoto and Joseph S. Parisi, all members of the Bar of the State of Illinois and practicing under the firm name Masuda, Funai, Eifert & Mitchell, Ltd., One East Wacker Drive, Suite 3200, Chicago, Illinois 60601-1802, either individually or collectively, attorneys for said registrant with full power of substitute and revocation to file this declaration and to transact all business in the Patent and Trademark Office in connection therewith.

13

At least the Combine Section 8 and 15 Affidavit and an accompanying letter signed by Rebecca B. Lederhouse are indicated as being received by the United States Patent and Trademark Office on February 18, 1993. The specimens which accompanied the Combined Section 8 and 15 Affidavit are pictured below:



A Combined Section 8 and 9 Affidavit was caused to be filed on March 22, 2007 by attorney George Kobayashi on behalf of Miyano Machinery USA Inc. The Affidavit was determined to satisfy the corresponding statutory requirements on April 23, 2007. This Combined Section 8 and 9 Affidavit stated:

> Section 8: Declaration of Use in Commerce
> Unless the owner has specifically claimed excusable non-use, the owner, or its related company, is using the mark in commerce on or in connection with the goods and/or services identified above, as evidenced by the attached specimen(s) showing the mark as used in commerce.

Section 9: Application for Renewal
The registrant requests that the registration be renewed for the goods and/or services identified above.

The undersigned being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C.
Section 1001, and that such willful false statements and the like may jeopardize the validity of this document, declares that he/she is properly authorized to execute this document on behalf of the Owner; and all statements made of his/her own knowledge are true and that all statements made on information and belief are believed to be true.

The specimens which accompanied the filing of the Combined Section 8 and 9 Affidavit are pictured below:



**U.S. Reg. No. 1,527,809 – Stylized Miyano**

An application was filed on or around May 2, 1988 to register the trademark, a drawing of which is pictured below, for use in connection with "machines and machine tools – namely, turning centers, lathes, vertical machining centers and all parts therefor."



A declaration submitted with this trademark application was signed on or around April 7, 1988 by Toshiharu Miyano as President of Miyano Machinery USA, Inc.  The application was approved for publication and thereafter issued as a certification of registration on March 7, 1989.

On July 1, 1988, the United States Patent and Trademark Office issued an office action stating in part the following:

> The affidavit signed by Toshiharu Miyano is not notarized.  Though it does contain some language that would satisfy the declaration requirements of 37 C.F.R. Section 2.20, it does not contain all the statements required of declarations submitted in lieu of notarized affidavits.  A comparison of the original affidavit form with the attached model declaration should illustrate the deficiencies.

The examining attorney included a declaration for execution by the applicant.  That declaration was executed by Toshiharu Miyano, President of Miyano Machinery, USA, Inc., on or around August 3, 1988 and is indicated as being received in the United States Patent and Trademark Office on August 10, 1988.  That declaration stated:

> Toshiharu Miyano being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any registration resulting therefrom, declares that the undersigned is President of Applicant corporation and is authorized to execute this instrument on behalf of said corporation; he/she believes said corporation to be the owner of the mark sought to be registered; to the best of his/her knowledge and belief no other person, firm, corporation, or

16

association has the right to use said mark in commerce, either in the identical form or in such near resemblance therto as may be likely, when applied to the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; the facts set forth in this application are true; and all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

A Combined Section 8 and 15 Affidavit was signed on or around June 21, 1994 by Toshiharu Miyano as Chairman of the Board of Miyano Machinery USA, Inc. This Affidavit is indicated as being received by the United States Patent and Trademark Office on July 12, 1994, and determined to satisfy the corresponding statutory requirements on February 13, 1995. This Affidavit stated:

Toshiharu (Tom) Miyano declares that he is the chairman of the board of Miyano Machinery USA Inc. an Illinois corporation, having its principal place of business at 940 North Central Avenue, Wood Dale, Illinois 60191, and is authorized to execute this Declaration on behalf of said corporation; that Miyano Machinery USA Inc. owns the above-identified registration issued on March 7, 1989, as shown by records in the Patent and Trademark Office; that the mark shown herein has been in continuous use in interstate commerce for five consecutive years from the date of the registration to the present on all of the goods specified in the Certificate of Registration:

**Machines and machine tools - namely, turning centers, lathes, vertical machining centers and all parts therefor**

that such mark is still in use in commerce as evidenced by the specimens included herewith showing the mark as currently used on the goods and on point of purchase displays; and there has been no final decision adverse to the Registrant's claim of ownership of such mark for such goods, or to the Registrant's right to register the same or to keep the same on the Principal Register, and that there are no proceedings involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts.

I declare further that all statements made herein are true and that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both under Section 1001 of Title 18 of the United

States Code and that such willful false statements may jeopardize the validity of this document and the registration to which it relates.

Registrant hereby appoints Amy L. Kurland, Nancy E. Sasamoto and Joseph S. Parisi, all members of the Bar of the State of Illinois and practicing under the firm name of Masuda, Funai, Eifert & Mitchell, Ltd., One East Wacker Drive, Suite 3200, Chicago, Illinois 60601-1802, either individually or collectively, attorneys for said registrant with full power of substitution and revocation to file this declaration and to transact all business in the Patent and Trademark Office in connection therewith.

The specimens which accompanied the Combined Section 8 and 15 Affidavit are pictured below:



## U.S. Reg. No. 3,328,718 – MIYANO (Standard Character Mark)

An application was filed on February 20, 2007 to register the term MIYANO as a trademark for use in connection with "machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts

therefor." On this date, attorney George Kobayashi caused to be filed a declaration with this trademark application. This declaration stated:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

The specimen submitted with the application and declaration is pictured below:



This trademark application was approved for publication in the Official Gazette on August 21, 2007 and issued as a Certificate of Registration on November 6, 2007.

**Application Serial No. 77/176,918 – Triangle Winged M Service Mark**

An application was filed on May 9, 2007 to register the Triangle Winged M service mark for use in connection with "repair and refurbishing services in connection with machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor."  A drawing of the service mark being registered which was submitted with the application is pictured below:



On May 9, 2007, a declaration submitted with this service mark application was caused to be filed by attorney George Kobayashi on behalf of the Applicant, Miyano Machinery USA, Inc.  This declaration stated:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 105l(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in

commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

The specimen submitted with the application and declaration is pictured below:



At the request of the Patent and Trademark Office, a second declaration was submitted with this service mark application. The specimen submitted with this second declaration is pictured below:



On September 13, 2007, a second declaration was caused to be filed by attorney George Kobayashi on behalf of Miyano Machinery USA, Inc.  This second declaration stated:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. § 1051 (b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; that if the original application was submitted unsigned, that all statements in the original application and this submission made of the declaration signer's knowledge are true; and all statements in the original application and this submission made on information and belief are believed to be true.

The second declaration was accepted by the United States Patent and Trademark Office, and the trademark identified in the application was published in the Official Gazette on November 20, 2007.

Extant facts and circumstances to the declarations filed on behalf of MMU, including those of George Kobayashi, are included in MMU's response to Interrogatory Nos. 2, 3, and 5.  Accordingly, MMU's response to those Interrogatories are incorporated herein by reference.

Persons knowledgeable about the circumstances surrounding the declarations associated with the applications identified above include George

Kobayashi, Tom Miyano, Hank Marchionne, Derek Olczak, Gentaro Kakumae, and Goro Yamaguchi.

**INTERROGATORY NO. 2**

State the circumstances surrounding MMU's use of each of the trademarks in suit, namely:

1. The date each of the trademarks in suit was first used on the goods or services in commerce.

2. The product or service in connection with which each of the trademarks in suit was first used.

3. The product or service in connection with which each of the trademarks in suit is currently used.

4. The manner in which each of the trademarks in suit is affixed to the goods or services.

5. The three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the use of each of the trademarks in suit.

6. Identify all documents relating to such first use of each of the trademarks in suit.

7. Identify all documents relating to current use of each of the trademarks in suit.

**Objections/Response:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory as vague and indefinite as to the term "circumstances."  MMU further objects to this Interrogatory as overly broad and unduly burdensome to the extent that it seeks "all documents relating" to each of the "first use" and "current use" of the trademarks in suit. Furthermore, to the extent that this Interrogatory seeks "all" of the foregoing documents, MMU objects to this interrogatory as seeking information and communications protected by the attorney-client privilege and work product

doctrine.    Subject to and without waiving its objections, MMU answers as follows:

**<u>TRIANGLE WINGED M DESIGN FOR GOODS & SERVICES</u>**

With respect to goods, according to information contained in the application which matured into U.S. Reg. No. 1,217,317, the Triangle Winged M trademark was first used in the United States at least as early as 1970 in connection with lathes and bar feeders.   The Triangle Winged M design was used as a trademark mark in connection with machine tools in the manner shown below:



With respect to services, according to the information contained in service mark application Serial No. 77/176918, the Triangle Winged M service mark was used in connection with repair and refurbishing services for machines and machines tools, namely, turning centers, lathes, vertical machining centers and all parts therefor.

MMU currently uses the Triangle Winged M Design as both a trademark and service mark in the United States as set forth below.

**<u>Standard Warranty Policy</u>**

At least as late as 2007, MMU used the Triangle Winged M with registration symbol (®) as a trademark on point-of-sale, standard warranty policy documents for new machines.  The Triangle Winged M appears on the top left hand side of the first page of the standard warranty policy as pictured below:



The Triangle Winged M also appears on the top left hand side of the second page of this document as pictured below:



WHICH HAVE BEEN SUBJECTED TO ABUSE, MISUSE, IMPROPER INSTALLATION, MAINTENANCE OR OPERATION, ELECTRICAL FAILURE OR ABNORMAL CONDITIONS, INCLUDING, BUT NOT LIMITED TO ABNORMAL MOISTURE, TEMPERATURE, DIRT, OR CORROSIVE MATTER, AND TO MACHINERY WHICH HAS BEEN TAMPERED WITH, ALTERED, MODIFIED, REPAIRED OR REWORKED BY ANYONE NOT APPROVED BY MIYANO. MIYANO'S SOLE EXCLUSIVE LIABILITY UNDER THIS WARRANTY SHALL BE TO REPLACE OR REPAIR AT ITS SOLE DISCRETION ANY DEFECTIVE MACHINERY OR PART THEREOF. BY ACCEPTANCE OF THIS LIMITED WARRANTY BUYER WAIVES ALL PREVIOUS CLAIMS IN TORT OR CLAIMS FOR BREACH OF ANY PREVIOUS WARRANTY ARISING FROM ANY PRIOR FAILURE OF THE MIYANO MACHINE REPAIRED OR INSPECTED.

MIYANO MACHINERY INC.

BY: *Henry Marchionne*

DATE OF DELIVERY: 1-26-01

NAME OF MODEL: BNE-51SY

MACHINE SERIAL NO: BE51031Y

DATE: 1-26-01

BUYER: AMERICAN CNC MACHINING
(Company Name)

BY: _____
(Signature)

(1-98)

The Standard Warranty Policy is presented to customers purchasing new and refurbished machine tools at the time of sale. The specific machine model and serial number are entered in the form, along with the date. The customer signs the document, and a copy is sent back to MMU in Wood Dale, Illinois. These warranty documents constitute actual trademark use in connection with the products which they pertain.

### Sale of Machines that are Refurbished and Reconditioned by MMU

The Triangle Winged M trademark also appears on machines that MMU refurbishes and reconditions and then sells to customers in the United States. Recently, MMU acquired title to and is now reconditioning a Miyano BND-34s machine. The machine was sold to DuAll Precision on February 29, 2008.

