# **Exhibit 66**

# TRADEMARK MANUAL
# OF
# EXAMINING PROCEDURE
# (TMEP)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

**Fifth Edition, September 2007**

**Foreword to the Fifth Edition**

The Trademark Manual of Examining Procedure (TMEP) may be downloaded free of charge from the United States Patent and Trademark Office (USPTO) website at www.uspto.gov.

The Manual is published to provide trademark examining attorneys in the USPTO, trademark applicants, and attorneys and representatives for trademark applicants, with a reference work on the practices and procedures relative to prosecution of applications to register marks in the USPTO. The Manual contains guidelines for Examining Attorneys and materials in the nature of information and interpretation, and outlines the procedures which Examining Attorneys are required or authorized to follow in the examination of trademark applications.

Trademark Examining Attorneys will be governed by the applicable statutes, the Trademark Rules of Practice, decisions, and Orders and Notices issued by the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, Commissioners, or Deputy Commissioners. Policies stated in this revision supersede any previous policies stated in prior editions, examination guides, or any other statement of Office policy, to the extent that there is any conflict.

Suggestions for improving the form and content of the Manual are always welcome. They should be addressed to:

> Commissioner for Trademarks
> Attention: Editor, Trademark Manual of Examining Procedure
> P.O. Box 1451
> Alexandria, Virginia 22313-1451

> Mary E. Hannon
> *Editor*
>
> Lynne G. Beresford
> *Commissioner for Trademarks*

September 2007

**APPLICATION REQUIREMENTS**

examining attorney will require a substitute drawing depicting the mark in a single rendition. If the applicant believes that its mark cannot be adequately depicted in a single rendition, the applicant may file a petition under 37 C.F.R. §2.146 requesting that the rule be waived. *See* TMEP Chapter 1700 regarding petitions.

If the mark is duplicated in some form on the drawing (*e.g.,* a typed word and a stylized display of the same word), this is generally not considered to be two materially different marks, and deletion of one of the marks is permitted.

*See* TMEP §§1214 *et seq.* regarding the refusal of registration of a mark with a "phantom" element on the ground that it includes more than one mark in a single application.

*See also In re Upper Deck Co.*, 59 USPQ2d 1688 (TTAB 2001) (hologram used on trading cards in varying shapes, sizes, contents and positions constitutes more than one "device" as contemplated by §45 of the Trademark Act).

### 807.02         Drawing Must Be Limited to Mark

The drawing allows the Office to properly code and index the mark for search purposes, indicates what the mark is, and provides a means for reproducing the mark in the *Official Gazette* and on the certificate of registration. Therefore, matter that appears on the specimen that is not part of the mark should not be placed on the drawing. Purely informational matter such as net weight, contents, or business addresses are generally not considered part of the mark.

Quotation marks and hyphens should not be included in the mark on a drawing, unless they are a part of the mark. *See* TMEP §807.12(a). The drawing should not include extraneous matter such as the letters "TM," "SM," the copyright notice ©, or the federal registration notice ®. *See* TMEP §§906 *et seq.* regarding use of the federal registration notice.

*See* TMEP §807.14(a) regarding requirements for removal of matter from the drawing.

### 807.03         Standard Character Drawings

   *37 C.F.R. §2.52(a) Standard character (typed) drawing. Applicants who seek to register words, letters, numbers, or any combination thereof without claim to any particular font style, size, or color must submit a standard character drawing that shows the mark in black on a white background. An applicant may submit a standard character drawing if:*

   *(1) The application includes a statement that the mark is in standard characters and no claim is made to any particular font style, size, or color;*

   *(2) The mark does not include a design element;*

**TRADEMARK MANUAL OF EXAMINING PROCEDURE**

*(3) All letters and words in the mark are depicted in Latin characters;*

*(4) All numerals in the mark are depicted in Roman or Arabic numerals; and*

*(5) The mark includes only common punctuation or diacritical marks.*

Effective November 2, 2003, Trademark Rule 2.52, 37 C.F.R. §2.52, was amended to replace the term "typed" drawing with "standard character" drawing. Applicants who seek to register a mark without any claim as to the manner of display must submit a standard character drawing that complies with the requirements of 37 C.F.R. §2.52(a).

