# Exhibit 69

| To: | Tom Miyano (vern@francissenpatentlaw.com) |
|---|---|
| **Subject:** | TRADEMARK APPLICATION NO. 77351695 - M - HTC07-001TM |
| **Sent:** | 3/20/2008 9:43:07 PM |
| **Sent As:** | ECOM117@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |

## UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**:     77/351695

**MARK**: M

# *77351695*

**CORRESPONDENT ADDRESS**:
  VERNON W. FRANCISSEN
  53 W JACKSON BLVD STE 1320
  CHICAGO, IL 60604-4174

**RESPOND TO THIS ACTION:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

**GENERAL TRADEMARK INFORMATION:**
**http://www.uspto.gov/main/trademarks.htm**

**APPLICANT**:      Tom Miyano

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
  HTC07-001TM
**CORRESPONDENT E-MAIL ADDRESS**:
  vern@francissenpatentlaw.com

## OFFICE ACTION

TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE.

**ISSUE/MAILING DATE**: 3/20/2008

The assigned trademark examining attorney has reviewed the referenced application and has determined the following:

MMU0022110

**Registration Refused - Name Differs in U.S. Application and Foreign Registration**

Registration is refused because applicant is not the owner of the mark. *See* 15 U.S.C. §1126(e); TMEP §1005. Under Trademark Act Section 44(e), an applicant must be the owner of the foreign application or registration on the filing date of the U.S. application. TMEP §1005; *see* 37 C.F.R. §2.34(a)(3); *In re De Luxe, N.V.*, 990 F.2d 607, 26 USPQ2d 1475 (Fed. Cir. 1993); *In re Tong Yang Cement Corp.*, 19 USPQ2d 1689 (TTAB 1991). In this case, the foreign registration specifies an owner other than the U.S. applicant, i.e., SUMIKO MIYANO.

If applicant is the owner of the foreign application or registration and can prove ownership by an assignment that was completed before filing in the United States, the Section 44(e) basis can remain in the application. TMEP §1005. Applicant must submit a certified copy or certification from the foreign trademark office that reflects applicant's ownership of the foreign registration and the date of the assignment, or evidence that the foreign registration was assigned to applicant before the filing date in the United States. *See id.* §§1005, 1006.

If applicant did not own the foreign registration on or before the filing date, applicant may respond by substituting the basis for registration from Section 44(e) to Section 1(a) or 1(b), if applicant can satisfy the requirements for the new basis. *See* 15 U.S.C. §§1051(a)-(b), 1126(e); TMEP §806.03. A foreign registration certificate is not required for a Section 1(a) or 1(b) basis. *See* 15 U.S.C. §1051(a)-(b); TMEP §806.01(a)-(b).

**Potential Section 2(d) - Likelihood of Confusion Refusal**

The examining attorney encloses information regarding pending Application Serial No. 77176918. 37 C.F.R. §2.83.

There may be a likelihood of confusion between the applicant's mark and the mark in the above noted application under Section 2(d) of the Act. The filing date of the referenced application precedes the applicant's filing date. If the earlier#filed application matures into a registration, the examining attorney may refuse registration under Section 2(d).

**Section 2(d) - Likelihood of Confusion Refusal**

Registration of the proposed mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 1217317. Trademark Act Section 2(d), 15 U.S.C. §1052(d); TMEP §§1207.01 *et seq.* See the enclosed registration.

The Court in *In re E. I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973), listed the principal factors to be considered in determining whether there is a likelihood of confusion under Section 2(d). Any one of the factors listed may be dominant in any given case, depending upon the evidence of record. *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997). In this case, the following factors are the most relevant: similarity of the marks, similarity of the goods and/or services, and similarity of trade channels of the goods and/or services. *See In re Opus One, Inc.*, 60 USPQ2d 1812 (TTAB 2001); *In re Dakin's Miniatures Inc.*, 59 USPQ2d 1593 (TTAB 1999); *In re Azteca Restaurant Enterprises, Inc.*, 50 USPQ2d 1209 (TTAB 1999); *In re L.C. Licensing Inc.*, 49 USPQ2d 1379 (TTAB 1998); TMEP §§1207.01 *et seq.*

Taking into account the relevant *Du Pont* factors, a likelihood of confusion determination in this case involves a two-part analysis. First, the marks are compared for similarities in appearance, sound, connotation and commercial impression. *In re E .I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Second, the goods or services are compared to determine whether they are similar or related or whether the activities surrounding their marketing are such that confusion as to origin is likely. *In re National Novice Hockey League, Inc.*, 222 USPQ 638 (TTAB 1984); *In re August Storck KG*, 218 USPQ 823 (TTAB 1983); *In re Int'l Tel. and Tel. Corp.*, 197 USPQ 910 (TTAB 1978); *Guardian Prods.*

MMU0022111

*Co., v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); TMEP §§1207.01 *et seq.*

Applicant's mark M(with design element) is highly similar to the cited registered mark M MIYANO (with design element). The M designs in both of the marks are identical, they both consist of the letter M with a wing design.

