**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | Civil Action No. **08 C 526** |
|      v. | ) | |
| | ) | Hon. Virginia Kendall |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a Toshiharu Miyano | ) | Magistrate Judge Nolan |
| and Steven Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
|    Defendants | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ─────────────────── | ) | |
| | ) | |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a Toshiharu Miyano | ) | |
| and Steven Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
|    Counterclaim-Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Miyano Machinery USA Inc. | ) | |
|    Counterclaim-Defendant, and | ) | |
| | ) | |
| Miyano Machinery Inc., | ) | |
|    Third-Party Defendant | ) | |
| | ) | |

# REPLY (AMENDED) TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

TABLE OF CONTENTS

I.  INTRODUCTION...................................................................................................1

II.  ARGUMENT.......................................................................................................2

A.  Plaintiff Has Demonstrated Likely Success on the Merits.............................2

(1)  Plaintiff's Trademarks and Trade Name are Protectable .....................2

a.  The Registered Plain-Text MIYANO® Mark................................2

i.  Defendants Fail to Rebut the Presumption that
MMU's Registered Trademark ("MIYANO") has Secondary Meaning.............2

ii.  MMU's Plain-Text Mark Was Neither Cancelled Nor Abandoned.....................2

iii.  MMU Received Defendant Tom Miyano's Written Consent ....................3

iv.  Defendants' Four Bases for Cancelling the
MIYANO® Trademark are Unsupported in Fact and Law.............................4

b.  The "Miyano" Trade Name is Protectable ........................5

i.  "Miyano" is a Trade Name of Plaintiff Entitled to Protection ...........5

ii.  Survey Evidence is Not Required for a Preliminary Injunction ...........5

iii.  Plaintiff Has Shown Secondary Meaning For Its
Trade Name and Trademarks ........................5

c.  MMU's Triangle Winged M Mark is Protectable ........................6

i.  Plaintiff is the Owner of the Triangle Winged M Trademark and
Service Mark Rights in the United States........................6

ii.  Defendants' Arguments Regarding Tacking Fail ........................7

iii.  MMU Never Discontinued its Use of the Triangle Winged M as a
Trademark and Service Mark ........................10

iv.  Defendants Fail to Set Forth Evidence or Argument that
Would Permit One to Conclude MMU Abandoned its
Trademark and Service Mark Rights in the Triangle Winged M .................11

v.  Defendants Have Not Established Fraud........................14

(2)  Plaintiff Has Overwhelmingly Shown A Likelihood of Confusion....................15

a.  Defendants' Marks Are Confusingly Similar to Plaintiff's Marks ...................15

      b.    Competing Products, Area and Manner of Use,

             Degree of Care, and Initial Interest..................................................... 16

      c.    Strength of the Mark Favors Plaintiff ........................................ 17

      d.    Actual Confusion................................................................................. 17

      e.    Defendants' Intent ............................................................................ 18

      f.    Likelihood Of Confusion Summary ............................................. 18

    B.    Defendants Fail to Refute Irreparable Harm................................. 19

    C.    Plaintiff's Balance of Harm  and Public Interest Showings Are Not Rebutted ........ 19

  III.    CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Autotech Tech. Ltd. v. Automationdirect.com, Inc.*,
   2007 U.S. Dist. LEXIS 60474 (N.D. Ill. Aug. 17, 2007)............................................13

*Baker v. Parris*,
   777 F. Supp. 299 (S.D.N.Y. 1991)............................................................................2

*Basile, S.p.A. v. Basile*,
   899 F.2d 35 (D.C. Cir. 1990) ...................................................................................20

*Brennan's Inc. v. Brennan*,
   360 F.3d 125 (2nd Cir. 2004) ...................................................................................20

*Brooks Bros. v. Brooks Clothing of California, Ltd.*,
   60 F. Supp. 442 (S.D. Cal. 1945)..............................................................................5

*Brunswick Corp. v. Jones*,
   784 F.2d 271 (7th Cir. 1986) .....................................................................................2

*CAE, Inc. v. Clean Air Engineering, Inc.*,
   267 F.3d 660 (7th Cir. 2001) .....................................................................................2

*Consumers Petroleum Co. v. Consumers Co. of Illinois*,
   169 F.2d 153 (7th Cir. 1948) ...................................................................................20

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*,
   304 F.3d 1167 (11th Cir. 2002) .................................................................................3

*Dorr-Oliver, Inc., v. Fluid-Quip, Inc.*,
   94 F.3d 376 (7th Cir. 1996) .....................................................................................17

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280, 1292 (9th Cir. 1992) ..................................................................16, 17

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*
   458 F.3d 931 (9th Cir. 2006) ...................................................................................13

*Eli Lilly & Co. v. Natural Answers, Inc.*,
   233 F.3d 456 (7th Cir. 2000) .........................................................................17, 19, 20

*Emergency One, Inc. v. Am. FireEagle, Ltd.*,
   228 F.3d 531 (4th Cir. 2000) ...................................................................................11

*Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,*
   754 F.2d 591 (5th Cir. 1985) ................................................................12

*Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.,*
   989 F.2d 985 (8th Cir. 1993) .................................................................2

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons,*
   365 F. Supp. 707 (S.D.N.Y. 1973), *aff'd* 523 F.2d 1331 (2d Cir. 1975) .................17

*Henri's Food Products Co. v. Kraft, Inc.,*
   717 F.2d 352 (7th Cir. 1983) ...........................................................15, 16

*Howe Scale Co. v. Wyckoff, Seamans & Benedict*
   198 U.S. 118 (1905).........................................................................19

*In re Chatam Int'l, Inc.,*
   380 F.3d 1340 (Fed. Cir. 2004).............................................................16

*In re Bose Corp.,*
   546 F.2d 893 (CCPA 1976) .................................................................10

*In re Dell,*
   71 U.S.P.Q.2d 1725 (T.T.A.B. 2004) ........................................................11

*In re McKee Baking Co.,*
   218 U.S.P.Q. 287 (T.T.A.B. 1983) ...........................................................8

*In re Larios,*
   35 U.S.P.Q.2d 1214, 1218 (T.T.A.B. 1995) ..................................................10

*In re Umax Data Systems, Inc.,*
   40 U.S.P.Q.2d 1539, 1996 WL 657223 (Com'r Pat. & Trademarks)...........................8

*International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,*
   846 F.2d 1079 (7th Cir. 1988) ...........................................................5, 6

*ISP.Net, LLC v. Qwest, Communs. Int'l, Inc.,*
   2003 U.S. Dist. LEXIS 9076 (S.D. Ind. 2003) ...............................................3

*John B. Stetson v. Stephen L. Stetson Co.,*
   85 F.2d 586 (2nd Cir. 1936) *cert. denied*, 299 U.S. 605 (1936) .........................15, 16

*Keebler Co. v. Nabisco Brands, Inc.,*
   1992 U.S. Dist. LEXIS 6826 (N.D. Ill. May 19, 1992) ......................................12

*L. E. Waterman Co. v. Modern Pen Co.*,
    235 U.S. 88 (1914)................................................................................19

*Lady Esther, Ltd. v. Lady Esther Corset Shoppe*, Inc.,
    317 Ill. App. 451 (Ill. App. Ct. 1943) ...........................................20

*Liquid Controls Corp. v. Liquid Control Corp.*,
    802 F.2d 934 (7th Cir. 1986) .......................................................2

*Meridian Mutual Ins. Co. v. Meridian Ins. Group*,
    128 F.3d 1111 (7th Cir. 1997) ....................................................17

*Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*,
    889 F.2d 1070 (Fed. Cir. 1989)......................................................15

*Paris Glove of Canada, Ltd. v. SBC/Sport Corp.*,
    2007 WL 2422997 (T.T.A.B. 2007) ...............................................8

*Perl Brand Foods Corp. v. Deli Direct From Perl, Inc.*,
    1989 U.S. Dist. LEXIS 17473 (N.D. Ill. 1989) .............................18

*Personeta, Inc. v. Persona Software, Inc.*,
    418 F. Supp. 2d 1013 (N.D. Ill. 2005) .....................................16, 17

*Pony Express Courier Corp. v. Pony Express Delivery Service*,
    872 F.2d 317 (9th Cir. 1989) .......................................................3

*Pro-Cuts v. Schilz-Price Enters., Inc.*,
    27 U.S.P.Q.2d 1224 (T.T.A.B. 1993) .............................................8

*Prudential Ins. Co. v. Miller Brewing Co.*,
    789 F.2d 1269 (7th Cir. 1986) ......................................................4

*Rodgers v. Wright*,
    544 F. Supp. 2d 302 (S.D.N.Y. 2008).............................................3

*Roulo v. Russ Berrie & Co.*,
    886 F.2d 931 (7th Cir. 1989) ......................................................12

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
    978 F.2d 947 (7th Cir. 1992), *aff'd* in part, *rev'd* in part, 34 F.3d 1340 (7th Cir. 1994) .........3, 17

*Société Civile Des Domaines Dourthe Frères v. S.A. Consortium
    Vinicole De Bordeaux Et De La Gironde*,
    6 U.S.P.Q.2d 1205 (T.T.A.B. 1988) ...............................................5

*Teter, Inc. v. Rheem Mfg. Co.,*
    334 F.2d 784 (7th Cir. 1964) ................................................................10

*The Money Store v. Harriscorp Finance, Inc.,*
    689 F.2d 666 (7th Cir. 1982) ....................................................3, 4, 14, 15

*Ty, Inc. v. Jones Group, Inc.,*
    98 F. Supp. 2d 988 (N.D. Ill. 2000), *aff'd,*237 F.3d 891 (7th Cir. 2001) ..................................19

*Ty, Inc. v. Jones Group, Inc.,*
    237 F.3d 891 (7th Cir. 2001) ..............................................2, 15, 16, 18, 19

