# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Miyano Machinery USA Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. **08 C 526** |
| v. | ) | |
| | ) | Hon. Virginia Kendall |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | Magistrate Judge Nolan |
| Toshiharu Miyano and | ) | |
| Steven Miyano, a/k/a Shigemori | ) | |
| Miyano, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants | ) | |
| | ) | |
| | ) | |
| MiyanoHitec Machinery, Inc., | ) | |
| Thomas ("Tom") Miyano, a/k/a | ) | |
| Toshiharu Miyano and Steven | ) | |
| Miyano, a/k/a Shigemori Miyano, | ) | |
| | ) | |
| Counterclaim-Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Miyano Machinery USA Inc. | ) | |
| | ) | |
| Counterclaim-Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Miyano Machinery, Inc. | ) | |
| | ) | |
| Third-Party Defendant | ) | |

## PLAINTIFF & COUNTERDEFENDANT MIYANO MACHINERY USA, INC.'S
## RESPONSES TO COUNTERCLAIMANTS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

Plaintiff and Counterdefendant Miyano Machinery USA, Inc. (hereinafter

referred to as "Plaintiff" or "Counterdefendant" or "MMU") hereby answers and objects to Counterclaimants' Second Set of Interrogatories to Miyano Machinery USA, Inc. dated June 20, 2008, as follows:

## General Objections

A.    Plaintiff objects to these Interrogatories to the extent the instructions, definitions, or demands attempt to alter the plain meaning or understanding of any term, or attempt to impose obligations inconsistent with or beyond those imposed by the Federal Rules of Civil Procedure and the Local Rules.

B.    Plaintiff objects to the definition of "MMU" or "Plaintiff" or "Counterdefendant(s)" as overly broad and unduly burdensome to the extent that it seeks to encompass third parties.

C.    Plaintiff objects to the definition of "MMJ" or "Counterdefendant(s)" as overly broad and unduly burdensome to the extent that it seeks to encompass third parties.  Plaintiff also objects to "MMJ" being referred to as a "Counterdefendant" rather than as Third-Party Defendant.

D.    Plaintiff objects to the term "trademarks in suit" to the extent that it seeks to limit the number of common law trademarks implicated in this litigation, the corresponding rights of which may have relevance to the validity and/or infringement of the "trademarks in suit" as defined by Plaintiff.

E.    Plaintiff objects to these Interrogatories to the extent that they call for information or documents not within the current possession, custody, or control of Plaintiff.

F.    Plaintiff objects to these Interrogatories to the extent that they call for information that is protected by the attorney-client, work-product, or other applicable privileges. Plaintiff does not waive and intends to preserve the attorney-client privilege, the work-product privilege, and every other applicable privilege with respect to information otherwise responsive to these Interrogatories that is protected by such a privilege.

G.    Plaintiff objects to these Interrogatories to the extent they are overly broad, vague, ambiguous, oppressive, or would require an unreasonable investigation by Plaintiff.  Plaintiff further objects to these Interrogatories to the extent they impose an undue burden upon Plaintiff.  Plaintiff further objects to these Interrogatories to the extent that Defendants' First Set of Interrogatories, including discrete subparts, already exceed 25 in number in violation of Rule 33(a)(1), and that this Second Set of Interrogatories, including discrete subparts, continue the violation of Rule 33(a)(1).

H.    Plaintiff objects to these Interrogatories as inappropriate in view of the extensive discovery that Defendants have been provided in this litigation, including Defendants July 17, 2008 deposition of Attorney George Kobayashi.

I.    Plaintiff objects to these Interrogatories to the extent they call for information contained in communications between Plaintiff and its counsel or for the identification of documents created by its counsel.

J.    By responding to these Interrogatories, Plaintiff does not concede the relevancy, materiality, or admissibility of any response or the subject to

3

which it relates. Plaintiff's responses are made subject to and without waiving any objections as to relevancy, materiality, or admissibility.

K.    These responses and objections are based upon the information currently available to Plaintiff.    Plaintiff therefore may modify and/or supplement these responses and objections in accordance with its obligations under Rule 26(e).

L.    Plaintiff objects to these Interrogatories on the ground that Defendants have failed in many instances to identify any time limitation that governs the Interrogatories, rendering them overly broad and unduly burdensome.

M.    By responding to these Interrogatories, Plaintiff does not adopt any of the characterizations made by Defendants in any of their Interrogatories.

N.    The applicable foregoing general objections are incorporated into each of the specific objections and responses that follow. The stating of a specific objection or response shall not be construed as a waiver of Plaintiff's general objections.

**Objections & Responses**

**INTERROGATORY NO. 15**
Identify each and every machine sold by MMU from 1997 until 2002 that featured the mark as shown in the specimen of continued use filed in 2002 by George Kobayashi in Registration no. 1,217,317 including, but not limited to, for each machine: the model number of the machine, the serial number of the machine, the identity of the purchaser, the date of sale of the machine, the date of delivery to the purchaser, identify all document(s) related to the sale, and specify how the machine featured the mark as shown in the specimen of continued use filed in 2002 including, but not limited to, whether the mark was different in any way from the mark as shown in the specimen of continued use and where the mark appeared on the machine.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory as being overly broad and unduly burdensome to the extent it seeks the identification of "each and every" machine sold by MMU from 1997 until 2002 as described in the Interrogatory, and to the extent that it purportedly seeks "all" documents and other information related to the sale of each such machine, without reasonable limitation.  MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).  MMU further objects to this Interrogatory to the extent that it seeks information and documents, which either may not exist, or alternatively, are not in its possession, custody or control.

**INTERROGATORY NO. 16**
Identify the person(s) who provided the specimen of continued use filed in 2002 by George Kobayashi in Registration no. 1,217,317 and the date the specimen of continued use was provided to him.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).

**INTERROGATORY NO. 17**

Identify the person(s) who instructed George Kobayashi to file the statement of continued use filed in 2002 by George Kobayashi in Registration no. 1,217,317 and the date(s) he received any such instruction.

**<u>Objections:</u>**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).

**INTERROGATORY NO. 18**

State in detail the specific information and belief(s) relied upon by George Kobayashi in signing any declaration relating to Registration no. 1,217,317 and identifying the person(s) and document(s) that are the source(s) of each such information and belief and identify the three persons (other than Counterdefendant's counsel of record in this action) most knowledgeable about same.

**<u>Objections:</u>**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1). MMU further objects to this Interrogatory to the extent that seeks information and/or communications which are protected by the attorney client privilege and which have not otherwise been determined to be within the scope of relevant, non-privileged discovery as set forth in any order or ruling in this litigation, including Magistrate Judge Nolan's June 6, 2008 Memorandum Opinion and Order and Judge Kendall's July 15, 2008 minute entry.

**INTERROGATORY NO. 19**

Identify each and every use in commerce of the mark sought to be registered in United States Trademark Application No. 77/176,918 for the repair services described in the application in the five years preceding the May 9, 2007 filing date of the application including, but not limited to, for each use: the date of the repair service, the identity of the repairman, the location where the repair was performed, the party for whom the repair was performed, identify all

document(s) related to the repair, and specify how the mark as sought to be registered was featured in performing the repair including, but not limited to, whether the mark was different in any way from the mark as sought to be registered and where the mark appeared during the service.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory as being overly broad and unduly burdensome to the extent it seeks the identification of "each and every" use in commerce of the mark sought to be registered in U.S. App. Serial No. 77/176,918 for repair services described in that application for the five years preceding the May 9, 2007 filing date, and further, to the extent that it seeks "all" documents and other information related to each such use, without reasonable limitation. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1). MMU further objects to this Interrogatory to the extent that it seeks information and documents, which either may not exist, or alternatively, are not in its possession, custody or control.


**INTERROGATORY NO. 20**
Identify the person(s) who provided each specimen of use filed by George Kobayashi in Application No. 77/176,918 and the date the specimen of use was provided to him.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).

**INTERROGATORY NO. 21**

Identify the person(s) who instructed George Kobayashi to file Application No. 77/176,918 and the date(s) he received any such instruction.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).

**INTERROGATORY NO. 22**

State in detail the specific information and belief(s) relied upon by George Kobayashi in signing any declaration relating to Application No. 77/176,918 and identifying the person(s) and document(s) that are the source(s) of each such information and belief and identify the three persons (other than Counterdefendant's counsel of record in this action) most knowledgeable about same.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).  MMU further objects to this Interrogatory to the extent that seeks information and/or communications which are protected by the attorney client privilege and which have not otherwise been determined to be within the scope of relevant, non-privileged discovery as set forth in any order or ruling in this litigation, including Magistrate Judge Nolan's June 6, 2008 Memorandum Opinion and Order and Judge Kendall's July 15, 2008 minute entry.

**INTERROGATORY NO. 23**

Explain in detail why the mark as sought to be registered in Application No. 77/176,918 differs from the mark as shown in the specimens of use filed by George Kobayashi in the application and identify the three persons (other than Counterdefendant's counsel of record in this action) most knowledgeable about same.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).

**INTERROGATORY NO. 25**

State in detail the specific information and belief(s) relied upon by George Kobayashi in signing any declaration relating to Registration No. 3,328,718 including, but not limited to, whether Kobayashi or any officer or director of MMU knew at the time of signing any such declaration that Defendants Tom and Steven Miyano were using their personal names in connection with machines and machine tools, why such information was not disclosed to the United States Patent and Trademark Office, and whether Defendants Tom and Steven Miyano consented to the registration of their surname as a word mark and identifying the person(s) and document(s) that are the source(s) of each such information and belief and identify the three persons (other than Counterdefendant's counsel of record in this action) most knowledgeable about same.