 

### Machine Tool Time Studies

MMU currently uses the Triangle Winged M with registration symbol (®), as a trademark and as a service mark, on machine tool time study sheets, which provide estimates on how a particular machine model will perform a given task. With such information, a customer can determine, among other things, whether purchasing that particular machine for the given task is appropriate. Alternatively, a customer who may already own a particular machine but is using it for another purpose can decide whether it would be cost effective and otherwise appropriate to be using it for the task identified in the time study. A representative time study for the Miyano BNE-34S3 used to manufacture a "gland" screw appears below:



**Miyano Machinery Inc.**
Main Office
940 N. Central Avenue
Wood Dale, Illinois 60191
Phone: (630) 766-4141
Fax: (630) 616-6025

## TIME STUDY

| Customer | : | | Ref No | : | 4045-1 | |
|---|---|---|---|---|---|---|
| Distributor | : CLNACY MACHINE TOOL | | Date | : | 2/15/2008 | |
| Part Name | : GLAND SCREW | | Machine Model | : | BNE-34S3 | |
| Part No. | : 7787-609 | | Cycle Time | : | 90.2 | sec |
| Material | : 15-5 PH SST | | Max Spindle Speed | : | 5000 | rpm |
| Stock Size | : 7/32 DIA BAR | | Drawn By | : | CHRIS | |
| | | | | | (Inch) | |

| No. | TRT NO. | SP DL | OVL P | Description | Max Dia. | Min Dia. | S.F. Speed (fpm) | Spindle Speed (RPM) | Cutting Length (Inch) | Feed (IPR) | Cutting Time (Sec) | Idle Time (Sec) | Total (sec) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | BAR STOP | | | | | | | | 5.0 | 5.0 |
| 2 | | | | ROUGH FACE & TURN | 0.218 | 0.180 | 100 | 1919 | 1.3 | 0.005 | 8.1 | 3.0 | 11.1 |
| 4 | | | | GROOVE TURN | 0.180 | 0.150 | 85 | 1967 | 0.3 | 0.004 | 2.3 | 3.0 | 5.3 |
| 5 | | | | ID GROOVE | 0.180 | 0.150 | 85 | 1967 | 0.2 | 0.004 | 1.5 | 3.0 | 4.5 |
| 6 | | | | OD THREAD | 0.180 | 0.180 | 45 | 955 | 3.6 | 0.0313 | 7.2 | 9.0 | 16.2 |
| 7 | | | | ROUGH MILL HEX   Z-UNIT | 0.500 | 0.500 | 150 | 1146 | 0.75 | 0.003 | 13.1 | 6.0 | 19.1 |
| 8 | | | | FINISH MILL HEX | 0.500 | 0.500 | 210 | 1604 | 0.75 | 0.003 | 9.4 | 6.0 | 15.4 |
| 9 | | | | SUBSPINDLE ADVANCE | | | | | | | | 4.0 | 4.0 |
| 10 | | | | CUT-OFF | 0.218 | 0.000 | 50 | 1752 | 0.15 | 0.002 | 2.6 | 3.0 | 5.6 |
| 11 | | | | SUBSPINDLE RETRACT | | | | | | | | 4.0 | 4.0 |
| 12 | | | X | FACE & CHAMFER | 0.180 | 0.000 | 50 | 2122 | 0.15 | 0.005 | 0.9 | 3.0 | 3.9 |
| 13 | | | X | CENTER DRILL | 0.103 | 0.103 | 30 | 1112 | 0.2 | 0.003 | 3.6 | 3.0 | 6.6 |
| 14 | | | X | DRILL | 0.103 | 0.103 | 40 | 1483 | 0.6 | 0.002 | 12.1 | 3.0 | 15.1 |
| 15 | | | X | FINISH BORE | 0.138 | 0.103 | 50 | 1585 | 0.25 | 0.003 | 3.2 | 3.0 | 6.2 |
| 16 | | | X | PARTS EJECTOR | | | | | | | | 4.0 | 4.0 |
| | | | | Sub total | | | | | | | | | 126.0 |
| | | | | Overlap time | | | | | | | | | -35.8 |
| | | TOTAL | | | | | | | | | | | 90.2 |

Note:  This time study is based on estimated cutting conditions, actual cutting conditions may vary.

| QTY. | OPTIONS NEEDED |
|---|---|
| 1 | CHIP CONVEYOR |
| 2 | Z-SPINDLE UNIT |
| 1 | HIGH PRESSURE COOLANT SYSTEM |
| 1 | MAGAZINE BAR FEED INTERFACE |

**MMU0000755**

**Triangle Winged M Mark Incorporated into Composite Mark on Miyano Ocean Machine**

MMU is also the exclusive distributor of Miyano Ocean machine tools in the United States.  Until at least as late as 2007, MMU has offered for sale, sold and shipped Miyano Ocean machine tools bearing a composite mark which incorporates the Triangle Winged M mark.  MMU stands behind these machines by providing warranty and non-warranty service and repair work for these machines after they are sold.  Photographs of a Miyano Ocean machine tool and the corresponding composite mark which support continued use of the Triangle Winged M design are pictured below:

 

**Miyano Parts Website**

MMU uses the Triangle Winged M Design as a trademark in connection with the sale of machine tool parts and part assemblies.  The Miyano parts web site is located at http://parts.miyano-usa.com, which appears first in a results list when a search is performed for the terms "Miyano" and "parts" in any internet search engine.



The Triangle Winged M appears in the top left hand corner of the Miyano parts web page as pictured below:

31



Through this web site, customers can search for machine tool parts and assemblies by product number or description and then purchase them online, as illustrated below:



### Service Uniforms

The Triangle Winged M with registration symbol (®) appears on the uniforms worn by Miyano service people when they visit customers to perform servicing, wherever that location might be in the United States. Photographs of a service man wearing the uniform and of the label showing the Triangle Winged M with registration symbol (®) appear below:





### Installation, Repair, and Refurbishing Services

MMU uses the Triangle Winged M with registration symbol (®) as a service mark in connection with a range of both warranty and non-warranty servicing of machine tools, including installation, repair, and refurbishing activities. Each service report describes the specific work performed for the customer. A representative service report on which the Traingle Winged M design appears is pictured below.

34

**SERVICE REPORT**

*104*

Miyano Machinery Inc.

^40 N. Central Avenue
^ood Dale, Illinois 60191
Phone: (630) 766-4141
Fax:    (630) 860-7266

REPORTER: *K. HAMELIN*

DATE: *6-22-07*

CUSTOMER: *HYPERTHERM INC* Tel:

*100 ETNA ROAD*

*LEBANON, NH 03766*

CONTACT PERSON: *FOSTER WHITWORTH*

DEALER: *GTW MACHINE CO* ( ) Tel: STATE

| CUSTOMER P.O. NO. | SERVICE REQ. BY |
|---|---|
| MACHINE MODEL *ABX51TH2* | SERIAL NO. *4NTH-2181* |
| CONTROL MODEL *16 I°TB* | CONTROL S/N *E06X05117* |
| SPINDLE DRIVE | INVERTOR S/N |

1. NEW INSTALLATION  2. TEST CUTTING
3. INSTRUCTION  4. ELECTRIC TROUBLE SHOOT
5. ALTER SET-UP  6. REPLACEMENT PARTS
7. ADJUSTMENT  8. CHECK-UP  9. REPAIR
10. DISASSEMBLE  11. ASSEMBLE  12. OTHER

| DATE | | | | | | |
|---|---|---|---|---|---|---|
| HOURS WORKED | | | | | | |
| HOURS TRAVEL | | | | | | |

SPECIAL OPTIONAL ATTACHMENT

WARRANTY    YES ☐  NO ☐

SERVICE REQUESTED _____

SERVICE PERFORMED *FIRST INSTALLATION INCLUDING LEVELLING AND ELECTRICAL CHECKOUT.*

| Q'TY. | PART NO. | PART NAME | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PRESIDENT OF COMPANY: | | | OWNER OF COMPANY: |
|---|---|---|---|
| ROGRAMMER | SET-UP | FOREMAN | POSSIBILITY OF NEXT MACHINE |

SERVICED BY: (Serviceman Signature)

APPROVED BY: (Customer Signature)

MMU0016678
ATTORNEY EYES ONLY

MMU offers a one year warranty in connection with the sale of new machine tools. Thereafter, services are performed on a fee for service basis. In view of the fact quality machine tool typically last for 20 years or more, non-warranty servicing offered on a fee for service basis makes up a significant part of the services and corresponding service mark use of the Triangle Winged M

design. A representative service report dated November 15, 2007 on which the Winged M Design with registration symbol (®) appears for non-warranty services is pictured below:



ATTORNEYS' EYES ONLY
MMU0007372

36

## MIYANO THE WORLD LEADER IN PRECISION (Miyano Motto Mark)

According to the Application which matured into U.S. Reg. No. 1,473,925, the Miyano Motto trademark was first used at least as early as 1985 in connection with machines and machine tools namely, turning centers, lathes, vertical machining centers and all parts therefor.

The Miyano Motto Mark appears on a label that is affixed to each new machine sold by MMU.  A picture of three such labels appears below:



## STYLIZED MIYANO MARK

According to the Application which matured into U.S. Reg. No. 1,527,809, the Stylized Miyano Mark was first used at least as early as 1988 in connection with machines and machine tools namely, turning centers, lathes, vertical machining centers and all parts therefor.

The Stylized Miyano Mark currently appears on each new machine sold by MMU. The manner in which the mark appears on new machine tools sold by MMU is illustrated below:



Other new machines on which the Stylized Miyano mark appears are seen throughout document bates numbered MMU 00026-000931.

### **PLAIN TEXT MIYANO MARK**

Based on information contained in the Applications which matured into respectively U.S. Reg. No. 1,529,343 and U.S. Reg. No. 3,328,718, the plain text Miyano trademark was first used at least as early as 1975 in connection with machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor.

One form of use supporting MMU's rights in the plain text Miyano trademark on new machines is illustrated below:



Other new machines on which the plain text Miyano trademark appears are pictured in document bates numbered MMU 00026-000931.

Individuals that are knowledgeable about the foregoing include Henry Marchionne, Derek Olczak, and Gentaro Kakumae.

39

**INTERROGATORY NO. 3**

State whether use of each of the trademarks in suit has ever been discontinued in the United States for any length of time since the date of first use and, if so, indicate the dates of each such discontinuance, whether the discontinuance was temporary or permanent, the reasons for such discontinuance, the identity of all documents relating to or referring to each such discontinuance, and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about each discontinuance.

**Objections/Response:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "use" without providing any specification or identification thereof.  MMU further objects to this Interrogatory as overly broad and unduly burdensome to the extent that it seeks the information as set forth in this Interrogatory with respect to "any" length of time "since the date of first use," an event which in all instances occurred 20 or more years ago, and further to the extent that it seeks the identification of "all" documents relating to or referring to the requested subject matter.  MMU further objects to this interrogatory as seeking information and communications protected by the attorney-client privilege and work product doctrine.  Subject to and without waiving its objections, MMU answers as follows.

Use of the trademarks in suit has never been discontinued in the United States nor have MMU's rights in such trademarks been abandoned or terminated.  With respect to the Triangle Winged M design, the precise manner in which MMU has continued to use this mark in connection with goods and services has changed.  The manner in which MMU continued to use the

Triangle Winged M is the subject of Interrogatory No. 5, the response to which is incorporated reference hereto.    Defendants are invited to review MMU's response thereto.

**INTERROGATORY NO. 4**

State in detail all bases for MMU's allegations in the letter sent on behalf of MMU by Edward Manzo to Miyanohitec Machinery, Inc. on March 30, 2007 regarding "Miyano Machinery USA Inc.'s Valuable Rights" and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

**Objections/Response:**

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to "MMU's allegations in the letter" without providing any specification or identification thereof. MMU objects to this interrogatory as the letter in question is over two pages long, single spaced, and contains many statements. This Interrogatory fails to specify which facts are in question and is objected to as being vague, overly broad and unduly burdensome. MMU also objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine. Subject to and without waving its objections, MMU answers as follows.

On March 30, 2007, Edward Manzo sent a letter to Defendants MiyanoHitec Machinery Inc. and Mr. Toshiharu Miyano alleging infringement of Miyano Machinery USA Inc.'s ("MMU's") federal and common law trademark rights. This three page letter was produced by MMU and currently bears production numbers MMU0000613-615.

Fundamentally, MMU owns trademark rights in the United States, and Defendants ("Tom Miyano, Steven Miyano, and MiyanoHitec Machinery Inc.")

announced competition with MMU using the same or similar marks on the same/similar goods, in the same or overlapping markets.

In the course of its business, MMU uses several trademarks and registered those trademarks with the United States Patent and Trademark Office. Prior to sending the letter March 30, 2007, MMU filed an application for to obtain a United States trademark registration in the plain-text word mark MIYANO. This application was assigned serial number 77/111,956. Attached to the Complaint as <u>Exhibit 1</u> was a copy of the resulting United States Trademark Registration No. 3,328,718 for the plain-text word mark MIYANO, registered for machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor. This mark was registered on November 6, 2007 and is referred to herein as the "MIYANO trademark." The registration of the plain-text MIYANO trademark provides rights in all depictions of the word "Miyano" for the goods indicated, without respect to any particular font style, size or color. This mark appears on machine tools in the form of the stylized word mark MIYANO, as discussed below.

MMU also owns United States Trademark Registration 1,527,809 for the stylized word mark MIYANO, registered for machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor. This mark was registered on March 7, 1989 and is still in force. This mark is referred to herein as the "stylized MIYANO trademark." A copy of the registration is attached to the Complaint as Exhibit 2, and the mark appears as follows:

43



MMU is the owner of United States Trademark Registration No. 1,217,317 for a winged letter "M" superimposed in an equilateral triangle. This mark was registered on November 23, 1982 and is still in force. The mark which is the subject of Reg. No. 1,217,317 is referred to herein as the "Triangle Winged M" trademark. A copy of the registration is attached was attached to MMU's Complaint as Exhibit 3, and the mark appears as follows:



MMU is also the owner of United States Trademark Registration No. 1,473,925 for the plain-text word mark MIYANO THE WORLD LEADER IN PRECISION, registered for machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor. This mark was registered on January 26, 1988 and is still in force. A copy of the registration was attached to the Complaint as Exhibit 5. This mark is referred to herein as the "Miyano motto mark." This mark has been placed on machine tools sold and distributed by MMU in the form of a sticker shown below. The Miyano motto mark also appears on letterhead, shirts, warranties and service reports.