**807.03(a)        Requirements for Standard Character Drawings**

A standard character drawing must show the mark in black on a white background. An applicant may submit a standard character drawing if:

- The mark does not include a design element;
- All letters and words in the mark are depicted in Latin characters;
- All numerals in the mark are depicted in Roman or Arabic numerals;
- The mark includes only common punctuation or diacritical marks; and
- No stylization of lettering and/or numbers is claimed in the mark.

37 C.F.R. §2.52(a).

In the drawing, the applicant may depict the mark in any font style; may use bold or italicized letters; and may use both uppercase and lowercase letters, all uppercase letters, or all lowercase letters. The applicant does not have to display the mark in all uppercase letters.

Superscripts, subscripts, exponents, or other characters that are not in the USPTO's standard character set (*see* TMEP §807.03(b)) are *not* permitted in standard character drawings. *In re AFG Industries Inc.*, 17 USPQ2d 1162 (TTAB 1990) (special form drawing required for raised numeral). The degree symbol is permitted.

Underlining is not permitted in a standard character drawing.

*Standard Character Claim Required.* An applicant who submits a standard character drawing must also submit the following standard character claim:

> The mark consists of standard characters without claim to any particular font, style, size or color.

This statement will appear in the *Official Gazette* and on the certificate of registration.

**TRADEMARK MANUAL OF EXAMINING PROCEDURE**

§1904.02(g).  However, the applicant must comply with United States requirements regarding drawings and descriptions of the mark.  See TMEP §1904.02(h).

Similarly, after registration, a registrant cannot amend a mark in a registered extension of protection under §7 of the Trademark Act.  TMEP §§1609.01(a) and 1609.02.

*See* TMEP §§1904.03(f) and 1904.14 regarding notifications of corrections in the International Register with respect to pending §66(a) applications and registered extensions of protection.

### 807.14      Material Alteration of Mark

Trademark Rule 2.72, 37 C.F.R. §2.72, prohibits any amendment of the mark in an application under §1 or §44 of the Trademark Act that materially alters the mark on the drawing filed with the original application.

The test for determining whether an amendment is a material alteration is as follows:

> The modified mark must contain what is the essence of the original mark, and the new form must create the impression of being essentially the same mark.  The general test of whether an alteration is material is whether the mark would have to be republished after the alteration in order to fairly present the mark for purposes of opposition.  If one mark is sufficiently different from another mark as to require republication, it would be tantamount to a new mark appropriate for a new application.

*In re Hacot-Colombier,* 105 F.3d 616, 620, 41 USPQ2d 1523, 1526 (Fed. Cir. 1997), quoting *Visa International Service Association v. Life-Code Systems, Inc.*, 220 USPQ 740,743-44 (TTAB 1983).  This test applies to an amendment of the description of a mark as well as to an amendment of the mark on a drawing.  *In re Thrifty, Inc.*, 274 F.3d 1349, 61 USPQ2d 1121 (Fed. Cir. 2001).

Although the test refers to republication, it also applies to amendments to marks proposed before publication.  Material alteration is the standard used for evaluating amendments to marks in all phases of prosecution, *i.e.,* before publication, after publication and after registration.  *See* TMEP §§1609.02 *et seq.* regarding amendment of registered marks.

As a general rule, the addition of any element that would require a further search will constitute a material alteration.  *In re Pierce Foods Corp.*, 230 USPQ 307 (TTAB 1986).  However, while the question of whether a new search would be required is a factor to be considered in deciding whether an amendment would materially alter a mark, it is not necessarily the determining factor.  *In re Who? Vision Systems, Inc.*, 57 USPQ2d 1211 (TTAB 2000); *In re Vienna Sausage Mfg. Co.*, 16 USPQ2d 2044 (TTAB 1990).

**SUBSTANTIVE EXAMINATION OF APPLICATIONS**

**1206.03     Consent of Individual or President's Widow Required**

**1206.03(a)     Consent Must Be Written Consent to Registration**

When a name, portrait or signature in a mark identifies a particular living individual, or a deceased president of the United States during the life of his widow, the mark can be registered only if the written consent of the individual, or of the president's widow. The consent must be a written consent to the registration of the identifying matter as a trademark.