The marks are compared in their entireties under a Section 2(d) analysis. Nevertheless, one feature of a mark may be recognized as more significant in creating a commercial impression. Greater weight is given to that dominant feature in determining whether there is a likelihood of confusion. *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985); *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (C.C.P.A. 1976). *In re J.M. Originals Inc.*, 6 USPQ2d 1393 (TTAB 1987); TMEP §1207.01(b)(viii).

It is noted that when the applicant's mark is compared to a registered mark, "the points of similarity are of greater importance than the points of difference." *Esso Standard Oil Co. v. Sun Oil Co.*, 229 F.2d 37, 108 USPQ 161 (D.C. Cir.), *cert. denied*, 351 U.S. 973, 109 USPQ 517 (1956).

In addition, the slight differences between the respective marks may not be recalled by purchasers seeing the marks at separate times. In determining likelihood of confusion, the emphasis is not on whether the marks can be distinguished when subjected to a side#by#side comparison but rather, on the recollection of the *average* purchaser who normally retains a *general* rather than specific impression of trademarks. *Grandpa Pidgeon's of Missouri, Inc. v. Borgsmiller*, 477 F.2d 586, 177 USPQ 573 (CCPA 1973); *Spoons Restaurants Inc. v. Morrison, Inc.*, 23 USPQ2d 1735 (TTAB 1991), aff'd unpub., (Fed. Cir., June 5, 1992); *Visual Information Institute, Inc. v. Vicon Industries Inc.*, 209 USPQ 179 (TTAB 1980). *Chemetron Corp. v. Morris Coupling & Clamp Co.*, 203 USPQ 537 (TTAB 1979); *Sealed Air Corp. v. Scott Paper Co.*, 190 USPQ 106 (TTAB 1975). In that respect, a purchaser's fallibility of memory over a period of time must also be kept in mind. *Id.*

Finally, even if potential purchasers realize the apparent differences between the marks, they could still reasonably assume, due to the overall similarities in sound, appearance, connotation, and commercial impression in the respective marks, that applicant's goods sold under the applicant's mark constitute a new or additional product line from the same source as the goods sold under the registrant's mark with which they are acquainted or familiar, and that applicant's M (with design element) is merely a variation of the registrant's M (with identical design element) MIYAMO mark. *See, e.g., SMS, Inc. v. Byn-Mar Inc.* 228 USPQ 219, 220 (TTAB 1985) (applicant's marks ALSO ANDREA and ANDREA SPORT were "likely to evoke an association by consumers with opposer's preexisting mark [ANDREA SIMONE] for its established line of clothing.").

Likelihood of confusion is determined on the basis of the goods or services as they are identified in the application and the registration. *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002); *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1690 n.4 (Fed. Cir. 1993); *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ2d 1889 (Fed. Cir. 1991); *Octocom Systems Inc. v. Houston Computer Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783 (Fed. Cir. 1990). Since the identification of the applicant's goods and/or services is very broad, it is presumed that the application encompasses all goods and/or services of the type described, including those in the registrant's more specific identification, that they move in all normal channels of trade and that they are available to all potential customers. TMEP §1207.01(a)(iii).

The examining attorney notes that the applicant has filed an opposition and a cancellation proceeding against the prior pending application and the above cited mark. If, after applicant responds to the issues listed below, these proceedings have not been resolved, this application will be suspended pending their resolution.

MMU0022112

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following:

## Identification and Classification of Goods

The identification of goods is indefinite and overly broad as the goods listed could be included in multiple Classes. The applicant must specify the common commercial names of all of the goods and classify they correctly.

Applicant may adopt the following identification, if accurate:   TMEP §1402.01.

- "machines tools, **namely, gear cutters and milling cutters; industrial** machinery instruments not including CNC lathe, automatic lathes and automatic tapping machines, **namely, industrial machine presses;** power machinery instruments, **namely, power machines for cutting and splitting logs for firewood;** wind **and** water power machinery instruments, **namely, wind turbines and water pumps for use in motors and engines; machine parts, namely, bearings, blades and hoods**", in Class 007

- "office machinery instruments, **namely, office labeling machines and office lettering machines**", in Class 016

Please note that, while the identification of goods and/or services may be amended to clarify or limit the goods and/or services, adding to the goods and/or services or broadening the scope of the goods and/or services is not permitted. 37 C.F.R. §2.71(a); TMEP §1402.06. Therefore, applicant may not amend the identification to include goods and/or services that are not within the scope of the goods and/or services set forth in the present identification.