*U.S. Search, LLC v. U.S. Search.com, Inc.,*
    300 F.3d 517 (4th Cir. 2002) ..................................................................2

*Vacuum-Elec. Corp.  v. Elec. Eng'g Co.,*
    150 U.S.P.Q. 215 (T.T.A.B. 1966) ..........................................................8

*Van Auken Co. v. Van Auken Steam Specialty Co.,*
    57 Ill. App. 240 (Ill. App. Ct. 1894) ......................................................16

*Vaughan Mfg. Co. v. Brikam Int'l,*
    814 F.2d 346 (7th Cir. 1987) ..................................................................5

**STATUTES**
15 U.S.C. § 1115(a) ......................................................................................5
15 U.S.C. § 1115(b) ..................................................................................1, 7
15 U.S.C. § 1116 ..........................................................................................5
15 U.S.C. § 1127 ..........................................................................................5

**OTHER AUTHORITIES**
37 C.F.R. § 2.51 .........................................................................................10
37 C.F.R. § 2.52 ......................................................................................2, 10
37 C.F.R. § 2.68 ...........................................................................................2
Trademark Manual of Examination Procedure § 807.03 (5th ed. 2007) ...........................................2
Trademark Manual of Examination Procedure § 1604.13(5th ed. 2007) ...........................................8
Restatement 3rd of Unfair Competition § 12 (1995) ................................................5

**TREATIES**
*Hawes Trademark Registration Practice* §5:9 (2004).....................................................10
*Hawes Trademark Registration Practice* §24:7(2004).....................................................8
*McCarthy on Trademarks and Unfair Competition* § 17:4 (4th ed. 2008)..............................3, 14
*McCarthy on Trademarks and Unfair Competition* § 17:12(4th ed. 2008)...............................12
*McCarthy on Trademarks and Unfair Competition* § 17:26(4th ed. 2008)................................7
*McCarthy on Trademarks and Unfair Competition* § 17:27(4th ed. 2008)...........................7, 8, 9
*McCarthy on Trademarks and Unfair Competition* § 23:50(4th ed. 2008)...............................16

*McCarthy on Trademarks and Unfair Competition* § 23:51(4th ed. 2008)..................................20

*McCarthy on Trademarks and Unfair Competition* § 31:69(4th ed. 2008)....................................4

*McCarthy on Trademarks and Unfair Competition* § 31:74 (4th ed. 2008)...................................3

*McCarthy on Trademarks and Unfair Competition* § 31:76 (4th ed. 2008)...................................4

# STATUTES AND REGULATIONS

**15 U.S.C. § 1115: Registration on principal register as evidence of exclusive right to use mark; defenses**

(a) Evidentiary value; defenses. Any registration issued under the Act of March 3, 1881, or the Act of February 20, 1905, or of a mark registered on the principal register provided by this Act and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein, but shall not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b), which might have been asserted if such mark had not been registered.

(b) Incontestability; defenses. To the extent that the right to use the registered mark has become incontestable under section 15 [15 USCS § 1065], the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of section 15 [15 USCS § 1065], or in the renewal application filed under the provisions of section 9 [15 USCS § 1059] if the goods or services specified in the renewal are fewer in number, subject to any conditions or limitations in the registration or in such affidavit or renewal application. Such conclusive evidence of the right to use the registered mark shall be subject to proof of infringement as defined in section 32 [15 USCS § 1114], and shall be subject to the following defenses or defects…

**15 U.S.C. § 1116: Injunctive Relief**

(a) Jurisdiction; service. The several courts vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 [15 USCS § 1125]. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

**15 U.S.C. § 1125:  False designations of origin, false descriptions, and dilution forbidden**
  (a) Civil action.
   (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
   shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
   (2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this Act in the same manner and to the same extent as any nongovernmental entity.
   (3) In a civil action for trade dress infringement under this Act for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

**15 U.S.C. § 1127: Construction and definitions; intent of chapter**

   In the construction of this Act, unless the contrary is plainly apparent from the context--
   The United States includes and embraces all territory which is under its jurisdiction and control…

   The terms "trade name" and "commercial name" mean any name used by a person to identify his or her business or vocation…

**37 C.F.R. §2.51: Drawing required.**
   (a) In an application under section 1(a) of the Act, the drawing of the mark must be a substantially exact representation of the mark as used on or in connection with the goods and/or services.
   (b) In an application under section 1(b) of the Act, the drawing of the mark must be a substantially exact representation of the mark as intended to be used on or in connection with the goods and/or services specified in the application, and once an amendment to allege use under §2.76 or a statement of use under §2.88 has been filed, the drawing of the mark must be a substantially exact representation of the mark as used on or in connection with the goods and/or services.

(c) In an application under section 44 of the Act, the drawing of the mark must be a substantially exact representation of the mark as it appears in the drawing in the registration certificate of a mark duly registered in the applicant's country of origin. (d) In an application under section 66(a) of the Act, the drawing of the mark must be a substantially exact representation of the mark as it appears in the international registration.

**37 C.F.R. § 2.52:  Types of drawings and format for drawings.**

A drawing depicts the mark sought to be registered. The drawing must show only one mark. The applicant must include a clear drawing of the mark when the application is filed. There are two types of drawings:

(a) Standard character (typed) drawing. Applicants who seek to register words, letters, numbers, or any combination thereof without claim to any particular font style, size, or color must submit a standard character drawing that shows the mark in black on a white background. An applicant may submit a standard character drawing if:

  (1) The application includes a statement that the mark is in standard characters and no claim is made to any particular font style, size, or color;

  (2) The mark does not include a design element;

  (3) All letters and words in the mark are depicted in Latin characters;

  (4) All numerals in the mark are depicted in Roman or Arabic numerals; and

  (5) The mark includes only common punctuation or diacritical marks.

(b) Special form drawing. Applicants who seek to register a mark that includes a two or three-dimensional design; color; and/or words, letters, or numbers or the combination thereof in a particular font style or size must submit a special form drawing. The drawing must show the mark in black on a white background, unless the mark includes color.

  (1) Color marks. If the mark includes color, the drawing must show the mark in color, and the applicant must name the color(s), describe where the color(s) appear on the mark, and submit a claim that the color(s) is a feature of the mark.

  (2) Three dimensional marks. If the mark has three-dimensional features, the drawing must depict a single rendition of the mark, and the applicant must indicate that the mark is three-dimensional.

  (3) Motion marks. If the mark has motion, the drawing may depict a single point in the movement, or the drawing may depict up to five freeze frames showing various points in the movement, whichever best depicts the commercial impression of the mark. The applicant must also describe the mark.

  (4) Broken lines to show placement. If necessary to adequately depict the commercial impression of the mark, the applicant may be required to submit a drawing that shows the placement of the mark by surrounding the mark with a proportionately accurate broken-line representation of the particular goods, packaging, or advertising on which the mark appears. The applicant must also use broken lines to show any other matter not claimed as part of the mark. For any drawing using broken lines to indicate placement of the mark, or matter not claimed as part of the mark, the applicant must describe the mark and explain the purpose of the broken lines.

  (5) Description of mark. A description of the mark must be included.

(c) TEAS drawings. A drawing filed through TEAS must meet the requirements of §2.53.

(d) Paper drawings. A paper drawing must meet the requirements of §2.54.

x

(e) Sound, scent, and non-visual marks. An applicant is not required to submit a drawing if the mark consists only of a sound, a scent, or other completely non-visual matter. For these types of marks, the applicant must submit a detailed description of the mark.

**37 C.F.R. §2.68: Express abandonment (withdrawal) of application.**

An application may be expressly abandoned by filing in the Patent and Trademark Office a written statement of abandonment or withdrawal of the application signed by the applicant, or the attorney or other person representing the applicant. Except as provided in §2.135, the fact that an application has been expressly abandoned shall not, in any proceeding in the Patent and Trademark Office, affect any rights that the applicant may have in the mark which is the subject of the abandoned application.

# I. INTRODUCTION

For the Court's convenience, Plaintiff's trademarks are listed and/or shown in the chart on page 2 of its opening brief (Doc. 23) and Appendix A hereto.[1] In each, the word MIYANO is clearly readable. Several registrations are incontestable under 15 U.S.C. § 1115(b). Uses of Plaintiff's MIYANO marks and name are reviewed in Plaintiff's 127-page set of interrogatory answers. Exhs. 46a-b.[2] Plaintiff has developed tremendous goodwill in its trade names, trademarks, and service marks. Doc. 15, Marchionne, ¶19.[3] Even Tom Miyano acknowledges that the term "Miyano" is the term that "…customers used to identify the source of machines marketed and sold by MMU." (T. Miyano, Doc. 115, ¶6).

In contrast, Defendants have sold no products and no services yet. Doc. 124, p. 28; Ex. 50, S. Miyano Tr. at 142:20-143:4. The first product is to be exhibited at the IMTS show which starts on September 8, 2008 in Chicago. (Doc. 124, p.28). Defendant Tom Miyano is neither an owner nor officer of MiyanoHitec. Ex. 50, S. Miyano Tr. at 33:9-34:10. He left MMJ and MMU as part of an arrangement with a Japanese agency incident to a work-out agreement where the company's debts were relieved.[4] In that same transaction, he was released from personal liability as guarantor of over $130 million of corporate debt.[5] Defendant Steven Miyano, president and alleged sole owner of the defendant corporation MiyanoHitec, is the son of Tom Miyano. He has no background in the machine tool industry. *Id.* at 19:11-18; 28:20-29:1; and 32:8-13.

Defendants insist on using MIYANO as part of their trade name along with a logo mark that is confusingly similar to one of Plaintiff's marks. Defendants secured a booth on the same floor as Plaintiff's booth and are listed with the show as "MiyanoHitec Machinery." Defendants' actions have already confused Dun & Bradstreet and even the IMTS show operator.