**Objections:**

MMU incorporates its General Objections as if fully set forth herein. MMU further objects to this Interrogatory to the extent that it is in excess of the 25 interrogatory limit specified in Rule 33(a)(1).  MMU further objects to this Interrogatory to the extent that seeks information and/or communications which are protected by the attorney client privilege and which have not otherwise been determined to be within the scope of relevant, non-privileged discovery as set forth in any order or ruling in this litigation, including Magistrate Judge Nolan's June 6, 2008 Memorandum Opinion and Order and Judge Kendall's July 15, 2008 minute entry.

DATED this 21st day of July, 2008

As to objections,

By:＿＿/s/ Louis J. Alex＿＿＿＿＿
    Edward D. Manzo
    Joel Bock
    Louis J. Alex
    Jason Smalley

**COOK, ALEX, McFARRON, MANZO,**
**CUMMINGS & MEHLER, LTD.**

 200 W. Adams Street, Suite 2850
Chicago, Illinois 60606
(312) 236-8500

Attorneys for Miyano Machinery USA, Inc.

## CERTIFICATE OF SERVICE

The undersigned declares that he/she is over the age of 18 years, not a party to this action, and employed in the County of Cook, by Cook, Alex, McFarron, Manzo, Cummings & Mehler, Ltd., Attorneys at Law, 200 West Adams Street, Suite 2850, Chicago, Illinois 60606.

On the date listed below, I caused the filing of the foregoing **Plaintiff and Counterdefendant Miyano Machinery USA, Inc.'s Responses to Counterclaimant's Second Set of Interrogatories** with all its attachments and exhibits. I caused the service of these aforementioned documents on the following individuals, as addressed below, by the means indicated, and on the date listed below:

| | | |
|---|---|---|
| Geoffrey A. Baker<br>Geoffrey D. Smith<br>DOWELL BAKER, P.C.<br>201 Main Street, Suite 710<br>Lafayette, Indiana 47901<br>(765) 429-4004 telephone<br>(765) 429-4114 facsimile<br>gabaker@dowellbaker.com | Robert M. Karton<br>ROBERT M. KARTON, LTD.<br>77 W. Washington St., Suite 900<br>Chicago, Illinois 60602-2804<br>(312)214-0900 telephone<br>(312)214-4230 facsimile<br>robert@karton.us | Vernon W. Francissen<br>FRANCISSEN PATENT LAW, P.C.<br>53 W. Jackson Blvd.,<br>Suite 1320<br>Chicago, Illinois 60604<br>(312)294-9980 telephone<br>(312)275-8772 facsimile<br>vern@francissenpatentlaw.com |

Nancy E. Sasamoto
Steven L. Katz
George H Kobayashi
MASUDA, FUNAI, EIFERT & MITCHELL, LTD.
203 N. LaSalle St.
Suite 2500
Chicago, IL 60601
312-245-7500 telephone
nsasamoto@masudafunai.com
skatz@masudafunai.com
gkobayashi@masudafunai.com

  X    (BY ELECTRONIC MEANS) I caused this document to be electronically mailed (emailed) to Vernon W. Francissen, at the address shown above.

_ _    (BY ELECTRONIC MEANS) I cause each such document to be sent by electronic means through the Electronic Court Filing system to Nancy Sasamoto, Steven Katz,  George H Kobayashi, Geoffrey A. Baker, Geoffrey D. Smith and Robert M. Karton at the address shown above, pursuant to LR 5.9.

Executed on May 12, 2008 at Chicago, Illinois.

Signed:       */s/ Louis J Alex*

11

# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.2d                                                                                   Page 1

Not Reported in F.Supp.2d, 2005 WL 3829134 (N.D.Ill.)

**2005 WL 3829134 (N.D.Ill.)**

**H**

Bell v. Woodward Governor Co.

N.D.Ill.,2005.

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Western Division.

Demetric BELL, Marilyn Berry, Catherine Brown, Kimberly Buchanan, Gilberto Gonzalez, Della Jarrett, Timmy Link, Eddie Manning, Jr., Kim Nachampassack, Duane Parks, Brenda Riley, Darnel Royal, Robin Sallis, Velma Sanders, Barbara Smith, Tony Triplett, Janet Wilkins and Fred Wynne, individually and on behalf of similarly situated persons, Plaintiffs,

v.

WOODWARD GOVERNOR COMPANY, Defendant.

**No. 03 C 50190.**

June 30, 2005.

Jennifer Kay Soule, James Gerard Bradtke, Kelly K. Lambert, Soule, Bradtke & Lambert, Alex Reigart Montgomery, Joshua Karsh, Matthew J. Piers, Hughes Socol Piers Resnick & Dym Ltd., Robert D. Allison, Robert D. Allison & Associates, Stephen G. Seliger, Attorney at Law, Steven Paul Schneck, Law Office of Robert D. Allison, Chicago, IL, Peter Earle, Law Offices of Peter Earle, Milwaukee, WI, for Plaintiffs.

Michael W. Duffee, Matkov, Salzman, Madoff & Gunn, Chicago, IL, Daniel E. Turner, Dax Lopez, Nancy E. Rafuse, Ashe, Rafuse & Hill, LLP, Atlanta, GA, Laura A. O'Connell, Robert Michael O'Connell, Picha & Salisbury, Michelle Luthia Landon, Picha and Salisbury Law Offices, Rockford, IL, Lawrence Schlam, Northern Illinois University College of Law, Dekalb, IL, Michele K. McKellar, Boley & McKellar, P.C., Cheyenne, WY, for Defendant.

*MEMORANDUM OPINION AND ORDER*

MAHONEY, Magistrate J.

**\*1** This matter is before the court on Defendant's June 17, 2005, Motion to Enforce Case Management Order and for a Protective Order Regarding Plaintiffs' Interrogatories in Excess of Seventy-five. Previously, the court limited interrogatories in this case to seventy-five. For the reasons stated below, Defendant's Motion for a Protective Order is denied. The Court does not find that the Case Management Order has been violated.

I. FACTS

Plaintiffs have propounded the following ten interrogatories/sets of interrogatories: (1) September 12, 2003, First Set of Interrogatories; (2) March 3, 2004, Second Set of Interrogatories; (3) November 1, 2004, Interrogatory Regarding Identity of Working Leads; (4) November 14, 2004, Interrogatory Regarding Job Level Placement; (5) December 27, 2004, Interrogatory Regarding Job Descriptions; (6) December 28, 2004, Interrogatories Concerning Affirmative Defenses; (7) March 18, 2005, Interrogatories; (8) May 2, 2005, Interrogatories; (9) May 20, 2005, Interrogatories; and (10) May 25, 2005 Interrogatories.

Defendant submits that Plaintiffs exceeded their allotted number of interrogatories with their March 18, 2005, Interrogatories. (Def.'s Mtn., at para 4). Defendant also provided the court with a chart that breaks down the total number of requests it believes it has received, which adds up to 137 Interrogatories.[FN1] While Defendant chose to answer the March 18, 2005, Interrogatories, it does not intend to answer any of the propounded May Interrogatories and seeks a Protective Order to that effect.

> FN1. Defendant's chart does not include Plaintiffs' latest round of interrogatories, dated May 25, 2005.

Plaintiffs contend they have only served Defendant a total of twenty-eight separately numbered Interrogatories and urge the court to deny Defendant's

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3829134 (N.D.Ill.)
**2005 WL 3829134 (N.D.Ill.)**

Motion.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 33(a), the limit on the number of interrogatories a party may serve includes "all discrete subparts." Put another way, courts are wary of attempts by parties to circumvent Rule 33 by asking questions about distinct subjects within a numbered question or by adding unrelated subparts to a question. Rule 33, however, does not define "discrete subparts," so courts have interpreted what constitutes a subpart in various ways. For example, some courts count each subpart separately (even when subparts are unnumbered), while others count subparts that relate to the primary interrogatory as one interrogatory. *See Valdez v. Ford Motor Co.,* 134 F.R.D. 296, 298 (D.Nev.1991); *Clark v. Burlington N. R.R.,* 112 F.R.D. 117, 120 (N.D.Miss.1986). There remains a lack of a clear and easily applied rule about how subparts should be counted in the Seventh Circuit.FN2

> FN2. The Rule's Advisory Committee did provide some guidance as to when subparts should and should not count as separate interrogatories, noting that:
>
>> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

*See* Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993).

Under the commonly cited rule announced in *Kendall v. GES Exposition Servs, Inc.,* which also happens to be the rule recommended in *Moore's Federal Practice,* "interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question." 174 F.R.D. 684, 685 (D.Nev.1997); 7 *Moore's Federal Practice,* § 33.30[2] (Matthew Bender 3d ed.). The court will use this rule to guide its analysis.

**\*2** Turning to the interrogatories in this case, the court notes that it is already quite familiar with Plaintiffs' discovery requests due to its own consideration of the approximately forty Motions to Compel filed by Plaintiffs (not including motions related to depositions). To the extent that the court was not familiar with Plaintiffs' Interrogatories, it did take the time to sit down and count for itself the number of requests, subparts and all. A brief summary of the court's analysis as to each discovery request is laid out below as warranted.

A. September 12, 2003, First Set of Interrogatories

Plaintiffs number six interrogatories. Defendant counts twenty-three. This court counts eight interrogatories. The court adds two interrogatories because it finds that subparts a-b of Plaintiffs' Interrogatory # 4 are only tangentially related to positions for which Plaintiffs or charging parties have applied.