44



Information regarding MMU's registered and applied for marks is summarized in the following chart.

| Reg. No. / Application No. | Mark | | GOODS/ SERVICES | Relevant Dates |
|---|---|---|---|---|
| **Reg. No.** 3,328,718 | MIYANO | **MIYANO** (Plain-text Mark) | **Goods** For machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefore | Filed: 2/20/07 Published: 8/21/07 Registered: 11/06/07 |
| **Reg. No.** 1,527,809 | "Stylized MIYANO" | | **Goods** For machines and machine tools - namely, turning centers, lathes, vertical machining centers and all parts therefore | Filed: 5/2/88 Registered: 3/7/89 §§8 & 15 filed: 7/12/94 (accepted 1/2/95) |
| **Reg. No.** 1,217,317 | "Triangle Winged M" | | **Goods** For power lathes, and bar feeders therefore | Filed: 9/21/81 Registered: 11/23/82 §§8 & 9 filed: 11/5/02 (accepted 11/3/03) |

| Reg. No. / Application No. | Mark | GOODS/ SERVICES | Relevant Dates |
|---|---|---|---|
| **Application No.** 77/176,918 | "Triangle Winged M" |  **Services** For repair and refurbishing services in connection with machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor | Filed: 5/9/07 Published: 11/20/07 First Use: 01/01/1970 |
| **Reg. No.** 1,473,925 | "Miyano Motto Mark" | **MIYANO THE WORLD LEADER IN PRECISION** (Plain-text Mark) **Goods** For machines and machine tools - namely, turning centers, lathes, vertical machining centers and all parts therefor | Filed: 3/19/87 Registered: 01/26/88 §§8 & 9 filed: 3/22/07 (accepted 4/23/07) |

MMU has used these trademarks and others throughout its business. MMU is the owner of these marks (for example, MMU0000026-27, MMU0000044-45, MMU0000081-82, MMU0000100-01, MMU0000112-13, MMU0000131-32, and MMU0000140-41).

The mark MIYANO is applied by MMU to machines and machine tools sold in the United States, such as lathes and machining centers (for example, MMU0000103, MMU0000040, MMU0000114, MMU0000227, MMU0000404-5, and, MMU0000818-1191). Examples of machine tools offered for sale and sold by MMU are shown below.



# BNC-20s

# BNC-34 C,S,T,A

1-5/8" bar capacity models available for U.S.A., only.



Additionally, the MIYANO mark appears prominently on the side of its headquarters building in Wood Dale (for example, MMU0000325), on business cards, on company checks (for example, MMU0000339), on the employee handbook (MMU0000327), on 3-ring binders used by the company (for example, MMU0000403, MMU0000407, MMU0009907-9909, MMU0017506-17508), on instruction books and manuals (MMU0017499 and MMU0009907-9909; Deposition of Derek Olczak, page 83), on packing slips accompanying company products ( ), on invoices (for example, MMU0000337, MMU0000752 and MMU0000754), on envelopes for correspondence (for example, MMU0000328-329), on folders used to contain literature sent to prospective customers (for example, MMU0009872, MMU0009906, MMU0001285, and, MMU0009689), on awards distributed by MMU (MMU0000240-315), on time studies (for example, MMU0008836-9369), on its website (MMU0000416-538) in advertisements (for example, MMU0000818-1315, MMU0009669, MMU0017431-17446), and on shirts worn by employees and service personnel when performing company business including servicing the precision machine tools sold by the company (MMU0000193, MMU0000239, MMU0000406, MMU0017500-03).

Since 1975, MMU has continuously used the term "Miyano" to refer to the corporation, branded its machines with the term "Miyano," and used the term "Miyano" in connection with its services. Within that period, MMU has exclusively used the term "Miyano" as trade name in connection with its business. MMU's sales in connection with the "Miyano" name generated

revenues that averaged from $18 million to $35 million per year between 1997 and 2006. Declaration of Marchionne Decl., ¶ 34. Over the same ten-year period, services rendered in connection with the "Miyano" name ranged from $200,000 to $540,000 per year. Marchionne Decl., ¶ 34; see also MMU009400-9450 and MMU0018194-MMU0020408.

MMU has used the "Miyano" name in trade journals, articles, brochures, and at trade shows. Within the last 10 years, MMU has spent on average $198,000 each year on advertising associated with the "Miyano" name. MMU has regularly participated in the major trade shows in machine tool industry, such as IMTS, WESTEC, EASTEC, and "PMTS" since 1976. In fact, attending trade shows is one of MMU's primary advertising activities, where MMU's representatives meet with customers or prospective customers and gain valuable recognition within the industry. Marchionne Decl., ¶¶ 37-43. At these trade shows, the "Miyano" trade name is prominently displayed at MMU booths and in connection with its goods (MMU0009669 and MMU0009722).



MMU spent approximately $400,000 on participating in the 2006 IMTS (MMU0021523) and plans on spending approximately $450,000 on participating in the IMTS in September 2008.  Marchionne Decl., ¶ 43.  The goodwill that MMU has obtained through all of these long-term efforts is substantial and representative of the secondary meaning MMU has acquired in the trade name "Miyano".

The distinctiveness of MMU's "Miyano" trade name is also reflected in its use by third-parties.  Numerous third-parties use the "Miyano" trade name to refer to MMU and its products. For example, a 1989 article in U.S. News and World Report refers to MMU as "Miyano." (MMU0000725-726). Articles by third-parties use the word "Miyano" to refer to machines and machine tools sold by MMU (for example, MMU0000589, MMU0000627, MMU0000642,

MMU0000725, MMU0017623-4, MMU0017787-8, and MMU0017797).   Even Defendants' counsel has often used the word "Miyano" to refer to the corporate entity MMU. (Transcript of Motion Hearing before Judge Kendall, February 7, 2008, page 9, lines 8-18).

By reason of many decades of use in a leadership position in the field of machine tools, and in particular lathes and machining centers, the mark MIYANO has become a distinctive and well-known trademark in the United States associated exclusively with MMU. As a result, MMU has separate protectable rights in the MIYANO trade name under the common law.

The Triangle Winged M trademark and the Winged M have also been used for years throughout MMU's business: on and in connection with machine tools sold in the United States (for example, MMU0000404-5, MMU0000475-535, MMU0009381-9391, MMU0009501-8,  MMU0017509-14, Deposition of Ito Exhs. 59 and 60, and Deposition of Ito pages 62-63), on warranties (for example, MMU0008577-8, MMU0008581-2,  MMU0016706-7, MMU0017067-70, MMU0017220-1, MMU0017224-5, and MMU0017357-8), on company checks (MMU0000339), on the employee handbook  (MMU0000327), on 3-ring binders used by the company (MMU0000403, MMU0000407, MMU0009907-9909, MMU0017506-17508), on packing slips and invoices (for example, MMU0000337, MMU0000752, MMU0000754, and MMU0005455), on envelopes for correspondence (MMU0000328-329), on folders used to contain literature sent to prospective customers (MMU0009872, MMU0009906, MMU0001285, and, MMU0009689), on awards distributed by MMU

(MMU0000240-315), on time studies (MMU0008836-9359), on instruction books and manuals (MMU0017499, MMU0009907-9909, Deposition of Derek Olczak, page 83), in advertisements (for example, MMU0017431-17446), and on shirts worn by employees and service personnel when performing company business including servicing the precision machine tools sold by the company (MMU0000180, MMU0000193, MMU0000239, MMU0000406, MMU0017500-03, Deposition of Derek Olczak, pages 25-26). Shirts, such as those shown in the picture below, displaying the Triangle Winged M have also been worn by MMU employees at IMTS and other tradeshows to display their affiliation with MMU (MMU00000401).





MMU services MIYANO equipment in the United States and other parts of North America, and in connection with such servicing displays the "Miyano" trade name, the Miyano Stylized Mark, Triangle Winged M mark and the

Winged M on shirts worn by service personnel and on documents they use, such as invoices (for example, MMU0000180, MMU0007268, MMU0013600, MMU0015725, MMU0015915-15982, MMU0016031, MMU0016097, MMU0016499, MMU0017500-03, and Deposition of Derek Olczak, pages 79-82).

MMU refurbishes and rebuilds MIYANO equipment in the United States and in connection with such rebuilding displays the "Miyano" trade name, the Triangle Winged M mark and Winged M on shirts worn by service personnel and on documents they use, such as invoices (for example MMU0000180, MMU0017494, MMU0005254, MMU0006489, MMU0006661, MMU0017501-03, MMU0017594, and Deposition of Derek Olczak, pages 26-27). The rebuilt machines bearing the Triangle Winged M are, at times, resold by MMU (for example MMU0017494, MMU0017504, MMU0017509-10, and Deposition of Derek Olczak, pages 26-27). MMU has also sold used/rebuilt machines bearing the Triangle Winged M via its website at www.miyano-usa.com (MMU0009381-9391, MMU0017496-7, MMU0017504, MMU0017509-10, and MMU0017518-20). MMU has been rebuilding and selling used machines since at least 2002.

Through many years of use in connection with machine tools and services, MMU has separate protectable rights in the Triangle Winged M and Winged M symbols under the common law.

MMU has invested substantial funds and efforts over decades in promoting the goodwill of its trade name, "Miyano," and its MIYANO trademark,

Triangle Winged M mark, Winged M, and stylized MIYANO trademark. Marchionne Decl. ¶¶ 32-45. *See* Response to Interrogatory Request No. 9

On at least March 30, 2007, defendants MiyanoHitec Machinery Inc. and its principals Toshiharu ("Tom") Miyano and Shigemori ("Steven") Miyano (hereinafter referred to as the "Defendants") operated a website at www.miyanohitec.com to advertise their products, services and their company. A printout of the Defendants' website on March 30, 2007 bears production number MMU0000559 and was attached as Exhibit 11 to MMU's Complaint.

On at least March 30, 2007, the header or title of the website was indicated as "MiyanoHitec Machinery, Inc." Defendants used a Winged M design on the website. This design resembles a letter "M" with wings extending outward from either side. Defendants' Winged M is nearly identical to the Winged M component of plaintiff MMU's Trademark Registration No. 1,217,317. A copy of the Winged M that Defendants display prominently on at least their folders, promotional literature, and website is as follows:



On at least March 30, 2007, the title of Defendants' website was "MIYANOHITEC MACHINERY, INC.," and the website included the following statement:

**About MIYANOHITEC**

MIYANOHITEC, established in March of 2005.
We go back to 1899 for the full history from Tsunoda Metal Works (in Japan)-> Miyano Metal Works (in Japan) -> Miyano Machinery, Inc. (in Japan)(*1)-> MIYANOHITEC MACHINERY, INC.. With over 100 years of history.

*1: On June 2003, our family gave up the ownership of Miyano Machinery, Inc.(in Japan) owned with a Japanese Citizenship. We re-established again a new machine company by the name of "MIYANOHITEC MACHINERY, INC." as an U.S. based company owned by an American citizenship.

**SERVICE**

We Supply various production systems such as a CNC-Lathe, Machining Center, CNC-Grinders and more.
We provide High-End Quality machines and very reasonable cost machines also.
We also have the capability for creating CNC-Lathes and Machining-Center systems.

**About MIYANOHITEC**

MIYANOHITEC, established in March 2005. We go back to 1899 for the full history from Tsunoda Metal Works (in Japan) -> Miyano Metal Works (in Japan) -> Miyano Machinery, Inc. (in Japan)(*1) -> MIYANOHITEC MACHINERY, INC.. With over 100 years of history.

*1 On June 2003, our family gave up the ownership of Miyano Machinery, Inc. (in

Japan) owned with a Japanese Citizenship. We re-established again a new machine company by the name of "MIYANOHITEC MACHINERY, INC." as an U.S. based company owned by an American citizenship.

**SERVICE**
We Supply various production systems such as a CNC-Lathe, Machining Center, CNC-Grinders and more. We provide High-End Quality machines and very reasonable cost machines also. We also have the capability for creating CNC-Lathes and Machining-Center systems. (MMU00000559)

On at least March 30, 3007, Defendants indicated on their website under the heading "Service" that they "Supply [sic] various production systems including CNC-Lathe, Machining Center, CNC Grinders and more." (MMU00000559) Additionally, Defendants stated that they "provide High-End Quality machines and very reasonable cost machines also." (MMU00000559). Defendants' website also indicated that they supply design services.

Prior to the March 30, 2007 letter, Defendants handed out business cards such as the one pictured below:



(MMU0000553)

The business card indicates that the Tom Miyano is the CEO and Director of defendant MiyanoHitec. The website and business cards also state that Defendants' headquarters is located within the same geographical region as MMU. Defendants indicated that they intend to sell and advertise goods which are same as those of MMU.

15 U.S.C. §1114 in part provides a civil remedy for infringement of registered marks. Specifically, section 1114 states that:

> Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

In addition to the remedies provided by § 1114, 15 U.S.C. § 1125 provides for civil remedies for infringement of any word, term, name, symbol or device, or any combination thereof.  Specifically, section 1125 states:

> (a) Civil action
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause **confusion**, or to cause **mistake**, or to **deceive** as **to the affiliation**, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Confusion, deception, or mistake is likely to occur between MMU and Defendants as pointed out by defense counsel (Transcript of Motion Hearing before Judge Kendall, February 7, 2008, page 8 lines 13-15), by the Defendants' use of the word "Miyano."  With regard to MMU's registered Triangle Winged M mark, the "winged M," which is superimposed on the triangle, is a salient or dominant portion of the mark.  Defendants' mark is identical to the winged M in MMU's registered mark.  Defendants' use of the word "Miyano" is likely to cause confusion, or to cause mistake, or to deceive as

to the affiliation, connection, or association between MMU and Defendants when there is no such connection or association.