Consent to use of a mark does not constitute consent to register. *Krause v. Krause Publications, Inc.,* 76 USPQ2d 1904 (TTAB 2005); *Reed v. Bakers Engineering & Equipment Co.*, 100 USPQ 196, 199 (PTO 1954); *Garden v. Parfumerie Rigaud, Inc.*, 34 USPQ 30, 31 (Comm'r Pats. 1937) (granting petition to cancel registrations of marks that named and portrayed the petitioner, Mary Garden, who, although she had consented to the use of her name and portrait in connection with a particular perfume, had not given written consent to register the marks for perfumes and other cosmetic items. "Permission to use one's name and portrait in connection with a specified item of merchandise falls far short of consent to register one's name and portrait as a trade mark for such merchandise generally.") Consent to *register* a mark that makes no reference to consent to *use* is acceptable; the Office has no authority to regulate use of a mark.

Written consents for minors may be given by their guardians.

**1206.03(b)     Implicit Consent**

When a particular individual identified by matter in a mark is also the person who signed the application, then his or her consent to registration will be presumed. *Alford Mfg. Co. v. Alfred Electronics*, 137 USPQ 250 (TTAB 1963), *aff'd,* 333 F.2d 912, 142 USPQ 168 (C.C.P.A. 1964) ("The written consent to the registration of the mark 'ALFORD' by Andrew Alford, the individual, is manifested by the fact that said person executed the application...."); *Ex parte Dallioux*, 83 USPQ 262, 263 (Comm'r Pats. 1949) ("By signing the application, the applicant here obviously consents....").

The mere incorporation of a business and consent to the business's use of the mark does not constitute implied consent to the *registration* of the mark. *Krause v. Krause Publications, Inc.,* 76 USPQ2d 1904 (TTAB 2005) (Cancellation petitioner did not give implied consent to register when he incorporated the business, sold his stock in the business and pledged his assets to finance expansion and acquisitions, and acquiesced in the corporation's use of the mark for 50 years, where there was no evidence that petitioner expressly stated that the mark was the property of the corporation and petitioner did not agree to refrain from use of the name in any subsequent business); *In re New John Nissen Mannequins*, 227 USPQ 569 (TTAB 1985) (consent to register not implied from appearance of the name

"John Nissen" in a deed of incorporation of applicant's predecessor, nor from existence of foreign registrations incorporating the name). *Compare, In re D.B. Kaplan Delicatessen*, 225 USPQ 342, 344 (TTAB 1985) (consent to the use and registration of the mark D. B. KAPLAN'S DELICATESSEN, for restaurant services, found to be implicit in the terms of a "buy-out" agreement that relinquished all property rights in the name and forbade its use by the named party in any subsequent business).

An applicant does not have to submit a new consent if a consent to register is already part of the record in the file of a valid registration for a mark comprised in whole or in part of the same name, portrait or signature for the same goods or services.  In this situation, the applicant only has to claim ownership of that existing registration.  If an applicant has submitted a consent to register in an application that has not matured to registration, a new consent is not required for pertinent co-pending applications, but the applicant must submit a copy of the consent for each pending application.  *In re McKee Baking Co.*, 218 USPQ 287 (TTAB 1983) (applicant's claim of ownership of a prior registration that includes a consent to register in the record held sufficient for purposes of complying with the consent requirement of the Act); 37 C.F.R. §2.193(a).

*See* TMEP §813 regarding a statement of consent of a living individual to the registration of his or her name or likeness.

### 1207   Refusal on Basis of Likelihood of Confusion, Mistake or Deception

*Extract from 15 U.S.C. §1052.  No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it ... (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....*

Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), is the statutory basis for a refusal to register due to likelihood of confusion with another mark. Section 2(d) applies to both the Principal and the Supplemental Register.

### 1207.01   Likelihood of Confusion

In the *ex parte* examination of a trademark application, a refusal under §2(d) is normally based on the examining attorney's conclusion that the applicant's mark, as used on or in connection with the specified goods or services, so resembles a *registered* mark as to be likely to cause confusion.  (*See* TMEP

end of any ten-year period after the date of registration), the substitute specimen may be filed before expiration of the relevant period for no fee, or after expiration of the relevant period with the deficiency surcharge required under §8(c)(2) of the Act.  If the §8 affidavit was filed during the grace period, the substitute specimen may be filed before expiration of the grace period for no fee, or after expiration of the grace period with the deficiency surcharge. *See* TMEP §1604.04 regarding the deadlines for filing §8 affidavits, and TMEP §§1604.17 *et seq.* for information about the procedures, deadlines, and surcharge for correcting deficiencies.