For assistance with identifying and classifying goods and/or services in trademark applications, please see the online searchable *Manual of Acceptable Identifications of Goods and Services* at http://tess2.uspto.gov/netahtml/tidm.html.

## Possible Additional Fees Required

If applicant prosecutes this application as a combined, or multiple-class application, then applicant must comply with each of the following for those goods and/or services based on a foreign registration under Trademark Act Section 44(e):

(1)  Applicant must list the goods and/or services by international class with the classes listed in ascending numerical order.  TMEP § 1403.01; and

(2)  Applicant must submit a filing fee for each international class of goods and/or services not covered by the fee already paid (current fee information should be confirmed at http://www.uspto.gov).  37 C.F.R. §2.86(a)(2); TMEP §§810 and 1403.01.

## Foreign Registration Expired

The foreign registration on which this application is based expired on 12/18/2007.  The foreign registration must be in force at the time the United States issues the registration based on that foreign registration.  *In re Societe D'Exploitation de la*

*Marque Le Fouquet's*, 67 USPQ2d 1784 (TTAB 2003).

Therefore, applicant must submit a certificate of renewal or other certification from the intellectual property office of the foreign country, or a copy of the foreign registration that shows that the foreign registration has been renewed and will be in force at the time the registration issues in the United States. 37 C.F.R. §2.34(a)(3)(iii); TMEP §1004.01(a).


/Ernest Shosho/

Trademark Attorney

Law Office 117

571-272-9705


**RESPOND TO THIS ACTION:** If there are any questions about the Office action, please contact the assigned examining attorney. A response to this Office action should be filed using the form available at http://www.uspto.gov/teas/eTEASpageD.htm. If notification of this Office action was received via e-mail, no response using this form may be filed for 72 hours after receipt of the notification. **Do not attempt to respond by e-mail as the USPTO does not accept e-mailed responses.**

If responding by paper mail, please include the following information: the application serial number, the mark, the filing date and the name, title/position, telephone number and e-mail address of the person signing the response. Please use the following address: Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451.

**STATUS CHECK:** Check the status of the application at least once every six months from the initial filing date using the USPTO Trademark Applications and Registrations Retrieval (TARR) online system at http://tarr.uspto.gov. When conducting an online status check, print and maintain a copy of the complete TARR screen. If the status of your application has not changed for more than six months, please contact the assigned examining attorney.

MMU0022114

**Print: Mar 20, 2008**                    **73328921**

## DESIGN MARK

**Serial Number**
73328921

**Status**
CANCELLATION PENDING

**Word Mark**
M MIYANO

**Standard Character Mark**
No

**Registration Number**
1217317

**Date Registered**
1982/11/23

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
MIYANO MACHINERY INC. CORPORATION ILLINOIS 940 NORTH CENTRAL AVENUE
WOOD DALE ILLINOIS 60191

**Goods/Services**
Class Status -- ACTIVE.  IC 007.  US  023.  G & S: Power Lathes, and
Bar Feeders Therefor.  First Use: 1970/01/00.  First Use In Commerce:
1970/01/00.

**Description of Mark**
The mark is composed of the word Miyano with the double winged letter
"M" superimposed in a triangle.

**Filing Date**
1981/09/21

**Examining Attorney**
UNKNOWN

**Attorney of Record**
GEORGE H. KOBAYASHI

-1-

MMU0022115



MMU0022116

**Print: Mar 20, 2008**                    **77176918**

## DESIGN MARK

**Serial Number**
77176918

**Status**
OPPOSITION PENDING

**Word Mark**
M MIYANO

**Standard Character Mark**
No

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
Miyano Machinery USA Inc. CORPORATION ILLINOIS 940 N. Central Avenue
Wood Dale ILLINOIS 60191

**Goods/Services**
Class Status -- ACTIVE.  IC 037.  US  100 103 106.  G & S: Repair and
refurbishing services in connection with machines and machine tools,
namely, turning centers, lathes, vertical machining centers and all
parts therefor.  First Use: 1970/01/01.  First Use In Commerce:
1970/01/01.

**Prior Registration(s)**
1217317;1473925;1527809

**Description of Mark**
The mark consists of the wording Miyano with double winged letter "M"
superimposed on a triangle.

**Colors Claimed**
Color is not claimed as a feature of the mark.

**Filing Date**
2007/05/09

**Examining Attorney**
CHUO, EMILY

**Attorney of Record**

-1-

MMU0022117

**Print: Mar 20, 2008**                    **77176918**

George H. Kobayashi

-2-

MMU0022118



MMU0022119