---

[1] All of the parties in this case include the name "Miyano." To minimize confusion we refer to Plaintiff Miyano Machinery USA, Inc. either as "Plaintiff" or "MMU." In the trade, however, MMU is known in this country as "Miyano." *See, e.g.,* Ex. 44, *See* Doc. 15, Marchionne ¶¶ 16-17. We refer to MMU's parent company as "MMJ."

[2] *See* Doc. 15, Marchionne ¶¶16-31; *see* Ex. 48, Olczak Tr., 75:8-77:20; *see* Exs. 49 and 67.

[3] Plaintiff's corporate name always included the name "Miyano" together with the word "Machinery." Ex. 43, Marchionne. Tr. 28:10-17. It sometimes ended with "Inc." and at other times "U.S.A." or a combination of both. *Id.*

[4] While Tom Miyano was president of MMJ, the company became unable to reduce the principal on its debt load and was in danger of foreclosure or bankruptcy. Ex. 62, Ito Tr. at 69:8-72:8. He was personally liable as a guarantor of loans amounting to ~$130 million. *Id.* at 71:1-12. His suggestion that the IRCJ "targeted" his company contradicts Defendants' Answer to the Complaint where they admit that MMJ's *"application for assistance"* was accepted by the IRCJ on June 4, 2004. Doc. 29, Answer ¶26, p. 8.

[5] Ex. 62, Ito Tr. at 71:1-72:8; *see also* Ex. 42, T. Miyano Tr. at 75:22-79:18. He also knew, going into the IRCJ deal, that he would lose his stock and have to leave the company. Ex. 62, Ito Tr. at 75:19-76:9; Ex. 42, T. Miyano Tr. at 86:7-11

## II.    ARGUMENT

### A.   Plaintiff Has Demonstrated Likely Success on the Merits

At the preliminary injunction stage, the threshold for showing likelihood of success is low. *Brunswick Corp. v. Jones*, 784 F.2d 271, 274 (7th Cir. 1986). Plaintiff need only show "better than negligible" chances. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).

### (1)  Plaintiff's Trademarks and Trade Name are Protectable

#### a.   The Registered Plain-Text MIYANO® Mark

##### i.   Defendants Fail to Rebut the Presumption that MMU's Registered Trademark ("MIYANO") has Secondary Meaning

Defendants urge (p.11) that MMU has a burden of showing secondary meaning for the MIYANO trademark. They have this backwards. Plaintiff registered the MIYANO® trademark (U.S. Reg. No. 3,328,718) on the Principal Register. The Lanham Act declares that a "mark registered on the principal register **shall be prima facie evidence of the validity of the registered mark...**" 15 U.S.C. §1115(a); *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001). Registered trademarks are <u>presumed</u> not to be descriptive or generic, or if descriptive, they have acquired secondary meaning.[6] Defendants do not rebut this presumption.

##### ii.   MMU's Plain-Text Mark Was Neither Cancelled Nor Abandoned

Defendants argue (p.11) that MMU is not entitled to a priority date of 1975 for the plain-text MIYANO mark[7] because in 1995 MMU did not renew an earlier registration. Defendants erroneously call this an "express abandonment" of the mark and conclude (without any citation to caselaw) that, as a result, MMU made material misrepresentations to the Trademark Office.

However, "express abandonment" is an affirmative act that cancels the trademark application or registration, <u>not the underlying common law rights</u>. Further, "express abandonment" calls for a written statement. *See* 37 C.F.R. §2.68. Defendants fail to identify any written statement of abandonment or withdrawal.  Second, non-renewal of a registration does not affect the underlying common law rights in the mark.[8] "[T]he absence of a registration creates no

---

[6] *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986). *See also U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) (certificate of registration is prima facie evidence that mark is not generic and not merely descriptive, but at a minimum is descriptive **and** has obtained secondary meaning).

[7] Plain-text or standard character marks are defined in 37 C.F.R. §2.52(a). *See TMEP* § 807.03, <u>Ex. 66</u>

[8] *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 991 (8th Cir. 1993) ("...a trademark registration of itself does not create the underlying right to exclude. Nor is a trademark created by registration. While federal registration triggers certain substantive and procedural rights, the absence of federal registration does

Footnote continued next page

---

contrary presumptions" and "allowing a federal registration to expire does not *per se* prove abandonment."[9] Rather, "[t]he party asserting abandonment bears the burden of persuasion with respect to two facts: (1) non-use of the mark by the legal owner, and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future."[10] Federal courts impose a heavy burden of proof on defendants who allege abandonment, and they have the burden of persuasion.[11] Defendants have not provided any evidence of discontinuance with intent not to resume for all uses of "Miyano." Rather, Plaintiff continuously used "Miyano" on its machine tools. (Doc. 15, Marchionne, ¶¶16-17; *see also* Ex. 65 (1996 brochure)). Plaintiff did not abandon rights in its mark which existed in common law separate and apart from the registration.

Finally, assuming *arguendo* Defendants' alleged facts, their conclusion is also erroneous. Defendants urge (p.12 ) that MMU's claim of first-use/priority back to 1975 in its plain-text MIYANO® trademark application was a material misrepresentation and is grounds for cancellation. On the contrary, courts have universally determined that a mistaken date of first use is not a material misrepresentation as long as the first use in fact preceded the application date.[12] Defendants do not contend that MMU was not using the MIYANO® trademark prior to its application.[13] Defendants' arguments fail as a matter of law.

### iii. MMU Received Defendant Tom Miyano's Written Consent

Defendants argue (p.13) that Plaintiff never received Tom Miyano's consent to register the mark. However, while he worked as an executive and owner of MMJ and MMU, he signed U.S. trademark applications or declarations regarding registrations of various MIYANO trademarks by Plaintiff.[14] As a matter of law, he provided <u>written consent</u> to Plaintiff to use and register those marks, and <u>acknowledged that the U.S. rights are owned by Plaintiff</u>.[15] Defendants never come to grips with these. Defendants' cases relating to right-to-*use* versus right-to-*register*

---

not unleash the mark to public use. The Lanham Act protects unregistered marks as does the common law.")

[9] *Rodgers v. Wright*, 544 F. Supp. 2d 302, 309 (S.D.N.Y. 2008) *citing McCarthy on Trademarks and Unfair Competition* § 17:4 n.5 *and Baker v. Parris*, 777 F. Supp. 299, 303 (S.D.N.Y. 1991) (no abandonment common law right where trademark owner did not renew registration but continued to use mark in commerce).

[10] *Id. Sands, Taylor & Wood, Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir. 1992) *aff'd* in part, *rev'd* in part, 34 F.3d 1340 (7th Cir. 1994).

[11] *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1175 (11th Cir. 2002)

[12] *Pony Express Courier Corp. v. Pony Express Delivery Service*, 872 F.2d 317, 319 (9th Cir. 1989) see also *McCarthy on Trademarks & Unfair Competition* §31:74 (4th ed. 2008) (*see cases cited therein*).

[13] *See The Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 670 (7th Cir. 1982); *See also ISP.Net, LLC v. Qwest, Communs. Int'l, Inc.*, 2003 U.S. Dist. LEXIS 9076 *12, n. 3 (S.D. Ind. 2003).

[14] Ex.42, T. Miyano Tr. at 101:4-118:18; *See also* Ex. 47; *See* Doc. 23, Ex. 36-38.

[15] Doc. 23, Ex. 36-38; Doc. 15, Marchionne ¶11; Ex.42, T.Miyano Tr. at 101:4-118:18; Ex. 47.

are irrelevant where the trademark registrations were undertaken at Tom Miyano's direction[16] and his signature appears on the applications to register the MIYANO marks.[17]

As to Plaintiff's Registration 3,328,718 (filed and registered in 2007) for the MIYANO® trademark, Plaintiff did not need Tom Miyano's further consent to register because his consent was already of record in the file of a valid registrations. *See* Doc. 23, pp. 12-13.

The defense (p.13) that Tom Miyano "was unaware that was surrendering any right to use his own name" has no merit.[18]  The further defense that Tom Miyano's (previously-given) consent to register expired when the prior registration was not renewed is not supported by case law or factual evidence.

### iv. Defendants' Four Bases for Cancelling the MIYANO® Trademark are Unsupported in Fact and Law.

Defendants urge (pp. 14-15) four bases for cancelling Reg. No. 3,328,718 for the plain-text MIYANO® trademark.  Defendants' first two bases, (1) the non-renewal of the MIYANO® registration in 1995 and (2) alleged failure to obtain consent, fail for reasons set forth above. Defendants also allege infirmity because (3) MMU asserted that no other (person) has the right to use the "Miyano" name. However, "[t]here is nothing in the oath or the statute which require [the] applicant to disclose anyone who in fact may be using the mark, but does not, in the applicant's belief possess the legal *right* to use." *McCarthy* §31:76 (emphasis in original; *see cases cited therein* at n. 5); *see also Money Store*, 689 F.2d at 670-673 (*no* duty to investigate and report all other possible users of the same or similar mark.).

Defendants' fourth argument (not informing the USPTO that "Miyano" is a Japanese surname) also fails. *McCarthy on Trademarks* is clear that an applicant has no duty to disclose information to the Trademark Office regarding whether a mark is a surname:

> An applicant has **no burden** to disclose facts that may help show that the designation is barred under § 2(e), such as that it is a surname.  It is the burden of the PTO Examining Attorney to prove that the mark is primarily merely a surname. The applicant has **no duty** in the original application to disclose that it knows that the mark is the surname of someone.

*McCarthy* §31:69 (emphasis added).  Moreover, whether a term is a common surname in a

---

[16] Doc. 115,  T.Miyano, ¶15.
[17] Ex.  42, T. Miyano Tr. at 101:4-118:18; *see* Doc. 15,  Marchionne ¶11.
[18] *See Prudential Ins. Co. v. Miller Brewing Co.*, 789 F.2d 1269, 1278 (7th Cir. 1986).