B. March 3, 2004, Second Set of Interrogatories

Plaintiffs number seven interrogatories. Defendant counts ten. This court counts eight interrogatories. The court adds one interrogatory because it finds that Plaintiffs' Interrogatory # 1 seeks the person or person drafting documents and the person or person discarding or destroying them, which seems to be two entirely separate incidents to the court.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3829134 (N.D.Ill.)
**2005 WL 3829134 (N.D.Ill.)**

C. November 1, 2004, Interrogatory Regarding Identity of Working Leads

Plaintiffs number one interrogatory. Defendant counts three. This court counts two interrogatories. The court adds one interrogatory because it finds that the "person who selected each 'working lead' or 'working leader' ' to be insufficiently related to the identification of persons acting as working leads and the period of time during which they acted in that capacity.

D. November 14, 2004, Interrogatory Regarding Job Level Placement

Plaintiffs number one interrogatory. Defendant counts six. This court counts two interrogatories. The court adds one interrogatory because it finds that Interrogatory # 1 asks about job levels first as a theory (the process and the documents related to the process for developing job levels), and then as applied (when levels were used, initial placement, initial placer, and the reasons for placement). The court finds these to be two discrete inquiries.

E. December 27, 2004, Interrogatory Regarding Job Descriptions

Both Plaintiffs, Defendant, and the court agree. One interrogatory ... two interrogatories ... three interrogatories, ahh ... ahh ... ahhh. (Per The Count, C.J., N.D. Sesame Street).

F. December 28, 2004, Interrogatories Concerning Affirmative Defenses

Plaintiffs number two interrogatories. Defendant counts twenty-one. This court counts twenty-one interrogatories. The court adds an interrogatory for each of Defendant's affirmative defenses because it finds that Plaintiffs' Interrogatory # 1 improperly seeks to combine twenty-one questions into one.

G. March 18, 2005, Interrogatories

**\*3** Plaintiffs number four interrogatories. Defendant counts twelve. This court counts four interrogatories, so no interrogatories are added. While Defendant's running total surpasses seventy-five at this interrogatory set, the court's running total is only forty-eight. The court thus moves on to Plaintiffs' May Interrogatories.

H. May 2, 2005, Interrogatories

Plaintiffs number four interrogatories. Defendant counts fifty-five. This court counts six interrogatories. The court adds one interrogatory to Interrogatory # 1 because the meaning of an abbreviation and "all the circumstances or situations as to which each code has been used" are two separate inquiries. Defendant urges the court to count Interrogatory # 1 as forty-seven interrogatories, one for each code listed (even though the court counts fifty-six codes listed). While the court agrees that the each code could and probably should be propounded as a separate interrogatory, the court finds only two interrogatories in the interest of efficiency of discovery. Each of the codes apparently comes from one work force data base, and the court finds a written response to the interrogatory would be more efficient than a 30(b)(6) deposition on work force data base codes.

The court also adds one interrogatory to Interrogatory # 4. Plaintiffs should have separated out the last sentence of Interrogatory # 4 ("If you contend that any of the foregoing information can be derived ...") as a new interrogatory, as Plaintiffs did in their May 25, 2005, Interrogatories # 1-2.

I. May 20, 2005, Interrogatories

Plaintiffs number three interrogatories. Defendant counts four. This court counts three valid contention interrogatories, and it finds no reason to separate out additional interrogatories from those numbered by Plaintiffs.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3829134 (N.D.Ill.)
**2005 WL 3829134 (N.D.Ill.)**

J. May 25, 2005 Interrogatories

Plaintiffs number four interrogatories. Defendant did not reference the May 25, 2005, Interrogatories in its brief. This court counts four interrogatories, making the grand total of interrogatories sixty-one, still fourteen interrogatories short of the court's limit of seventy-five.

As Plaintiffs have not exceeded their Case Management Order limits, and the information sought by Plaintiffs appears to relate to the core information needed to prove their claims (as opposed to seeking overly broad irrelevant information), this court denies Defendant's Motion to Enforce Case Management Order and for a Protective Order.

III. CONCLUSION

For the above stated reason, Defendant's Motion is denied.

N.D.Ill.,2005.
Bell v. Woodward Governor Co.
Not Reported in F.Supp.2d, 2005 WL 3829134 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2002 WL 32854376 (N.D.Cal.)
**2002 WL 32854376 (N.D.Cal.)**

H

Chapman v. California Dept. of Educ.
N.D.Cal.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Juleus CHAPMAN, et al., Plaintiffs,
v.
CALIFORNIA DEPARTMENT OF EDUCATION,
et al., Defendants.
**No. C-01-1780 CRB (EMC).**

Feb. 6, 2002.

Alison M. Aubrejuan, Melissa W. Kasnitz, Rhoda
Benedetti, Sid Wolinsky, Disability Rights Advoc-
ates, Oakland, CA, Elizabeth J. Cabraser, Eve H.
Cervantez, Mary Bondy Reiten, Morris A. Ratner,
Lieff, Cabraser, Heimann & Bernstein, LLP, San
Francisco, CA, for Plaintiffs.
Amy Bisson Holloway, Michael Hersher, California
Department of Education, Suzanne B. Giorgi, CA
Attorney General's Office, Sacramento, Ca,
Douglas M. Press, Teresa L. Stinson, CA Attorney
General's Office, San Francisco, CA, James R.
Hawley, Hoge Fenton Jones & Appel, San Jose,
CA, for Defendants.

ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFFS' MOTION TO COMPEL
(No. 128)

CHEN, Magistrate J.
**\*1** This matter comes before the Court on the mo-
tion to compel by plaintiff Juleus Chapman, *et al.*
(hereinafter "Plaintiffs"). On January 23, 2002,
Plaintiffs moved to compel defendants California
Department of Education, *et al.* (hereinafter
"Defendants") to respond to certain discovery re-
quests including, *inter alia,* requests for admission
and interrogatories. Following meet and confer ef-
forts ordered by the Court and through Defendants'
Opposition to the instant motion, the parties have
resolved all of the discovery disputes [FN1] with the
exception of Plaintiffs' request that Defendants re-

spond to Plaintiffs' Second Set of Interrogatories.

> FN1. On January 25, 2002, the Court re-
> ceived a joint letter from the parties
> wherein Plaintiffs agreed to redraft various
> contested requests for admission from the
> two sets of requests for admission previ-
> ously served on Defendants. The Court is
> informed that Plaintiffs provided these re-
> drafts and that Defendants have responded
> thereto.

Defendants object to Plaintiffs' Second Set of Inter-
rogatories, arguing that the interrogatories: [1] are
numerous, in violation of Federal Rule of Civil Pro-
cedure 33(a); [2] are overbroad and unduly burden-
some; and [3] have already been answered in good
faith.

The Court, however, does not find these arguments
persuasive.

1. NUMERICAL LIMITS UNDER FEDERAL
RULE OF CIVIL PROCEDURE 33(a)

Federal Rule of Civil Procedure 33(a) provides that
without leave of court or written stipulation, a party
may not serve more than twenty-five interrogatories
including subparts on any other party. [FN2] Defend-
ants argue that Plaintiffs' Second Set of Interrogat-
ories "can and should be broken down into discrete
subparts, each of which can and should be treated
as a 'stand alone' question," and as such, exceeds
the number of interrogatories as provided in Rule
33.

> FN2. Defendants also intimate that
> Plaintiffs' interrogatories should be limited
> to twenty-five total as to all defendants and
> that by asking the same interrogatory to
> both defendant the State Board of Educa-
> tion and defendant the State Department of
> Education, the interrogatory should be
> counted twice against the cap of twenty-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Page 2

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 32854376 (N.D.Cal.)

**2002 WL 32854376 (N.D.Cal.)**

five. However, by its terms Rule 33(a) applies to interrogatories served by one party upon "any other party." Thus, where there are multiple defendants (at least where the defendants do not act in unison and are more than nominally separated), the limit imposed by Rule 33(a) applies to each defendant. Defendants have not argued or demonstrated that they are acting in unison.

Although there is no bright-line test as to whether a subpart should be counted as an interrogatory, the weight of authority interpreting Rule 33(a) requires examining whether the subparts are " '... logically or factually subsumed within and necessarily related to the primary question." ' *Safeco of America v. Rawstron,* 181 F.R.D. 441, 445 (C.D.Cal.1998), *quoting,Ginn v. Gemini Inc.,* 137 F.R.D. 320, 322 (D.Nev.1991). Stated differently, the question is whether there is a " 'direct relationship' between the various bits of information called for" ' by the subparts, *id.* at 444,*quoting,Clark v. Burlington Northern Railroad,* 112 F.R.D. 117, 120 (N.D.Miss.1986), or if the subparts are a " 'logical extension of the basic interrogatory." ' *Id.,quoting,Myers v. United States Paint Co.,* 116 F.R.D. 165, 165-66 (D.Mass.1987). Thus, for instance, as the court held in *Ginn,supra,* an interrogatory which asks the respondent to state the amount of each loss or damage for an alleged breach of an implied-in-fact contract together with the factual basis for the claim and all calculations relied upon constitutes a single interrogatory. *SeeGinn,* 137 F.R.D. at 321-22.

Here, Plaintiffs' Second Set of Interrogatories consists of one numbered interrogatory which references several requests for admission and seeks detailed information supporting responses thereto. Specifically, the interrogatory requests that Defendants identify, for each request for admission not unqualifiedly admitted among Set One, Request Nos. 4-7 and all of Set Two: [a] the number of the request for admission; [b] all facts on which Defend-

ants base their response (including, but not limited to, the names, addresses and telephone numbers of all person who have knowledge of those facts); and [c] "with specificity all documents and other tangible things that support your response and state the name, address, and telephone number of the person who has each document or thing."(emphasis omitted). Arguably, seeking disclosure of facts (including the identity of those knowledgeable) and documents (including the identity of the individual in possession of the item) are directly related and should be treated as one subpart. On the other hand, at least one court determined that similar requests should be treated as separate interrogatories. *SeeKendall v. GES Exposition Services, Inc.,* 174 F.R.D. 684, 685-86 (D. Nevada 1997) (determining that a subpart asking for documents in addition to facts should be treated as two subparts). In *Safeco,supra,* interrogatories similar to the "subparts" herein were numbered as separate interrogatories and treated as such. *SeeSafeco,* 181 F.R.D. at 442-43.