Defendants deliberately promoted confusion, mistake and deception by claiming as its own the history of MMU or its Japanese parent company, when in fact there is no relationship or affiliation between these companies. Defendants asserted the corporate history of MMU on their website and then stated that they had "re-established a new company in the name of 'MIYANOHITEC MACHINERY, INC.'"

Visually, Defendants incorporate MMU's trademark and trade name. Phonetically, the dominant portions of MMU's MIYANO trademark and trade name and Defendants' corporate name are indistinguishable. To the extent one actually notices the slight difference in the name, one would likely conclude (in error) that MiyanoHitec Machinery, Inc. is a parent, subsidiary, or sister company to Miyano Machinery USA Inc.

MMU's Stylized mark MIYANO is registered for machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor. MMU's Triangle Winged M mark is registered for lathes, and has been used in close association with MMU's repair and refurbishment services. Prior to letter of March 30, 2007, MMU also had strong common law rights in the word "Miyano." MMU and Defendants both sell or offer for sale machine tools, such as multi-axis machines, CNC lathes and turning machines. Additionally, MMU's Triangle Winged M trademark and the Defendants' mark are applied to or used in association with identical goods and services. Both companies

offered services in connection with machine tools. Both companies offer design services for developing customized machine tools. Given at least these factors in March of 2007, there was (and continues to be) a likelihood of confusion, deception or mistake as to the affiliation, connection, or association between MMU and Defendants.

## INTERROGATORY NO. 5

State in detail the circumstances surrounding Counterdefendants' selection, adoption, development, continued use or resumption of use of each of the trademarks in suit for use by you on any product and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about same.

**Objections/Response:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory as overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence relevant to a claim or defense of either party to the extent it seeks details concerning events and activities that took place decades ago for "each of the trademark in suit for use by [MMU] on any product." MMU further objects to this interrogatory as seeking information and communications protected by the attorney-client privilege and work product doctrine. Subject to and without waiving its objections, MMU answers as follows.

### TRIANGLE WINGED M on GOODS (U.S. Reg. No. 1,217,317)

According the trademark file history for U.S. Registration No. 1,217,317, the Triangle Winged M design was first used by MMU at least as early as 1970. Such use included use in connection with power lathes and bar feeders. On information and belief, MMU has used this design as a trademark continuously on or in connection with various goods, including machine tools and related parts.

MMU sold new Miyano brand machine tools bearing the Triangle Winged M design until the late 1990's. Prior to and continuing thereafter, MMU

continued to use the Triangle Winged M as a trademark in connection with the sale of new machine tools.

### **Standard Warranty Policy**

Such continued use consisted of use of the design with the trademark registration symbol (®) on point-of-sale, standard warranty policy documents for new machines. The Triangle Winged M appeared on the upper left hand side of this point-of-sale document as pictured below:



Miyano Machinery Inc.

Main Office
940 N. Central Avenue
Wood Dale, Illinois 60191
(630) 766-4141

This same registration symbol (®) also appears on the top of the second page of this point-of-sale document, as pictured below:



WHICH HAVE BEEN SUBJECTED TO ABUSE, MISUSE, IMPROPER INSTALLATION, MAINTENANCE OR OPERATION, ELECTRICAL FAILURE OR ABNORMAL CONDITIONS, INCLUDING, BUT NOT LIMITED TO ABNORMAL MOISTURE, TEMPERATURE, DIRT, OR CORROSIVE MATTER, AND TO MACHINERY WHICH HAS BEEN TAMPERED WITH, ALTERED, MODIFIED, REPAIRED OR REWORKED BY ANYONE NOT APPROVED BY MIYANO.  MIYANO'S SOLE EXCLUSIVE LIABILITY UNDER THIS WARRANTY SHALL BE TO REPLACE OR REPAIR AT ITS SOLE DISCRETION ANY DEFECTIVE MACHINERY OR PART THEREOF.  BY ACCEPTANCE OF THIS LIMITED WARRANTY BUYER WAIVES ALL PREVIOUS CLAIMS IN TORT OR CLAIMS FOR BREACH OF ANY PREVIOUS WARRANTY ARISING FROM ANY PRIOR FAILURE OF THE MIYANO MACHINE REPAIRED OR INSPECTED.

MIYANO MACHINERY INC.                           DATE: _1-26-01_____

BY: _Henry Marchionne_                          BUYER: _AMERICAN CNC MACHINING_
                                                              (Company Name)
DATE OF DELIVERY: _1-26-01_

NAME OF MODEL: _BNE-51SY_                        BY: _____
                                                              (Signature)
MACHINE SERIAL NO: _BES1031Y_

(1-98)

MMU continued to issue the point of sale, standard warranty policy showing the Triangle Winged M design with registration symbol (®) until at least as late as 2007.  Representative, supporting documents for the foregoing are identified below:

| Bates Range | Machine Model No. | Machine Serial No. | Date |
|---|---|---|---|
| MMU0017513-14 | LZ-01R | LZ1R0430; LZ1R0431; LZ1R0432 LZ1R0433 | 10/21/03 |
| MMU0008429-30 | BND-34S5 | BD610095 | 2/16/06 |

63

| MMU0008577-78 | BX-265 | 4MBX0045 | 8/4/06 |
| MMU0016706-07 | ABX51TH2 | 4NTH0095 | 8/16/06 |
| MMU0008053-54 | ABX51TH2 | 4NTH0054 | 12/21/06 |
| MMU0016632-33 | ABX51TH2 | 4NTH2133 | 1/26/07 |
| MMU0016643-44 | BX26 | 4MBX0046 | 1/26/07 |
| MMU0016638-39 | ABX51TH2 | 4NTH2126 | 2/2/07 |
| MMU0016652-53 | ABX51TH2 | 4NTH2142 | 2/2/07 |
| MMU0015849-50 | BNE-515Y | BE55276Y | 7/20/07 |
| MMU0015802-03 | BND515Y2 | 2WY20060 | 11/1/07 |
| MMU0007498-99 | ABX64TH2 | 4NTH2156 | 11/26/07 |
| MMU0016918-19 | BND51C2 | 2SX85725 | 12/17/07 |

**Triangle Winged M Mark Incorporated into Composite Mark on Miyano Mectron Machine**

MMU is also the exclusive distributor of Miyano Mectron machine tools in the United States.  Since 2002, MMU has offered for sale, sold, and shipped several MIYANO Mectron machines bearing a composite mark which incorporates the Triangle Winged M mark.  MMU stands behind these machines by providing warranty and non-warranty service and repair work on them after they are sold.  Photographs of a Miyano Mectron MTV machine and the corresponding composite mark which support continued use of the Triangle Winged M design are pictured below:



64

As of May 2008, these machines continue to be advertised on MMU's website at

http://www.miyano-usa.com/products.asp?type=Drill/Tapping%20Machine.

The following chart identifies the model, the customer that received the

MIYANO MTV machine, the shipment date and the customer's location.

| Model | Shipment Date | Customer's Location |
|---|---|---|
| MTV-T450 | 01/17/2002 | Michigan |
| MTV-C310 | 02/04/2002 | Minnesota |
| MTV-T350 | 04/05/2002 | Connecticut |
| MTV-C350 | 04/09/2002 | Indiana |
| MTV-T310 | 04/12/2002 | Minnesota |
| MTV-T310 | 04/12/2002 | Minnesota |
| MTV-T310 | 04/16/2002 | Minnesota |
| MTV-T310 | 05/08/2002 | Minnesota |
| MTV-C350 | 07/24/2002 | Michigan |
| MTV-C310 | 07/29/2002 | Minnesota |
| MTV-T450 | 12/11/2002 | Illinois |
| MTV-T450 | 12/12/2002 | Ohio |
| MTV-T350 | 2/26/2003 | Ohio |
| MTV-T310 | 3/17/2003 | Minnesota |
| MTV-C410 | 8/1/2003 | Ohio |
| MTV-C350 | 9/26/2003 | Indiana |
| MTV-C410 | 10/24/2003 | Virginia |
| MTV-T310 | 12/18/2003 | Minnesota |
| MTV-C410 | 4/15/2004 | Michigan |
| MTV-C410 | 5/11/2004 | Michigan |
| MTV-T351A | 5/24/2004 | North Carolina |
| MTV-C410 | 6/4/2004 | Michigan |
| MTV-C310 | 7/9/2004 | Florida |
| MTV-C350 | 8/20/2004 | Indiana |
| MTV-T310 | 1/13/2005 | California |
| MTV-C410 | 6/10/2005 | Indiana |
| MTV-C350 | 7/21/2005 | Minnesota |
| MTV-T310 | 12/9/2005 | Minnesota |

**Triangle Winged M Mark Incorporated into Composite Mark on Miyano Ocean Machine**

MMU is also the exclusive distributor of Miyano Ocean machine tools in the United States.  From 2001 until 2007, MMU offered for sale, sold, and shipped Miyano Ocean machine tools bearing a composite mark which incorporates the Triangle Winged M mark.  MMU stands behind these machines by providing warranty and non-warranty service and repair work on them after they are sold.  Photographs of a Miyano Ocean machine tool and representative and the corresponding composite mark which support continued use of the Triangle Winged M design are pictured below:

 

### Miyano Parts Website

MMU's use of the Triangle Winged M Design as a trademark in connection with the sale machine tool parts and part assemblies, as discussed and illustrated in its response to Interrogatory No. 2, reflects a continued trademark use of the Triangle Winged M design.   MMU's response to Interrogatory No. 2 with respect to the Miyano Parts Website is incorporated herein by reference.

### TRIANGLE WINGED M ON SERVICES

According the trademark file history for Application No. 77/176,918 for use of the Triangle Winged M in connection with repair and refurbishing services for machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor.   Continued use of the Triangle Winged M design as a service mark is supported the Miyano service personnel's use of the shirt pictured below, which is a photograph taken likely between the early to mid-1990's. The shirt appearing in the picture was worn by both production and service personnel at least as early 1990. The shirt shown below was worn by service personnel when performing repairs at a customer's location.   The Triangle Winged M design is incorporated into a composite mark which adds the "USA" in between the Winged M at the tip of the triangle and the word Miyano which appears at the base of the triangle.



As discussed in response to Interrogatory No. 2 (which is incorporated by reference), the core Triangle Winged M design has continued through to date and appears in the current service employee uniform pictured below:





The range of services which MMU has continued to offer in connection with Triangle Winged M design includes both warranty and non-warranty services extending from installation and general repair to machine rebuilding and refurbishment.

As noted in MMU's response to Interrogatory No. 2, MMU offers a one year warranty in connection with the sale of new machine tools.  Thereafter, services are performed on a fee for service basis.  In view of the fact that quality machine tool will typically last 20 years or more, non-warranty servicing offered on a fee for service basis makes up a significant part of the continued service mark use of the Triangle Winged M design.

69

**MIYANO THE WORLD LEADER IN PRECISION (Miyano Motto Mark)**

According to the Application which matured into U.S. Reg. No. 1,473,925, the Miyano Motto trademark was selected and adopted at least as early as 1985 in connection with machines and machine tools namely, turning centers, lathes, vertical machining centers and all parts therefor.

The Miyano Motto Mark appears on a label that is affixed to each new machine sold by MMU.  A picture of three such labels appears below:



The Miyano Motto Mark also appears on point-of-sale, standard warranty policies.

**STYLIZED MIYANO MARK**

According to the Application which matured into U.S. Reg. No. 1,527,809, the Stylized Miyano Mark was selected and adopted at least as early as 1988 in connection with machines and machine tools namely, turning centers, lathes, vertical machining centers and all parts therefor.

Representative continued use of the Stylized Miyano Mark appears throughout Exhibit M to the Declaration of Hank Marchionne and in documents bates numbered as MMU00926-00931, which illustrate respectively, the 1986 and 2007 product line.

### PLAIN TEXT MIYANO

According to the Applications which matured into respectively U.S. Reg. No. 1,529,343 and U.S. Reg. No. 3,328,718, the plain text Miyano trademark was first used at least as early as 1975 in connection with machines and machine tools, namely, turning centers, lathes, vertical machining centers and all parts therefor.

One form of representative continued use which supports MMU's rights in the plaint text Miyano mark appears throughout Exhibit M to the Declaration of Hank Marchionne and in MMU 00926-00931, which illustrate respectively, the 1986 and 2007 product line.

Persons knowledgeable about the foregoing include Henry Marchionne and Derek Olczak.

**INTERROGATORY NO. 6**

State in detail the circumstances surrounding any allegation by Counterdefendants that Counterdefendants have the right to adopt, use and/or register or prevent others from adopting, using and/or registering each of the trademarks in suit and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

Objection/Response:

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstance" without providing any specification or identification thereof. MMU further objects to this Interrogatory as being vague, overly broad and unduly burdensome.   MMU objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine.   Subject to and without waving its objections, MMU answers as follows.

In the United States, MMU owns both federal registrations and common law rights in the term "Miyano," the Triangle Winged M, and the Miyano Motto mark.   Under these rights, MMU may prevent others from adopting, using and/or registering business names, corporate names, or marks which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of MMU with another person, or as to the origin, sponsorship, or approval of MMU as to goods, services, or commercial activities by another person.    MMU incorporates by reference its answers to

Interrogatories 2-5, 9, and 10, which explain and identify documents related to MMU's long standing federal and common law rights.