While a substitute specimen and supporting affidavit may be filed after the expiration of the period specified in §8 of the Act, the supporting affidavit must attest to use of the specimen within the time period specified in §8 of the Act. Therefore, if the affidavit supporting the substitute specimen does not state that the specimen was in use in commerce prior to the end of the relevant period specified in §8 of the Act, the §8 affidavit will not be accepted, and the registration will be cancelled as to any class for which a proper specimen was not provided.

**1604.13      Differences in the Mark as Used on the Specimen and the Mark as Registered**

The mark to which the §8 affidavit pertains must be essentially the same as the mark that appears in the registration.  Where the specimen reflects a change in the mark since the registration issued, acceptance of the affidavit will depend on the degree of change.  A *material* alteration of the mark will result in refusal of the affidavit on the ground that the registered mark is no longer in use.  *In re International Nickel Co., Inc.*, 282 F.2d 952, 127 USPQ 331 (C.C.P.A. 1960); *In re Continental Distilling Corp.*, 254 F.2d 139, 117 USPQ 300 (C.C.P.A. 1958); *Ex parte Richards,* 153 USPQ 853 (Comm'r Pats. 1967).  *See also Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483 (Fed. Cir. 1986); *In re Holland American Wafer Co.*, 737 F.2d 1015, 222 USPQ 273 (Fed. Cir. 1984).

Mere changes in background or styling, or modernization, are not ordinarily considered to be material changes in the mark.  *See Ex parte Petersen & Pegau Baking Co.,* 100 USPQ 20 (Comm'r Pats. 1953) (change in matter determined to be mere background and type face held not a material alteration of "PETER PAN" mark).  Whether the change in a mark as used on the specimen is a material change is a question of fact that the Post Registration examiner must determine on a case-by-case basis.

Generally, the standard used to determine whether a change is material under §8 is the same as the standard used to determine whether the mark in a registration may be amended under 15 U.S.C. §1057(e).  If the mark could be amended under §7(e) because the character of the mark had not been materially altered, then the specimen filed with the §8 affidavit should be

**REGISTRATION AND POST REGISTRATION PROCEDURES**

accepted. In determining whether a change constitutes a material alteration, the USPTO will always compare the mark in the specimen to the mark as originally registered. *See* TMEP §§807.14 *et seq.* and 1609.02(a) for additional information about material alteration.

However, where the registered mark is currently used as one of several elements in a composite mark, the decision as to whether to accept the specimen requires consideration of whether the registered mark makes an impression apart from the other elements of the composite mark. If the display of the composite is such that the essence of the registered mark makes a separate impression, then the specimen may be sufficient for purposes of the §8 requirement. In many cases, word elements are severable from design elements, because words tend to dominate in forming a commercial impression. *In re DeWitt International Corporation*, 21 USPQ2d 1620 (Comm'r Pats. 1991). If the mark, as used on the §8 specimen, creates a separate impression apart from any other material on the specimen, then the specimen may be accepted as evidence of current use of the registered mark.

If the examiner determines that the mark on the specimen is a material alteration of the registered mark, a substitute specimen may be filed. If the substitute specimen is filed after expiration of the relevant filing period specified in §8 of the Act, the owner must pay the deficiency surcharge required by §8(c)(2) of the Act and 37 C.F.R. §2.6. *See* TMEP §1604.12(c) regarding substitute specimens, and 37 C.F.R. §2.164 and TMEP §§1604.17 *et seq.* regarding the procedures for correcting deficiencies in a §8 affidavit.

### 1604.13(a)   Possible Amendment of Mark in Registration

If the USPTO accepts the §8 affidavit, and there is a difference between the mark on the specimen filed with the affidavit and the mark in the registration, the mark as originally registered remains the mark of record. If the owner wants to change the mark in the registration to agree with the mark currently used, the owner must file a separate request for amendment under §7(e) of the Act, and pay the fee required by 37 C.F.R. §2.6. *See Ex parte Petersen & Pegau Baking Co.*, 100 USPQ 20 (Comm'r Pats. 1953). *See* TMEP §§1609.02 *et seq.* regarding amendment of a registered mark under §7(e).

Amending the mark in a registration under §7(e) to agree with the mark as shown on a §8 specimen is not mandatory.

### 1604.14   Designation of Domestic Representative by Foreign Owner

Under 15 U.S.C. §1058(f), if the owner of the registration is not domiciled in the United States, the affidavit or declaration may include the name and address of a United States resident upon whom notices or process in