Plaintiff's Reply (Amended) In Support of Motion for Preliminary Injunction                    Page 4

foreign country has <u>no significance</u> in the U.S.[19]

Defendants have not shown a single basis why Plaintiff's registration for the plain text MIYANO® mark cannot be enforced. They have not overcome the presumptions of validity, ownership, and right to exclude others as set forth in 15 U.S.C. §§1115(a) and 1116.

### b. The "Miyano" Trade Name is Protectable

### i. "Miyano" is a Trade Name of Plaintiff Entitled to Protection

Defendants argue (p.9) that MMU misled the court in stating that it used the "Miyano" trade name for the last 33 years. Defendants take an unreasonable and unsupported view that "trade name" means only the corporate name registered with the Secretary of State.[20] However, the term "trade name" means "***any name*** used by a person to identify his or her business or vocation."(emphasis added) 15 U.S.C. §1127.[21] Plaintiff owns the "Miyano" trade name and mark, based on its extensive use and as evidenced by Tom Miyano's declarations.[22] Defendants do not provide any reason as to why MMU is not entitled to "Miyano" as its trade name.[23]

### ii. Survey Evidence is Not Required for a Preliminary Injunction

Defendants note MMU's lack of consumer surveys at this stage of proceedings. However, the Seventh Circuit has expressly rejected any requirement that a survey must be performed *at the preliminary injunction stage* of an action.[24]

### iii. Plaintiff Has Shown Secondary Meaning For Its Trade Name and Trademarks

MMU's evidence, even without a survey, demonstrates a "better than negligible" chance of establishing secondary meaning. *Int'l Kennel Club,* 846 F.2d at 1085. "If through use the

---

[19] *See Société Civile Des Domaines Dourthe Frères v. S.A. Consortium Vinicole De Bordeaux Et La De La Gironde,* 6 USPQ2d 1205 (TTAB 1988)(a recognized foreign surname has no bearing on its registerability in the U.S.).

[20] *See* Doc. 15, Marchionne, ¶15: "MMU has had several iterations of **official names** all beginning with "Miyano Machinery," including Miyano Machinery U.S.A. Inc., Miyano Machinery (U.S.A.) Inc…"

[21] *See also* Restatement 3rd of Unfair Competition, § 12 (1995) ("A trade name is a word, name, symbol, device, or other designation, or a combination of such designations, that is distinctive of a person's business or other enterprise and that is used in a manner that identifies that business or enterprise and distinguishes it from the businesses or enterprises of others.")

[22] *See* Doc. 15, Marchionne, ¶¶ 15-17 *and* Ex. 36-38, and 47

[23] Defendants' argument is also contrary to common sense. *See Brooks Bros. v. Brooks Clothing of California, Ltd.,* 60 F. Supp. 442, 454 (S.D. Cal. 1945) ("… we must take into consideration the habits of the American buying public. Just as Americans are prone to abbreviate names… so do they abbreviate longer business names. And Sears, Roebuck & Co. becomes Sears, J. W. Robinson Co. becomes Robinson's, R. H. Macy & Co. becomes Macy's, John Wanamaker becomes Wanamaker's, Tiffany & Co. becomes Tiffany's, and John B. Stetson becomes Stetson's.")

[24] *Vaughan Mfg. Co. v. Brikam Int'l,* 814 F.2d 346, 349 (7th Cir. 1987)(survey evidence not required for preliminary injunction); *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079 (7th Cir. 1988)("plaintiff's burden at the preliminary injunction stage is slight, and on two separate occasions this court has declined to mandate a consumer survey at this preliminary stage.")

public has come to identify the term with a plaintiff's product or service, the words have acquired a 'secondary meaning' and would become a protectable trademark." *Id.* at 1085. Defendants admit that the word "Miyano" is indeed associated by customers with the Plaintiff.[25]

As previously explained, Plaintiff has shown secondary meaning supporting its common law rights in the word "Miyano" through evidence of many uses. Plaintiff's use of "Miyano" has created an association of that word with third-parties so they use the term "Miyano" to refer to MMU.[26]   Defendants do not contradict these facts, nor the facts relating to advertising, market share, and sales, or the testimony of Marchionne with regard to the length and manner of use.[27]

Defendants (p.10) misstate the testimony of Mr. Marchionne. It does <u>not</u> indicate that "Miyano" is associated with <u>Tom</u> Miyano. On the next page of the transcript after the one cited by Defendants, Mr. Marchionne finishes his answer to the question and clarified that he was referring to the Plaintiff.[28]

### c.   *MMU's Triangle Winged M Mark is Protectable*

#### i.   **Plaintiff is the Owner of the Triangle Winged M Trademark and Service Mark Rights in the United States**

Defendants mistakenly argue that MMU is not an owner of these rights in the U.S. but is simply a licensee -- formerly of Sumiko Miyano and now Tom Miyano.  Defendants offer absolutely <u>no evidence</u>, and only casually reference a legal treatise, to support this argument. They provide no explanation for or evidence of any term or condition of this purported license. Defendants' argument should be dismissed out of hand for this reason alone.  Nevertheless, there are additional grounds on which it must be rejected.

First, as already noted, Tom Miyano himself declared under oath that MMU was the <u>owner,</u> and not merely a licensee, of the Triangle Winged M (U.S. Reg. No. 1,217,317), "Miyano" in stylized font (U.S. Reg. No. 1,527,809) and every other trademark that MMU used

---

[25] Defendant Tom Miyano himself states in his declaration that "based on [his] personal experience interacting with customers in the United States machine tool industry, it was [his] name – particularly his surname [MIYANO] – **that those customers used to identify the source of the machines marketed and sold by MMU**."(emphasis added)(Doc. 115, T. Miyano, ¶6).

[26] *See* Defendants' counsel has even used the "Miyano" to refer to MMU when addressing this Court:  "MR. KARTON: …We feel that Miyano, MMU, is attempting to usurp a mark that is owned personally by Tom Miyano…" Ex. 51, Transcript of Motion Hearing, Feb. 7, 2008, p. 9, lines 8-18.

[26] *See* Doc. 23, p. 15 and Exs. Doc. 23, Exhs. 6, 7, 8, 10, 11 and 12

[27] *See* Doc. 15,  Marchionne, ¶¶ 15-17, 35-43 and Doc. 23, p. 15

[28] "I don't think it is fair that Miyano [MMU] with some 34-36 years of building up a reputation and then he [Tom Miyano] is going to use the name to steal part of it from us." Ex. 43, Marchionne Tr. at 126:1-4.

in the U.S. and applied to register with the United States Trademark Office.[29]  Second, MMU's ownership of many of these trademarks is <u>incontestable</u> under 15 U.S.C. §1115(b), based on declarations made under oath by Tom Miyano.[30]  Third, Tom Miyano even testified that the Triangle Winged M mark is registered only to Plaintiff in the U.S.[31]  The other trademarks are similarly registered to and used only by Plaintiff in the U.S.  Plaintiff is their rightful owner.

### ii.  Defendants' Arguments Regarding Tacking Fail

Defendants are mistaken when they argue that the minor change in font between the two versions of the Triangle Winged M precludes Plaintiff from tacking its use of the earlier version onto the later version.  *McCarthy* explains the test used to determine if tacking is allowed:

> The test is one of continuity.  A mark can be modified or changed without abandonment or loss of priority if done in such a way that the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression. [citation omitted]  Trademark rights inure in the basic commercial impression created by a mark, not in any particular format or style.

*McCarthy* §17:26. "The law permits a user who changes the form of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression." *Id.*

Furthermore, "use of a trademark in a slightly different form than shown in a federal registration does not constitute abandonment." *Id.* §17:27.  "Minor changes in a mark which do not change the basic, overall commercial impression created on buyers will not constitute any abandonment and will not interrupt the user's chain of ownership back to adoption and use of the original form." *Id.*   The logic, as explained in *McCarthy,* is that:

> Without tacking, a trademark owner's priority in his mark would be reduced each time he made the slightest alteration to the mark, which would discourage him from altering the mark in response to changing consumer preferences, evolving aesthetic developments, or new advertising and marketing styles.

*McCarthy* §17:27.

---

[29] *See* Ex. 47, "Toshiharu Miyano declares and states that he is the President of Miyano Machinery (U.S.A.) Inc.… that Miyano Machinery (U.S.A.) Inc. owns the above-identified registration [Reg. no.1,217,317]..."  Without exception, Tom Miyano declared MMU the owner of every trademark that MMU used in the United States and applied to register with the United States Patent and Trademark Office.

[30] Defendant Tom Miyano executed Combined Section 8 and 15 Affidavits for the Triangle Winged M trademark (U.S. Reg. No. 1,217,317), the Miyano Motto mark (U.S. Reg. No. 1,473,925), and 'Miyano' in stylized form (U.S. Reg. No. 1,527,809).  (see respectively, Doc. 23, Ex.'s 36,37, and 38)

[31] T. Miyano Tr. 125:2 ("Triangle "M" mark is only register by M.M.U.")

Defendants' legal arguments fail to deny tacking in this case. Defendants refer to a "greater" degree of similarity required between the two marks, by which they mean, the two marks must be more than just confusingly similar to one another under the likelihood of confusion test; they must be legally equivalent, i.e. the two marks must convey the same impression and the differences between them must not rise to the level of a material alteration. See *McCarthy 17:26*. Plaintiff not only meets, but far exceeds, this standard.

Contrary to the two marks compared in *Pro-Cuts*[32] cited by Defendants, the two Triangle Winged M designs in the instant case are a textbook example of when tacking <u>is</u> permitted: two virtually identical marks are used in the same manner on or in connection with the same goods.