**\*2** Furthermore, Plaintiffs' Second Set of Interrogatories reference fifteen different requests for admission for which Defendants are required to respond. If the interrogatory relates to distinct and separate requests for admission, the interrogatories should be treated as the same number of subparts as there are requests for admission. *See* Schwarzer, Tashima & Wagstaffe, *Rutter Group Prac. Guide; Fed. Civ. Pro. Before Trial* § 11:621.5 (2001) (stating that an interrogatory asking for the basis for denial of any requests for admission is treated as many interrogatories as there are requests for admission); *Safeco,* 181 F.R.D. at 445.

Assuming that Plaintiffs' First Set of Interrogatories, which referenced two requests for admission, and Plaintiffs' First Set of Interrogatories, which referenced fifteen requests for admission, are treated as containing two separate subparts under *Kendall,supra,* Plaintiffs' interrogatory count numbers thirty-four.

However, the Court may grant a party leave to

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32854376 (N.D.Cal.)
**2002 WL 32854376 (N.D.Cal.)**

serve additional interrogatories under Rules 33(a) and 26(b)(2). Leave to serve additional interrogatories should not be granted where: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. See Fed.R.Civ.P. 26(b)(2); see also Walker v. Lakewood Condominium Owners Ass'n, 186 F.R.D. 584, 588 fn. 9 (C.D.Cal.1999); Lukens v. National R.R. Passenger Corp., No Civ. A 99-4102, 2000 WL 1022988, *1 (E.D.Pa. July 6, 2000).

Here, although the thirty-four interrogatories are over the numerical limit imposed by Rule 33(a), the interrogatories are neither cumulative nor duplicative. The subject matter of the interrogatories (e.g., relating to assessment of the test validity, etc.) appear directly relevant to the issues in the case. Moreover, the request to identify documents (the second subpart of the interrogatory) could have been propounded as a request for production of documents under Rule 34 for which the Rule 33(a) numerical limit of interrogatories would not apply. To limit discovery which is clearly relevant under these circumstances would exalt form over substance. Therefore, the Court *sua sponte* grants Plaintiffs leave to serve the interrogatories at issue. However, Plaintiffs must seek leave of Court to file any additional interrogatories.

## 2. UNDUE BURDEN

Defendants also object to Plaintiffs' Second Set of Interrogatories arguing that interrogatories, such as those contained in the Second Set, requesting all facts, documents and witnesses are unduly burdensome and oppressive. While interrogatories that call for all facts, documents and witnesses may, in some circumstances, place an unreasonable burden on the responding party, see Safeco, 181 F.R.D. at 447-48, an interrogatory that requests "all facts" in support of a refusal to admit specific relevant facts is not burdensome and oppressive *per se* as Defendants argue. Interrogatories such as those propounded here may facilitate development of the case. See Richlin v. Sigma Design West, Ltd., 88 F.R.D. 634, 638 (E.D.Cal.1980) (stating that interrogatories may be used to "require an adverse party to disgorge all relevant facts within his knowledge"); see also In re U.S. Financial Securities Litigation, 74 F.R.D. 497, 498 (S.D.Cal.1975) (stating that interrogatories should be permitted to allow for a party's unfettered discovery of all relevant and necessary materials).

**\*3** The interrogatories relative to certain requests for admission do not seek all facts, documents, and witnesses supporting any refusal to admit every allegation of the Complaint. Rather the interrogatories seek facts relative to factually discrete topics-e.g., whether Defendants have assessed whether the skills and knowledge tested by the California High School Exit Examination (CAHSEE) in fact corresponds to the curriculum being followed by students with disabilities who took the CAHSEE in March 2001.

Nor are Defendants asked to provide all facts, witnesses and documents to prove a negative. The upshot of the interrogatories when coupled with the request for admissions is simply to ask whether Defendants have any facts demonstrating, for example, that such an assessment (described above) was in fact made. Where such an assessment was made, the interrogatory essentially asks Defendants to disclose facts relative to that assessment. This is far different from the problem of interrogatories seeking "all facts" supporting denials of wide ranging allegations pled by the plaintiff discussed in *Safeco, supra.*

Thus, the interrogatories here directed at specific

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32854376 (N.D.Cal.)
**2002 WL 32854376 (N.D.Cal.)**

factual questions are not unduly burdensome and oppressive. Defendants do not argue in their opposition that the information sought is irrelevant or that responding to these interrogatories would be burdensome in any specific way. Absent a finding by the Court that the interrogatories are *per se* oppressive, a generalized objection without a specific showing is inadequate and cannot be sustained. *See Walker,* 186 F.R.D. at 586-87.

### 3. GOOD FAITH ANSWER

The Court is also not persuaded with Defendants' final argument that they have responded to the subject interrogatories in good faith. According to Plaintiffs, Defendants responded based upon their own definition of instructional and curricular validity rather than responding to the precise interrogatory (as it related to the request for admission) propounded. The proponent of discovery is the master of its terms. So long as the information sought is within the broad bounds of relevancy as set forth in Rule 26 and is otherwise properly discoverable, the respondent may not unilaterally reshape or rephrase the discovery request. While it appears that Defendants may dispute what the proper definitions of instructional validity and curricular validity are, that substantive question or its legal significance to the outcome of this case is not before the Court. Rather, the question here is whether the information sought by Plaintiffs is sufficiently relevant to permit discovery. The information sought by the interrogatories at issue appears relevant and Defendants do not argue otherwise.

Plaintiffs' Motion to Compel (Docket No. 128) is GRANTED IN PART as to Plaintiffs' Second Set of Interrogatories, in its entirety. Defendants' responses to said interrogatories (relating to any requests for admission addressed and not unqualifiedly admitted) shall be served on Plaintiffs no later than February 22, 2002, at 12:00 noon.

**\*4** All other issues addressed by Plaintiffs' motion to compel (Docket No. 128) are DENIED AS MOOT.

IT IS SO ORDERED.

N.D.Cal.,2002.
Chapman v. California Dept. of Educ.
Not Reported in F.Supp.2d, 2002 WL 32854376 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 662724 (M.D.Fla.)
**2005 WL 662724 (M.D.Fla.)**

Border Collie Rescue, Inc. v. Ryan
M.D.Fla.,2005.
Only the Westlaw citation is currently available.
United States District Court,M.D. Florida.
BORDER COLLIE RESCUE, INC., Nicholas B.
Carter, Plaintiffs,
v.
Rebecca M. RYAN, Rebecca M. Ryan d/b/a Fly-
away Farm and Kennels, Flyaway Wildlife Man-
agement, Inc., Alexandra Murphy, and Deirdre S.
Merwin, Defendants.
**No. 304CV568J32HTS.**

March 15, 2005.

Andrew A. Bevan, Law Office of Andrew A.
Bevan, Ft. Myers, FL, Arthur L. Tepper, Law Of-
fice of Arthur L. Tepper, Esq., Bruce D. Fischman,
Maria C. Menendez, Fischman, Harvey & Dutton,
PA, Miami, FL, Dana Gottlieb Hoerner, Law Office
of Dana Hoerner, Esq., Howell, MI, Richelle M.
Marsico, Law Office of Richelle M. Marsico,
Tampa, FL, for Plaintiff.

Christopher J. MacQuarrie, MacQuarrie & Crab-
tree, P.A., Ocala, FL, Karen Louise Trafford, Mark
A. Connolly, Shumaker, Loop & Kendrick, LLP,
Tampa, FL, Stephanie A. Cole, Bloom, Cole,
Neubeck & Shonn, LLP, Buffalo, NY, Alan M.
Fisch, Jason F. Hoffman, Howrey, Simon, Arnold
& White, LLP, Washington, DC, for Defendants.
Nicholas B. Carter, Willis, TX, pro se.
Alexandra Murphy, Buffalo, NY, pro se.
Laura Nelson, Law Office of Laura Nelson, Esq.,
Reddick, FL, Harold H. Catlin, Harris, Guidi, Ros-
ner, Dunlap, Rudolph, Catlin & Bethea, P.A., Jack-
sonville, FL, Kenneth W. Donnelly, Howrey, Si-
mon, Arnold & White, LLP, Washington, DC, for
Defendants and Claimants.

*ORDER*

SNYDER, Magistrate J.
*1 This cause is before the Court on Deirdre S.

Merwin's Motion to Compel Nicholas B. Carter and
Border Collie Rescue to Answer Interrogatories
17-23, Request for Attorneys Fees and Costs (Doc.
# 224; Motion), filed on February 14, 2005.
Plaintiffs Border Collie Rescue's and Nicholas B.
Carter's Amended Response in Opposition to
Deirdre Merwin's Motion to Compel Discovery
(Doc. # 257; Opposition) was filed on March 9,
2005.

Defendant Merwin (Defendant) requests that the
Court direct Plaintiffs to answer certain interrog-
atories. Motion at 1. Plaintiffs have refused to
provide answers to some of the interrogatories
served by Ms. Merwin as they argue the number of
interrogatories has exceeded the amount allowed
pursuant to Rule 33(a), Federal Rules of Civil Pro-
cedure (Rule(s)).*See* Motion at 7; Opposition at 6-7.