MMU owns the federal registrations for the Triangle Winged M mark (U.S. Reg. No. 1,217,317), Stylized Miyano trademark (U.S. Reg. No. 1,527,809), and the Miyano motto mark (U.S. Reg. No. 1,473,925). MMU also owns United States Trademark Registration No. 3,328,718 for the plain-text word mark MIYANO.

15 U.S.C. § 1115(a) states that these federal registrations shall be:

> admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration

The federal registrations for the Triangle Winged M mark (U.S. Reg. No. 1,217,317), Stylized Miyano trademark (U.S. Reg. No. 1,527,809), and the Miyano motto mark (U.S. Reg. No. 1,473,925) are incontestable under 15 U.S.C. § 1065. Under 15 U.S.C. § 1115(b) each incontestable registration shall be:

> conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065 of this title,

15 U.S.C. §1114 in part provides a civil remedy for infringement of registered marks.  Specifically, section 1114 states that

> Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

In the Untied States, MMU has long-standing common law rights in the Triangle Winged M mark, the Winged M, the "Miyano" trade name and mark, the Stylized Miyano mark, and the Miyano motto mark.  In addition to the remedies provided by § 1114, 15 U.S.C. § 1125 provides for civil remedies for infringement of any word, term, name, symbol or device, or any combination thereof.  Specifically, section 1125 states:

> (a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In addition to the remedies provided by federal law, § 815 ILCS §510/2 provides for civil remedies for infringement.  Specifically, section § 815 ILCS §510/2 states:

Sec. 2. Deceptive trade practices. (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship,
approval, characteristics, ingredients, uses, benefits,
or quantities that they do not have or that a person
has a sponsorship, approval, status, affiliation, or
connection that he or she does not have…

The persons knowledgeable include MMU, Henry Marchionne, Gentaro Kakumae.

**INTERROGATORY NO. 7**

State in detail the circumstances surrounding any allegation by Counterdefendants that Counterclaimants do not have the right to use Counterclaimants' business name, family name or marks and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

**Objections/Response:**

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstance" without providing any specification or identification thereof. MMU further objects to this Interrogatory as being vague, overly broad and unduly burdensome. MMU objects to the extent Defendants request MMU to prove a negative or absence of fact. MMU further objects to the extent that Defendants seek to shift the burden of proof to MMU for affirmative defenses alleged by Defendants. MMU objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine. MMU further objects to this interrogatory to the extent that it seeks legal conclusions. Subject to and without waving its objections, MMU answers as follows.

In the United States, Defendants do not have the right to use their business name ("TOM & STEVEN MIYANO MACHINERY"), family name (MIYANO) or marks, because the business name, family name and marks are being used as marks and are likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of

Defendants with MMU, or as to the origin, sponsorship, or approval of Defendants' goods.

Defendant Tom Miyano was a former stockholder, CEO and president of MMU. He voluntarily relinquished his ownership of MMU, left MMU, and joined MiyanoHitec Machinery, Inc. (MHU000195, MMUO000611). At least as of February 29, 2008, defendant Tom Miyano was being held out as the Director and CEO of defendant MiyanoHitec. (Defendants' Answer, ¶ 41).

Defendants operate a competing business under the corporate name "MiyanoHitec Machinery Inc." Defendants state they adopted their corporate name on November 3, 2006. Defendants have also adopted the business/trade name "Tom & Steven Miyano Machinery." While Defendants deny having adopted the trade name "Tom & Steven Miyano Machinery" (¶¶ 51, 52), Defendants' counsel represented that "they were using the trade name Tom & Steven Miyano" (Transcript of Motion Hearing before Judge Kendall, February 7, 2008, page 9, lines 22-25). In a letter dated April 19, 2007, Defendants represented that were "now doing business as Tom & Steven Miyano Machinery* {MIYANOHITEC MACHINERY, INC.}." (MMU0000620-1). Thereafter, the "Tom and Steven Miyano Machinery" business name appeared on Defendants' website. Defendants have used their infringing corporate name, MiyanoHitec Machinery Inc., and trade name, Tom and Steven Miyano Machinery, for less than two years.

Individual defendants Tom and Steven Miyano have negligible interests in the use of the "Miyano" name. Prior to operating as MiyanoHitec Machinery,

Inc. and Tom & Steven Miyano Machinery, Defendants operated under a different corporate name -- "Hitec Machinery International, Inc." Thus, Defendants' identity interests are negligible, as they operated under a different name for more then a year. There is no suggestion that the machine tool industry is an industry in which an individual proprietor's personal presentation of goods plays a key commercial role. Moreover, Defendants undoubtedly knew of MMU's trademarks and trade name prior to officially changing their corporate name to MiyanoHitec Machinery, Inc. and adopting, in conjunction with the foregoing, the additional business name of "Tom & Steven Miyano Machinery."

Defendants also use a Winged M symbol on their website, promotional materials, folders and elsewhere (MHU000452). Defendants' Winged M design is identical to the winged M design component of MMU's Triangle Winged M trademark. (Defendants' Answer to the Complaint, ¶ 48). Prior to the selection of the of the Winged M symbol, Defendants used a logo which consisted of a winged letter "H" superimposed in a triangle along with the word "HITEC." Defendants applied for a federal registration of this mark on July 15, 2005 (Application No. 78/671,380, now abandoned). Defendants' previous triangle mark is pictured below.



Defendants used the above Triangle mark on at least their business cards in November 2006 (MMU0017490) and presumably prior thereto. Defendants' Triangle mark has the same elements in the same arrangement as MMU's registered Triangle Winged M mark, shown below.



Defendants were well aware of MMU's registered Triangle Winged M trademark at the time they filed their registration for the Triangle Winged H mark with the United States Trademark Office.

Defendants have little investment in "Miyano" and the Winged M. They have no products actually on the market yet, so far as presently known. At this early stage, they can easily choose a different, well-differentiated name and mark. Defendants instead chose marks that capture the dominant portions of MMU's marks. Defendants were warned that their marks infringe upon the

marks held by MMU. Defendants have no right to use their surname in a fashion which is likely to cause confusion, mistake, or deception.

Defendants operate identical websites at http://miyanohitec.com and http://hitecmachinery.com. Defendants have utilized their websites in attempts to usurp the goodwill of the MMU and its parent company, Miyano Machinery Inc., by claiming company history of Miyano Machinery Inc. as their own. Defendants modified their website at http://miyanohitec.com by removing the company history and adding a disclaimer, only after receiving a receiving MMU's cease-and-desist letter (MMU0000613-5). Currently, the disclaimer is the smallest font of any text which is displayed (MMU0000600).

On at least March 30, 2007, the title of Defendants' website was "MIYANOHITEC MACHINERY, INC.," and the website included the following statement:

**About MIYANOHITEC**

MIYANOHITEC, established in March of 2005.
We go back to 1899 for the full history from Tsunoda Metal Works (in Japan)-> Miyano Metal Works (in Japan) -> Miyano Machinery, Inc. (in Japan)(*1)-> MIYANOHITEC MACHINERY, INC.. With over 100 years of history.

*1: On June 2003, our family gave up the ownership of Miyano Machinery, Inc.(in Japan) owned with a Japanese Citizenship. We re-established again a new machine company by the name of "MIYANOHITEC MACHINERY, INC." as an U.S. based company owned by an American citizenship.

MIYANOHITEC, established in March 2005. We go back to 1899 for the full history from Tsunoda Metal Works (in Japan) -> Miyano Metal Works (in Japan) -> Miyano Machinery, Inc. (in Japan) -> MIYANOHITEC MACHINERY, INC. With over 100 years of history.

*1 On June 2003, our family gave up the ownership of Miyano Machinery, Inc. (in Japan) owned with a Japanese Citizenship. We re-established again a new machine company by the name of "MIYANOHITEC MACHINERY, INC." as an U.S. based company owned by an American citizenship. (MMU0000559)

A copy of Defendants' website on April 20, 2007 displayed the following:

82

**About TOM & STEVEN MIYANO MACHINERY**
Incorporated as "MIYANOHITEC MACHINERY, Inc." and established in March of 2005.
We go back to 1899 for the full history from Tsunoda Metal Works (in Japan) >> "Tom & Steven Miyano Machinery" (MIYANOHITEC MACHINERY, Inc.). With over 100 years of history."

*2. In June 2003, our family gave up the ownership of Miyano Machinery, Inc. in Japan and the United States. We established a new machine company operating as "TOM & STEVEN MIYANO MACHINERY" incorporated in the U.S. as MIYANOHITEC MACHINERY, Inc.

**About TOM & STEVEN MIYANO MACHINERY**
Incorporated as "MIYANOHITEC MACHINERY, Inc."
and established in March of 2005.
We go back to 1899 for the full history from Tsunoda Metal
Works (in Japan) >> "Tom & Steven Miyano
Machinery" (MIYANOHITEC MACHINERY, Inc.). With
over 100 years of history."

*2. In June 2003, our family gave up the ownership
of Miyano Machinery Inc. in Japan and the United
States. We established a new machine company
operating as "TOM & STEVEN MIYANO
MACHINERY" incorporated in the U.S. as
MIYANOHITEC MACHINERY, Inc.

(MMU00000558, MHU000450)

On their website, Defendants stated that they had "re-established a new company in the name of 'MIYANOHITEC MACHINERY, INC.'" Soon thereafter, Defendants received a cease-and-desist letter from MMU, dated March 30, 2007, concerning Defendants' use of MMU's trade name and the dominant portion of its Triangle Winged M mark. On April 20, 2007, Defendants' website displayed a modified version of the preceding quoted language, instead stating

that they "established a new company operating as 'TOM & STEVEN MIYANO MACHINERY' incorporated in the U.S. as MIYANOHITEC MACHINERY, INC.".

At some point after April 20, 2007, Defendants' modified their website to display even more prominently the "Miyano" trade name, "Miyano Machinery" trade name, and Winged M mark.   A copy of the "header" at the top of Defendants' website appears as follows:



Currently, Defendants' website displays the trade name "Tom & Steven Miyano Machinery," which they use with the corporate name MiyanoHitec Machinery, Inc. Defendants also state on their website that they "supply various CNC production system [sic] ranging from max. load 8 tons to 5 axis multi palette Jig Borers, precision Gear Shaving machines, to ordinary CNC Lathes, Machining Centers, CNC Grinding machines from High-End Quality machines to very reasonable cost machines." (Defendants' Answer to Complaint, ¶ 55). The website also currently displays the Winged M symbol.

The stated business of defendant MiyanoHitec Machinery, Inc. will be to manufacture and distribute machine tools, such as CNC lathes and related components and equipment. (Defendants' Answer to Complaint, ¶ 46). Defendants' stated business is directly competitive to MMU, which currently sells and has sold multi-axis machines, CNC lathes, machining centers, and drilling and tapping machines.

Both MMU and Defendants are selling or distributing their products to customers in the United States.  Like MMU, Defendants are sponsoring booths at trade shows to develop customer relations and establish a presence in the industry.  For example, Defendants are sponsoring a booth sizable enough to display several machine tools at the upcoming INTERNATIONAL MANUFACTURING TECHNOLOGY SHOW ("IMTS") that will be held in Chicago in September 2008. Defendants intend to exhibit at IMTS (Defendants' Answer to Complaint, ¶ 60). Defendants have registered their booth under their corporate name, securing an alphabetical listing directly prior to MMU (MMU0000380).

Defendants' assigned booth is located in the very same area as MMU's booth. MMU's booth is simply labeled on the trade show floor map as "Miyano," while Defendants' booth is labeled as "Miyano Hitec" (with "Miyano" being displayed separate and above the word "Hitec"). (MMUO000734) An excerpt from the IMTS floor map is shown below.



**MMU's Booth**        **Defendants' Booth**

On Defendants' IMTS exhibitor information webpage, they indicate that their trade name is "Tom & Steven Miyano Machinery." There is no disclaimer or notice on Defendants' exhibitor webpage.

MMU owns valid registrations, many of which are incontestable, in the trademarks-in-suit. These registrations include U.S. Registration No. 3,328,718, U.S. Registration No. 1,527,809, U.S. Registration No. 1,217,317, U.S. Registration No. 1,473,925, and U.S. Application No. 77/176,918. As stated in response to the Interrogatory No. 10 herein (which are incorporated by reference), defendant Tom Miyano signed many of these applications and declarations associated with the application and maintenance of these marks. In doing so, defendant Tom Miyano consented to the exclusive ownership, use and registration by MMU of the term "Miyano." The registration are prima facie evidence of the validity of the registered marks, of MMU's ownership of the marks, and of MMU's exclusive right to use the registered mark in commerce on or in connection with the goods or services.

15 U.S.C. §1114 provides a remedy for infringement of registered marks. Specifically, section 1114 states that

> Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause

> confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

Since at least 1975, MMU has consistently referred to itself as "Miyano." Others in the industry use the term "Miyano" to refer to MMU. Within the United States, the term "Miyano" has become associated with MMU. The term "Miyano" is the trade name of MMU and symbolizes the goodwill and quality associated with MMU. Additionally, MMU has common law rights in the trademarks in suit, which extend back over 20 years.   For example, the Triangle Winged M mark and stylized Miyano mark have been used on or in connection with machine tools by MMU in the United States since at least 1986 (MMU0000409-414).   Miyano has protectable common law rights in its Triangle Winged M mark and "Miyano" trade name and mark.