Additional reasons why tacking is permitted here are, first, "mere changes in background or styling, or modernization, are not ordinarily considered to be material changes in the mark." *TMEP § 1604.13; see McCarthy 17:27; See also Hawes Trademark Registration Practice* §24:7(2004) ("A word normally can be varied as to the style of lettering, size, and other elements of form without resulting in a material alteration of the mark.").[33] The only change between the two versions of the Triangle Winged M is a slight change of the font in the 'Miyano' name. All other elements of the mark, including the dominant Winged M element in combination with the triangle, are unchanged, as illustrated at the right.



---

[32] Defendants cite *Pro-Cuts v. Schilz-Price Enters., Inc.*, 27 U.S.P.Q.2d 1224 (T.T.A.B. 1993) which does not support their argument for denying tacking here. In *Pro-Cuts*, tacking was denied because the two marks, while sufficiently similar to create a likelihood of confusion, were still remarkably different and could not pass for the same mark. As shown below, the two marks differed in "spelling," "pluralization," and "design." *Pro-Cuts* at 1227.



[33] S*ee also Vacuum-Elec. Corp.  v. Elec. Eng'g Co.*, 150 USPQ 215, 216 (TTAB 1966)(stylized versions of "EECO" mark permissible to tack on to block lettering form of mark because "rights reside in term rather than in any particular form or arrangement thereof").

| | | |
|---|---|---|
| *In re Umax Data Systems, Inc.*, 40 U.S.P.Q.2d 1539, 1996 WL 657223 (Com'r Pat. & Trademarks)("commercial impression of the modified mark is essentially the same as that of the original mark.") | **LJMAX**<br><br>Mark as Registered | **UMAX**<br><br>Proposed Amended Mark |
| *Paris Glove v. SBC/Sport Corp.*, 2007 WL 2422997 (TTAB 2007) ("commercial impression of the mark is dependent upon the literal terms AQUA STOP and not on the rectangular, semicircular or linear forms of display") | **AQUA STOP** | AQUASTOP |

Second, the Winged M is the key element of the Triangle Winged.  As noted by *McCarthy*, where the key element of a mark continues through new formats, as it does in this case, courts hardly ever find abandonment, and tacking is permitted.[34]

Ample support exists for finding the Winged M to be a key element of the Triangle Winged M trademark.  The Winged M gives the design its distinctiveness, which is the basis on which it is afforded protection as a trademark under U.S. law.  The Winged M is not merely a pictorial or other non-verbal design element, but a highly impressionable symbol that is easily identified, communicated, and retained -- both orally and visually.  The Winged M is also twice the size of the lettering that appears beneath it and is strategically positioned in the apex of the Triangle, which yields to permit the wings to extend beyond the perimeter of the design.  It is no surprise that the preferred, shorthand nomenclature (i.e. the "Triangle Winged M" design) used by all for this design derives from its dominant or key element, i.e. the "Winged M".

Consistent with the foregoing, the examining attorney on Defendant Tom Miyano's Winged M trademark application determined that the Winged M was the key element of the Triangle Winged M design.  Based at least in part on this conclusion, he found a likelihood of confusion between the <u>Winged M mark</u> of Tom Miyano's application and the <u>Triangle Winged Winged M mark</u> of Plaintiff's U.S. Reg. No. 1,217,317.  His impression of the Winged M component of the Triangle Winged M mark appears in bold font below:

> Applicant's mark M (with design element) is highly similar to the cited registered mark M MIYANO (with design element).  The M designs in both of the marks are identical; they both consist of the letter M with a wing design.

> The marks are compared in their entireties under a Section 2(d) analysis.  Nevertheless, **one feature of a mark may be recognized as more significant in creating a commercial impression.  Greater weight is given to the dominant feature in determining whether there is a likelihood of confusion**.

(U.S. App. No. 77/351/695(Ex. 69) (emphasis added).

Third, as testified to by Plaintiff, it has always considered these two marks to be the same.  This testimony has not been rebutted by any witness deposed in this proceeding.[35]

Fourth, the examining attorney assigned to MMU's Triangle Winged M service mark

---

[34] *McCarthy* § 17:27 ("Because small changes in trademark format are a minor element on which to base a drastic holding of abandonment, the courts hardly ever find abandonment where the key element of the mark continues through new formats.")

[35] Ex. 70, Minemura Tr. 75: 5 -21; 125: 2 -22.

application compared the two forms of MMU's Triangle Winged M design (Ex.73), and concluded that the two designs (illustrated below) were not just legally equivalent, but "**substantially exact,**" which is more rigorous than the "material alteration" standard.[36]



| Specimen Approved by Examining Attorney | Drawing of Mark in Triangle Winged M Service Mark Application |
| --- | --- |

### iii. MMU Never Discontinued its Use of the Triangle Winged M as a Trademark and Service Mark

To argue abandonment, Defendants rely upon extremely limited documentation and affidavits to suggest that MMU abandoned all rights in the Triangle Winged M, as both a trademark and service mark, by discontinuing use with intent not to resume, either in 1997 or shortly thereafter.  The following significant, continuing uses belie Defendants' contentions:

- New Machine Warranty Policies & Installation Services:  In connection with the sale of new machine tools, MMU issues a two-page Standard Warranty Policy which prominently displays the Triangle Winged M design with registration symbol (®) at the top of both pages of this document.[37]  *See In re Bose Corp.,* 546 F.2d 893 (CCPA 1976)(appearance of INTERAUDIO[TM] on warranty card recognized as actual trademark use); *Teter, Inc. v. Rheem Mfg. Co.,* 334 F.2d 784 (7th Cir. 1964)(warranty cards signed and returned by purchasers are specimens that reflect actual trademark use).[38]

---

[36] *In re Larios,* 35 U.S.P.Q.2d 1214, 1218 (TTAB Mar. 30, 1995)("The material alteration test … is not quite as rigorous as the substantially exact representation standard and thus allows for a bit more leeway or flexibility with respect to permissible change in a mark and the concomitant amendment of the drawing thereof").  The "drawing is the mark sought to be registered."  37 C.F.R. §2.52; *See also,* Hawes §5:9 (discussing 1999 amendment to 37 C.F.R. §2.52 to state drawing depicts mark sought to be registered).  Under 37 C.F.R. §2.51, the examining attorney must conclude that the drawing of the mark is a "substantially exact representation" of the mark shown in the specimen in order determine the drawing of the mark and specimen of use are in compliance with one another.  This analysis cannot be done, and more importantly, is not done, other than by performing a side by side comparison of the drawing and the specimen.  Defendants arguments that the respective versions of the Triangle Winged M are anything other than legally equivalent is misplaced and ignores the facts of record and applicable law.

[37]  Minemura Tr.112:9-113:13,  116:16–118:24,  and  122:7–123:10;  see also Ex. 44 entitled "MIYANO MACHINERY INC. STANDARD WARRANTY POLICY FOR ALL NEW MIYANO MACHINES." Since at least 1998, MMU has used a 2-page warranty policy attached as Ex. 44.  Before this, MMU used a one-page version of this document which also displayed the Triangle Winged M trademark with the registration symbol.

[38]  The Triangle Winged M symbol identifies Plaintiff as the source of the machine tool being sold and the party is standing behind the product.  MMU guarantees that the product will be free from defects in material and workmanship, and if not, it will repair or replace all parts that do not conform to the warranty.  The specific machine model and serial number appear on page 2 of the document, which is signed and dated by the customer.  Plaintiff

Footnote continued next page

- <u>Miyano Parts Web Site</u>:  MMU uses the Triangle Winged M as a trademark in association with the sale of parts and part assemblies on MMU's parts web site at http://parts.miyano-usa.com.[39]  *In re Dell,* 71 U.S.P.Q.2d 1725 (TTAB 2004)(web site through which goods are ordered constitutes point of sale display and use of trademark in the banner constitutes actual trademark use). (Ex. 67).

- <u>Acquisition, Refurbishment and Sale of Used Miyano Machines</u>:  MMU acquires title, refurbishes, and then sells old Miyano machines bearing the Triangle Winged M mark in a reconditioned state.[40, 41]

- <u>Triangle Winged M on Miyano Ocean and Miyano Mectron Machines</u>:  The Triangle Winged M appears in the composite mark on Miyano Ocean and Mectron machines. MMU's sale and servicing of Miyano Ocean machines from at least 2001 to present[42] and of Miyano Mectron Machines until at least 2005 provide additional, independent support for MMU's continuing rights in the Triangle Winged M.  MMU is the exclusive distributor of these products in the United States, stands behind these machines when they are sold by guaranteeing the quality and workmanship.

- <u>Repair, Rebuilding and Reconditioning Services.</u>  MMU uses the Triangle Winged M as a service mark in connection with various warranty and non-warranty services, including machine repair, rebuilding and reconditioning.[43]  Such use occurs on service reports re the specific work performed.[44] Also, uniforms worn by MMU service personnel when they visit customers to perform service work display the Triangle Winged M design.[45]

### iv. Defendants Fail to Set Forth Evidence or Argument that Would Permit One to Conclude MMU Abandoned its Trademark and Service Mark Rights in the Triangle Winged M

Defendants' evidence is grossly deficient. The <u>only</u> evidence they cite in support of abandonment are (1) a 1997 internal MMJ corporate document (hereinafter the April 1997 Ringi), (2) declarations of three witnesses who offer nothing more than statements of their perception and understanding of MMJ's intent back in April 1997, and (3) the testimony of only

---

produced more than 400 Triangle Winged M Standard Warranty Policies which accompanied the sale of new Miyano brand machines from 1995 to present.  (Ex. 44).  Additional use of the Triangle Winged M in connection with new machine sales occurs on the installation service reports. (Ex. 49)

[39] See Ex. 46a, pp 31-33 (Plaintiff's Response to Defendants' Interrogatories).