Under Rule 33(a)"any party may serve upon any
other party written interrogatories, not exceeding
25 in number including all discrete subparts [.]"
Regarding that limit, the Advisory Committee
stated it cannot be evaded by "joining as 'subparts'
questions that seek information about discrete separ-
ate subjects. However, a question asking about
communications of a particular type should be
treated as a single interrogatory even though it re-
quests that the time, place, persons present, and
contents be stated separately for each such commu-
nication."Rule 33 Advisory Committee Note (1993
Amendment).

Here, Plaintiffs assert questions 1, 2, 3, 4, 5, 10,
and 15 contain more than one subpart. Opposition
at 7-9. The Court has reviewed the interrogatories
at issue and is of the view they do not contain
"discrete" or separate and distinct subparts. "[A]n
interrogatory containing subparts directed at elicit-
ing details concerning a 'common theme' should
generally be considered a single question. On the
other hand, an interrogatory which contains sub-
parts that inquire into discrete areas should, in most
cases, be counted as more than one

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 662724 (M.D.Fla.)
**2005 WL 662724 (M.D.Fla.)**

*Swackhammer v. Sprint Corp. PCS,* 225 F.R.D. 658, 664-65 (D.Kan.2004) (footnote omitted); *see* 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2168.1 (2d ed.1994). The interrogatories at issue in this case each concern a common theme. The subject of the first query is Border Collie Rescue Inc.'s (BCR) board of directors. *See* Defendant Deirdre S. Merwin's First Set of Interrogatories to Plaintiff Border Collie Rescue, Inc. and Nicholas B. Carter, attached to the Motion as Exhibit A, at 3. Question 2 asks about people who currently work for BCR and those who did so in the past. *Id.* at 4. Numbers 3 and 4 each seek information about the dogs Plaintiffs have had since 1994. *Id.* Interrogatory 5 concerns service contracts entered into by Plaintiffs since 1997. *Id.* at 5. In Interrogatory 10, Defendant seeks specific information relating to an allegation "in paragraph 44 of the First Amended Complaint [ (Complaint) ]." *Id.* at 6. Finally, question 15 concerns Plaintiff Carter's background and education. *Id.* at 8. As such, Plaintiffs' objection on the basis that Defendant has exceeded the permissible number of interrogatories is not appropriate.

**\*2** Plaintiffs also argue Interrogatories 18, 20, 21, 22, and 23 are overbroad and unduly burdensome. With respect to Interrogatories 20, 21, 22, and 23 this objection is not well taken as it was not raised in Plaintiffs Border Collie Rescue's and Nicholas B. Carter's Responses and Objections to Defendant Merwin's First Set of Interrogatories (Objections), attached to the Motion as Exhibit B. As for question 18, overbreadth and burden were raised in the Objections.

"Under well-settled law, the party resisting [discovery] bears the responsibility of establishing undue burden." *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D.Ala.1998). "Parties 'cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof. Simply decrying the expense to plaintiff will not satisfy this obligation." ' *Porter v. Nationscredit Consumer Disc. Co.,* No. Civ.A. 03-3768, 2004 WL 1753255, at \*1 (E.D.Pa. July 8, 2004) (quoting *Martin v. Easton Pub. Co.,* 85 F.R.D. 312, 316 (E.D.Pa.1980)). The party asserting undue burden "must substantiate that position with detailed affidavits or other evidence[.]" *Coker,* 177 F.R.D. at 686; *see Hammond v. Lowes Home Ctrs., Inc.,* 216 F.R.D. 666, 672 (D.Kan.2003) ("The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, [the] question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."). Further, that party must also "show that the burden or expense is unreasonable in light of the benefits to be secured from the discovery." *Hammond,* 216 F.R.D. at 674.

With respect to Interrogatory 18, which requests details of the damages claimed in the Complaint, no particulars have been provided as to how Plaintiffs will be burdened if required to respond. As well, it does not appear the question is overbroad on its face as it simply asks Plaintiffs to list and detail their damages. Because the question appears to be permissible, these objections will not serve as a basis to deny the discovery.

Interrogatory 17 requests that Plaintiffs "[i]dentify and describe all 'statements and innuendoes published by these third parties' identified in paragraph 102 of the First Amended Complaint." Motion at 3. Plaintiffs argue they should not be required to answer this question as it is unduly burdensome. Opposition at 11. It is argued "[t]he answer to this singular Interrogatory alone would result in a detailed response comprising of more than 1,000-2,000 pages and require on the order of 500 to 1,000 manhours by the Plaintiffs to prepare[.]" *Id.* It is unclear from where these numbers are derived and Plaintiffs have provided no evidence or affidavit to support them.

Plaintiffs also assert with respect to this question that by providing documents responsive to Defendant's request for production they "have furnished such information as is available to [Plaintiffs]." *Id.*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 662724 (M.D.Fla.)

**2005 WL 662724 (M.D.Fla.)**

at 13.If Plaintiffs have already given all the information they have in a manner consistent with Rule 33, they will not be required to do so a second time. "Only business records may be used in lieu of interrogatory answers."Steven Baicker-McKee, William M. Janssen & John B. Corr, *Federal Civil Rules Handbook* at 665 (2004). However, to the extent Plaintiffs are to use business records as their response to the question, they must provide sufficient information to allow Defendant "to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."Rule 33(d); *see also* Middle District Discovery (2001) at 11-12 ("To avoid abuses ... the party wishing to respond to interrogatories in the manner contemplated by Rule 33(d) should ... [s]pecify the documents to be produced in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party" to whom the interrogatory is directed.). If this cannot be accomplished sufficiently by reference to business records previously produced, Plaintiffs must provide for inspection the particular documents they assert are responsive to the interrogatory. If the interrogatory cannot be fully answered by reference to business records, Plaintiffs shall provide a traditional-style interrogatory answer.

**\*3** Finally, Defendant requests that an answer to question 19 be compelled. That interrogatory seeks the "[i]denti[ty of] all professional persons in the field of airport or airfield safety, operations, or wildlife control who currently consider Nicholas B. Carter the world's leading authority on the training and use of border collie[s] for control [of] wildlife on airfields."Motion at 5. Plaintiffs objected on the basis of having previously provided the information in response to Defendant Murphy's interrogatories. *See id.*Defendant argues "complete answers to [I]nterrogatory 19 are not found" in those answers. *Id.* at 8. Plaintiff Border Collie Rescue's Responses and Objections to Defendant Murphy's First Set of Interrogatories is attached to the Motion as Exhibit E but contains no question equivalent to Merwin's

Interrogatory 19. It is alleged other responses to Ms. Murphy's interrogatories were not received by Ms. Merwin. Motion at 8. Having considered the positions of the parties, the Court concludes Plaintiffs must provide answers to question 19.

In light of the foregoing, the Motion (Doc. # 224) is GRANTED to the extent Plaintiffs shall provide answers to the interrogatories at issue within seven (7) days of the date of this Order. With respect to question 17, if Plaintiffs intend to use business records as their response, they must specifically reference the documents which are to serve as their answer or, if the documents cannot be readily identified within the records already produced, Plaintiffs shall provide documents to Defendant for inspection as detailed above. Otherwise, the Motion is DENIED.

DONE AND ORDERED.

Copies to:

Counsel of Record and parties, if any, pro se.

M.D.Fla.,2005.

Border Collie Rescue, Inc. v. Ryan

Not Reported in F.Supp.2d, 2005 WL 662724 (M.D.Fla.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

**H**

Portis v. City of Chicago
N.D.Ill.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Ronald PORTIS, Madric Lance, and Emmett
Lynch, individually and on behalf of a class,
Plaintiffs,
v.
CITY OF CHICAGO, et al. Defendants.
**No. 02 C 3139.**

April 15, 2005.

Robert Hugh Farley, Jr., Naperville, IL, Thomas
Gerard Morrissey, Mark G. Weinberg, Chicago, IL,
for Plaintiffs.
June K. Ghezzi, Michael P. Manly, Aimee B. An-
derson, Mara Stacy Georges, Amy Renee Skaggs,
Chicago, IL, for Defendants.

*MEMORANDUM OPINION & ORDER*

NOLAN, Magistrate J.
**\*1** Plaintiffs Ronald Portis, Mardric Lance and Em-
mett Lynch have brought this class action lawsuit
against defendants City of Chicago, Terry Hillard,
Joseph Griffin, John Risley, Francis Kehoe, Evert
Johnson and Robert Johnson asserting claims under
42 U.S.C. § 1983 for violations of their federal civil
rights. Plaintiffs, who were arrested for nonviolent
ordinance violations which impose only a fine, al-
lege they were "unlawfully detained for prolonged
periods of time after completion of all administrat-
ive steps incident to their arrests for non-custodial
ordinance violations," in violation of their civil
rights. *Portis v. City of Chicago,* No. 02 C 3139,
2004 WL 1284010, at \*1 (N.D.Ill. June 10,
2004).FN1 This matter is before the court for ruling
on *Defendant's Motion to Quash Plaintiffs' Twelfth
Set of Interrogatories*FN2 and *Plaintiffs' Motion to
Compel,* which seeks responses to plaintiffs' twelfth
set of interrogatories. As explained below, both de-

fendants' motion to quash and plaintiffs' motion to
compel are granted in part and denied in part.

FN1. The district court has certified a class
defined as "all persons who, during the
class period, were arrested on ordinance
violations which carry no jail time in the
City of Chicago and who were detained for
more than two hours after all administrat-
ive steps incident to the arrest, except non-
discretionary ministerial acts, were com-
pleted."*Id.*

FN2. According to defendants, the inter-
rogatories at issue are actually the thir-
teenth set of interrogatories served by
plaintiffs. The court shall refer to the inter-
rogatories as the twelfth set, however, be-
cause that is the title on the discovery
served by plaintiffs.