In addition to the remedies provided by § 1114, 15 U.S.C. § 1125 provides for civil remedies for infringement of any word, term, name, symbol or device, or any combination thereof.   Specifically, section 1125 states:

> (a) Civil action
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of such person with another person, or as
to the origin, sponsorship, or approval of his or her
goods, services, or commercial activities by another
person, or

(B) in commercial advertising or promotion,
misrepresents the nature, characteristics, qualities, or
geographic origin of his or her or another person's
goods, services, or commercial activities,
shall be liable in a civil action by any person who
believes that he or she is or is likely to be damaged by
such act.

MMU's MIYANO trademark, trade name, and Triangle Winged M mark
are strong, as evidenced by the long period of use by MMU and evidence of
secondary meaning. As a result of MMU's extensive use, advertising and
promotion, it has developed valuable goodwill in MMU's MIYANO trademark,
"Miyano" trade, name and Triangle Winged M mark, which are widely
recognized in the industry (*See* Responses to Interrogatory Nos. 4 and 9).  The
Triangle Winged M mark is a continuing protectable asset of MMU.

In addition to the remedies provided by federal law, § 815 ILCS §510/2
provides for civil remedies for infringement.  Specifically, section § 815 ILCS
§510/2 states:

Sec. 2. Deceptive trade practices. (a) A person engages
in a deceptive trade practice when, in the course of his
or her business, vocation, or occupation, the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of
misunderstanding as to the source, sponsorship,
approval, or certification of goods or services;

(3) causes likelihood of confusion or of
misunderstanding as to affiliation, connection, or
association with or certification by another;

(4) uses deceptive representations or designations of
geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship,
approval, characteristics, ingredients, uses, benefits,
or quantities that they do not have or that a person
has a sponsorship, approval, status, affiliation, or
connection that he or she does not have...

Any rights asserted by Defendants by virtue of a foreign registration
(allegedly) inherited from Sumiko Miyano in fact properly belong to MMJ.  Prior
to defendant Tom Miyano's departure, he signed (by affixing his hanko) an
Agreement with Miyano Machinery, Inc. and Industrial Revitalization
Corporation of Japan (IRCJ) (MHU000259-64).  Defendant Tom Miyano signed
this agreement on April 5, 2005.  In the agreement, Tom Miyano agreed to pay
92,374,130 Japanese Yen in exchange for inherited assets listed in the
attached schedule (List of Inheritance Assets).  In a prior Memorandum of
Understanding, which was incorporated into the final agreement, defendant
Tom Miyano warranted that the List of Inheritance Assets represented all the
property and debts to be inherited by him from Sumiko Miyano (MHU000340-
3).  In the Agreement (MHU000259-64), Tom Miyano also agreed to
immediately assign to MMJ without compensation any other inherited asset
**not** included in the List of Inherited Assets (Attachment to the Memorandum of
Understanding and Attachment the Agreement).

Defendant Tom Miyano also has alleged he inherited all trademark rights owned by Sumiko Miyano. In connection with a trademark application filed under §44(e) of the Lanham Act, defendant Tom Miyano represented to the United States Trademark Office that he inherited the rights to Japan Trademark Registration No. 2008979 (MMU0000579). Defendant Tom Miyano submitted an Inheritance tax report listing the trademark as an asset inherited from Sumiko Miyano (MMU0000583-4). The Inheritance tax report is dated 2003.

The trademark registrations and rights defendant Tom Miyano represented that inherited from Sumiko Miyano are assets which do not appear on the List of Inheritance Assets attached to the Agreement. As result, Tom Miyano is required under the Agreement to assign Japan Trademark Registration No. 2008979 and all other trademark rights to MMJ (Miyano Machinery, Inc.).

Persons most knowledge able about the above include MMU, Henry Marchionne and Gentaro Kakumae.

**INTERROGATORY NO. 8**

State in detail the circumstances surrounding any decision to use, continue to use, abandon use, or resume use of each of the trademarks in suit and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about same.

**Objections/Response:**

MMU incorporates its General Objections, and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstance" and "decision" without providing any specification or identification thereof. MMU further objects to this Interrogatory as being vague, as to both time and place. As currently drafted, this Interrogatory seeks information about events occurring decades ago and in locations outside the United States, which have no relevance to the validity, ownership, and infringement of territorially discrete, United States trademark rights. As a result, MMU objects to this Interrogatory as being overly broad and unduly burdensome.  MMU objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine. MMU further objects to this interrogatory to the extent that it seeks legal conclusions. Subject to and without waving its objections, MMU answers as follows.

On information and belief, in May of 1997, MMJ internally circulated a document among some of its directors titled "Internal Application for Approval". (MMU0009392).  On information and belief, the document noted the reason for its circulation was to seek consensus on renewing the registration owned by

Sumiko Miyano for the Triangle Winged M (Japanese Trademark Registration No. 1983020). On information and belief, the document said that the deadline for renewing a Japanese registration owned by Sumiko Miyano for the Triangle Winged M was September 21, 1997. On information and belief, the document noted that from June 1997 the policy will be changed so that the mark which was the subject of Japanese Trademark Registration No. 1983020 would no longer be affixed to products. Consideration was being given to canceling the renewal of the Japanese registration but the board members' opinions were sought first. It is not a resolution of the board [Deposition of Ito, page 42, line 24- page 43, line 1]. The document was part of the decision-making process but the process of seeking consensus of the board of directors was not fully functioning because MMJ was a family-owned company [Deposition of Ito, page 44, lines 5-9). The document does **not** say that MMJ abandons any trademarks [Deposition of Ito, page 58, line 22]. Mr. Ichikawa instructed that the 1983020 Japanese registration of the Triangle Winged M not be renewed in 1997 but he did not believe it was the policy of MMJ to cease using that mark [Deposition of Ichikawa, page 29, line 7]. Any policy to cease using the Triangle Winged M mark did not apply to the entire company [Deposition of Ichikawa, page 29, line 25 – page 30, line 1] but only applied to new machines [Deposition of Ichikawa, page 30, line 4 and page 30, line 10]. However, trademark use of the Triangle Winged M on machine tools or in connection with machine tools continued in the United States after this policy decision as set forth in the answer to Int. 5 (which is incorporated by reference).

On information and belief, on August 30, 2005, Mr. Toshima circulated a notice entitled "Corporate Philosophy, New Corporate Slogan and Company Logo." (MMU0009393 – 0009399). This document advised that a new corporate slogan, shown in exhibit 2 to the document, was determined at a management meeting. The slogan in English is "The World Leader in Precision." Trade name logos for various company units were displayed in exhibit 3 to the document. It was stated that the script Miyano logo of exhibit 2 would remain the same. A schedule for introduction of any changes needed on a variety of communication tools was given in a chart in exhibit 4 to the document. The chart showed which of the trade name logos, the script Miyano and the slogan would be used on which communication tool and in which month of 2005 the implementation of any changes should take place.

The "Corporate Philosophy, New Corporate Slogan and Company Logo" also shows that as of August 30, 2005 the plain Winged M and the Triangle Winged M were still being used. The notice states these marks are no longer to be used on the company flag and in other areas, for example, on company brochures, catalogues, business cards of overseas offices or caps etc. of safety committee members. However, the plain Winged M and the Triangle Winged M could still be used on work clothes or jackets. These items could eventually be switched to new ones but such a change was not mandated. Further, the notice states that the plain Winged M and the Triangle Winged M would continue to be affixed or displayed on older machines still manufactured. The notice also states that the Winged M and the Triangle Winged M would be

changed when the machine is changed to a new model or any minor change is made.

Individuals knowledgeable about the above include Toshikatsu Ito and Noboru Ichikawa.

**INTERROGATORY NO. 9**

State in detail the circumstances surrounding Counterdefendants' actual marketing, promotional or advertising efforts or activities, including money spent and dates of the efforts or activities, with respect to any products or services bearing each of the trademarks in suit from the date of first use, if any, to the present and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about same.

**Objections/Response:**

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances" without providing any specification or identification thereof. MMU further objects to the terms "efforts" and "activities" as vague and ambiguous. MMU objects to this interrogatory to the extent that it is overly broad and unduly burdensome. MMU objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving its objections, MMU elects the procedure authorized by Federal Rule of Civil Procedure 33(d). The particular documents relevant to this request include the following:

Document relevant at least to Advertising: MMU00000240-315, MMU00000318-326, MMU00000409-538, MMU00000649, MMU00000818-1315, MMU009513-9544, MMU0009381-9669, MMU00009679-9688, and MMU0017431- 17484.

Documents relevant at least to Money Spent and dates of efforts: MMU0009400- 9450 and MMU00018149—22033. Additional documents may

be produced as discovery continues.   The persons with the most knowledge regarding MMU's advertising and marketing include Genturo Kakumae and Henry Marchionne.

**INTERROGATORY NO. 10**

State in detail the circumstances surrounding any allegation by Counterdefendants that the Counterclaimants gave consent to register any of the trademarks in suit as a trademark and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

**Objections/Response:**

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances" without providing any specification or identification thereof. MMU objects to this interrogatory to the extent that it is overly broad and unduly burdensome. MMU objects to this interrogatory to extent it seeks information protected by the attorney-client privilege and work product doctrine. MMU further objects to this interrogatory to the extent that it seeks legal conclusions. Subject to and without waving its objections, MMU answers as follows.

Defendant Tom Miyano signed multiple applications for registration and declarations regarding many of the trademarks in suit. In the applications and declarations associated with these marks, Tom Miyano declared that MMU, **not** Tom Miyano, is the owner of these trademarks. By signing the applications, Tom Miyano also consented to the use and registration of the trademark and the word "Miyano" by MMU.

Tom Miyano, while acting as President of plaintiff MMU (or its predecessor), signed on behalf of it the application for registration of stylized MIYANO trademark, Registration No. 1,527,809, and the corresponding

declarations. (MMU00000100-101). Tom Miyano's signature appears on the application below the declaration. The declaration and Tom Miayno's signature appear below.

Toshiharu Miyano states that he is the President of applicant corporation and is authorized to execute this affidavit on behalf of said corporation; he believes said corporation to be the owner of the trademark sought to be registered; to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; and the facts set forth in this application are true; and further, these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

MIYANO MACHINERY USA, INC.

BY: _____
Toshiharu Miyano, President

DATED: *April 7, 1988* , 1988

On July 1, 1988, the United States Patent and Trademark Office issued an office action regarding the application for Stylized Miyano mark, stating in part the following:

> The affidavit signed by Toshiharu Miyano is not notarized. Though it does contain some language that would satisfy the declaration requirements of 37 C.F.R. Section 2.20, it does not contain all the statements required of declarations submitted in lieu of notarized affidavits. A comparison of the original

affidavit form with the attached model declaration should illustrate the deficiencies.

The examining attorney included an attached declaration for execution by the applicant.    That declaration was executed by Toshiharu Miyano, President of Miyano Machinery, USA, Inc., on or around August 3, 1988 and is indicated as being received in the United States Patent and Trademark Office on August 10, 1988. The declaration and Tom Miyano's signature are pictured below.



99

In the aforementioned declarations, Tom Miyano declared that he believed that the corporation (MMU) to be the owner of the mark sought to be registered and that to the best of his knowledge and belief that no other person (including himself), firm, corporation or association had the right to use the right in commercial, in an identical form or so resemblance thereto as may likely cause confusion.

A Combined Section 8 and 15 Affidavit was signed on or around June 21, 1994 by Tom Miyano, as Chairman of the Board of Miyano Machinery USA, Inc. (MMU00000112-113). This Affidavit stated:

> Toshiharu (Tom) Miyano declares that he is the chairman of the board of Miyano Machinery USA Inc. an Illinois corporation, having its principal place of business at 940 North Central Avenue, Wood Dale, Illinois 60191, and is authorized to execute this Declaration on behalf of said corporation; that Miyano Machinery USA Inc. owns the above-identified registration issued on March 7, 1989, as shown by records in the Patent and Trademark Office; that the mark shown herein has been in continuous use in interstate commerce for five consecutive years from the date of the registration to the present on all of the goods specified in the Certificate of Registration:
>
> **Machines and machine tools - namely, turning centers, lathes, vertical machining centers and all parts therefor**
>
> that such mark is still in use in commerce as evidenced by the specimens included herewith showing the mark as currently used on the goods and on point of purchase displays; and there has been no final decision adverse to the Registrant's claim of ownership of such mark for such goods, or to the Registrant's right to register the same or to keep the same on the Principal Register, and that there are no proceedings involving said rights pending and not disposed of either in the Patent and Trademark Office or in the courts.
>
> I declare further that all statements made herein are true and that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize

the validity of this document and the registration to which it relates.

Registrant hereby appoints Amy L. Kurland, Nancy E. Sasamoto and Joseph S. Parisi, all members of the Bar of the State of Illinois and practicing under the firm name of Masuda, Funai, Eifert & Mitchell, Ltd., One East Wacker Drive, Suite 3200, Chicago, Illinois 60601-1802, either individually or collectively, attorneys for said registrant with full power of substitution and revocation to file this declaration and to transact all business in the Patent and Trademark Office in connection therewith.

Defendant Tom Miyano declared in the Combined Declaration under Section 8 and 15 that that MMU (or its predecessor) owns the Stylized Miyano mark registration.