[40] Defendants argument at p. 23 n. 8 misses the point.  MMU's use of the Triangle Winged M in connection with the repair of machine tools owned by third parties  is one way in which MMU uses the Triangle Winged M as a <u>service mark</u>.  Where MMU acquires title, rebuilds, and then sells old machines bearing the mark, such activities constitute a continuing use of the Triangle Winged M as a <u>trademark</u>. See *Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000)("Exclusive repair and recycling services like those offered by E-One might be sufficient commercial use of the mark to prevent abandonment, but only if E-One used the mark on the repaired or remanufactured goods or 'on documents associated with the goods or their sale.'").

[41] E.g. May 2002 sale of BNE-46S (*See* Marchionne ¶30 (Doc. 15));  May 2008 sale of BNE-46S (Ex. 46a, pg. 28).

[42] Miyano Ocean Machines are currently available through MMU. The most recent sale of a Miyano Ocean machine was in December 2007.  Ex.  72, Nagasawa Tr. 80:1-81:24.

[43] Ex. 46a, p. 3, 67-69; Ex. 48, Olczak Tr. at 18:12-18; 26:2-24; Ex. 70, Minemura Tr. at 111:2–112:8.

[44] *See*, Ex. 48, Olczak Tr. at 79:1 – 82:1; Ex. 70, Minemura Tr. at 111:2-112:8 113:14-116:14.

[45] Ex.  46a, p. 3, 67-69; Ex.  48, Olczak Tr. at 75:11 – 77:20; 65:11-66:2.

---

one witness regarding use of the Triangle Winged M on the sale of only certain new machines. None of the evidence or arguments supports the conclusions for which they are asserted. To prevail on an abandonment defense, Defendants must prove by clear and convincing evidence that plaintiff: (1) ceased use of the mark in question, (2) with the intent not to resume. Defendants must prove abandonment by clear and convincing evidence. *McCarthy §17:12; see also, Keebler Co. v. Nabisco Brands, Inc.,* 1992 U.S. Dist. LEXIS 6826 (N.D. Ill. 1992)(at 33). While a rebuttable presumption of abandonment is established by showing non-use for three consecutive years, "[t]he owner of the trademark need only produce evidence to rebut the presumption while the ultimate burden of persuasion rests on the defendant." *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 938 (7th Cir. 1989).

The April 1997 Ringi: The April 1997 internal MMJ corporate document does not support the conclusion that MMU formally abandoned its rights in the Triangle Winged M mark either as a trademark or service mark. First, the April 1997 Ringi was a document that sought feedback from certain MMJ directors on a single issue: whether to renew the *Japanese* trademark registration for the Triangle Winged M.[46] Second, to the extent that a passing or indirect reference is made to a proposal would involve any change or discontinuation of certain uses of the Triangle Winged M in the future, that proposal, if implemented, would not begin until June 1997. Further, the change in use of the Triangle Winged M explicitly referred to is a change in use by MMJ in Japan, not MMU in the United States. Moreover, other than proposing not to affix the Triangle Winged M mark to certain new machines in the near future, the document makes no representation about specifically which or whether all other products would be addressed under this proposal.

Third, the April 1997 Ringi says nothing about the numerous other types of significant, ongoing legitimate trademark and service mark uses of the Triangle Winged M mark, wherever those uses occur, *i.e.* in Japan, the United States, and throughout the world. As events subsequent to 1997 reveal, those uses by MMU continued without interruption in the U.S. from April 1997 onward, and MMU never abandoned rights in that trademark and service mark.

At most, the April 1997 Ringi is a proposal that solicited feedback from MMJ officials

---

[46]*See Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591, 600 (5th Cir. 1985)("The concept of territoriality is basic to trademark law; trademarks rights exist in each country solely according to that country's statutory scheme.")

concerning activities which in the document itself are not fully defined, and if they took place, would have occurred in Japan.  This is not the "intent" which is relevant for purposes of proving abandonment.  The intent at issue for abandonment purposes is the intent not to resume once use has discontinued.  "Consequently, unless the trademark use is actually terminated, the intent not to resume use prong of abandonment does not come into play."  *See Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.* 458 F.3d 931 (9th Cir. 2006)(cited in *Autotech Tech. Ltd. v. Automationdirect.com, Inc.,* 2007 U.S. Dist. LEXIS 60474 (N.D. Ill. 2007).

    <u>Defendants' Third Party Declarations Fail to Support Abandonment.</u>  The Declarations of Messrs. Nakajima and Takamori fail to set forth sufficient information or detail to establish relevant and persuasive facts bearing on the issue of abandonment.  First, the declarants do not claim to represent what occurred <u>after 1997</u>.[47]  Despite having been signed in 2008, the declarants intentionally abstain from making any representations as to what occurred or did not occur after 1997.  Accordingly, their testimony, like the April 1997 Ringi, is at most relevant to the intent of MMJ (<u>not MMU</u>) at a specific point in time falling well within a period of legitimate trademark use.  Even if improperly imputed to MMU in the U.S., this is not the "intent" which is relevant for purposes of proving abandonment.

    Second, these Declarants are located in, and their observations are about, Japan.  None of the Declarants claim to have been present in the U.S. or claim to have direct, first-hand knowledge that would contradict any of the numerous ways in which MMU actually used the Triangle Winged M as a trademark and service mark <u>in the United States</u> in 1997 and thereafter.

    Significantly, in his recent declaration, Tom Miyano[48] suggests that use continued

---

[47]  Mr. Nakajima in ¶7 of his Declaration refers to "the decision" regarding certain trademarks being made in either 1996 or 1997, but no later.  In ¶ 8, he states, "<u>Based on my memory of that time,</u> every member of the board agreed"  In this second statement, Mr. Nakajima again confirms that he is commenting only on events which occurred in 1996 or 1997 at the latest.

  Mr. Takamori in ¶¶9-10 gives his perception of events which by his own account is undated, but after comparing with the statements of others, would have occurred no later than 1997.

[48]  Defendants cite the testimony of declarants Takamori and Nakajima, but not Tom Miyano, in the section of their brief that focuses on the issue of abandonment. (Doc. 124, pp. 17-20).  As noted above, Messrs. Takamori and Nakajima abstain from making any specific representation about the actual use of the Triangle Winged M after 1997 in Japan, or at any time in the U.S.

  Tom Miyano is the only declarant to attempt -- albeit through conclusory, unsupported statements that are contradicted by the record – to set forth MMU's activities involving the Triangle Winged M mark after 1997.  Yet Defendants avoid citing his declaration in this section of the brief where presumably his testimony would matter most. (Doc. 124, pp. 17-19).  One explanation is that Tom Miyano is on record as having demonstrated his belief that MMU maintains valid, registered and common law trademark rights in the United States in the Triangle Winged M.  Tom's request to be assigned these rights in November 2006 confirms his belief they were valid rights that had

Footnote continued next page

---

through 2002 and thereafter in paragraph 14:

> From the time that MMU **phased out use [of the Triangle Winged M] in 1997 through (and even after) 2002**, MMU did not use the triangle logo shown in Reg. No. 1,217,317 on any machines sold in the United States by MMU, including power lathes and bar feeders.

To the extent that Tom Miyano admits that MMU's use of the Triangle Winged M continued "<u>even after</u>" 2002, his declaration directly contradicts Defendants' basic premise that abandonment occurred in 1997.[49]  Taking the assertions of the Defendants as true (which MMU does not), even without considering any of the evidence set forth by MMU, Defendants fail to set forth an uncontradicted, non-conclusory position[50] on when and how MMU discontinued with the intent of not resuming all relevant uses of the Triangle Winged M as a service mark and trademark.

### v.  Defendants Have Not Established Fraud

An important predicate to Defendants' fraud allegations is that the Triangle Winged M with 'Miyano' stylized is a <u>material alteration</u> of the Triangle Winged M with "Miyano" in block letters.  Defendants are simply wrong and cannot meet their burden.[51]  First, when properly analyzed in the manner set forth in the discussion regarding tacking, these two marks clearly have the same continuing, commercial impression.  Any difference between them does not rise to the level of a material alteration, as that term is defined. Second, as also explained *supra* regarding tacking, not only are these two designs legally equivalent, they are substantially exact representations of one another, which as explained in the tacking section, is generally regarded as a more rigorous standard than material alteration. Third, Plaintiff never abandoned its rights in the Triangle Winged M design for either goods or services.  Plaintiff has produced significant evidence to support its continuing common law and registered trademark and service mark rights in the Triangle Winged M, all of which refute Defendants conclusion that "MMU has mislead the Patent and Trademark Office by knowingly applying for and renewing marks that were not

---

[49] not been abandoned.  It is settled law that an abandoned trademark is not capable of assignment, because once the mark is abandoned through nonuse, there is no property right to assign. *See McCarthy §17:4.*

[49] Defendants state without any support or citation, "MMU claimed use of the mark from 1970, despite the 1997 decision by the board of directors to abandon the use of the Triangle Winged M mark and the differences in the mark as actually used."

[50] Introductory clause of ¶14 of Tom Miyano's Declaration, if read literally, alleges in conclusory fashion that MMU phased out the Triangle Winged M at some unspecified time after 2002.

[51] *See Money Store,* 689 F.2d at 670 ("A party seeking cancellation of a registered trademark on grounds of fraud must demonstrate the alleged fraud by 'clear and convincing evidence.'").

actually being used." (Doc. 124, p. 23).

### (2) Plaintiff Has Overwhelmingly Shown A Likelihood of Confusion

#### a. Defendants' Marks Are Confusingly Similar to Plaintiff's Marks

Defendants argue (pp. 24-26) that Plaintiff wrongly dissects the logo mark to fabricate similarity. First, pleadings have already resolved this issue. Defendants admit in their Answer to the Complaint that they "use a Winged M design that is ***nearly identical*** to the Winged M component of mark shown in trademark registration 1,217,317…" Doc. 29, p. 12, ¶48 [emphasis added]. Their argument that "nearly identical" marks are not even similar is untenable.