*Background*

Plaintiffs' twelfth set of interrogatories relate to in-
terrogatories 5 and 6 from plaintiffs' fifth set of in-
terrogatories. On August 19, 2004, plaintiffs served
defendants with a fifth set of interrogatories which
asked, as relevant here, whether "there is a class-
wide explanation for the detention of arrestee-class
members that exceeds four hours from the time of
arrest to the time of release" (interrogatory number
5) and whether "there is a classwide explanation for
the detention of arrestee-class members that ex-
ceeds two hours from the time of lockup and book-
ing to the time of release" (interrogatory number 6).
(Pls.' Mot., Ex 2.) On October 26, 2004, plaintiffs
filed a motion to compel answers to interrogatories
5 and 6 (as well as others),FN3 because defendants
had not yet filed any answers or objections.
Plaintiffs withdrew that motion to compel on
November 4, 2004, however, after receiving re-
sponses from defendants. In *Defendants' Answers
and Objections to Plaintiffs' Fifth Set of Interrogat-
ories* dated November 2, 2004, in addition to rais-

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

Page 2

ing several objections to interrogatories 5 and 6, defendants answered that "the arrestee class members' detentions lasted less than 48 hours and are thus presumptively reasonable under the governing Supreme Court law set forth in *County of Riverside v. McLaughlin* [500 U.S. 44 (1991) ] and its progeny."FN4(Defs'. Mot. to Quash, Ex. 3.)

> FN3.*See Plaintiffs' Motion to Compel Defendants to Provide Answers to Plaintiffs' Second Supplemental Interrogatories and Fifth Set of Interrogatories* (Docket 158).

> FN4. The district court has previously rejected defendants' reliance on the *Riverside* forty-eight hour rule. *E.g., Portis v. City of Chicago,* No. 02 C 3139, 2004 WL 1284010, at *1-2 (N.D.Ill. June 10, 2004).

On December 8, 2004, plaintiffs filed a second motion to compel answers to interrogatories 5 and 6 (as well as others),FN5 asserting that defendants' answers to those interrogatories were nonresponsive. In briefing that motion, defendants took the position that the *Riverside* explanation was their answer, whereas plaintiffs contended that the *Riverside* explanation was really an objection that no explanation was necessary. At the hearing on the motion to compel on January 11, 2005, the court informed the parties that it made no difference whether the *Riverside* explanation was characterized as an answer or objection. Rather, the significant issue was whether defendants intended to offer a classwide explanation at trial for the length of the class members' detentions other than their *Riverside* explanation. In other words, if defendants intended to rely solely on their *Riverside* explanation, they were entitled to do so, but if there was more to their defense, they had to disclose their position. The court thus ruled that if defendants intended to offer a classwide explanation other than their *Riverside* explanation at trial, defendants had to disclose the classwide explanation by supplementing their answers to interrogatories 5 and 6 no later than Friday, January 14, 2005. (Minute Order of 1.11.05.) FN6

> FN5.*See Plaintiffs' Motion to Compel Defendants to Provide Answers to Plaintiffs' Second Supplemental Set of Interrogatories and Fifth Set of Interrogatories* (Docket 181).

> FN6. Neither party appealed this order.

**\*2** In *Defendants' Court-Ordered Supplemental Answers and Objections to Interrogatories 5 and 6 of Plaintiff's Fifth Set of Interrogatories,* in addition to raising further objections and noting that their investigation continued, defendants supplemented their answers as follows:

The evidence shows that the length of the detentions was reasonable under the Fourth Amendment. There is a natural and widespread backlog within the Chicago Police District stations that existed during the class period, and that exists where there is a ratio of arrestees to total police force of approximately 20:1, let alone a ratio of arrestees to the personnel working intake, processing and release at the district stations, which far outstrips 20:1. Similarly, unavoidable delays can be caused by there being a large number of arrestees on a given night in a given district, there being people [that] are arrested in large groups, transporting arrested persons from one facility to another, personnel shortages, personnel deployment, unusual circumstances in a district, and myriad other practical realities. The unavoidable delays that occur, combined with the total lack of any evidence of improper purpose creating such delay, establishes that the length of the detentions was reasonable.

(Defs.' Mot. to Quash, Ex. 4.) After reviewing the supplemental answers, in a minute order dated January 19, 2005, the court denied plaintiffs' motion to compel as it related to interrogatories 5 and 6, noting that defendants had supplemented their answers and further explained their objections.

According to plaintiffs, the supplemental answers to interrogatories 5 and 6 are vague, not fully responsive, and fail to address important parts of the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

questions. Rather than returning to court with an- other motion to compel or appealing the court's or- der of January 19, 2005, plaintiffs opted to serve the twelfth set of interrogatories and an accompany- ing document request in an effort to obtain further detail. For example, in the twelfth set of interrogat- ories, plaintiffs ask defendants (1) to define the term backlog used in the supplemental answers, (2) to identify, by date and police station, when a back- log existed that explains the delays in releasing class members from detention, (3) to explain in de- tail how a backlog causes or explains such delays, (4) to identify all documents, including but not lim- ited to reports, studies, or analyses, that explain that a backlog causes or explains such delays, (5) to identify each person who will testify to the fact that a backlog explains or causes such delays, and (6) to identify and explain all reasons why class members were not issued a ticket rather than arrested "once they were identified and it was determined that there were no warrants for their arrest or when it was determined that they would not be fingerprin- ted when a backlog exists."(Pls.' Mot., Ex. 6, Inter- rog. 3.) Plaintiffs ask similar questions regarding the 20:1 ratio, personnel shortages, personnel de- ployment, arrests of people in large groups, etc.

**\*3** Defendants now ask the court to quash plaintiffs' twelfth set of interrogatories, contending that some of the questions are repetitive of previously served interrogatories, and that the remainder of the inter- rogatories are abusive and oppressive. Plaintiffs counter with a motion to compel responses to the twelfth set of interrogatories, which plaintiffs char- acterize as "specific, focused discovery seeking in- formation that is not only relevant but necessary and that has not been provided."(Pls.' Mot. Compel at 3.)

*Discussion*

The use of interrogatories is governed by Rule 33 of the Federal Rules of Civil Procedure, "which is intended to enable a party to prepare for trial, to narrow the issues and thus help determine what

evidence will be needed at the trial, and to reduce the possibility of surprise at trial."Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d § 2162.* According to the Manual for Complex Litiga- tion, the primary purpose for interrogatories is to "help determine the existence, identity, and location of witnesses, documents and other tangible evid- ence as a prerequisite to planning further discov- ery."*Manual for Complex Litigation, Fourth,* § 11 .461 (1994). Under Rule 33, each interrogatory must be "answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objec- tion and shall answer to the extent the interrogatory is not objectionable."Fed.R.Civ.P. 33(b)(1).Rule 33 thus imposes a duty to provide full answers to inter- rogatories-*i.e.,* all the information within the re- sponding party's knowledge and control. *Bell v. Woodward Governor Co.,* No. 03 C 50190, 2005 WL 289963, at \*2 (N.D.Ill. Feb.7, 2005); *Hanley v. Como Inn, Inc.,* No. 99 C 1486, 2003 WL 1989607, at \*4 (N.D.Ill. Apr.28, 2003).

Although as a general matter, parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim of defense of any party [,]"Fed.R.Civ.P. 26(b)(1), discovery is not without limits. "[T]he manner and scope of discovery must be tailored to some extent to avoid harassment or being oppressive."*Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,* 262 F.Supp.2d 923, 926-927 (N.D.Ill.2003). A court has power un- der Rule 26(b)(2) of the Federal Rule of Civil Pro- cedure to limit the frequency or extent of use of otherwise permissible discovery methods if the dis- covery sought is unreasonably cumulative or du- plicative, if the discovery is obtainable from some other source that is more convenient, less burden- some, or less expensive, if the party seeking discov- ery has had ample opportunity to obtain the inform- ation sought, and/or if the burden or expense of the discovery outweighs its likely benefits. Fed.R.Civ.P. 26(b)(2); *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir.2002).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

Defendants' answers to interrogatories 5 and 6, as supplemented, provide a broad statement of defendants' classwide explanation for the length of the class members' detentions. In a nutshell, defendants' position is that there is natural and widespread backlog in processing arrestees at police stations throughout the City of Chicago. Plaintiffs contend defendants' answers are completely inadequate. While the court agrees that plaintiffs are entitled to some additional detail, plaintiffs' twelfth set of interrogatories are riddled with problems, ranging from being cumulative to being burdensome. As explained below, the court is quashing the twelfth set of interrogatories in part, but ordering defendants to provide some of the information sought in the twelfth set of interrogatories.

A. Interrogatories 1 & 2

**\*4** The first interrogatory of the twelfth set asks defendants to describe in detail all of the reasons why "class members individually or as a class were not issued a ticket once they were identified and it was determined that there were no outstanding warrants for their arrest."(Pls.' Mot., Ex. 6.) This interrogatory is cumulative of discovery previously served, yet more oppressive. The court has given plaintiffs broad latitude to take discovery regarding the City of Chicago's policies and practices for issuing tickets and for arresting persons who violate non-jailable ordinances, and to discover information regarding individuals who have been ticketed for non-jailable ordinance violations. (*E.g.,* Order of 7.6.04; Order of 1.11.05; Minute Order of 1.19.05.) Asking for each and every individual and classwide reason that the arrestee class members were not ticketed instead of arrested, however, takes the ticketing discovery one step further, crossing into the realm of unreasonably burdensome discovery. There are thousands of class members in this case, and as plaintiffs themselves acknowledge, they are challenging the reasonableness of the lengths of their detentions, not the fact that they were arrested. Because interrogatory number one exceeds the limits of fairness, that interrogatory is quashed.[FN7]

FN7. To be clear without being repetitive, where the court grants defendants' motion to quash as it relates to a particular interrogatory, plaintiffs' motion to compel is denied. Likewise, where the court grants plaintiffs' motion to compel regarding a particular interrogatory, defendants' motion to quash is denied.