Defendant Tom Miyano on behalf of MMU (or its predecessor) made the declaration which accompanied a prior application for registration of the plain-text "Miyano" trademark (U.S. Registration 1,529,343) (MMU00000081-82). Defendant Tom Miyano's signature appears on the application for registration of the plain-text "Miyano" trademark below the declaration as shown below. Defendant Tom Miyano signed the application for the registration of the prior plain-text "Miyano" trademark on or about April 7, 1988.

pemba

Toshiharu Miyano states that he is the President of applicant corporation and is authorized to execute this affidavit on behalf of said corporation; he believes said corporation to be the owner of the trademark sought to be registered; to the best of his knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; and the facts set forth in this application are true; and further, these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

MIYANO MACHINERY USA, INC.

BY: _____
Toshiharu Miyano, President

DATED: _April 7_____, 1988

In response to an office action issued by the examining attorney, Defendant Tom Miyano, as President of Miyano Machinery, USA, Inc., on or around August 3, 1988 executed another declaration and is indicated as being received in the United States Patent and Trademark Office on or about August 10, 1988. The declaration signed by Tom Miyano is pictured below.

Toshiharu Miyano
-----------------------------------------------------------------
               (Name of Officer of Corporation)
being hereby warned that willful false statements and
the like so made are punishable by fine or imprisonment,
or both, under Section 1001 of Title 18 of the United
States Code and that such willful false statements may
jeopardize the validity of the application or any
registration resulting therefrom, declares that the
undersigned is

President
-----------------------------------------------------------------
                    (Official Title)
of Applicant corporation and is authorized to execute
this instrument on behalf of said corporation; he/she
believes said corporation to be the owner of the
mark sought to be registered; to the best of his/her
knowledge and belief no other person, firm, corporation,
or association has the right to use said mark in
commerce, either in the identical form or in such near
resemblance therto as may be likely, when applied to the
goods/services of such other person, to cause confusion,
or to cause mistake, or to deceive; the facts set forth
in this application are true; and all statements made of
his/her own knowledge are true and all statements made
on information and belief are believed to be true.

Miyano Machinery USA Inc.
-----------------------------------------------------------------
                    (Name of Corporation)



By _____ President
(Signature of Officer of Corporation, and
Official Title of Officer)

___ August 3, 1988 _____
                              (Date)

By signing the application, Tom Miyano consented to MMU's exclusive

ownership, use and registration of the mark.   In the declaration filed in

connection with the application that matured into U.S. Registration 1,529,343,

defendant Tom Miyano declared that he believed that the corporation (MMU) to

be the owner of the mark sought to be registered and that to the best of his

knowledge and belief that no other person (including himself), firm, corporation

or association has the right to use the right in commercial, in an identical form

or so resemblance thereto as may likely cause confusion.

Tom Miyano also signed the application and declarations in connection United States Trademark Registration No. 1,473,925 for the plain-text word mark MIYANO THE WORLD LEADER IN PRECISION ("Miyano motto mark").

On March 16, 1987, MMU (or its predecessor) submitted to the U.S. Patent and Trademark Office an application for registration of the plain-text word mark MIYANO THE WORLD LEADER IN PRECISION (U.S. Registration No. 1,473,925) (MMU0000026-27).    Defendant Tom Miyano signed the application and made the declaration which accompanied the application for the Miyano motto mark.  This declaration and Tom Miyano's signature appear below.

> Toshiharu Miyano states that he is the President of appli-
> cant corporation and is authorized to execute this affidavit on
> behalf of said corporation; he believes said corporation to be
> the owner of the trademark sought to be registered; to the best
> of his knowledge and belief no other person, firm, corporation or
> association has the right to use said mark in commerce, either in
> the identical form or in such near resemblance thereto as to be
> likely, when applied to the goods of such other person, to cause
> confusion, or to cause mistake, or to deceive; and the facts set
> forth in this application are true; and further, these statements
> were made with the knowledge that willful false statements and
> the like so made are punishable by fine or imprisonment, or both,
> under Section 1001 of Title 18 of the United States Code and such
> willful false statements may jeopardize the validity of the
> application or document or any registration resulting therefrom.
>
> MIYANO MACHINERY USA INC.
>
> BY: _____
>         Toshiharu Miyano, President
>
> DATED: ___March 11___, 1987

In the declaration that accompanied the application for the registration of the Miyano motto mark defendant Tom Miyano declared that he believed MMU

to be the owner of the mark sought to be registered. By signing the application, Tom Miyano consented to MMU's exclusive ownership, use, and registration of the mark.

On February 18, 1993, MMU mailed to the U.S. Patent and Trademark Office a Combined Declaration under Sections 8 and 15 indicating that the MMU was the own of the Miyano motto mark and the mark had been in continuous use in interstate commerce for five consecutive years from the date of registration on the goods recited in the registration (MMU00000044-45). Tom Miyano signed the Combined Declaration under Sections 8 and 15 and declared that that MMU owned the Miyano motto mark registration.

In connection with the Triangle Winged M mark (U.S. Registration No. 1,217,317), MMU submitted an application and declaration in connection with on or around September 14, 1981. This trademark application was signed Goro Yamaguhi as Executive Vice President of Miyano Machinery USA, Inc. Mr. Yamaguhi's declaration and signature are pictured below:

DECLARATION

The undersigned, Goro Yamaguchi, declares that:

He is Executive Vice President of the Applicant corporation and is authorized to execute this declaration on behalf of said corporation; he believes said corporation to be the owner of the mark sought to be registered; to the best of his knowledge and belief, no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto so as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; all statements made herein of his own knowledge are true and all statements made on information and belief are believed to be true; and further these statements were made with the knowledge that willful, false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and such willful, false statements may jeopardize the validity of this application or document or any registration resulting therefrom.



Goro Yamaguchi

Date ____ Sept. 14, '81

A Combined Section 8 and 15 Affidavit was signed in connection with the Triangle Winged M trademark on or around April 7, 1988 by Toshiharu Miyano as President of Miyano Machinery USA, Inc., whose signature was notarized by Henry R. Marchionne.   Tom Miyano declared in the Combined Affidavit under Sections 8 and 15 that MMU owned the Triangle Winged M registration.

On February 20, 2007, MMU filed a trademark application for the standard character MIYANO trademark (U.S. Registration No. 3,328,718).   In the application, MMU asserted common ownership of the Triangle Winged M

trademark (U.S. Reg. No. 1,217,317), the Miyano motto trademark (U.S. Reg. No. 1,473,925), and the Stylized Miyano trademark (U.S. Reg. No. 1,527,809) (MMU00000211-229). The registration for the standard character MIYANO trademark issued November 6, 2007.

On May 5, 2008, MMU submitted a trademark application to register the Triangle Winged M mark in connection with repair and refurbishment services. In a Response to an Office Action, MMU amended the application to claim common ownership of the Triangle Winged M trademark (U.S. Reg. No. 1,217,317), the Miyano motto mark (U.S. Reg. No. 1,473,925), and the Stylized Miyano trademark (U.S. Reg. No. 1,527,809) (MMU0000176-0000177). The application for the Triangle Winged M mark was accepted by the United States Patent and Trademark Office, and the trademark identified in the application was published in the Official Gazette on November 20, 2007 (MMU0000163).

Section 1206.03(b) of the Trademark Manual of Examining Procedure ("TMEP")(5th ed. 2007) states: "When a particular individual identified by matter in a mark is also the person who signed the application, then his or her consent to registration will be presumed." Section 1206.03(b) also states that "an applicant does not have to submit a new consent if a consent to register is already part of the record in the file of a valid registration for a mark comprised in whole or in part of the same name, portrait or signature for the same goods or services."  In the situation where consent is already part of the record in the file of a valid registration, "the applicant only has to claim ownership of that existing registration." TMEP § 1206.03(b). See also TMEP § 813.

107

The persons knowledgeable regarding the above include Tom Miyano and MMU.

**INTERROGATORY NO. 11**

State in detail the circumstances surrounding any allegation by Counterdefendants that Counterclaimants are not known in the industry of machinery and machine tools and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

**Objections/Response:**

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances" without providing any specification or identification thereof. MMU objects to the extent Defendants request MMU to prove a negative or absence of fact. MMU further objects to the extent that Defendants seek to shift the burden of proof to MMU, as to defendants' affirmative defenses. MMU objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine. Subject to and without waving its objections, MMU answers as follows.

There is no evidence that Defendants (or any one of them) have authored or lectured in the field of machine or machine tools or that they have made significant contributions to that field. MMU is currently unaware of the Defendants receiving any awards or accolades from the machine tool industry. MMU is currently unaware of Defendants holding any leadership position in any recognized trade organization or association related to the machine tool industry. Defendants, as representatives of their company, MiyanoHitec Machinery Inc., have not yet exhibited at any machine tool industry sponsored

trade show.    MMU is unaware of any publications authored by any Defendant

on the topic of machines or machine tools. MMU is unaware of any Defendant

speaking at events related to the machine tool industry.

A search of the LEXIS/NEXIS ALLNEWS database results in only nine

articles including the name "Toshiharu Miyano," "Tom Miyano," or "Thomas

Miyano."  The nine articles are listed below (*See* Exhibit A, attached hereto).

1.  Chicago Daily Herald, April 14, 2007 Saturday,   C1 Edition; C3 Edition; C5 Edition; C8 Edition; C10 Edition; D7 Edition, NEIGHBOR; Pg. 1, 647 words, Making music matter Conductor forms conservatory, orchestras giving musicians of all ages a chance to perform, Mary Jekielek Insprucker, Daily Herald Correspondent

2.  Metalworking Insiders' Report, December 15, 2004, Pg. 1, 126896758, 524 words, Under new CEO, a reorganized Miyano unveils bullish plans.

3.  Metalworking Insiders' Report, July 1, 2004, Pg. 1, 119741783, 514 words, In reorganization, Miyano plans changes in management and offerings., Ushio, Shota

4. Fortune, May 6, 1991, Domestic Edition, SPECIAL REPORT/COVER STORY; Pg. 38, 5058 words, THE BIG SPLIT, by Carla Rapoport, REPORTER ASSOCIATE Suneel Ratan

5. Journal of Commerce, August 19, 1987, Wednesday, EXPORTS, Pg. 5A, 584 words, JAPANESE COMPANY EXPANDS TO US, EXPORTS PRODUCTS BACK TO JAPAN, Chicago Tribune, CHICAGO

6. Chicago Tribune, August 17, 1987 Monday, SPORTS FINAL EDITION, BUSINESS; Pg. 1; ZONE: C, 1414 words, FATHER REALLY DID KNOW BEST SETTING UP SHOP IN AMERICA ENRICHES JAPANESE FIRM, By Pamela Sherrod.

7.  American Metal Market, June 23, 1986, Pg. p4(2), 4285909, 690 words, Miyano to build $9.2M plant in Ill.;  Miyano Machinery Inc., Giesen, Lauri

8. The Japan Economic Journal, November 9, 1985, Pg. 16, 1965 words, 158 DIRECT FOREIGN INVESTMENT CASES REPORTED

9. The Japan Economic Journal, March 5, 1985, Pg. 14, 3601 words

None of these nine articles were written by defendant Tom Miyano. Of these five, the first one is unrelated to machine tools. The two articles published in the Metalworking Insiders' Report relate to the reorganization of Miyano Machinery Inc. by the IRCJ (MMU00000589-0000592). The article in Fortune magazine only attributes one quote to defendant Tom Miyano. The last four articles are over twenty years old. The last two articles do not relate to the machine tool industry, but rather list the foreign investment of Japanese companies as reported to the Bank of Japan and the Ministry of Finance. In most of the articles, the reference to defendant Tom Miyano is buried in the text of the articles and would be likely to go unnoticed by most readers. A similar search for "Steven Miyano," "Shigemori Miyano" or "MiyanoHitec" resulted in no hits, listings or articles. Steven Miyano has never worked in the machine tool business prior to forming Hitec machinery Inc. in March of 2005.

People knowledgeable are Yoshiharu Saito, Toshiyuki Nagasawa and Terry Shimizu.

## INTERROGATORY NO. 12

State in detail the circumstances surrounding any allegation by Counterdefendants that the relevant public for the industry of machinery and machine tools does **not** identify the name "Miyano" with the Counterclaimant Tom Miyano and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

## Objections/Response:

MMU incorporates its General Objections and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances" without providing any specification or identification thereof. MMU objects to the extent Defendants request MMU to prove a negative or absence of fact. MMU further objects to the extent that Defendants seek to shift the burden of proof to MMU. MMU objects to this interrogatory to extent it seeks information protected by the attorney-client privilege and work product doctrine. Subject to and without waiving its objections, MMU answers as follows.

MMU's "Miyano" trade name is **not** associated with Defendants. MMU owns the registrations for the Triangle Winged M trademark (U.S. Reg. No. 1,217,317), the Miyano motto trademark (U.S. Reg. No. 1,473,925), the Stylized Miyano trademark (U.S. Reg. No. 1,527,809) (MMU00000211-229) and the Miyano plain-text mark (U.S. Registration No. 3,328,718). The registrations for the Triangle Winged M mark, Stylized Miyano trademark, and the Miyano motto mark are incontestable. Accordingly, validity and MMU's ownership are incontestable facts.