Second, courts in this Circuit are entitled to weigh the salient portion of each mark[52] ("if one word or feature of a composite trade mark is the salient portion of the mark it may be given greater weight than the surrounding portion.").[53] *See* Appendix B.

Third, rulings by the U.S. Trademark Office are evidence of confusing similarity. It has twice rejected Defendants' applications for registration of the Winged M mark based on likely confusion with Plaintiff's Triangle Winged M Registration No. 1,217,317. For example, in rejecting Defendants' Serial No. 77/351,695, the Examiner said Defendants' Winged M mark "is highly similar to the cited registration M MIYANO [Triangle Winged M mark]…" Ex. 69, 71.

Defendants urge (pp. 26-28) that there is no likely confusion of trade names. They claim they do not operate as MiyanoHitec Machinery but instead as "Tom and Steven Miyano Machinery." However, they prominently display MIYANOHITEC MACHINERY on signage and business cards. *See* Ex. 53-55 and the following photo of their use on May 14, 2008 at a trade fair in Michigan along with a business card of Steven Miyano:



---

[52] *See* Doc. 23, p. 19 and *Ty,* 237 F.3d at 898 ("Therefore, it seems proper that the magistrate judge would focus upon the mark entitled to protection--that is, the "Beanie" mark--when comparing the two products.").
[53] *Ty*, 237 F.3d at 898 *citing Henri's Food Prods. Co., Inc. v. Kraft, Inc.,* 717 F.2d 352, 356 (7th Cir. 1983).

Moreover, many courts find adding a first name insufficient to prevent confusion.[54]

Defendants suggest that the corporate names are not confusingly similar anyway.[55] The marks at issue both start with the dominant, identical word. Defendants merely append 5 more letters to the first word. The resulting names look alike and sound alike. Defendants admit that "MiyanoHitec" and "Miyano" are at least partially similar. (Ex. 50, S. Miyano Tr. 101:19-103:14). The additional word "Machinery" next to "MiyanoHitec" further hides "Hitec."[56] There clearly is confusing similarity.

### b. Competing Products, Area and Manner of Use, Degree of Care, and Initial Interest

Re the similarity of goods (p.28), Defendants will supply "various systems such as CNC lathes, machining centers, and CNC grinders." Ex.50, S. Miyano Tr.107:12-6.  These are the same products sold by Plaintiff, or products consumers are likely to attribute to Plaintiff. (Plaintiff's Br., Doc. 23, pp. 20-21). This factor weighs in Plaintiff's favor.

Re area and manner of use, Defendants concede (p.28) that Plaintiff and Defendants are competing in the same markets in the same geographical region for the same customers. This factor favors Plaintiff.

Re the degree of care, Defendants argue (p.29) that sophisticated customers are not prone to initial interest confusion, citing *Personeta, Inc. v. Persona Software, Inc.,* 418 F. Supp. 2d 1013, 1017 (N.D. Ill. 2005) and cases cited therein, for the proposition that a finding of sophisticated consumers rules out initial interest confusion. However, that is not what the Court held.[57] In connection with the information gathering stage, specifically at trade shows and

---

[54] *Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*, 889 F.2d 1070, 1073 (Fed. Cir. 1989); *John B. Stetson v. Stephen L. Stetson Co.*, 85 F.2d 586 (2nd Cir. 1936) (STEPHEN L. STETSON infringes STETSON), *cert. denied*, 299 U.S. 605 (1936); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) (surname "Gallo" is the dominant portion of marks); *In re Chatam Int'l, Inc.*, 380 F.3d 1340, 1343 (Fed. Cir. 2004) ("With respect to JOSE, the Board correctly observed that the term simply reinforces the impression that GASPAR is an individual's name. Thus, in accord with considerable case law, the JOSE term does not alter the commercial impression of the mark… After discounting any commercial impression of JOSE and GOLD, Chatam is left with GASPAR as the dominant feature of its mark.") and *McCarthy* §23:50.

[55] Defendants argue that focusing on "Miyano" is improper dissection. However, "Miyano" is the trade name is entitled to protection and, therefore, the proper focus. *See Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 898 (7th Cir. Ill. 2001). *Henri's Food Products Co.,* 717 F.2d at 356 (7th Cir. 1983) ("When one portion of a composite mark is a descriptive or generic word, that feature of the mark may be of less significance in designating a source of origin.") *See also In re Chatam Int'l, Inc.*, 380 F.3d at1343 (descriptive word "GOLD" counted little in comparing the marks.)

[56] *See Van Auken Co. v. Van Auken Steam Specialty Co.*, 57 Ill. App. 240, 242 (Ill. App. Ct. 1894). ("In ordinary speech, of either company only [the name] Van Auken would be spoken, as we say of railroads, the Alton, the Burlington, the Rock Island.") .

[57] The Court in *Personeta* examined the sophistication of consumers both prior to and at point of sale and found

Footnote continued next page

conducting research on the internet, customers are not wary or discriminating; they may be lured and form quick impressions. (Ex. 72, Nagasawa Tr. 88:5-90:24.). "This confusion could harm [Plaintiff's] goodwill if, for example, a customer mistakenly contacts [Defendants] and suffers 'perceived slights or disagreements.'"[58]  As in *Personeta,* the degree of sophistication of consumers at these initial information gathering stages favors finding a likelihood of confusion.[59]

### c.  Strength of the Mark Favors Plaintiff

Re p.30, Plaintiff's "Miyano" trade name, MIYANO® trademark and Triangle Winged M mark are strong marks entitled to protection.  Tom Miyano admitted that customers in the U.S. use the word "Miyano" "to identify the source of the machines marketed and <u>sold by MMU.</u>" (Doc. 115, T. Miyano, ¶6).   Defendants thus admit the word "Miyano" identifies the goods sold under the mark as emanating from <u>Plaintiff.</u>[60]  This association is based on the extensive use of Plaintiff's trade name and trademarks.[61]

The triangle winged M mark is fanciful or arbitrary and "strong." Defendants improperly segregate the components, contrary to the case they cite. *See Personeta,* 418 F.Supp.2d at 1118.

### d.  Actual Confusion

Defendants argue (p.32) that the actual confusion factor weighs in their favor. However, evidence of actual confusion is not required to prove that a likelihood of confusion exists,[62] and Defendants have not yet demonstrated their product.  Moreover, there is evidence of confusion. When Mr. Marchionne contacted the organizers of the IMTS show, upon hearing the name

---

that while the sophistication of consumers was high *at the point of sale*, it was <u>not</u> at times prior thereto. *Personeta, Inc.*, 418 F. Supp. 2d at 1017 ("Actionable trademark infringement, however, is not limited to confusion occurring at the time of sale.") Specifically, the degree of sophistication at the information gathering stages favored finding a likelihood of infringement. *Id.* at 1018. ("The court finds that the degree of sophistication of consumers at the RFQ stage favors finding a likelihood of confusion.").

[58] *Personeta, Inc.*, 418 F. Supp. 2d at 1018 *quoting Meridian Mut. Ins. Co. v. Meridian Ins. Group*, 128 F.3d 1111, 1117 (7th Cir. 1997).

[59] With initial interest confusion, plaintiff suffers a presale appropriation of goodwill. By definition, initial interest confusion addresses confusion or uncertainty based on first impressions.  Such harm is not remedied merely because the prospective customer *eventually* learns of the true identity of the infringer or the lack of affiliation between the infringer and the mark owner.  The infringer has already received the opportunity to solicit the potential customer based on the predictable draw of the plaintiff's commercial identity, trademarks, and trade names. See generally, *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707, 717 (S.D.N.Y. 1973), *aff*'d 523 F.2d 1331 (2d Cir. 1975) and *Dorr-Oliver, Inc., v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996).

[60] *Sands, Taylor & Wood, Co.*, 978 F.2d at 959.

[61] "While personal names used as trademarks are not inherently distinctive, they are *treated as strong marks upon a showing of secondary meaning.*" (emphasis added) *E. & J. Gallo Winery*, 967 F.2d at 1291. *See* Doc. 23, pp. 14-15

[62] *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000) ("We have previously made clear, however, that evidence of actual confusion is not essential to a finding of a likelihood of confusion.").

Miyano Machinery representative, they responded "Oh, you are MiyanoHitec." (Ex. 43, Marchionne Tr. 98:10-99:15).  Second, Plaintiff also received an inquiry from Dun & Bradstreet inquiring about any relationship between Defendants and Plaintiff. (Ex. 43; Ex. 70, Minemura Tr. 44:1-46:9).[63] As a result, this factor weighs in Plaintiff's favor.

### e.    Defendants' Intent

Defendants argue lack of intent to cause confusion. Br. at 32-33. However, their intent is clear: They have not accidentally selected *just one* similar mark, but rather multiple infringing marks, starting with the Triangle Winged *H*.[64]  After the Defendant company had been operating for more than a year as "HiTec Machinery International, Inc.," Defendants deliberately added the word "Miyano" in the corporate name, because as Steven Miyano, its president and owner put it, "Well, I thought I *had* to put my family name inside." (Ex. 50, S. Miyano Tr. at 30:21-31:7) (emphasis added). In other words, he had to do this to capitalize on Plaintiff's goodwill.

Also, in Nov. 2006, Defendants hid from MMJ executives their adoption of the Winged M and the "MiyanoHitec" corporate name, while asking for an assignment of Plaintiff's marks.[65] Defendants still hold themselves out as MIYANOHITEC**.** (Ex. 53-55). They still prominently exhibit the corporate name MIYANOHITEC MACHINERY, INC., and no disclaimer is readily visible. This is evidence that Defendants intend to profit from the goodwill belonging to Plaintiff, and this factor weighs in favor of Plaintiff.