The second interrogatory asks defendants to describe in detail the steps involved in processing the class members as of January 1, 2000 between the time the arrestees were issued a CB number and the time they were released, to describe any changes in those processing steps since January 1, 2000, and to explain the reason for any such changes. This interrogatory is unrelated to interrogatories 5 and 6 of the fifth set, and defendants offer no particular reason why the interrogatory should be quashed. Accordingly, regarding the second interrogatory, defendants' motion to quash is denied and plaintiffs' motion to compel is granted.

B. Interrogatories 3-11

Interrogatories 3-11 ask defendants detailed questions regarding terms used in their supplemental answers to interrogatories 5 and 6 from the fifth set. For example, as explained earlier, interrogatory three asks defendants (1) to define the term backlog used in the supplemental answers, (2) to identify, by date and police station, when a backlog existed that explains the delay in releasing class members from detention, (3) to explain in detail how backlog causes or explains such delays, (4) to identify all documents, including but not limited to reports, studies, or analyses, that explain that a backlog causes or explains such delays, (5) to identify each person who will testify to the fact that a backlog explains or causes such delays, and (6) to identify and explain all reasons why class members were not issued a ticket rather than arrested "once they were identified and it was determined that there were no warrants for their arrest or when it was determined that they would not be fingerprinted when a back-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

log exists."(Pls.' Mot., Ex. 6, interrog. 3.) Plaintiffs follow with similar questions regarding the terms "20:1 ratio" (interrogatory 4), "a large number of arrestees" (interrogatory 5), "large groups" (interrogatory 6), "personnel shortage" (interrogatory 8), "personnel deployment" (interrogatory 9), and also asks comparable questions regarding how the transportation of arrestees from one facility to another causes unavoidable delays, and what types of "unusual circumstances" and "myriad other practical realities" cause such delays (interrogatories 7, 10-11 respectively).

**\*5** Aside from one exception, plaintiffs' requests for definitions of various terms seek unnecessary clarification. The terms "backlog," "personnel shortage," "personnel deployment," "large number of arrestees" and "large groups" are not vague-they are understandable on their face. Moreover, those terms do not seem amenable to a precise definition, at least in the context of defendants' classwide explanations. Plaintiffs understandably want more information regarding how, for example, a "large number of arrestees" or a "large group" creates an unavoidable delay in processing or otherwise contribute to backlog in a police station. Requiring defendants to come up with a definition is not the answer, however. Rather, in the court's view, those are areas plaintiffs can more effectively explore through depositions, which allow greater flexibility than interrogatories for plaintiffs to frame questions and follow-up on the answers. Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 2163. The term "20:1 ratio," on the other hand, requires further explanation. Plaintiffs seek a definition "in terms of the type of police personnel included (*e.g.,* does it include all people on duty, civilian personnel, etc.) and the type of arrestees (*e.g.,* felony, misdemeanor, etc.) That is a reasonable inquiry which defendants are ordered to answer to the best of their ability. Additionally, defendants are directed to identify what information the 20:1 ratio is derived from. Likewise, defendants are directed to respond, to the full extent possible, to subpart (e) of interrogatory 4, which asks defendants to "state the desired ratio of police personnel and arrestees and identify all documents that support defendants answer."(Pls.' Mot., Ex. 6, interrog. 4(e).)

In subpart (a) of interrogatories 3-6 and 8-11, plaintiffs ask defendants to identify, by date and police station, when a given problem-backlog, the 20:1 ratio, large number of arrestees, the arrest of large groups, personnel shortages, personnel deployment issues, unusual circumstance, and myriad other practical realities-existed that explains the delay in releasing class members from detention. (*See* Pls.' Mot., Ex. 6, subpart. (a) of Interrogs. 3-6 and 8-11.) This request imposes an unreasonable burden on defendants. To answer plaintiffs' request, defendants would have to examine the events that took place at every police station in the city every day for a period several years. If defendants have conducted such an analysis, the court will require them to disclose the results (as discussed further below). However, certain statements made by defense counsel at the hearing on March 15, 2005 left the court with the understanding that defendants have not performed such an analysis. Perhaps an analysis of the daily events taking place at police stations across the city would bolster defendants' classwide explanation. But if defendants have decided not perform such analysis, the court will not order them to do so. It is their prerogative to decide how to present their defense. (*But see* Section D below regarding duty to disclose and to supplement). Subpart (a) of interrogatories 3-6 and 8-11 are therefore quashed.

**\*6** In subpart (b) of interrogatories 3-11, plaintiffs ask defendants to explain in detail how a particular problem (backlog, the 20:1 ratio, a large number of arrestees, the arrests of large groups, transportation of arrested persons from one facility to another, a personnel shortage, personnel deployment issues, unusual circumstances, and myriad other practical realities) causes or explains unavoidable delays in releasing class members from custody. (*See* Pls.' Mot., Ex. 6, subpt. (b) of interrogs. 3-11.) On a general level, the crux of defendants' classwide ex-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

planation is evident from the supplemental answers: in busy, metropolitan police stations like Chicago's, there regularly is a backlog of work to do, and the backlog is exacerbated when there are a large number of arrestees, personnel shortages, etc. To the extent plaintiffs wish to explore defendants' explanation in greater detail and explore whether particular problems occur routinely or on a sporadic basis, plaintiffs can more efficiently accomplish their goal through depositions, which are preferable to interrogatories "if a searching interrogation of the other party is desired."Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 2163. As noted earlier, depositions offer greater flexibility than interrogatories for plaintiffs to frame questions, follow up on the deponent's answers, and clarify evasive answers. *Id.* As a result, the court quashes subpart (b) of interrogatories 3-11.

Plaintiffs also ask defendants to identify all documents that explain how a particular problem (backlog, personnel shortages, arrests of large groups, etc.) causes or explains unavoidable delays in releasing class members from police custody. In their supplemental answers, defendants identified five categories of documents: "(i) the arrest reports of the members of the class certified by Judge Gettleman on March 5, 2003; (ii) watch commander logs, rosters of persons in custody, and detention reports for the dates of the arrests of the members of the class certified by Judge Gettleman on March 5, 2003; (iii) the general orders previously produced in this case; (iv) any statistical analysis of any of the above; and (v) annual reports of the Chicago Police Department."(Pls.' Mot., Ex. 6 at 7.) Plaintiffs contend they need more specific responses, so in subpart (c) of interrogatories 3-11, plaintiffs ask defendants to identify all documents, including but not limited to any reports, studies or analyses, that explain or demonstrate how a particular problem (*e.g.,* backlog, the 20:1 ratio, personnel shortages, etc.) explains the delay in releasing class members after they have been assigned a CB number. (Pls.' Mot., Ex. 6., interrogs. 3-11 at subpart (c).) At the hearing on March 15, 2005, plaintiffs

further informed the court that although they do not need more specific responses relating to the arrest reports and general orders, they need defendants to produce the Chicago Police Department's annual reports, and they need more specific responses regarding which watch commander logs, rosters of persons in custody, and detention reports defendants are relying on to support their classwide defense.

**\*7** From the twelfth set of interrogatories, it is clear that plaintiffs want to know whether defendants have done any analysis of the documents that supports defendants' classwide explanation, and if so, plaintiffs want to review any reports, studies or analyses that exist. Although defendants' supplemental answers to interrogatories 5 and 6 of the fifth set reference "any statistical analysis" of the arrest reports, watch logs, detention reports and logs of persons in custody, at the hearing on March 15, 2005, defendants' counsel reported that they have not undertaken such an analysis, at least not at this point. As noted earlier, it is defendants' prerogative to determine how to defend their case-the court will not order defendants to conduct an analysis to support their theory. But in the event defendants intend to offer an analysis, report, or study in support of their classwide explanation, defendants must disclose any such analysis, report or study in time for plaintiffs to take necessary discovery. *See* Fed.R.Civ.P. 26(e)(2) (requiring supplemental disclosures to interrogatories when warranted); Fed.R.Civ.P. 37(c)(1) (barring parties from using evidence at trial that is responsive to discovery requests but has not been disclosed, unless the failure to disclose is harmless). It is unclear whether this is something defendants intend to pursue, and if so, whether it is something they intend to pursue through a fact witness, through an expert witness, or both. If defendants plan to offer *only* expert testimony on the matter, disclosure can wait until expert discovery. If, however, defendants intend to present a report, analysis or study through a fact witness, defendants must supplement their interrogatory answers and disclose any such report, analysis or

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

study no later than April 29, 2005, in order to allow plaintiffs time to take any necessary, additional discovery before fact discovery closes on May 16, 2005.

Regarding identification of documents supporting their classwide defense, defendants are also ordered to produce the annual reports of the Chicago Police Department that are referenced in defendants' supplemental answers to interrogatories 5 and 6. As for plaintiffs' oral request for more specificity regarding which watch commander logs, rosters of persons in custody, and detention reports defendants are relying on to support their classwide defense, the court declines to order defendants to identify such documents by bates number because it would be unreasonably burdensome to require defendants to make such specific identifications.[FN8] There are a large number of detention reports, and for every day of the class period, which spans several years, there are three watch commander logs per day and a roster of persons in custody for each of the three daily shifts. In addition to being burdensome, such an order would be tantamount to ordering defendants to perform an analysis that, thus far, they have chosen not to undertake. Defendants' motion to quash is granted in part and denied in part as it relates to subpart (c) of interrogatories 3-11.