Since 1975, MMU has continuously used the term "Miyano" to refer to the corporation, branded its machines with the term "Miyano," and used the term "Miyano" in connection with its services.  Within that period, MMU has exclusively used its trade name in connection with its business.  MMU's sales in connection with the "Miyano" name generated revenues that averaged from $18 million to $35 million per year between 1997 and 2006. Declaration of Marchionne Decl., ¶ 34. Over the same ten-year period, services rendered in connection with MMU's "Miyano" name ranged from $200,000 to $540,000 per year. Marchionne Decl., ¶ 34; see also MMU009400-9450 and MMU0018194-MMU0020408.

MMU has used the "Miyano" trade name in trade journals, articles, brochures, and at trade shows. Within the last 10 years, MMU has spent on average $198,000 each year on advertising, associating the "Miyano" brand name with Miyano Machinery USA Inc.

MMU has regularly participated in trade the major trade shows in machine tool industry, such as IMTS, WESTEC, EASTEC, and "PMTS" since 1976. In fact, attending trade shows is one of MMU's primary advertising activities, where MMU's representatives meet with customers and gain valuable recognition within the industry. Marchionne Decl., ¶¶ 37-43.  At these trade shows, the "Miyano" trade name is a prominently displayed in connection with its booths and its goods (MMU0009669 and MMU0009722).



MMU spent approximately $400,000 on participating in the 2006 IMTS (MMU0021523) and plans on spending approximately $450,000 on participating in the next IMTS in September 2008. Marchionne Decl., ¶ 43. The goodwill that MMU has obtained through all of these efforts is substantial and representative of the secondary meaning MMU has acquired in this trade name.

The distinctiveness of MMU's "Miyano" trade name is also reflected in its use by third-parties. Numerous third-parties use the "Miyano" trade name to refer to MMU and its products. For example, a 1989 article in U.S. News and World Report refers to MMU as "Miyano." (MMU0000725-726). Articles by third-parties use the word "Miyano" to refer to machines and machine tools sold by MMU (for example, MMU0000589, MMU0000627, MMU0000642, MMU0000725, MMU0017623-4, MMU0017787-8, and MMU0017797). Defendants' counsel has often used the word "Miyano" to refer to the corporate

114

entity MMU. (Transcript of Motion Hearing before Judge Kendall, February 7, 2008, page 9, lines 8-18).

By reason of many decades of use in a leadership position in the field of machine tools, and in particular lathes and machining centers, the mark MIYANO has become a distinctive and well-known trademark associated with MMU. As a result, MMU has separate protectable rights in the MIYANO trade name under the common law.

Moreover, Defendants have asserted in their Petition for Cancellation (MMU0000198) and Counterclaims (¶ 1), the public associates the term "Miyano" with multiple entities and not with a particular individual.

Individuals knowledgeable about the above include Henry Marchionne and Gentaro Kakumae.

**INTERROGATORY NO. 13**

State in detail the circumstances surrounding any allegation by Counterdefendants that the name "Miyano" is not primarily a surname or that Counterclaimants Tom and Steven Miyano will not be harmed by MMU's maintenance of a registration of Tom and Steven Miyano's family name as a mark and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about the bases for those allegations.

**Objections/Response:**

MMU incorporates its General Objections, and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances" without providing any specification or identification thereof. MMU objects to the extent Defendants request MMU to prove a negative or absence of fact. MMU further objects to the extent that Defendants seek to shift the burden of proof to MMU as to Defendants' affirmative defenses. MMU objects to this interrogatory to extent it seeks information and communications protected by the attorney-client privilege and work product doctrine. MMU further objects to this interrogatory to the extent that it seeks legal conclusions. Subject to and without waving its objections, MMU answers as follows.

The primary significance of the MIYANO mark to the purchasing public in the United States is that of a brand or trade name owned in the United States by MMU. Numerous third-parties use the "Miyano" trade name to refer to MMU and its products (MMU0000627, MMU0000642, MMU0000725, and MMU0017623-4, MMU0017797). For example, a 1989 article in U.S. News and World Report refers to MMU as "Miyano." (MMU0000725-726). Defendants'

counsel has often used the word "Miyano" to refer to the corporate entity MMU. (for example, Transcript of Motion Hearing before Judge Kendall, February 7, 2008, page 9, lines 8-18).

A certificate of registration with the Trademark Office is prima facie evidence that the mark is registered and valid (*i.e.*, protectible), that the registrant owns the mark and that the registrant has the exclusive right to use the mark in commerce. See 15 U.S.C. § 1115(a). The Trademark Office <u>never</u> issued a rejection stating that that the word "Miyano" was primarily merely a surname in connection with any applications for the trademarks and services marks in this suit. Registration without the Trademark Office requesting proof of secondary meaning creates the presumption that the mark is not primarily merely a surname, and, thus, that the mark is inherently distinctive.

"Miyano" is a brand name for goods sold and advertised by MMU and is **not** recognized as a surname. For example, the Guide to Miyano, which was distributed by MMU in 2006, describes "Miyano" as a "world-class brand." An excerpt from the Guide to Miyano is shown below. (MMU0000906-925, MMU0009475-9494).



MMU0009475



# Products by "Miyano"

# Installing "Miyano" Will Advance Your Business

With a variety of high quality machine models and with its extensive service network, "Miyano" is a world-class brand. Wherever you are in the world, when you install "Miyano" you are assured of its quality, durability and performance. Equipped with the newest models of world-class NC equipment, such as FANUC units, performance as a combined machine/control system is further enhanced. Extensive technical support provided by Miyano and the NC manufacturers will bring you confidence and the highest rate of productivity.

MMU0009492

# Installing "Miyano" Will Advance Your Business

With a variety of high quality machine models and with its extensive service network, "Miyano" is a world-class brand. Wherever you are in the world, when you install "Miyano" you are assured of its quality, durability and performance. Equipped with the newest models of world-class NC equipment, such as FANUC units, performance as a combined machine/control system is further enhanced. Extensive technical support provided by Miyano and the NC manufacturers will bring you confidence and the highest rate of productivity.

Other corporate guides distributed by MMU use the word "Miyano" as a brand or trade name. (MMU0000874- MMUO000905).

At least in the United States, the word "Miyano" is unusual and uncommon; therefore, the purchasing public in the United States perceives the primary significance of the word "Miyano" to be a brand name of MMU. A nationwide search for individuals named "Miyano" on yellowpages.com and superpages.com resulted in only 32 different listings. (*See* Exhibit B, attached hereto)

The word "Miyano" in the United States does not have the look or feel of a surname. Additionally, the manner in which the word Miyano has been displayed, such as in the Triangle Winged M mark, in stylized form and in connection with the Miyano motto, would negate any surname significance.

MMU has been the registered owner of the MIYANO trademarks for over twenty years. In many of these applications, Tom Miyano, as President or Chairman of MMU, consented to MMU's exclusive ownership, use and registration of these trademarks. Maintenance of the trademarks by MMU does

120

not harm Defendants because they do not possess a right to use the marks which have been registered by them.  Moreover, Defendants have the ability to select another name for the corporation, such as the name they previously used, Hitec Machinery International.

Defendants themselves state that they "gave up their ownership" of MMU. (MMU0000598).   A business trade name is presumed to pass to its buyer. This is so even if the trade name happens to be the seller's surname.

Prior to becoming MiyanoHitec Machinery, Inc., however, Defendants' business operated under a different name. Rather than continuing to operate as "Hitec Machinery International, Inc.," Defendants changed the company name to "MiyanoHitec Machinery, Inc."  Thereafter, Defendants prominently use the "Miyano" trade name and their infringing version of the Winged M in connection with their business.  These actions were done for the purpose of usurping MMU's goodwill and reputation.  An individual may not use their name for the purpose of stealing the goodwill of another's business.

**INTERROGATORY NO. 14**

State in detail the circumstances surrounding Counterdefendants' knowledge of Counterclaimants' activities relating to the design or sale of machine tools on or before February 20, 2007 and identify the three persons (other than Counterdefendants' counsel of record in this action) most knowledgeable about same.

Objections/Response:

MMU incorporates its General Objections, and further objects to this Interrogatory as vague and ambiguous to the extent it refers to the "circumstances" without providing any specification or identification thereof. MMU objects to this interrogatory to extent it seeks information protected by the attorney-client privilege and work product doctrine.  Subject to and without waving its objections, MMU answers as follows.

On November 7, 2006 Mr. Saito and Mr. Nakagiri met with Tom and Steven Miyano and were informed that HiTec Machinery International, Inc. had been formed.  At that meeting Mr. Saito received business cards from Tom and Steven Miyano which listed Steven Miyano as president of HiTec Machinery International, Inc. and Tom Miyano and director and designer of HiTec Machinery International, Inc.  (*See* MMU0017490).  These business cards bore a Winged H mark. Steven Miyano's business card is shown below.

122



At the November 7, 2006 meeting, Tom and Steven Miyano, among other things: 1) requested copies of drawings of the LS-12C machine because they want to produce it in India or China under the Miyano name; 2) asked about incorporating into Miyano machines a hybrid acceleration system that Tom Miyano had invented; and 3) asked to purchase MMU's U.S. trademarks. (MMU0017493 and Deposition of Saito, pages 68 line 18 – page 71, line 14). After Mr. Saito declined these requests, Steven Miyano replied by e-mail to Mr. Saito on November 16, 2006 that "We hope we can improve together through friendly rivalry". (MMU0017488-89).

Some time in late January 2007 or early February 2007 MMU received a business card showing Tom Miyano's name as CEO and Director of a company called MiyanoHitec Machinery, Inc., as shown in paragraph 49 of the Complaint and in MMU 0000553. On this card, compared to the cards received in November 2006, the corporate name had been changed from HiTec Machinery International, Inc. to MiyanoHitec Machinery, Inc., the Winged H

123

had been changed to a Winged M, and Tom Miyano's position had changed from director and designer to CEO and director.

The individual knowledgeable include Yoshiharu Saito and Henry Marchionne.

DATED this /2^{TH} day of May, 2008

As to objections,

By: _Louis J. Alex_

    Edward D. Manzo
    Joel Bock
    Louis J. Alex
    Jason Smalley

**COOK, ALEX, McFARRON, MANZO,
CUMMINGS & MEHLER, LTD.**

    200 W. Adams Street, Suite 2850
    Chicago, Illinois 60606
    (312) 236-8500
    lalex@cookalex.com

Attorneys for Miyano Machinery USA, Inc.

## **VERIFICATION**

The undersigned, Henry Marchionne, states as follows: I am Corporate Advisor to Miyano Machinery USA Inc., the plaintiff in the case called *Miyano Machinery USA Inc., Plaintiff v. MiyanoHiTech Machinery, Inc., Thomas Miyano and Steven Miyano, Defendants*; I am authorized to make this verification for and on behalf of said corporation, and I make this verification for that reason. I have read the foregoing Response to Counterclaimant's First Set of Interrogatories, and I declare under penalties of perjury that the factual statements contained therein are true and accurate to the best of my information, knowledge and belief.

Dated ____5-12-____, 2008

_Henry Marchionne_
HENRY MARCHIONNE
_____
Print Name

126

## CERTIFICATE OF SERVICE

The undersigned declares that he/she is over the age of 18 years, not a party to this action, and employed in the County of Cook, by Cook, Alex, McFarron, Manzo, Cummings & Mehler, Ltd., Attorneys at Law, 200 West Adams Street, Suite 2850, Chicago, Illinois 60606.

On the date listed below, I caused the filing of the foregoing **Plaintiff and Counterdefendant Miyano Machinery USA, Inc.'s Responses to Counterclaimant's First Set of Interrogatories** with all its attachments and exhibits. I caused the service of these aforementioned documents on the following individuals, as addressed below, by the means indicated, and on the date listed below:

Geoffrey A. Baker
Geoffrey D. Smith
DOWELL BAKER, P.C.
201 Main Street, Suite 710
Lafayette, Indiana 47901
(765) 429-4004 telephone
(765) 429-4114 facsimile
gabaker@dowellbaker.com

Robert M. Karton
ROBERT M. KARTON, LTD.
77 W. Washington St., Suite 900
Chicago, Illinois 60602-2804
(312)214-0900 telephone
(312)214-4230 facsimile
robert@karton.us

Vernon W. Francissen
FRANCISSEN PATENT LAW, P.C.
53 W. Jackson Blvd.,
Suite 1320
Chicago, Illinois 60604
(312)294-9980 telephone
(312)275-8772 facsimile
vern@francissenpatentlaw.com

Nancy E. Sasamoto
Steven L. Katz
George H Kobayashi
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
203 N. LaSalle St.
Suite 2500
Chicago, IL 60601
312-245-7500 telephone
nsasamoto@masudafunai.com
skatz@masudafunai.com
gkobayashi@masudafunai.com

  X   (BY ELECTRONIC MEANS) I caused this document to be electronically mailed (emailed) to Vernon W. Francissen, at the address shown above.

_____ (BY ELECTRONIC MEANS) I cause each such document to be sent by electronic means through the Electronic Court Filing system to Nancy Sasamoto, Steven Katz, George H Kobayashi, Geoffrey A. Baker, Geoffrey D. Smith and Robert M. Karton at the address shown above, pursuant to LR 5.9.

Executed on May 12, 2008 at Chicago, Illinois.

Signed:        */s Louis J Alex*