### f.    Likelihood Of Confusion Summary

The factors as a whole weigh in Plaintiff's favor.[66]  The marks are similar if not nearly identical when weighed properly. The products are competitive and likely to be attributed to one source. Defendants concede that the area-and-manner-of-use factor favors Plaintiff.  There has already been some confusion. Finally, Defendants' continuing intent to pass off their goods is

---

[63] *See Perl Brand Foods Corp. v. Deli Direct From Perl, Inc.*, 1989 U.S. Dist. LEXIS 17473 (N.D. Ill.  1989) (weighing confusion by Dun & Bradstreet in the analysis)

[64] *See supra* and Doc 23, pp. 23-24.

[65] At a meeting in Japan on Nov. 7, 2006, Defendants presented MMJ with a business card with the prior Hitec company name and prior Triangle Winged *H* logo mark. Ex. 59, Saito Tr. at 33:6-11; *see also* Ex. 60 hereto. At that meeting, Tom Miyano requested that MMJ assign Plaintiff's logo marks to him. Ex. 59, Saito Tr. at 73:1-74:7; Ex. 42, T. Miyano Tr. at 123:11-125:4. This shows that he appreciated that Plaintiff is the owner of the Triangle Winged M mark in the U.S. *Id.* at 125:2 ("A. Triangle 'M' mark is only register [*sic*] by M.M.U.") MMJ declined Defendants' request for the assignment of MMU's "logo marks," Ex.  61; *see also* Ex.  60, Saito Tr. at 73:1-74:7, and Steven Miyano acknowledged the refusal. Ex. 61; *see also* Ex. 60, Saito Tr. at 74:20-77:20 and Ex. 42, T. Miyano Tr. at 136:21-137:10.

[66] *Ty*, 237 F.3d at 897 (no single factor is dispositive; different factors will weigh more heavily from case to case depending on particular facts and circumstances involved.).

---

clear from their continuing actions. The factors weigh in Plaintiff's favor.[67]

### B.    Defendants Fail to Refute Irreparable Harm

Trademark injuries are "presumed to be irreparable because it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Ty,* 237 F.3d at 902.

Defendants offer no contrary showing but argue (pp. 34-37) only that delay abrogates the harm. However, the Seventh Circuit does "not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for preliminary injunction."[68] The test for measuring delay is "whether the defendant has been lulled into a false sense of security or had acted in reliance on the plaintiff's delay." *Id.* Defendants do not meet their burden by showing <u>affirmative evidence</u> of being "lulled."[69] Plaintiff did not delay and Defendants were not lulled. The irreparable harm factor favors Plaintiff.

### C.  Plaintiff's Balance of Harm  and Public Interest Showings Are Not Rebutted

Defendants argue (p. 40) that "substantial harm to the [Defendants] far outweighs any harm to MMU." However, Defendants have no product and no sales yet. They show no significant investment in the name or marks. They expect to show and offer a product <u>for the first time</u> in Sept. 2008. Any harm by an injunction against them now is negligible.[70] In contrast, absent an injunction, Plaintiff's goodwill will be irreparably harmed by Defendants offering competing products under nearly the same name and marks.

Defendants claim a paramount interest in using their surname *competitively*. However, the main cases they cite were explicitly abrogated by the Supreme Court[71]  or are off point.[72]

---

[67] In at least one case, the Seventh Circuit affirmed the issuance of a preliminary injunction when only one of the "most important factors" – similarity of the marks – favored the plaintiff. *Ty,* 237 F.3d at 901.

[68] *Ty, Inc. v. Jones Group, Inc.,* 98 F. Supp. 2d 988, 991 (N.D. Ill. 2000) *aff'd,*237 F.3d 891 (7th Cir. 2001); see espec. 237 F.3d at 902 ("Jones has not presented any affirmative evidence that Ty's delay in seeking a preliminary injunction caused Jones to be lulled into a false sense of security or that Jones in any way relied on Ty's delay.")

[69] Also, Defendants clearly overreach when they allege that "MMU knew at least as early as November 2006 that Steven Miyano was operating his company as MiyanoHitec Machinery." Indeed, when they met with MMJ executives in Japan that very month, they held themselves out as using "Hitec Machinery" as explained *supra*. Also, they misstate the testimony. Defendants argue that Mr. Marchionne learned of the Defendants and their business in the middle of 2006. That does *not* mean that he learned *of their trademark use.* Indeed, Mr. Marchionne explained that he believed Defendants were operating as Hitec Machinery International, Inc.–not as MiyanoHitec as implied by Defendants – in May 2006. Ex. 43, Marchionne Dep. Tr. at 93:19- 94:4.

[70] *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000).

[71] *Howe Scale Co. v. Wyckoff, Seamans & Benedict,* 198 U.S. 118 (1905)  was abrogated by *L. E. Waterman Co. v. Modern Pen Co.,* 235 U.S. 88, 94 (1914): "[W]hatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does

Footnote continued next page

The Seventh Circuit recognized that abrogation 60 years ago,[73] and modern courts have steadily migrated away from such early holdings. "The courts are now consistent in imposing tighter restrictions on the second comer in the face of possible confusion (essentially by upping the reasonableness threshold of *Waterman*)."[74]  A junior user's right to use his name must yield to the extent it causes confusion with the senior user's mark. *Id.*

Defendants' disclaimer argument (p. 40) is unsupported by any evidence. Many courts hold disclaimers insufficient to cure trademark infringement.[75]  The Seventh Circuit ruled in *Int'l Kennel Club of Chicago* that a party's "reputation and goodwill <u>should not</u> be rendered forever dependent on the effectiveness of fine print disclaimers often ignored by consumers." 846 F.2d at 1093.  In conclusion, the balance of harms factor weighs in favor of Plaintiff.

Finally, the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion.[76]  The modern view in the case law is to prevent confusion by even those who use their own name.

### III.    CONCLUSION

Absent an injunction, the relevant public is likely to be deceived or confused into thinking there is some connection between Plaintiff and Defendants.  The goodwill that Plaintiff built up over many years will be imperiled.[77]  Defendants will usurp Plaintiff's trade name and marks. Plaintiff requests entry of a preliminary injunction.

Dated: July 2, 2008                    Respectfully submitted,


                                       _s/ Edward D. Manzo_____
                                       Edward D. Manzo    I.D. # 03124728
                                       Joel Bock          I.D. # 00239984
                                       Louis J. Alex      I.D. # 06274458

---

lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake."

[72] *Brennan's Inc. v. Brennan*, 360 F.3d 125 (2nd Cir. 2004) involved restaurants in *separate geographic markets*. The Second Circuit agreed that adding a personal name was meaningful given that difference. 360 F.3d at 133.

[73] *Consumers Petroleum Co. v. Consumers Co. of Illinois*, 169 F.2d 153, 159 (7th Cir. 1948) ("The most important of these cases are the Howe Scale Company case… we think their rationale has been considerably limited by the more recent decisions…")

[74] *Basile, S.p.A. v. Basile*, 899 F.2d 35, 39 (D.C. Cir. 1990) (modifying preliminary injunction to prevent use of the defendant's surname, because "we believe the ordered relief render the Lanham Act protection meaningless.")

[75] *McCarthy* §23:51.

[76] *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000).

[77] *Lady Esther, Ltd. v. Lady Esther Corset Shoppe*, Inc., 317 Ill. App. 451, 459 (Ill. App. Ct. 1943)(inj. aff'd.).

Jason R. Smalley        I.D. # 06287426
Attorneys for Plaintiff

Cook, Alex, McFarron, Manzo, Cummings & Mehler, Ltd.
200 West Adams Street, Suite 2850
Chicago, IL 60606
Phone:  (312) 236-8500
Fax:  (312) 236-8176
emanzo@cookalex.com

## APPENDIX A

# MIYANO







# APPENDIX B



| Defendants' Winged M | Plaintiff's Winged M | Plaintiff's Triangle Winged M |

## CERTIFICATE OF SERVICE

The undersigned declares that he/she is over the age of 18 years, not a party to this action, and employed in the County of Cook, by Cook, Alex, McFarron, Manzo, Cummings & Mehler, Ltd., Attorneys at Law, 200 West Adams Street, Suite 2850, Chicago, Illinois 60606.

On the date listed below, I caused the filing of the foregoing **Reply (Amended) to Defendants' Response to Plaintiff's Motion for Preliminary Injunction** with all its attachments and exhibits. I caused the service of these aforementioned documents on the following individuals, as addressed below, by the means indicated, and on the date listed below:

Geoffrey A. Baker
Geoffrey D. Smith
DOWELL BAKER, P.C.
201 Main Street, Suite 710
Lafayette, Indiana 47901
(765) 429-4004 telephone
(765) 429-4114 facsimile
gabaker@dowellbaker.com

Robert M. Karton
ROBERT M. KARTON, LTD.
77 W. Washington St., Suite 900
Chicago, Illinois 60602-2804
(312)214-0900 telephone
(312)214-4230 facsimile
robert@karton.us

Vernon W. Francissen
FRANCISSEN PATENT LAW, P.C.
53 W. Jackson Blvd.,
Suite 1320
Chicago, Illinois 60604
(312)294-9980 telephone
(312)275-8772 facsimile
vern@francissenpatentlaw.com

Nancy E. Sasamoto
Steven L. Katz
George H Kobayashi
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
203 N. LaSalle St.
Suite 2500
Chicago, IL 60601
312-245-7500 telephone
nsasamoto@masudafunai.com
skatz@masudafunai.com
gkobayashi@masudafunai.com

_____ (BY ELECTRONIC MEANS) I caused this document to be electronically mailed (emailed) to the addressee(s) shown above.

 X  (BY ELECTRONIC MEANS) I cause each such document to be sent by electronic means through the Electronic Court Filing system to the addressee(s) shown above, pursuant to LR 5.9.

Executed on July 2, 2008 at Chicago, Illinois.

Signed:        *s/ Edward D. Manzo*