> **FN8.** Under Rule 33(d) of the Federal Rules of Civil Procedure, if a party opts to produce business records rather than provide a written response to an interrogatory because the burden of ascertaining the answer is substantially the same for each side, the responding party must specifically identify the records from which the answer may be obtained. Fed.R.Civ.P. 33(d). Here, however, defendants did not invoke Rule 33(d)-they provided a written explanation of their classwide defense, albeit a broad one.

**\*8** The next issue relates to defendants' identification of witnesses with knowledge regarding their classwide defense. Interrogatories 5 and 6 of the fifth set asked defendants to identify all witnesses with knowledge of defendants' classwide explanations. In their supplemental responses, defendants identified as witnesses all members of the class, and "all members of the Chicago Police Department who were involved in the arrests and detentions and who might appear on the arrest records produced to plaintiffs, including arresting officers, watch commanders, desk sergeants and lockup personnel, many of whom have already been deposed in this action, including but not limited to all witnesses produced for deposition pursuant to Rule 30(b)(6) notice."(Defs.' Mot. to Quash, Ex. 4 at 7.) In subpart (d) of interrogatories 3-11 of the twelfth set, plaintiffs followed up with a more specific request, asking defendants to identify each person who will testify to the fact that a particular problem (backlog, personnel shortages, etc.) explains or causes the delays in releasing class members from police custody. (Pls.' Mot., Ex. 6, interrogs. 3-11, subpart (d).) Although defendants' supplemental responses to interrogatories 5 and 6 responded to the interrogatories as originally posed, the court finds that at this stage in discovery, in order to avoid the unfair surprise at trial, plaintiffs are entitled to a list of which witnesses defendants are likely to call to testify regarding its classwide defense. Plaintiffs need to decide which witnesses to depose, and they cannot make an informed decision when the pool of potential witnesses includes every class member and every police officer who interacted with the class members. Accordingly, the court denies the motion to quash as it relates to subpart (d) of interrogatories 3-11.

In subpart (e) of interrogatories 3 and 5-11 of the twelfth set, plaintiffs ask defendants to identify and explain all reasons-including but not limited to policy, custom and practice reasons-why class members were not issued a ticket rather than arrested "once they were identified and it was determined that there were no warrants for their arrest or when it was determined that they would not be fingerprinted" when a particular problem (backlog, personnel shortages, arrests of large groups, etc.)

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)

**2005 WL 991995 (N.D.Ill.)**

would cause a delay in their release. (Pls.' Mot., Ex. 6, subpart (e) of interrogatories 3, 5-11.) Like the first interrogatory of the twelfth set discussed earlier, the court finds these requests cumulative of the ticketing discovery previously served, yet more oppressive. Subpart (e) of interrogatories 3 and 5-11 are therefore quashed.

Interrogatory number 7 of the twelfth set relates to defendants' position that the transportation of arrested persons from one facility to another contributes to delays in releasing the class members. The court has already ruled on each part of interrogatory 7 except for subpart (a). In subpart (a) of interrogatory number 7, plaintiffs ask defendants (1) to state whether there are circumstances in which a person who is arrested for non-jailable ordinance violation would be transferred from one facility to another *after* the police have identified the arrestee, determined that there are no outstanding warrants, determined that the arrestee will not be fingerprinted, and have issued the arrestee a CB number; (2) if so, to state under what circumstances a transfer would occur; and (3) to identify all documents, including Chicago Police Department General Orders, relating to such transfers. This is a reasonably focused inquiry, aside from the request to identify documents, which could be construed broadly.FN9 The court limits the request for identification of documents to Chicago Police Department General Orders and documents reflecting policies, practices or customs relating to transfers. With that limitation, the court otherwise denies defendants' motion to quash as it relates to subpart (a) of interrogatory 7.

> FN9. For example, assuming there are circumstances in which class members would be transferred to another facility after many of the processing steps have taken place, the request for identification of documents could be broadly construed to require defendants to identify every document relating to every class member who was transferred from one facility to another. Such a requirement would require de-

fendants to search through the records relating to every class member, and thus would impose an unreasonable burden.

**\*9** In the initial paragraph of interrogatories 10 and 11 of the twelfth set, plaintiffs ask defendants to identify each "unusual circumstance" and to identify the "myriad of other practical realities" that explain unavoidable delays in releasing the class members from custody.FN10 It is evident that defendants used those terms as catch-all expressions. Defendants need not further clarify those phrases in their written interrogatory answers at this time, however, as addressed in Section D below, defendants have a duty to supplement their interrogatory answers under Rule 26(e)(2). Additionally, plaintiffs may explore the "unusual circumstances" and "myriad of other practical realities" in depositions.

> FN10. The court has already ruled on subparts (a-e) of interrogatories 10-11 in other parts of this opinion.

**C. Interrogatory 12**

The last interrogatory of the twelfth set, interrogatory 12, asks defendants to identify by title all databases containing computer-accessible information that the City of Chicago maintains (or has maintained, or has access to) that contain information regarding (a) arrests, (b) names of arrestees, (c) date, time, shift, station and/or district of arrest, and (d) personnel, staffing and deployment data by date, shift, station and/or district. Defendants raised no specific objection to interrogatory 12, and the court finds that it is a reasonably focused inquiry regarding information relevant to defendants' classwide defenses. Accordingly, the court denies defendants' motion to quash as it relates to interrogatory 12.

**D. Defendants' Duty to Supplement Interrogatory Answers under Rule 26(e)(2)**

The court reminds defendants that under Rule 26(e)(2) of the Federal Rules of Civil Procedure,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**
Page 9

they have a duty to supplement their interrogatory answers. Fed.R.Civ.P. 26(e)(2). Further, if defendants fail to properly supplement their answers as required by Rule 26(e)(2), defendants will be barred under Rule 37(c)(1) from using evidence at trial that has not been disclosed, unless the failure is harmless. Fed.R.Civ.P. 37(c)(1); *For Your Ease Only, Inc. v. Calgon Carbon Corp.,* No. 02 C 7345, 2003 WL 22682361, at \*2 (N.D.Ill. Nov.12, 2003). In other words, if defendants' persist with their broad classwide explanation in response to interrogatories 5 and 6, they are stuck with those answers and will not be permitted to present more specific, detailed evidence at trial that has not been disclosed to plaintiffs. By way of example only, if defendants persist with the broad explanation that "personnel shortages" contribute to the delays in releasing class members from custody, defendants should not expect to present a statistical analysis regarding personnel shortages at trial to support their general explanation.FN11

> FN11. If plaintiffs' interrogatories relate to issues that defendants intend to address in expert discovery, defendants should disclose those intentions.

E. Objection to the Number of Interrogatories Served by Plaintiffs

Defendants have also objected that plaintiffs have far exceeded the number of interrogatories permitted as of right under Rule 33 of the Federal Rules of Civil Procedure. Under Rule 33, a party has a right to serve 25 written interrogatories upon another party, and may obtain leave of court to serve additional interrogatories "consistent with the principles of Rule 26(b)(2)."Fed.R.Civ.P. 33. Earlier in discovery, the court exercised its discretion under Rule 26(b)(2) to expand the limit on the number of interrogatories because this is a class action lawsuit. Specifically, in an order issued July 6, 2004, the court overruled defendants objection that plaintiffs had exceeded the 25 interrogatories permitted under Rule 33, "primarily because this is a complex class action involving multiple

plaintiffs."(Order of 7.6.04 at 2 n. 1, docket 114.)The court further explained that it had no intention of permitting unlimited interrogatories, and directed the parties to be prepared to address the appropriate limits at the next status. (*Id.*) The issue regarding interrogatory limits fell through the cracks, however, and has not been addressed yet. Although the court does not know how many interrogatories the parties have served, it is clear that plaintiffs have served more than 25 interrogatories.FN12The court has not based its ruling on defendants' motion to quash and plaintiffs' motion to compel on the number of interrogatories that have been served. However, at the hearing on April 27, 2005, the parties should be prepared to address how much additional written discovery (if any) they anticipate serving in this matter.

> FN12. Defendants contend that plaintiffs have served more than 200 interrogatories, counting subparts. (Defs.' Mot. to Quash ¶ 16.) The accuracy of that count is questionable, however. "[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question. On the other hand, an interrogatory which contains subparts that inquire into discrete areas should, in most cases, be counted as more than one interrogatory."*Swackhammer v. Sprint Corp. PCS,* 225 F.R.D. 658, 664-665 (D.Kan.2004). According to defendants' count, the twelfth set of interrogatories alone totals 49 interrogatories counting subparts, yet by the court's count, the total is more like 12. Defendants likely counted every subpart as a separate interrogatory, but in the court's view, most of the subparts for each of the 11 interrogatories were directed at the common theme of the particular interrogatory. The exception was subpart (e) included in interrogatories 3, 5, 7-11 which asks for the reasons the class members were not ticketed. The court deems this an inquiry into a separate,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)
**2005 WL 991995 (N.D.Ill.)**

discrete area, and counts it as a twelfth interrogatory.

*Conclusion*

**\*10** For the reasons set forth above, defendants' motion to quash plaintiffs' twelfth set of interrogatories is granted in part and denied in part, as is plaintiffs' motion to compel responses to those interrogatories. To the extent defendants' motion to quash is denied, defendants have 14 days to answer plaintiffs' twelfth set of interrogatories. Additionally, if defendants intend to present a report, analysis or study in support of their classwide defenses through a fact witness (as opposed to an expert witness), defendants must supplement their interrogatory answers and disclose any such report, analysis or study no later than April 29, 2005, in order to allow plaintiffs time to take any necessary, additional discovery before fact discovery closes on May 16, 2005.

N.D.Ill.,2005.
Portis v. City of Chicago
Not Reported in F.Supp.2d, 2005 WL 991995 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.